UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                      Plaintiff,

    v.                                  Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

                      Defendant.

## GOVERNMENT RESPONSE TO DEFENDANT'S BRADY MOTION

      The defendant has filed a motion for disclosure of *Brady* and other material. This response addresses the defendant's requests using the lettering and numbering that he uses in the "checklist" at the end of his motion.

**a.    All information pertaining to surveillance of Hamzeh.**
      The government will disclose the requested material that is within its possession (including surveillance reports/ logs and surveillance videos, and surveillance photos) once that material is declassified.

**b.    All communications between each CHS and the FBI agents, including:**

    **i.    All emails sent between them**
          The government is not in possession of any e-mails between the FBI agents and either of the confidential sources.

          [Note: The FBI did set up an unattributable email address to receive video from CHS 2, but was never able to access that account. The government has a text message exchange between CHS-2 and FBI Special Agent Brad Simons, in which CHS-2 indicated that he had tried to send an email with a video attachment to that address. According to CHS-2, the attempt to send the email was not successful. The FBI was never able to access the email or the video, which, according to CHS-2 was footage of Hamzeh firing a gun at a shooting range.]

1

**ii.     All text messages**
The government will disclose the requested material that is within its possession.

**iii.    Any voicemails that were left and recorded**
The government is not in possession of any voicemails that were left and recorded between the FBI agents and either of the confidential sources.

**iv.    Any other communication, in any form, between them**
The government is not in possession of any other communication between FBI agents and either of the confidential sources.

**v.     All FBI notes and recordings of meetings with the informants**
The government is not in possession of any additional recordings of meetings between FBI agents and either of the informants.

The agents have preserved rough notes that they used to prepare reports. A defendant generally is not entitled to an agent's notes if the report contains all that was in the notes. *See United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). The agents will continue to preserve their notes, but the government asks that the Court either deny the defendant's request that the notes be disclosed or examine the notes *in camera* to determine whether and to what extent they should be disclosed.

**c.     All communications to or from Hamzeh that were captured, including:**

**i.     All emails**
The government is not in possession of anything responsive to this request.

**ii.    All text messages**
The government is not in possession of anything further responsive to this request.

**iii.   All Facebook messaging**
The government is not in possession of anything responsive to this request.

**iv.    All recorded phone calls, captured either by the informants or the FBI or any other governmental agency; and Logs or other documentation regarding this information.**
The government is not in possession of anything further responsive to this request.

**d.    Agents' rough notes.**
See response to b.5 above.


**e.    Any policy manuals, guidance, memoranda, training manuals, or other documents concerning terrorist investigations and/ or the use of confidential sources, including:**

  **i.    Those in effect at the time of this investigation**.
  To the extent that the defendant intended to limit this request to internal manuals, guidance, memoranda, and other documents regarding general policies and procedures, he has not established that those materials are exculpatory. The government asks that the Court either deny the defendant's request for disclosure of this material or examine the material *in camera* to determine whether and to what extent they should be disclosed.[1]

  **ii.    Those that were used by the agents in this case**
  The government has no additional documents responsive to this request.

  **iii.    Instructions that were given to the informants or that the informants were told they had to follow.**
  - According to the FBI, Special Agents provided the following guidance to both of the CHSs in this case:

  - The CHS's assistance and the information provided to the FBI are entirely voluntary.

  - The CHS must provide truthful information to the FBI.

  - The CHS must abide by the instructions of the FBI and must not take or seek to take any independent actions on behalf of the US Government.

  - The US government will strive to protect the CHS's identity but cannot guarantee it will not be divulged.

---

[1] The defendant's broad request for "[a]ny . . . documents concerning terrorist investigations and/ or the use of confidential sources" would sweep in an extraordinarily large number of documents – many of which, for obvious reasons, are classified – that have nothing to do with this case.  The defendant has not explained why those documents are exculpatory.

3

In addition, On 11/06/2015, CHS 2 was unable to get recordings equipment from agents and recorded a meeting between CHS and SAMY HAMZEH that occurred in Milwaukee, WI. CHS 2 was acknowledged for the initiative but was admonished for recording with non-FBI approved recording equipment.

The government is not in possession of anything further responsive to this request.

    **iv.**    **Signed statements of understanding by the informants in this case or any other case.**
The government has no documents responsive to this request.

    **v.**    **All instructions given to the informants in this case or any other case regarding how to conduct themselves.**
This is the same request made in Section e.iii above, and the government's response is the same.

**f.**    **All documentation required to be maintained under the Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources, including, but not limited to:**
The government has two documents responsive to this request. The government is in the process of having those documents declassified and will disclose the documents once they have been declassified.

