UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                             Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

## GOVERNMENT'S POSITION ON OUTSTANDING DISCOVERY REQUESTS

### Background

On January 3, 2018, the defendant filed a Motion for Production of *Brady* Material in which he requested disclosure of 42 items or categories of items. D.82. The government responded on January 18, 2018, indicating that it had nothing responsive in its possession with respect to 32 of the items or categories. The government also agreed to disclose 5 of the items or categories, leaving only 5 more requests in dispute: (1) FBI Policy manuals, guidance, and memoranda; (2) agents' rough notes; (3) receipts and other paperwork documenting payments to confidential sources; (4) specification of cases in which a confidential source provided assistance to the government; and (5) unredacted reports. At a status hearing on January 24, 2018, the parties discussed these remaining outstanding issues with the Court. The government makes this submission to explain its

1

position on the discovery requests still in dispute and asks that the Court, for the reasons set forth below, deny the defendant's January 3 motion.

## Analysis

A. Legal framework

There is no general right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). *See also United States v. Agurs*, 427 U.S. 97, 110 (1976) (rejecting argument that defense should have unfettered or complete access to the Government's files); *United States v. Barbeito*, 2010 WL 11530928 (S.D.W.V. April 12, 2010) ("[C]riminal procedure lacks a mechanism comparable to civil discovery. . . ."). Rather, the government has disclosure obligations that are limited and defined by specific constitutional provisions, statutes, and federal and local rules. The government has an obligation under the due process clause of the Fifth Amendment (and the Fourteenth, in state criminal prosecutions) to disclose exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); as well as a statutory obligation to disclose statements and reports of testifying government witnesses, *see* 18 U.S.C. § 3500. The government also has an obligation to disclose documents and objects within its possession if they are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E); Criminal L.R. 16(a)(2) (E.D. Wis.).

Under *Brady* and *Giglio*, the government must disclose to a defendant exculpatory evidence that is material to guilt. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Materiality for purposes of *Brady* is "traditionally assessed from the vantage point of appellate review." *United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 (D. Mass. 2007). Evidence is material if its disclosure has a "reasonable probability" of affecting the outcome at trial. *United States v. Aviles-Colon*, 536 F.3d 1, 20 (1st Cir. 2008).

2

Rule 16(a)(1)(E) provides in relevant part that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents [or] tangible objects . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." The materiality standard for Rule 16 is satisfied only if there is "a strong indication that it will play an important role in uncovering admissible evidence aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Caro*, 2010 WL 963201, at *11 (4th Cir. Mar. 17, 2010) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). To be material, "the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense." *United States v. Chimera*, 201 F.R.D. 72, 76 (W.D.N.Y. 2001) (citations omitted). Defendants bear the burden of making a "prima facie showing of materiality." *United States v. Carrasquillo*-Plaza, 873 F.2d 10, 12 (1st Cir. 1989).

B. Defendant's discovery requests

1. *Federal Bureau of Investigation Manuals, etc.*

The defendant has made a broad request for "[a]ny policy manuals, guidance, memoranda, training manuals, or other documents concerning terrorist investigations and/or the use of confidential sources, including . . . those in effect at the time of this investigation." D. 82 at 19. He also has identified two documents or books that he characterizes as "illustrative of the requests made in [their] *Brady* motion. He identifies a book entitled *Terrorism & Political Islam: Origins, Ideologies, and Methods: A Counterterrorism Textbook*. First, that book is not uniquely within the government's possession or control. In fact, it is publicly available from a number of sources, including on Amazon.com, where is can be purchased for $31.45. Moreover,

3

*Terrorism & Political Islam* does not set forth, as the defendant suggests that it does, FBI policy or guidelines regarding the use of informants or the conduct of investigations. A publication of the United States Military Academy, the book itself makes explicit that the views it sets forth are not those of "the U.S. Military Academy, the Department of the Army, the Federal Bureau of Investigation or any other agency of the U.S. Government."

Not only is *Terrorism & Political Islam* publicly available and not a statement of FBI policy, but the defendant also has not satisfied his burden of establishing that either that book or documents such as the internal FBI guide that he specifically identifies – The FBI's Domestic Investigations and Operations Guide (DIOG) – are exculpatory or material under *Brady* or Rule 16. He merely suggests that such manuals and publications establish a "protocol" for dealing with informants and argues that "whether an agent violated protocol when instructing and documenting his or her instructions to an informant . . . provides a fertile area for cross-examination." D.82 at 16.

Vague and unsupported assertions that internal FBI guidance (such as the DIOG) may contain "fertile" information are not a sufficient basis upon which to compel disclosure of sensitive internal operating methods and procedures. *See, e.g., United States v. Norita*, 708 F.Supp. 2d 1043, 1054 (D. N. Mar. I. 2010) (determining that conclusory assertions that law enforcement manuals would assist in cross-examining agents and informants were insufficient to establish materiality under Rule 16); *United States v. Sanchez*, 866 F. Supp. 1542, 1549 (D. Kan. 1994) (denying defense request, under Rule 16 and *Brady*, for compelled disclosure of "all manuals, whether denominated as training manuals, instructional manuals, standard operating procedure manuals, directives, policies or guidelines utilized by the Kansas Highway Patrol. . ."). *See also United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("[M]ere speculation

4

about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials available for [appellant's inspection.").

