UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S ORDER ON PRETRIAL DISCLOSURE**

---

On March 8, 2018, United States Magistrate Judge William E. Duffin entered an order granting in part and denying in part Defendant Samy Mohammed Hamzeh's motion for *Brady* Material. On April 6, 2018, Hamzeh filed an appeal of certain parts of that order. Hamzeh appeals Judge Duffin's denial of four specific requests for different categories of material. The government addresses each of those four requests below, and asks that this Court deny them and affirm Judge Duffin's order.[1]

    A. <u>FBI Manuals, etc.</u>

Hamzeh has requested FBI "policy manuals, guidance, memoranda, training manuals and other documents . . . concerning terrorism investigations and/or the use of confidential informants." R.113:1. Magistrate Judge Duffin denied the request, correctly finding that Hamzeh had failed to establish "that internal manuals setting forth 'best practices' for

---

[1] The government has laid out the general legal framework for disclosure obligations in an earlier filing. *See* R.104:2-3.

1

investigating terrorist organizations or for dealing with confidential informants is material to his entrapment defense." R.107:5.[2] In his appeal, Hamzeh argues that Judge Duffin's understanding of materiality is too narrow. R.113:3.

A document is "material" for purposes of Rule 16(a)(1)(E) if it will "significantly help[ ] in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal." *United States v. Gaddis*, 877 F.2d 605, 611 (7th Cir. 1989) (internal quotation and citation omitted). *See also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993); *United States v. Caputo*, 373 F.Supp. 2d 789, 793 (N.D. Ill. 2005). To satisfy his burden of making a *prima facie* showing of materiality, the defendant "must convincingly explain how specific documents will significantly help him uncover admissible evidence, prepare witnesses, or corroborate, impeach, or rebut testimony." A defendant must demonstrate that the documents have more than an "abstract logical relationship" to issues in the case. *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975). Information is "material to the defense" only if there is some indication that the pretrial disclosure of the information would enable the defendant "significantly to alter the quantum of proof in his favor." *United States v. Kohli*, 847 F.3d 483, 493 (7th Cir. 2017) (quoting *United States v. Caro*, 597 F.3d 608, 621, n.15 (4th Cir. 2010)). *See also United States v. Baker*, 453 F.3d 419, 425 (7th Cir. 2006).

---

[2] Judge Duffin also correctly noted that Hamzeh already had access to materials that describe best practices for investigating terrorist organizations and dealing with confidential informants. R.107:5. Indeed, Hamzeh described such materials in some detail in his reply brief and noted that he had online access to the FBI's Domestic Investigation and Operations Guide (2011); the Attorney General Guidelines Regarding the Use of Confidential Human Sources; the FBI Human Source Program Guide, and the FBI Confidential Human Source Validation Source Manual. Such access to the disputed information from alternative sources weighs against compelled further disclosure. *See United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975); *United States v. Caputo*, 373 F.Supp. 2d 789, 793 (N.D. Ill. 2005).

2

The manuals sought by Hamzeh bear, at best, an abstract logical relationship to the entrapment defense that he intends to present. His position is that the manuals establish protocols for conducting terrorism investigations and handling confidential informants, that case agents may have deviated from those protocols, and that, if the agents deviated from the protocols, that deviation would be probative of whether there was inducement and lack of predisposition (the two elements of an entrapment defense). R.113:2-3. Judge Duffin explained correctly that "[b]oth elements can be proven regardless of whether case agents complied, or failed to comply, with some internal manual on how to investigate terrorist organizations or how to handle confidential informants." R.107:5-6.

According to Hamzeh, "[t]he question is whether showing violations of protocol would assist Hamzeh in proving entrapment." R.113:2. It would not. Things like internal policies, procedures, and guidelines do not create enforceable rights. *See, e.g., United States v. Lopez-Matias*, 522 F.3d 150, 155-56 (1st Cir. 2008) ("Department of Justice guidelines, not mandated by statute or the Constitution, do not confer substantive rights on any party." (internal citation omitted). Nor do they establish the legal dimensions of rights, crimes, or defenses. *Cf. United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009) (explaining that, even if an agent's actions related to a search were inconsistent with an agency's written policies, the policy was not material – "the scope of the Fourth Amendment's protections is not to be measured by reference to agency guidelines and other extra-constitutional matter."); *United States v. Gann*, 925 F.2d 1471 (9th Cir. 1991) (unpublished memorandum decision) (9th Cir. 1991) (concluding that neither *Brady* nor Rule 16 required disclosure of internal guidelines or procedures for witness identifications: "The issue was not what the manual may or may not require, but whether the procedures that were actually used denied defendant due process."). The merits of Hamzeh's

entrapment defense are appropriately assessed according to the legal elements of that defense, and not according to what an internal manual might or might not require.

