UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       *Plaintiff*,

                               Case No. 16-CR-21 (PP)

*vs*.

SAMY M. HAMZEH,

       *Defendant*.

## RENEWED MOTION FOR RELEASE ON BAIL OR TEMPORARY RELEASE FROM CUSTODY

Samy Hamzeh, by counsel, seeks release on reasonable bail conditions or, in the lesser alternative, regular temporary release to his attorney's office for the purposes of preparing for trial with his attorneys. Full release is warranted because any risk Hamzeh may have posed has dissipated with time and his continued custody for nearly two and a half years after his arrest violates due process. Hamzeh's custody also prevents him from adequately preparing for trial and consulting with his attorneys, given the voluminous Arabic language recordings and the government's failure after twenty-nine months to provide final corrected translations of conversations it intends to introduce at trial.

In support of this motion, Hamzeh invites the Court's attention to the following circumstances:

1.     On June 22, 2017, Hamzeh filed a motion for release on bond noting his citizenship, lack of criminal record, the absence of any presumption of detention, his

*Federal Defender Services*
*of Wisconsin, Inc.*

family support, his employment record, the availability of GPS, that the guidelines call for a sentence of less than three years, the due process implications of continued custody, and that he not only backed out of the supposed plan to attack the Masonic Center, but there was significant evidence that the government initiated the idea of buying machine guns and pressured Hamzeh to agree to do so when he had no ability or intention of doing so on his own.

2. After extensive briefing, a bond hearing was held before the Honorable David E. Jones on July 12, 2017. Magistrate Judge Jones withheld decision at that time and additional briefing took place. On October 26, 2017, Magistrate Judge Jones denied Hamzeh's request for bail.

3. On November 22, 2017, Hamzeh requested review of Magistrate Judge Jones' decision by Judge Pepper. On December 4, 2017, a hearing was held on that motion and Judge Pepper denied Hamzeh's request for release.

4. At the time of the December 4, 2017, bail hearing, trial was set for February 12, 2018. On January 9, 2018, Hamzeh filed an unopposed motion to adjourn the trial date, primarily due to difficulties associated with finalizing transcripts for trial given their volume and the need to have the defense translator and Hamzeh review those transcripts. The court granted the adjournment.

5. On January 22, 2018, defense counsel provided a six-page letter to the government detailing the problems with the transcripts, including that some disks were misidentified, out of order, wrongly identified as calls, but were in fact face-to-face meetings, and contained significant portions of conversations that were summarized

2

instead of verbatim translations. The letter identified translations that were poorly done and sloppy. Other translations failed to identify the speaker or misidentified the speaker. Finally, the letter proposed that the government would identify which translations it intended to use and provide final versions in time for the defense translator to review them and try to reach agreement on the translations for trial. The letter explained the need to settle the transcript issues promptly.

6. On January 24, the Court held a status conference and set a tentative trial date of June 18. Defense counsel explained at the status conference that it had continuing concerns about transcripts, that those concerns had been shared with the government, and the government had agreed to make necessary corrections and clarifications to the transcripts.

7. On March 21, 2018, Judge Pepper held another status conference. The government indicated that it was working with the defense to have agreed translations of all transcripts for trial. The trial was adjourned to August 20, 2018.

8. The defense understanding was that transcripts would be prepared promptly and turned over on a rolling basis as they were received by the government. The government anticipated receiving all the corrected, final transcripts no later than May 31. As of today, the defense has not received any revised transcripts since the trial was continued in January.

9. As has previously been noted, when revised transcripts are received, the defense translator, the attorneys, and Hamzeh all will be required to review them for accuracy and completeness. Defense counsel and the translator have other pre-existing

3

*Federal Defender Services of Wisconsin, Inc.*

obligations that will interfere with devoting full attention to the transcripts. They also need to spend considerable time on other tasks necessary to prepare for trial in this case.

10. On May 22, 2018, the defense filed a motion for temporary release requesting that Hamzeh be released twice a week to meet with defense counsel in their office in the courthouse to prepare for trial.

11. On June 6, 2018, a hearing was held on that motion. At that time the government explained to the Court that it had proposed and the defense agreed to an arrangement where Hamzeh would be brought to the courthouse twice a week and be allowed to meet with the defense team in a secured lockup with access to a computer. The defense agreed that that arrangement would meet defense needs and asked that the Court hold the motion for temporary release in abeyance. The court so ordered.

12. After the June 6 hearing, Hamzeh's defense team requested that he be brought in twice the following week after the hearing as agreed. He was brought in only once as the government did not make arrangements for law enforcement to bring him to the lockup on the other date. Following that single meeting with Hamzeh, the defense provided the government the two dates that it wanted to meet with Hamzeh during the week of June 18. On the evening of June 18, AUSA Haanstad contacted defense counsel and indicated that the government would no longer be participating in this agreement to have Hamzeh meet with his attorneys at the courthouse.

13. The need for the defense team to meet with Hamzeh is more acute now that it has lost valuable meeting opportunities, trial is just two months away, and final transcripts still have not been provided by the government. Undersigned counsel

4

*Federal Defender Services*
*of Wisconsin, Inc.*

planned to meet with Hamzeh in lockup this week before going on vacation but now has lost an opportunity to meet with him until after vacation. In short, the government's failure to follow through with its proposal has further set back the defense.

