UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                    Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BOND OR TEMPORARY RELEASE FROM CUSTODY**

On January 26, 2016, the defendant was arrested and charged by criminal complaint with possessing machineguns. He made his initial appearance on the charges that same day and was ordered detained pending trial. On February 9, 2016, a grand jury returned an indictment in which the defendant is charged with two counts of receiving and possessing an unregistered machinegun and one count of receiving and possessing an unregistered silencer. The defendant was arraigned on the charges that same day. A significant part of the proof against the defendant is in the form of audio recordings of conversations the defendant had with informants and others. At his arraignment, the government provided the defendant with audio recordings of every recorded conversation in the case. By August 26, 2016, the government had also provided summary translations of all of the conversations. On November 13, 2017, pursuant to an order from United States District Judge Pamela Pepper, the government provided the defense with translations of the conversations the government intended to use at trial.

1

The defendant eventually sought release on bond. This Court denied the request on October 26, 2017, finding that the defendant posed both a danger to the community and a flight risk. R.67 at 19-21. The defendant then filed a motion with Judge Pepper seeking release on conditions. R.68. Judge Pepper denied the motion and ordered that the defendant remain in custody pending trial. R.79 at 2.

On May 22, 2018, the defendant filed a motion for temporary release from custody, arguing that he needed better access to his discovery and to his attorneys to help prepare for trial. R. 118. Before the hearing on that motion, the parties agreed to a procedure by which the United States Marshal's Service would transport the defendant to the Federal Courthouse so that he could view discovery and meet with his attorneys in a room on the third floor. When it became evident that logistical problems made that process unworkable, the government relayed that to defense counsel.

The defendant now has filed a motion in which he asks that the Court either order his release on appropriate conditions or, in the alternative, order him to be released to his attorney's office twice a week. The defendant argues that his request would remedy "a due process problem with Hamzeh being held in pretrial custody for nearly two and a half years and counting." R.124 at 5.

The government asks the Court to deny the defendant's motion. As is developed in more detail below, the defendant's continued pretrial detention does not violate due process, because: (1) the length of pretrial detention is not the only factor for the Court to consider; (2) neither the prosecution nor the Court have unnecessarily delayed bringing this case to trial; (3) the delay is due primarily to the complexity of the case and the defendant's pursuit of various pretrial motions; and (4) the same considerations that led this Court and, later, Judge Pepper, to conclude

2

that the defendant was a danger to the community and a flight risk continue to apply. Consideration of these factors establishes that the defendant's continued pretrial detention does not violate due process and that neither pretrial release on conditions nor release to his attorney's office is warranted.

The government appreciates the need, given the circumstances, to help facilitate defense counsel's access to the defendant and would not oppose an arrangement that would both accommodate that interest and reflect the prior judicial findings that no combination of release conditions would reasonably assure the safety of the community and the future appearance of the defendant.

A.  *Length of delay*

As the defendant notes, both the Supreme Court and the Seventh Circuit have acknowledged the possibility that pretrial detention for an extended period of time may raise due process concerns. *See United States v. Salerno*, 481 U.S. 739, 747 (n.4) (1987); *United States v. Infelise*, 934 F.2d 103 (7th Cir. 1991). The defendant notes that he has been in pretrial detention for approximately 29 months.

> But length of detention cannot be the only consideration, not only because some cases are inherently complex and difficult to bring to trial quickly, and not only because some defendants awaiting trial are highly dangerous or highly prone to flee unless confined, but also because the extent of delay is to some extent within the control of the defendants themselves, and they cannot be allowed to manufacture the grounds for their constitutional argument. . . . To get to first base, therefore, he must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial. . . ."

*Infelise*, 934 F.2d at 104-05.

3

B. *Neither the prosecution nor the Court have unnecessarily delayed bringing the case to trial.*

The defendant argues that "the main source of delay has been in the prosecution's inability to provide reliable translations for use at trial that can be vetted by the defense. Proposed final transcripts still don't exist 29 months after Hamzeh's arrest." R.124 at ¶ 17. The defendant appears to assume that the government had an obligation to provide final verbatim transcripts at some point fairly early on in the prosecution and litigation of this case. The government's position from the beginning has been that it satisfied its obligations under Fed. R. Crim.P 16 and *Brady v. Maryland*, 373 U.S. 83 (1963) by providing to the defense audio recordings of all recorded conversations. *See, e.g.,* R.32. Nonetheless, the government recognizes that the Court can impose further disclosure requirements under its general supervisory powers over judicial proceedings in its courtroom. Judge Pepper exercised those powers when she reasonably ordered the parties to disclose to opposing counsel, by November 13, 2017, those transcripts that they planned to use at trial.

