UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

------------------------------------------------------------

UNITED STATES OF AMERICA,      )
                                  )
                Government,    )  Case No. 16-CR-21
                                  )  Milwaukee, Wisconsin
   vs.                         )
                                  )
SAMY MOHAMMED HAMZEH,      )  March 21, 2018
                                  )
                Defendant.    )

------------------------------------------------------------

**TRANSCRIPT OF STATUS CONFERENCE**

BEFORE THE HONORABLE PAMELA PEPPER

UNITED STATES DISTRICT JUDGE

Official Transcriber:
Richard Derrick Ehrlich, RMR, CRR
richard_ehrlich@wied.uscourts.gov
(414) 290-2642


Proceedings recorded by electronic recording.
Transcript produced by computer-aided transcription.

```
1                    A P P E A R A N C E S

2

3     For the Government:   Gregory J. Haanstad
                            Paul L. Kanter
4                           United States Department of Justice
                            Office of the U.S. Attorney
5                           517 E. Wisconsin Street
                            Milwaukee, WI 53202
6                           414.297.1700
                            greg.haanstad@usdoj.gov
7                           paul.kanter@usdoj.gov

8

9     For the Defendant:    Craig W. Albee
                            Federal Defender Services of
10                          Wisconsin, Inc.
                            517 E. Wisconsin Street
11                          Room 182
                            Milwaukee, WI 53202
12                          414.221.9900
                            craig_albee@fd.org
13
                            Joseph A. Bugni
14                          Appearing Telephonically
                            Federal Defender Services of
15                          Wisconsin, Inc.
                            22 E. Mifflin Street
16                          Suite 1000
                            Madison, WI 53703
17                          608.260.9900
                            joseph_bugni@fd.org
18

19

20     Samy Mohammed Hamzeh, defendant, present in person.

21

22

23

24

25
```

TRANSCRIPT OF PROCEEDINGS

Transcribed From Audio Recording

\*          \*          \*

1    THE CLERK:  The Court calls the Criminal Case

2   2016-CR-21, *United States of America vs. Samy Hamzeh*.

3    Please state your appearances starting with the

4   attorneys for the Government.

5    MR. HAANSTAD:  Good afternoon, Your Honor.

6   Gregory Haanstad and Paul Kanter for the United States.

7    MR. ALBEE:  Good afternoon, Your Honor.  Craig

8   Albee and Joe Bugni appearing with Mr. Hamzeh.

9    THE COURT:  Good afternoon.  Good afternoon,

10   Mr. Hamzeh.

11    We had set this for a status conference ahead of

12   the trial that we had I think most recently set for

13   June 18th of this year.  There were some moving parts and

14   pieces.  One of the reasons we adjourned the trial date the

15   last time was because Mr. Albee and Mr. Bugni had been

16   trying their best to go through the recorded conversations

17   of which there are a number, and they're in Arabic, but it

18   was taking longer to be able to get the translations of

19   those Arabic transcripts than anybody had thought it might,

20   and so they were working through that and trying to process

21   that.

22    In addition, there were some motions in front of

1    Judge Duffin.  I think Judge Duffin has resolved those.  The

2    motion for Brady materials I think he has resolved.  And

3    then there was a motion to dismiss Count 2 of the

4    indictment.  I know he's written an R & R on that, or report

5    and recommendation, and there have been some objections

6    filed, and so that's now on my plate, and we're working on

7    that.  I don't have a decision for you yet, but hopefully

8    we'll have one relatively soon.

9         And so we had scheduled this status conference, I

10    think, in part just to kind of see where we were and see if

11    things were continuing to move and if we had hit any bumps

12    in the road toward that June 18th trial date.

13         And I understand that there had been some

14    communications with the parties with my office, and that

15    there may be some issues that have come up.  I don't know.

16    But I'll leave that to you all to report your respective

17    positions on where things are and how things are looking.

