UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

  *vs.*          Case No.   16-CR-21

SAMY HAMZEH,

    *Defendant*.

## EXPERT WITNESS LIST

Samy Hamzeh, by counsel, files this exhibit list, which will comply with both this Court's pretrial order and the dictates of Rule 16(b)(1)(C). The defense is planning on filing a motion in limine addressing the theory of defense, the propriety of an entrapment instruction, and how each expert witness fits within the planned defense.

This earlier filing (complete with the attachments) provides a shorter recitation of the experts' opinions, the bases and reasons for their opinions, and their qualifications. For most of the experts, their written and signed report accompanies this filing. So the demands of Rule 16 are satisfied by the report and CV. For others, who are more rebuttal witnesses, their CV's are attached and a short summary on their expertise is contained in this filing. Professor Kimmel could not provide a signed report within the time for this filing (he is in Australia), so the demands of Rule 16 are satisfied in this filing. The defense has communicated this fact to the government on July 18, 2018; in addition, the defense has noted that Professor Kimmel's report will be based (in large part) on the preliminary

*Federal Defender Services*
*of Wisconsin, Inc.*

transcripts, since a final set is not yet available. As soon as defense counsel receives a signed report, it will be forwarded to the government's attorneys.

The chart below provides a list of the experts, what is being provided with each, and the location of those exhibits with this filing.

| Witness | CV | Report |
|---|---|---|
| Dr. William Merrick | Ex. A | Ex. B |
| Professor Marcus Brauer | Ex. C | Ex. D |
| Attorney Georg Labonte | Ex. E | Ex. F |
| John Davis | Ex. G | Ex. H |
| Brian Leslie | Ex. I | Ex. J |
| Ashraf Michel | | |
| Retired Special Agent Jeff Danik | Ex. K | |
| Professor Michael Kimmel | Ex. L | |

1. **Dr. William Merrick**

Doctor Merrick met with Hamzeh at the Kenosha County Jail and tested Hamzeh's IQ—it is 78. This test controlled for English being Hamzeh's second language. Dr. Merrick will testify consistent with his report, including about the testing procedures that he went through, their reliability, and he will testify about how people with an IQ at Hamzeh's level function, make decisions (generally), and how they are influenced by others. He will also testify about these limitations and how people generally mask or cloak their limitations.

2. **Professor Marcus Brauer**

Professor Bauer is a full professor of psychology at the University of Wisconsin Madison. Consistent with his report, he will testify about the field of study called social influence. In particular, he will testify about how the social dynamic of two people (in a group of three) can influence a person to make decisions and take actions that left to their

2

own devices they otherwise would not do. He will also testify about the psychological phenomenon known as reciprocity, and what a strong motivator that can be for human behavior—both as it relates generally and to people with a borderline IQ and those of different nationalities and cultures.

   3. **Attorney Georg Labonte**

Attorney Labonte is both an attorney and a gun store owner. His store sells and rents machine guns. He will testify about the regulations governing machine guns, how they are rented and used at his store, the value of these particular machine guns. The H&K is valued between $15,000 and $20,000; the other gun (the MP5) is valued between $3,000 and $4,000. He will also testify to how the separate taxes for the gun and suppressor operate and how one would determine if a second tax would have to be paid for the suppressor.

   4. **John M. Davis**

Davis was formerly a police officer and sheriff in Milwaukee, this included working with the Bureau of Alcohol Tobacco and Firearms. In his years of experience, he investigated and made over a hundred arrests involving illegal firearm sales and transfers. He will testify about his experience with illegal gun sales—how illegal gun sales are set up and made and the types of weapons that are usually sold. He will also testify about his experience with the sale and possession of machine guns in Milwaukee. There is also a small error in his report that should be clarified. He is being paid $150.00 an hour to work as an expert; the report currently reads that he is being paid $150.00

**5. Brian Leslie**

Leslie was formerly a chief of police and is now an expert on coercive police interrogation techniques. Consistent with *Kentucky v. Crane*, the defense will be challenging whether Hamzeh's statements were made voluntarily and absent independent corroboration whether they can be deemed reliable and worthy of belief by the jury. His report sets forth the basis for his opinion on this matter and the information he relied upon in formulating that opinion.