**g.**    **Identification of any polygraphs given to the informants. For any polygraph, we are requiring the date, location….**
Neither of the informants were given a polygraph examination.

**h.**    **Identification of any payments or benefits, whether or not memorialized in writing, given to the informants in this case of in any other case for working as an informant, including:**

    **i.**    **An itemized description of each "service" for which the informants were paid for each service and the date paid, along with copies of any receipts or other supporting documents**

CHS-1

CHS-1 is a Non-United States Citizen, Non-Immigrant Visa Overstay who voluntarily contacted the FBI regarding his relationship with Hamzeh. CHS-1 was a source for the FBI from September 21, 2015, to January 28, 2016. CHS-1 volunarily provided information regarding threatening statements made by

Hamzeh. The FBI obtained an Exercise of Prosecutorial Discretion from Removal Proceedings for CHS-1 so that he could remain in the United States during the course of the Hamzeh investigation. The "deferred action" status was terminated after Hamzeh's arrest and CHS-1 returned to Jordan on March 11, 2016.

The FBI made, or attempted to make (see the returned payment noted below), the following payments to CHS-1:

| | | |
|---|---|---|
| January 2015 | $601 | Hotel expense |
| January 2015 | $599 | CHS-1 refused this payment |
| January 2015 | $300 | Money used to "pay" UC for machinegun (i.e., this money went back to the government) |

On or about January 30, 2015, an FBI Task Force Officer bought a pack of cigarettes and a bottle of water for CHS-1.

CHS-1 was granted one Otherwise Illegal Activity on October 15, 2015, in order to drive Hamzeh to the airport to travel overseas, but it was never used.

CHS-1 was referred for a mental health evaluation on January 27, 2016.

CHS-2

CHS-2 is a United States Citizen who became involved in the Hamzeh investigation at the request of the FBI when it was determined that CHS-2 had had prior contact with a known associate of Hamzeh. CHS-2 quit his job and obtained employment at a Chinese restaurant where Hamzeh was employed. CHS-2 was using his personal vehicle and paying for gas and a telephone. Because the FBI was tasking CHS-2 to his own financial detriment, the agency made the following payments to him:

| | | |
|---|---|---|
| September 30, 2015 | $750 | |
| November 4, 2015 | $550 | |
| November 18, 2015 | $2,000 | |
| December 22, 2015 | $2,000 | |
| January 20, 2016 | $2,000 | |
| February 25, 2016 | $896.54 | phone purchase to get new number after Hamzeh arrest |

The government is in possession of paperwork documenting the payments to CHS-1 and CHS-2. The substance of those documents (payment dates, amounts, and purposes) is set out above, and that is all that must be disclosed under *Brady*. The government asks that the Court either deny the defendant's request for disclosure or examine the underlying paperwork to determine whether it contains *Brady* material.

In October 2017 FBI agents paid for breakfast for CHS-2.

**ii.  An itemized description of each "expense" paid to the informants, including the amount and the date paid, along with supporting documents.**
See h.i above.

**iii.  An itemized description of any payments or expenses not made directly to the informants, but made on their behalf, along with supporting documents**
No payments of this type were made.

**iv.  An itemized description of any immigration benefits received, or hoped to be received, by the informants or others due to the cooperation.**
See h.i above.

**v.  An itemized description of any other benefits provided for the informant's cooperation.**
See h.i above.

**vi.  Specification of all other cases in which the informant has assisted the government, along with identification of benefits**
CHS-2 was previously a source for the FBI from March 28, 2011, to October 6, 2011. He was closed as a source due to lack of availability and because he was not in a position to report on information. CHS-2 was reopened on April 15, 2015, and continues to cooperate with the FBI. The defendant has not established that identifying the specific cases in which CHS-2 has provided assistance needs to be disclosed.

**vii.  All information concerning any personal animosity expressed against Hamzeh by any witness.**
The government is not in possession of any additional material responsive to this request.

**viii.  All other exculpatory information regarding the informants, such as that summarized in Hamzeh's previous discovery requests.**
The government has no additional material responsive to this request.

6

**i.      Identification of all efforts to link Hamzeh with extremists, including through examination of historical data such as phone records, emails, texts, instant messaging, chat groups, other social media, data mining, interviews in the United States and overseas, financial records, and the interception of communications, and the results of those efforts.**

All material within the government's possession that is responsive to this request has been disclosed to the defense.

**j.      All occasions on which the FBI cautioned or sanctioned the CI's for violating protocol.**

> **i.      This would include inducements to Hamzeh to engage in criminal conduct.**
> The government is not in possession of any information responsive to this request.

> **ii.     This would also include admonitions for engaging in criminal conduct such as possessing, smoking, or delivering marijuana.**
> CHS-1 was told that he could not engage in illegal activity while cooperating with the FBI unless specifically authorized by the FBI.