At least implicit in the defendant's request is the suggestion that the law enforcement agents in this case may not have adhered to internal policies or "protocol." He has not, however, provided any basis for such a suggestion. In any event, things like internal policies, procedures, and guidelines do not create enforceable rights. *See, e.g., United States v. Lopez-Matias*, 522 F.3d 150, 155-56 (1st Cir. 2008) ("Department of Justice guidelines, not mandated by statute or the constitution, do not confer substantive rights on any party." (internal citation omitted)); *United States v. Le*, 306 F. Supp. 2d 589, 592 ("[I]nternal DOJ guidelines do not create any substantive or procedural rights for a defendant."). More to the point for present purposes, such policies and procedures are not material. The defendant argues that they are material to his entrapment defense; but the merit of that defense will be assessed according to the legal elements of the defense, and not according to what an internal manual or policy may or may not require. *Cf. United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009) (explaining that even if an agent's actions related to a search were inconsistent with an agency's written policies, the policy was not material – "the scope of the Fourth Amendment's protections is not to be measured by reference to agency guidelines and other extra-constitutional matter."); *United States v. Gann*, 925 F.2d 1471 (9th Cir. 1991) (unpublished memorandum decision) (9th Cir. Feb. 19, 1991) (concluding that neither *Brady* nor Rule 16 required disclosure of internal guidelines regarding internal procedures for witness identifications: "The issue was not what the manual may or may not require, but whether the procedures that were actually used denied defendant due process.").

5

The government asks the Court to deny the defendant's request for policy manuals, guidance, memoranda, and training manuals.

2. *Agent's rough notes*

The case agents have preserved rough notes that they used to prepare reports. In this district, "'Open file materials' do not ordinarily include . . . rough notes used to construct formal written reports." Criminal L.R. 16(a)(3). A defendant generally is not entitled to an agent's notes if a report contains all the material information that is in the notes. *See United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). The agents here will continue to preserve their notes. The government is aware of its present and ongoing discovery obligations and will comply with them. *See United States v. Vallodolid*, 2017 WL 3484740, at *2 (N.D. Ind. Aug. 15, 2017) ("It has repeatedly been held that where the Government has made assurances it will comply with *Giglio* and *Brady*, those assurances are sufficient.); *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance."). The government asks the Court to deny the defendant's request for production of agents' rough notes.

3. *Receipts and paperwork for payments made to confidential sources*

The government already has provided the defendant with the dates, amounts, and purposes of payments made to the two confidential sources from this investigation. That is, the government already has provided the material impeachment information from underlying internal paperwork related to the payments. As with the request for discoverable internal policies, memoranda, and other documents, the government is aware of its ongoing discovery

6

obligations and will comply with them. The government asks the Court to deny the defendant's request for disclosure of the receipts and paperwork related to confidential source payments.

   4. *Specification of all other cases in which the informants have assisted the government*

The government has already informed the defendant that CHS-2 was previously a source for the FBI from March 28, 2011, to October 6, 2011. The government also disclosed to the defendant why CHS-2 was closed as a source, and that he was "reopened" as a source on April 15, 2015. Again, the government is aware of its continuing discovery obligations and will comply with them. That includes, for example, disclosing any information that it might obtain regarding additional payments to a cooperating witness and instances in which the cooperating witness was dishonest while assisting government investigations. The government asks the Court to deny the defendant's request for specification of all other cases in which the informants have assisted the government.

   5. *Unredacted reports*

The government has disclosed hundreds of pages of reports to the defendant, and is in the process of disclosing more. All of those reports have been, to some extent, redacted. "The government retains the authority to redact from open file material anything (i) that is not exculpatory and (ii) that the government reasonably believes is not relevant to the prosecution, or would jeopardize the safety of a person other than the defendant. . . ." Criminal L.R. 16(a)(2). The redactions made in this case have not withheld discoverable information – the redacted information is neither exculpatory nor relevant.    Almost all of the redactions are of administrative markings, classification markings, names of innocent third parties, and personal identifying information (such as social security numbers and driver's license numbers). The

7

defendant has identified one example in which the redactions go beyond markings, names of third parties, and personal identifying information. The government has reviewed that redaction, and the redacted information is not exculpatory or relevant to the prosecution.

Again, the government is aware that its discovery obligations are ongoing. If the defense identifies additional redactions that they think withhold discoverable information, the government will look at those redactions and reassess them. If, at that point, the defense disagrees with the redaction, they may file a focused challenge to the redactions by motion to the Court under Criminal L.R. 16(a)(2). As things now stand, the government asks the Court to deny the defendant's request for unredacted reports.

## Conclusion

Based on the positions and arguments set forth above, the government asks the Court to deny the defenant's motion. Dated the 9th day of February, 2018.

Respectfully submitted,

s/ Gregory J. Haanstad
GREGORY J. HAANSTAD
United States Attorney
Wisconsin Bar: 1036125
email:  greg.haanstad@usdoj.gov

s/ Paul L. Kanter
PAUL L. KANTER
Deputy Criminal Chief
Wisconsin Bar: 1005035
email:  paul.kanter@usdoj.gov

Attorneys for the Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin

8

517 E. Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700

9