Citing *Jacobson v. United States*, 112 S. Ct. 1535, 1541 n.2 (1992), Hamzeh claims that "the Supreme Court has recognized the significance of the government's policy manuals in evaluating the entrapment defense." R.113:3. The *Jacobson* Court did not, as Hamzeh suggests, hold or otherwise indicate that a defendant's entrapment defense is properly evaluated by reference to policies or protocols laid out in a government policy manual. Rather, the Court applied well-established entrapment principles and simply explained that the conduct of government agents "prior to the moment of solicitation" is relevant to assessing an entrapment defense. *Jacobson*, 112 S. Ct. at 1541 n.2. The subsequent mention of the Attorney General's Guidelines on FBI Undercover Operations was a part of a back-and-forth between the majority and the dissent about the effect the Court's holding would have on run of the mill sting operations – the Court mentioned the Attorney General's Guidelines simply to make the point that the Court's holding would not adversely impact or "encroach[ ] upon Government investigatory activities" of the type described in the Guidelines. *Id.*

Hamzeh also emphasizes a passage from a footnote in *Jacobson* in which the Court reiterates that, in those cases in which, unlike this one, government inducement has been established and the only issue is whether the defendant was predisposed to violate the law before any government intervention, the government "is in no position to object to evidence of the activities of its representatives in relation to the accused." R.113:3-4 (quoting *Id.*). The government agrees – the appropriate focus, as Judge Duffin correctly explained, is on government actors' actions, and not on "whether case agents complied, or failed to comply, with some internal manual . . . ." R.107:6. *Cf. United States v. Norita*, 708 F.Supp.2d 1043, 1054

4

(D.N. Mar. I. 2010) (rejecting defendant's claim that the DEA Agent's Field Manual pertaining to confidential informants would assist cross examination of agents and informants and was therefore not material: "The defendants have already been provided with sufficient discovery concerning the confidential informants and the circumstances of the confidential informants' contacts with the defendants for the defendants to attempt to refute the proof those agents and informants may offer that the defendants committed the crimes charged.").

Hamzeh also takes issue with Judge Duffin raising the possibility that the policy manuals might be inadmissible under Fed. R. Evid. 403. Hamzeh argues that "[s]uch a determination would be both erroneous and premature but, more importantly, the law is clear that evidence material to the defense should be produced without a determination of admissibility." R.113:5. The law actually makes clear that one of the pertinent considerations in determining the materiality of a document is whether "there is a strong indication that it will play an important role in uncovering admissible evidence. . . ." *Lloyd*, 992 F.2d at 351. *See also* That is, the likelihood that a document will help uncover admissible evidence is a factor that tends to support a finding of materiality. The direct admissibility of a document would be an even stronger indicator of materiality. Conversely, as Judge Duffin correctly suggested, the likelihood that documents will be inadmissible – particularly when there is also no showing that the documents will play a role in uncovering other admissible evidence – weighs against a finding of materiality.

B. Agents' rough notes

Hamzeh initially sought disclosure of agents' rough notes, arguing that the notes were *Brady* material. Judge Duffin denied that request, explaining that the government's disclosure obligations exist regardless of a court's order and that there was no "reason to believe that

5

exculpatory evidence exists within the agents' rough notes that has been withheld." R.107:7. In his appeal, Hamzeh acknowledges that Judge Duffin's determination is "consistent with prevailing law," but asks the Court to (1) order the prosecutors to personally review the agents' rough notes, and (2) order the government to obtain declassification of the rough notes immediately so that they are available in the event they are ordered to be produced at trial.

The government asks the Court to deny Hamzeh's request for an order directing the case prosecutors to personally review the agents' rough notes. The government is aware of its disclosure obligations – which exist regardless of a court's order – and will comply with them.

The government also asks the Court to deny Hamzeh's request for an order directing the government to declassify the agents' rough notes. The executive branch has exclusive authority to classify, and declassify, information bearing on national security. *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988).

C. Specification of prior cooperation

The government has disclosed that one of its confidential sources, "CHS-2," was a source for the FBI before he began cooperating in the Hamzeh investigation. Hamzeh seeks an order requiring the government to provide information on "the nature of the cases CHS-2 was working on and his rewards. . . ." R.113:6-7.

The government already has disclosed the details of CHS-2's prior cooperation:

- that CHS-2 was a source for the FBI from March 28, 2011, to October 6, 2011;

- why CHS-2 was closed as a source;

- that CHS-2 was again opened as a source on April 15, 2015, before he began cooperating in the Hamzeh investigation;

6

In addition, the government will disclose, as Judge Duffin ordered, the amount of compensation CHS-2 received for his earlier cooperation. Particularly in light of these disclosures, Hamzeh has not established a need for additional details of his prior cooperation. The government asks the Court to deny Hamzeh's request for additional details.

    D. <u>Information about conversations regarding machineguns or Masons</u>

Hamzeh has asked for "information about any conversations about machineguns, the Masons and any plan to attack the Masons, or that falsely portrays the Masons in league with ISIS and as enemies of Islam." R.113:7. As was the case when Judge Duffin denied this request, the government has no further information responsive to the request. Hamzeh asks this Court to "order the government to request this information from the FBI." R.113:8.

In indicating that "the government" has no further information responsive to this request, the government means not just the United States Attorney's Office, but also the FBI. The government asks that the Court deny Hamzeh's request.

7

**Conclusion**

Based on the foregoing, the government asks the Court to affirm Magistrate Judge Duffin's order and to deny each of the requests Hamzeh makes in his appeal to this Court.

Dated the 20th day of April, 2018.

                Respectfully submitted,

                MATTHEW D. KRUEGER
                United States Attorney

By:    s/ Gregory J. Haanstad
        GREGORY J. HAANSTAD
        Assistant United States Attorney
        Wisconsin Bar: 1036125
        email: greg.haanstad@usdoj.gov

        PAUL L. KANTER
        Assistant United States Attorney
        Wisconsin Bar: 1005035
        email: paul.kanter@usdoj.gov

        Attorneys for the Plaintiff
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 E. Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700