14. Hamzeh's release on bail is warranted. The government has not provided any evidence in discovery that Hamzeh ever desired, sought, or attempted to obtain illegal weapons before the informants began pestering him about doing so. There is no evidence that Hamzeh had associations with terrorists or extremist groups. There is no evidence that Hamzeh was in contact with other persons who had the ability or inclination to engage in serious unlawful contact other than the informants. There also is no evidence that if released Hamzeh would have any access to weapons. The court also previously received a report from Dr. Robbins indicating that in his opinion Hamzeh was not a danger if released. After more than two years in custody, there is nothing to show that Hamzeh, a man with no record and who was regularly employed, would pose a danger to others or risk of flight if he were released on strict conditions including GPS.

15. Beyond the above, there is a due process problem with Hamzeh being held in pretrial custody for nearly two and a half years and counting. In *United States v. Salerno*, 481 U.S. 739, 746–47 (1987), the Supreme Court recognized that a defendant's prolonged pretrial detention may violate the defendant's due process rights when the detention becomes punitive rather than regulatory. There is no definite duration where the length of custody establishes a due process violation. *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) ("Like the Second Circuit,

5

*Federal Defender Services*
*of Wisconsin, Inc.*

we find that the due process limit on the length of pretrial detention requires assessment on a case-by-case basis."). But in one case where the Seventh Circuit found that two years between indictment and trial was not a violation, it remanded the case with instructions to determine whether release on electronic monitoring would satisfy the Bail Reform Act. *See United States v. Infelise*, 934 F.2d 103, 104 (7th Cir. 1991). The inquiry is simply weighing "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay."*Gelfuso,* 838 F.2d at 359.

16. In *United States v. Ailemen*, 165 F.R.D. 571, 579 (N.D. Cal. 1996), the court canvassed decisions discussing the due process implications of extended pretrial custody and identified three factors as most important in the analysis. First, the court examined the length of the expected pretrial delay. The court noted that in cases where the expected length of detention exceeded two years, courts have found that the length of detention weighed in favor of release even though the defendants faced very serious charges and were subject to long prison sentences. *Id.* at 591. The court further noted that no case had upheld pretrial detention lasting more than 32 months against a due process challenge (Hamzeh's custody will exceed that time by the end of trial). *Id.* In *Aileman*, where the expected length of detention was at least 35 months, the court found that the other factors would have to weigh strongly in the government's favor to justify continued

6

detention. *See also United States v. Archambault*, 240 F. Supp. 2d 1082, 1086 (D. S.D. 2002) (defendant's 20-month detention "clearly weighs in favor of release.").

17. Second, *Aileman* considered who was responsible for the delay. There, the delay primarily was the result of the government's failure to timely turn over discovery, the time consumed in securing reliable translations of wiretaps, and time consumed by appeals of the trial court's double jeopardy rulings. *Aileman*, 165 F.R.D. at 591-92. Here there were delays in turning over discovery resulting from delays in declassifying material. But the main source of delay has been in the prosecution's inability to provide reliable translations for use at trial that can be vetted by the defense. Proposed final transcripts still don't exist 29 months after Hamzeh's arrest.

18. The third factor considered in *Aileman* was the magnitude of the threat to the government's regulatory interests. *Id.* at 595. That is, the court considered whether pretrial detention was needed: to protect the integrity of the trial process, such as to prevent obstruction; to prevent danger to the community; or to prevent risk of flight. *Id.* at 596. This further requires the Court to consider the strength of the evidence of flight or danger and to balance it against the other considerations to determine if further detention exceeds the limits of due process and becomes punitive. *See Archambault*, 240 F. Supp. 2d at 1088. That requires recognition as well of the presumption of innocence. *Id.* After all, "[i]n mandating

7

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 06/20/18   Page 7 of 9   Document 124

fundamental fairness, the Due Process Clause endeavors to set outer limits at which risks to society must be accepted to avoid unconscionable deprivations of liberty of individuals." *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2nd Cir. 1986).

19. The length of pretrial detention strongly supports Hamzeh's immediate release. The prosecution's delay in providing discovery and final transcripts does as well. And for the reasons previously presented, Hamzeh asserts that his risk to the community and risk of flight are not great and can be addressed through appropriate conditions. They certainly are not so great as to overcome the weight of the other factors in establishing a due process violation. The charge here is possession of machine guns and he already has served a sentence that would be approximately in the guidelines range. Accordingly, Hamzeh's continued detention offends due process.

Accordingly, for the above reasons and those set forth in Hamzeh's earlier pleadings, he requests the Court to order his release on appropriate conditions or, in the lesser alternative, to order him released to his attorney's office twice a week.

Dated at Milwaukee, Wisconsin this 20th day of June, 2018.

    Respectfully submitted,

    /s/    *Craig W. Albee*
    Craig W. Albee, WI Bar #1015752
    Joseph A. Bugni, WI Bar #1062514
    FEDERAL DEFENDER SERVICES
     OF WISCONSIN, INC.
    517 E. Wisconsin Ave – Rm 182
    Milwaukee, WI 53202
    Tel. (414) 221-9900
    E-mail:    craig_albee@fd.org
               joseph_bugni@fd.org

    *Counsel for Defendant*, Samy M. Hamzeh