The defendant's summary also misses some significant specific facts. First, defense counsel has had the audio recordings of every recorded conversation in this case for 29 months. The government provided them to defense counsel at the defendant's arraignment, the same day that he was first indicted. The defense has had the ability during that entire time to obtain its own transcripts, to allow the defendant to listen to the recordings, and to discuss the recordings with defense counsel -- the defendant speaks Arabic and was a party to almost all of the recorded conversations. The government also has provided defense counsel with summaries of every recorded conversation as a guide to help focus their review of the conversations. Defendant has had those summaries for approximately 22 months.

4

The government also agreed to identify and translate the conversations it intended to introduce at trial. And, based on that agreement, on June 6, 2017, Judge Pepper ordered the parties to notify opposing counsel of the transcripts they propose to use at trial no later than the end of the day on November 13, 2017. On November 13, 2017, consistent with Judge Pepper's order, the government provided defense counsel with a disc that identified the 29 transcripts that the government intended to use at trial. The transcripts were listed and files containing the transcripts were on the disc. Those "verbatim" translations contain some errors and are being reviewed and corrected to make them "trial ready" – i.e., in trial exhibit form.

While still undergoing final editing to make them presentable as exhibits, the transcripts still are a significant aid to trial preparation – the government has identified the conversations that it intends to use at trial and has provided near-final verbatim translations of those conversations. That being said, the government recognizes the importance of finalizing the transcripts as quickly as possible, particularly given the parties' joint aim of presenting agreed-upon transcripts at trial. To achieve that goal, the transcripts need to be finalized as exhibits considerably in advance of the July 30, 2018 deadline for the parties to provide copies of their exhibits to opposing counsel.

C.     *Complexity of the case*

A couple of other things, related to the complexity of this case, are worth noting in connection with whether the prosecution or Court have unnecessarily delayed bringing the case to trial. The defense did not identify the recordings it intended to use at trial before Judge Pepper's November 13, 2017, deadline, instead providing the last of its proposed transcripts to the government on March 22, 2018 – *after* the last trial adjournment had been granted. The defendant has sought multiple adjournments of the trial and extensions of time to file motions or

5

responses; the government did not oppose any of those requests, because it recognized the complexity of the case – the case was designated complex at the defendant's arraignment and the defendant has characterized it as "massive." R.121 at p. 1. *Cf. United States v. O'Neil*, 52 F. Supp. 2d 954, 961 (E.D. Wis. 1999) (attributing most of the delay to the "massive nature and complex scope" of the case.). The defendant has vigorously pursued and litigated a number of pretrial motions, including litigating motions to final decision as recently as on April 23, 2018, and June 8, 2018. "This is not to fault [him] for aggressively defending these charges, but one cannot engage in trench warfare and then claim that the battle is taking too long." *United States v. Warneke*, 199 F.3d 906 (7th Cir. 1999) (attributing much of the delay in that case to "a mountain of motions filed by defendants."). The complexity of the case and its massive scope are the primary causes of the delay in bringing this case to trial.

D.     *The defendant remains a danger to the community and a flight risk.*

The defendant argues that "there is nothing to show that Hamzeh . . . would pose a danger to others or risk of flight if he were released on strict conditions including GPS." R.124 at ¶ 15. Both this Court and Judge Pepper have already concluded that the defendant poses a danger to others and a flight risk such that no conditions – including GPS monitoring – would reasonably protect the public and assure the defendant's appearance at future court proceedings. R.67; R.79. The defendant remains both a flight risk and a danger to the community.

For the foregoing reasons, the defendant's continued pretrial detention does not violate due process, and neither pretrial release on conditions nor release to his attorney's office is appropriate.

The government appreciates the need, given the circumstances, to help facilitate defense counsel's access to the defendant and would not oppose an arrangement that would both

6

accommodate that interest and reflect the prior judicial findings that the defendant is a flight risk and a danger to the community.

For the above reasons, the government requests that the Court deny the defendant's motion and consider alternatives to facilitate his access to discovery.

Dated at Milwaukee, Wisconsin this 25th day of June, 2018.

                Respectfully submitted,

                s/ Gregory J. Haanstad
                GREGORY J. HAANSTAD
                United States Attorney
                Wisconsin Bar:  1036125
                Office of the United States Attorney
                Eastern District of Wisconsin
                517 E. Wisconsin Avenue, Room 530
                Milwaukee, Wisconsin  53202
                Telephone:  (414) 297-4581
                e-mail:  greg.haanstad@usdoj.gov