18         So perhaps let me start with the Government.

19    Mr. Haanstad.  Mr. Kanter.

20         MR. HAANSTAD:  Thank you, Your Honor.

21         The parties are still continuing to work together

22    to try to reconcile and work toward a working copy or set of

23    working copies of transcripts for the trial.  I wouldn't say

24    we've hit bumps in the road as you put it, but I think that

25    we've got a more realistic sense now of how long that

process is going to take, which is kind of what we expected

when what happened when we moved the last trial date to

June.

I think that the parties are in agreement that we

could use and need additional time to continue to work on

those issues.

I think the last time that we were in court, we

not only set June 18th as a tentative trial date, but we

also, I think, discussed -- and if we didn't discuss it with

the Court, the parties at least discussed a possible

alternative trial date in the middle or end of August.  And

my sense is that the parties are in agreement that that's a

date that would work much better and would allow the parties

to continue to work on these issues.

THE COURT:  Okay.  Thank you, Mr. Haanstad.

Mr. Albee or Mr. Bugni.

MR. ALBEE:  Yeah, Judge.  I may give a little bit

longer summary, but it ends up in the same place as

Mr. Haanstad does.

With respect to transcripts, I mean, it's true.

As Mr. Haanstad indicated, it is just a difficult process.

And I think in going through the transcripts we had and our

translator going through some, it appears some were

mislabeled.  There's some with significant errors.  There's

a number that are pretty good right off the bat with only

minor corrections. And, you know, both parties recognize
that we really need to have accurate transcripts. I think
it still looks promising that we'll have stipulated versions
of transcripts to use for trial, which would ultimately save
a lot of time rather than having competing translators
testify as to what things mean.

So we're hopeful that -- and, you know, our
concern is that Mr. Hamzeh has been waiting for a trial for
a long time, but the transcripts do need to be accurate.

Yesterday we received a number of discovery items
from the Government that I've had a chance to look at in a
very cursory fashion. It looks like there's approximately
800 pages of surveillance reports, some text messages
between the informants and FBI agents. There was a firearms
report, and then there are some photos and videos relating
to the surveillance. I think that's the main thing. And a
few additional unredacted reports, I guess, might be the
other thing.

The Court noted that Judge Duffin had ruled on our
Brady motion. We will be filing an appeal from that order,
which I think is currently due tomorrow. I would ask if
anyone has an objection to an additional day on that,
there's some things in the materials we received yesterday
that I might incorporate into that pleading. So I neglected
to ask the Government beforehand. That was my oversight,

1    but I was hoping to have an extra day on that.

2            THE COURT:  Okay.  That decision from Judge Duffin

3    was on March 8th.

4            MR. ALBEE:  Yeah, that sounds right.  So it would

5    be due tomorrow, or I would just ask until Friday.

6            THE COURT:  Any objection from the Government?

7            MR. HAANSTAD:  None, Your Honor.  And I also

8    hadn't discussed this with the defense, but the Government

9    was going to ask for additional time also.  I won't get into

10   too much of the details of it, but it relates to

11   Judge Duffin's order that the Government turn over the

12   underlying documentation related to the payments that were

13   made to the confidential sources.

14           The department is just working internally, mainly

15   our office with the FBI, to determine the feasibility of

16   that.  So there's a possibility that we would -- depending

17   on how those discussions go, there's a possibility that we

18   would still object to that small part of Judge Duffin's

19   order, and we actually need a little bit more time.

20           THE COURT:  That's what I was going to ask you.

21   Do you have a sense of what kind of time frame you're

22   looking at?

23           MR. HAANSTAD:  I think two weeks would be

24   sufficient.

25           THE COURT:  Okay.  Because I don't think it makes

1    sense to set one deadline for one party to file an appeal.

2          MR. ALBEE:  And that would be fine, Judge, if we

3    just set all objections off for two weeks.

4          THE COURT:  Okay.  All right.

5          MR. ALBEE:  We haven't had sufficient time to talk

6    to the Government.  With respect to the new discovery, there

7    are some things that we're hoping to flush out, and I guess

8    that would probably be a new motion rather than objections,

9    but we'll address that as need be.