**6. Ashraf Michael**

He is an Arabic translator and he has been retained by the defense in preparing many of the transcripts that will be entered into evidence. Given the government's failure to turn over the transcripts 90 days before trial, the defense will not know what particular words will be challenged and what Michael will have to give his expertise—including how they must be defined. The defense has previously supplied the government with a memo and at least five other corrected transcripts about particular words and phrases that Michael says are in error. His testimony will likely revolve around the correct translation of the various Arabic words that were used in reference to guns, weapons, kalishnikovs, and machine guns but it may also stretch into other expressions and who precisely is speaking at different points in the transcripts. Whether the "new" government translator accepts those revisions and resolves some of the disputes without further problem will not be known until the translations have been provided to the defense. Michael's resume was separately emailed to the government's attorneys.

### 7. Jeff Danik

Former Special Agent Danik was retained by the defense to advise about FBI practices and particularly the handling of confidential human sources, the recording of conversations, and the preservation of evidence. If called, he will testify about FBI practices to ensure that confidential human sources do not do things that compromise an investigation, the recording of conversations, and the steps that are taken to preserve evidence. His testimony is best summarized as rebuttal testimony about yet-unknown testimony by the agents about the directions given to Steve and Mike, the preservation of evidence (and why certain evidence is lost), and handling the confidential human sources' expectations of payment, compensation, and other consideration.

### 8. Professor Michael Kimmel

Professor Kimmel is a distinguished professor of sociology at the State University of Stony Brook in Brooklyn New York, and a leading expert on gender studies, including men and masculinity. He has published widely on the topic. And he has testified (on behalf of the government) as an expert witness in several cases listed in his CV.

Professor Kimmel will testify about the dynamics of the interaction among Steve, Mike, and Hamzeh based on the preliminary transcripts that were previously available in this case—including excerpts from transcripts of 45, 51, and the full transcripts of 71, 73, 74 (part 2), 79, 84, 86, 90, 95, 97. Professor Kimmel will testify about elements of these conversations and how they are consistent with the way many young men posture and pose in front of other men to prove their manhood—including the dynamics of boastfulness, exaggeration and the like about strength, bravery, sexual prowess. This

*Federal Defender Services of Wisconsin, Inc.*

extends beyond general terms into questioning Hamzeh's manhood, which is exhibited in conversations moving from the topic of a handgun for self-defense to buying a machine gun, not for self-defense, but for Hamzeh to prove himself.

Consistent with his expertise, Professor Kimmel will testify that homosocial bonding among men often consists of such banter. However, this banter is rarely anything but talk. Locker room talk as it is often described, and this talk will cement the bonds of friendship. Here, that is present in the conversations between Steve and Mike. And in a constant desire to please, Hamzeh went along with their efforts at escalating speech. This dynamic concerns what Solomon Asch called "social influence" in which a person's perceptions of reality can be changed by exerting enough social pressure. Some of Hamzeh's decisions to seek out the perspective of others (the Imams) is consistent with an attempt to get a different perspective, to try and resist the social influence that Mike and Steve represent and done so in a way that he can be seen not as afraid or hesitant but obedient to a God, a different form of influence that would allow Hamzeh to save face.

In addition, Professor Kimmel will testify that the tactics that Steve and Mike used are the tactics that white nationalists and jihadists would use for recruitment, and that he learned about while researching his book, *Healing from Hate*. In such groups, the initial recruitment is usually just banter and developing comradeship, friendship, and a shared sense of mission. Upon that are added layers of a sense of "righteous victimization"— that they are being wronged and have to stand up for their people, their religion. That is, of course, part of their manhood. These aspects of the case involve two essential dynamics of gender: the effects of peer pressure and social influence to prove masculinity,

6

*Federal Defender Services of Wisconsin, Inc.*

Case 2:16-cr-00021-PP   Filed 07/20/18   Page 6 of 7   Document 145

and the ways in which masculine posturing and boastfulness is typically used by men to build comradeship and prove masculinity.

Dated at Milwaukee, Wisconsin this 20th day of July, 2018.

Respectfully submitted,

/s/ *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
Gabriela A. Leija, WI Bar #1088023
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI 53202
Tel.: (414) 221-9900
E-mail:  craig_albee@fd.org
         joseph_bugni@fd.org
         gabriela_leija@fd.org

*Counsel for Defendant*, Samy M. Hamzeh