> **iii.    This would also include any information that any informant was involved in a sham marriage in an effort to obtain citizenship.**
> The government is not in possession of any information responsive to this request.

**k.      To the extent that the recordings produced to the defense have been modified to excise conversations between agents and informants before or after meetings with Hamzeh, Hamzeh requests the remaining portions of the recordings because of their exculpatory value.**

The recordings produced to the defense have not been modified.

**l.      All reports, memorandum, rough notes, text messages, or any other form of communication between the FBI agents and the informants be turned over concerning the following topics:**

> **i.      All information about machine guns and direction given to the informants about machine guns.**
> The government is not in possession of anything responsive to this request.

7

ii. **All information about the Masons and direction given to the informants about the plan to attack the Masons or any other domestic target.**
The government is not in possession of anything responsive to this request.

iii. **All information provided to the informants that falsely portrays the Masons as in league with ISIS and enemies of Islam.**
The government is not in possession of anything responsive to this request.

m. **Google account information for both informants, including:**

i. **Google account usernames;**
The government is not in possession of anything responsive to this request.

ii. **YouTube videos (including link information) that were viewed through the accounts of the informants;**
The government is not in possession of anything responsive to this request.

iii. **Archive records of the YouTube searches for each account between October 1, 2015, and January 25, 2016;**
The government is not in possession of anything responsive to this request.

iv. **Any and all emails that were sent by the informants to Hamzeh, to each other, and to the FBI agents; and**
The government is not in possession of anything responsive to this request that has not already been disclosed.

v. **Archive records of Google searches for Masons, machine guns, Jihad, or other subjects potentially relevant to entrapment.**
The government is not in possession of anything responsive to this request.

n. **All Facebook information for both informants, including:**

i. **Account usernames;**
The government is not in possession of anything responsive to this request.

ii. **Messages sent by the informants to Hamzeh, and to each other (where related to Hamzeh or the investigation)**
The government is not in possession of anything responsive to this request that has not already been disclosed.

8

      **iii.    Facebook account downloads of both informants, between September 2015 and February 1, 2016.**
      The government is not in possession of anything responsive to this request.

**o.    All SMS and text messaging for both informants, including:**

      **i.    Messages sent by the informants to Hamzeh, each other, and to the agents.**
      The government is not in possession of anything responsive to this request that has not already been disclosed.

**p.    The mental-health records of the informants relating to any post-arrest commitment.**
      The government is not in possession of anything responsive to this request.

**q.    Any reports concerning the informants drug use.**
      The government is not in possession of anything responsive to this request.

**r.    That an unredacted copy of all reports be turned over to the defense.**
      The reports have been appropriately redacted; the defendant is not entitled to completely unredacted reports.

      **i.    That the discovery be batestamped to allow for ease of use and citation at trial.**
      The government will bates stamp the discovery.

**s.    All reports by the CI or the agents about one CI's perception or recording of the other CI.**

      **i.    So, the defense wants, all reports by or about Steve that concern his perceptions and meetings with Mike – both when Hamzeh was present and when he wasn't.**
      The government is not in possession of anything responsive to this request.

      **ii.    The defense wants all reports by or about Mike that concern his perceptions and meeting with Steve – both when Hamzeh was present and when he wasn't.**
      The government is not in possession of anything responsive to this request.

**t.    All reports concerning the meeting when the CI's were told of each other and the instructions given to them about how they are to approach Hamzeh.**
      The government has in its possession a classified report responsive to this request and will disclose it once the report is declassified.

     **i.**       **This includes any mention of directing Hamzeh to attack the Masons.**
              The government is not in possession of anything responsive to this request.

     **ii.**     **This includes any mention of directing or ensuring Hamzeh get an illegal machine gun.**
              The government is not in possession of anything responsive to this request.

**u.**    **All reports concerning the machine gun, the silencer, and its manufacturing.**
    The government has disclosed all law enforcement reports within its possession and will disclose additional reports as they become available.

    Dated the 18th day of January, 2018.

               Respectfully submitted,

               s/ Gregory J. Haanstad
               GREGORY J. HAANSTAD
               United States Attorney
               Wisconsin Bar: 1036125
               email:  greg.haanstad@usdoj.gov

               s/ Paul L. Kanter
               PAUL L. KANTER
               Deputy Criminal Chief
               Wisconsin Bar: 1005035
               email:  paul.kanter@usdoj.gov

               Attorneys for the Plaintiff
               Office of the United States Attorney
               Eastern District of Wisconsin
               517 E. Wisconsin Avenue, Room 530
               Milwaukee, Wisconsin  53202
               Telephone:  (414) 297-1700