10          So with that I do think of where the transcripts

11    still are, and having received a decent volume of material

12    yesterday, that additional time would be warranted,

13    particularly if the Court is available in August.  We've had

14    a chance to discuss that with Mr. Hamzeh, who is

15    understandably frustrated, but I think if we can get a solid

16    date now, I mean, it's just what's necessary to try this

17    case.

18          I can tell the Court that we may seek some

19    reconsideration of bond.  But in a lesser alternative to

20    that, under -- I think it's 3142(i) -- it does permit the

21    Court to, for example, release Mr. Hamzeh, I'll just say

22    hypothetically, from 9:00 a.m. to 3:00 p.m. to come to our

23    office if the marshals brought him in on a periodic basis to

24    go through discovery.  We've been having trouble getting

25    enough time for him to review discovery in Kenosha and

1    enough time with his lawyers.  So, obviously, I'm not asking

2    the Court to respond to that in any way.  I just want to

3    give a heads-up that the statute provides for that.  And I

4    talked to Mr. Lush in the marshal's office, you know,

5    that -- I mean, that's something that can be done if the

6    Court orders it.  So that may be forthcoming.

7              THE COURT:  Thank you, Mr. Albee.

8              Okay.  So let's take care of the first issue,

9    which is the deadline for parties to appeal Judge Duffin's

10   ruling on the motion for release of Brady materials.  Two

11   weeks puts us at about April 6th.  Does that work for

12   folks knowing that -- probably there are some spring breaks

13   in there somewhere or something.  I don't know how that

14   impacts people.

15             MR. HAANSTAD:  It does for the Government,

16   Your Honor.

17             THE COURT:  Okay.

18             MR. ALBEE:  That'll be fine, Judge.

19             THE COURT:  All right.  So April 6th, then, is

20   the extended deadline for anybody to file an appeal from

21   Judge Duffin's March 8th order, which is at docket No. 107

22   relating to the release of Brady materials.

23             And then you all had indicated August seemed a

24   more realistic trial date given these various issues.

25             If you'll just give me one second.  I apologize.

1         We're still looking at the -- originally we've

2  been operating all along under the two-week estimate.

3         Does that still look like what we're talking

4  about?

5         MR. HAANSTAD:  Yes, Your Honor.

6         MR. ALBEE:  Yes.

7         THE COURT:  Okay.  Sorry.  Ms. Wrobel and I were

8  just whispering about something that was on the docket.  We

9  were trying to figure out what it was and whether it can be

10  moved and things of that nature.

11         It looks like the last two weeks of August,

12  August 20th through the 24th and 27th through the

13  31st, if we did some scooching, that we could accommodate

14  that.

15         Mr. Kanter is looking hesitant or something.

16         MR. KANTER:  I was just going to suggest, Judge,

17  that case is probably going to (indiscernible) Labor Day.

18         THE COURT:  Yeah.

19         MR. KANTER:  And is there any possibility of doing

20  it on the 13th?

21         THE COURT:  No.  That's why I didn't plug it in

22  there because I'm not here the 13th.

23         MR. KANTER:  Then it will have to be the 20th

24  through the 27th.  I am going to be gone as of

25  September 6th that I (indiscernible).  So two weeks and

1      two days (indiscernible).

2            THE COURT:  So we're now looking at more than two

3      weeks?

4            MR. KANTER:  No.  I'm just saying if it were

5      (indiscernible).

6            THE COURT:  Oh.

7            MR. KANTER:  I can do it (indiscernible).

8            THE COURT:  Okay.  Because I --

9            MR. KANTER:  I don't see any reason why it can't

10      be done in those two weeks (indiscernible).

11            THE COURT:  Unfortunately, the first week of

12      August I have, but the week before that doesn't work.  And

13      as I indicated, the week of the 13th I'm not available.

14      So that's kind all I've got in August.

15            How about for the defense?  Mr. Albee?  Mr. Bugni?

16            MR. ALBEE:  That's fine.

17            THE COURT:  Okay.  Then let's do that.  We'll take

18      the June 18th date off, and we'll schedule the trial to

19      begin on Monday the 20th of August with the assumption and

20      hope that it will conclude by the end of the day on the

21      31st of August.  And that being the case, for our final

22      pretrial conference, is there any possibility that you all

23      are available the afternoon of the 26th of July, which is

24      Thursday?

25            MR. HAANSTAD:  Judge, the date appears to be open.

I'm concerned that that's a little bit early to take up some issues that may come up. I just know that it ends up being the case, that is people prepare for trial and get more focused, that things come up a little bit later than that frequently.

THE COURT: Yeah. I guess I'm trying to -- I was actually trying to build in a little bit of a cushion given that -- in a case that's perhaps less fraught with issues, that we can usually manage something like a couple weeks before trial. I didn't want to assume that that would be workable here necessarily, but --

MR. HAANSTAD: Your Honor, maybe if we set some dates earlier than that for filing certain things so at least the parties would have their respective positions to the Court, things like expert disclosures and motions in limine?

THE COURT: That's fine. I mean, the other option -- I'm just looking to see what I've got that's closer. I've got the morning of August 1st. I've got August the 6th, actually, which is a Monday because there's not -- I could do that day.

MR. ALBEE: I think that would work well.

THE COURT: August the 6th? Okay.

How about we do, say, 9:00 a.m. on August the 6th for the final pretrial conference?

1          MR. HAANSTAD:  Okay.

2          THE COURT:  And then as Mr. Haanstad suggests,

3     particularly I would think expert disclosures, maybe 404(b).

4          Is the Government going to be in a position to

5     turn over Jencks Act and Giglio sooner than the usual day or

6     so before trial?

7          MR. KANTER:  Most of it has already been turned

8     over, Judge.  There's not much left to (indiscernible).

9          MR. HAANSTAD:  Other than maybe grand jury

10    transcripts.

11         THE COURT:  3500?

12         And then motions in limine, I'd assume we want to

13    kind of get a date a little bit out ahead.

14         So in terms of expert witness disclosures, what's

15    a reasonable -- if we're talking about starting trial on the

16    20th, from the Government's perspective, what's a

17    reasonable disclosure deadline?

18         MR. HAANSTAD:  The parties actually have spoken

19    about this a little bit before this hearing.

20         THE COURT:  Okay.

21         MR. HAANSTAD:  And had talked about possibly 45

22    days out for the Government and 30 for the defense.

23         THE COURT:  Okay.

24         MR. ALBEE:  That makes sense to us.

25         THE COURT:  Okay.  So we got the July Fourth

1    holiday in there.

2           How about July 2nd for the Government?  It's a

3    Monday before the holiday.

4           MR. HAANSTAD:  Yeah.

5           THE COURT:  And then for the defense, July 20th?

6    Does that work?

7           MR. ALBEE:  Yes.

8           THE COURT:  So that's for expert disclosures.

9           Assuming that there's no additional Giglio or

10   anything of that nature, 404(b), do you think that's been

11   disclosed already, or do you need a deadline for that?

12          MR. HAANSTAD:  I'm not sure that we'll have any,

13   but it makes sense to set a deadline for it.

14          THE COURT:  Okay.  So when would it be likely that

15   you think you might know?  I know that's a closer to trial

16   sort of thing.

17          MR. HAANSTAD:  Maybe just a few days before the

18   final pretrial date.

19          THE COURT:  Okay.

20          MR. ALBEE:  And, Judge, I don't know where we're

21   thinking about motions and motions in limine.  I think

22   Mr. Haanstad and I talked beforehand.  We're thinking, like,

23   21 days out.  If that were the case, it would be helpful to

24   have 404(b) just at least a few days before that.

25          THE COURT:  Twenty-one days out of the trial date?

1    MR. ALBEE:  Yeah, on the motions in limine.

2    THE COURT:  Okay.

3    MR. ALBEE:  Which I think would be July 30th.  I

4    don't know whether the Government would be open to providing

5    404(b) some time the previous week?

6    MR. HAANSTAD:  Sure.

7    THE COURT:  Okay.  So if motions in limine are

8    going to be due July 30th, then can we say -- do you want

9    to do the 23rd for 404(b)?

10   MR. HAANSTAD:  Okay.

11   THE COURT:  July 23rd.

12   And then the grand jury transcripts, what were you

13   thinking in that regard, Mr. Haanstad?

14   MR. HAANSTAD:  I guess I was thinking the typical

15   24 days before -- sorry -- 24 hours before.

16   THE COURT:  That's not typical that I'm aware,

17   but, okay.

18   MR. ALBEE:  No, but it should be.  That's an

19   excellent suggestion.

20   THE COURT:  I was going to say, they're not going

21   to fight you on that.

22   Any objection to the standard schedule for grand

23   jury transcripts, Mr. Albee?

24   MR. ALBEE:  I guess, I think, at least something

25   more like at least a week in advance.

1        THE COURT:  That's just what I was thinking is

2   maybe the 13th of August ahead of the 20th.

3        MR. HAANSTAD:  Okay.

4        THE COURT:  So grand jury transcripts,

5   August 13th.

6        So we've covered experts, 404(b), grand jury,

7   motions in limine.

8        MR. ALBEE:  We had also discussed, I think, maybe

9   jury instructions 21 days at the same time as the motions in

10  limine.

11       THE COURT:  That would be super.  That would help

12  me.

13       MR. ALBEE:  And I guess I would always give the

14  caveat, there might be a couple that trickle out after that,

15  but we'll try to come up with the core instructions early.

16       THE COURT:  Yeah.  I'm just looking at putting

17  together a packet that we can work from.

18       MR. ALBEE:  And then, Judge, I think I had

19  mentioned this at previous statuses, but we do intend to

20  request a questionnaire, and we'll endeavor to get that to

21  the Government at least 60 days in advance so we get it to

22  the Court hopefully with the agreed-upon questionnaire

23  early, you know, shortly after that.

24       THE COURT:  Sure.  Obviously, if you can reach an

25  agreed-upon questionnaire, that would be terrific, or in the

alternative, at least point out the questions that you have

a dispute over.  So that will give me an opportunity to take

a look at the ones that are of concern.

Thank you.  That's helpful.

And in terms of the jury instructions, I think you

all might know this, but if you're using standards -- I

mean, patterns -- and a number of them will be.  I know a

number of them won't.  But a number of them will be pattern

instructions, all you need to do is to let us know the

number because we've got them in our system, and so we can

just go ahead and include the numbers of pattern

instructions.  Then all we need to do during the instruction

conference is talk about whether something needs to be

plural or singular or alternative language or things of that

nature.

So the only thing that you need to submit to us,

to me, in written form is anything that's not a standard

instruction.  And I would ask that you get that to me in a

Word document.  You can put all of your suggested

instructions in the same document, that's fine.  But that

then enables us to compile one set in Word, and then we can

work off of that one set.

And, again, we said July 30th for the jury

instructions.  Same deadline as the motions in limine.

Okay.  What else from the Government,

1    Mr. Haanstad?

2              MR. HAANSTAD:  Nothing else from the Government,

3    Your Honor.

4              THE COURT:  Okay.  Thank you.

5              Mr. Albee, from the defense?

6              MR. ALBEE:  No, Your Honor.  Thank you.

7              THE COURT:  All right.  Thank you, everyone.

8              And, Mr. Hamzeh, I know it doesn't seem like it,

9    but everybody is working hard here.  We're trying to get

10   there.  Okay?

11             Thank you, everyone.

12             MR. HAANSTAD:  Thank you.

13        (Hearing concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3            I, Richard D. Ehrlich, a Registered Merit Reporter

 4       and Certified Realtime Reporter, certify that the foregoing

 5       pages are a true and accurate transcription of the audio

 6       file provided in the aforementioned matter to the best of my

 7       skill and ability.

 8

 9       s/Richard D. Ehrlich  July 18, 2018
         _____
10       Richard D. Ehrlich, Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```