UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                      Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

          Defendant.

## ORDER

On July 11, 2018, Samy Hamzeh filed a Second Motion for Production of *Brady* Material and to Compel Discovery. (ECF No. 135.) On July 20, 2018, Hamzeh filed a Motion to Compel and Enforce Compliance With This Court's Prior Order. (ECF No. 144.) In each motion Hamzeh asks the court to order the government to disclose the information requested, which in some instances the court already ordered the government to disclose. Hamzeh also filed a motion for a spoliation hearing.

On July 24, 2018, the court held a hearing regarding the motions to compel. The government did not oppose any aspect of Hamzeh's motions. Rather, it stated it had either provided as much information as it had on the matter or would do so.

Therefore, to the extent the motions are not moot, the motions (ECF Nos. 135, 144) are granted as follows.

The court orders that, to the extent responsive information is within the government's possession, custody, or control, the government shall disclose to the defense not later than **August 8, 2018** the following:

1. "any phone numbers that Steve or Mike were using when texting with the agents";

2. "the agents who texted with the informants and the phone numbers from which they contacted the informants";

3. "[a]ll texts/SMS, IM plus e-mail on both the FBI internal (FBI net) and FBI official external (Internet Café-IC) to/from all agents, TFOs, CHSs or professional support staff relating in any way to the investigation"; and

4. "[t]oll records for UCE and CHS phones for all contact made with Hamzeh's phones."

(ECF No. 135 at 5-6.)

5. "[a]ll updated *Giglio* material";

6. "[a]ny requests by any informant for immigration assistance of any type or any immigration benefits offered or received or contemplated";

7. "[w]hether any informant has received post-conviction benefits in any case for their cooperation";

8. "all money paid in total for any purpose to the CHS including both expenses and services";

9. "the amount of money paid related strictly to the Hamzeh case (Services + Expense broken out separately)";

10. "the most recent Criminal History for the informants";

11. "the result of FBI required Public Records check for CHS from commercial databases (e.g. Lexis/Nexis-Investigator)";

12. "the result of periodic indices/sentinel inquiries related to the CHS (specifically if the CHS was indexed as a reference or subject in other FBI investigations)";

13. "all FBI approvals for the CHS to engage in other illegal activity and include dates of authority and termination of authority";

14. "copies of any admonishments documented to the CHS file evidencing the CHS having violated rules, violated policies etc.";

15. "any third-party benefit agreements documenting the CHS is working off prosecution issues of another person";

16. "any prosecution deferral or declination or benefit promised to the CHS in exchange for the CHS's cooperation";

17. "the results of the required CHS 'testing' by the case agents if the CHS failed the testing. In any case, confirm the CHS was tested via policy (believed to be the sub "V" file)";

18. "if the CHS had recording equipment routinely assigned to him for extended periods of time, which is routine with CHS's in the FBI"; and

19. "if that recording equipment was in the possession while the CHS was having unrecorded conversations with Hamzeh."

(ECF No. 135 at 7-9.)

20. "a list of any trainings concerning interrogation and interrogation techniques that Agents Adkins and Frazier have attended";

21. "the approved undercover proposals and comments of the CUROC and the FBIHQ review committee";

22. "[c]opies of the front portion of every ELSUR envelope (commonly referred to as the 1D Envelope or FD-504 envelope) for all digital

recordings. Include copies of any ECs documenting justification for late submission";

23. "[t]he Sentinel index/listing of all electronic recordings from the "ELSUR" (1D) Section of the file"; and

24. "FD-302's regarding obtaining custody of the recording devices from the CHS or undercover agents, the downloading and chain of custody for the digital recording devices and the production of the original CDs from those recording devices for every recorded conversation."

(ECF No. 135 at 9-10.)

Further, as discussed at the July 24, 2018 hearing, the court is reiterating its prior order that the government shall "turn over all underlying documentation regarding the payments given to informants as part of their work in this case." (ECF No. 107.) The court also reiterates its order that the government provide to the defense information in its possession regarding payments that CHS-2 received for his role as a source of information for the government during the time period identified in the court's March 8, 2018 order. The government shall comply no later than **August 8, 2018**.

This order requiring disclosure applies regardless of whether the government believes the document, object, or information is not "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i); *see also cf., United States v. Pearson*, 340 F.3d 459, 469 (7th Cir. 2003) ("In *United States v. Armstrong*, 517 U.S. 456, 462 (1996), the Court held that 'material to the preparation of the defendant's defense' means 'the defendant's response to the Government's case in chief,' and does not include materials deemed by defendants to be necessary to prove their own defense theory or to challenge the

4

prosecutor's conduct of the case."). The government's disclosures must be "complete and correct." *United States v. Mackin*, 793 F.3d 703, 708 (7th Cir. 2015). The court emphasizes that any non-compliance may result in sanctions. *See* Fed. R. Crim. P. 16(d)(2)(D); *see also United States v. Tomkins*, 782 F.3d 338, 348 (7th Cir. 2015). To the extent that compliance with this order or any prior order instructing the government to disclose information to the defense may require the government to proceed under the Classified Information Procedures Act, the government shall provide all such responsive documents to this court for its in camera review no later than **3:00 PM on August 8, 2018**.

Four of Hamzeh's requests relate to the loss of text messages, which is the basis for his motion for a spoliation hearing. The court **grants** Hamzeh's motion for a spoliation hearing. (ECF No. 136.) The Clerk shall schedule a spoliation hearing. The court concludes that the following requests, to the extent they are not moot, should be addressed at the spoliation hearing:

25. "Identification of any unpreserved text messages to or from the agents regarding this investigation, including with the informants in this case" (ECF No. 135 at 5, ¶ a.);

26. "Detail funds expended, and any documents related to purchase software/apps to configure text communication to save incoming communications and delete outgoing communications" (ECF No. 135 at 5, ¶ e.);

27. "The precise problem that affected agent Adkin's phone and the preservation of text messages" (ECF No. 135 at 6, ¶ g.);

28. "Detail funds expended, and any documents related to purchase software/apps to configure text communication to save incoming communications and delete outgoing communication" (ECF No. 135 at 9, ¶ p.)

The court, frankly, does not understand one of Hamzeh's requests. Hamzeh states: "Based on the USAO's office's verbal inquiry of all FBI employees and TFOs working the case for any pending *Giglio* issues, and that each government employee's name has been queried with negative results in the U.S. Attorney's Office *Giglio/Brady* database for past entries." (ECF No. 135 at 8, ¶ d.) The court does not understand Hamzeh as requesting that the court order the government to do anything. Therefore, the court will not address this point further.

Finally, Hamzeh addresses the government's continued failure to provide translated transcripts of the recordings the government intends to use at trial. This undertaking of translation and transcription was initially expected to take one (ECF No. 8) to three months (ECF No. 11-1). But by the time this case was about five months old, the government had abandoned its attempts at guessing how long it would take to complete the translations. (ECF No. 12.) At about the 13-month mark, the defendant finally resorted to a motion to compel. (ECF No. 31.) The parties worked the matter out and agreed to disclosure of verbatim transcriptions of the recordings the government intended to use at trial not less than 90 days before trial. (ECF No. 43.)

On June 6, 2017, Judge Pepper ordered, "The parties shall notify opposing counsel of the transcripts they propose to use at trial no later than the end of the day on

November 13, 2017." (ECF No. 45 at 2.) At the same time she set a trial for February 12, 2018. Thus, the November 13, 2017 deadline was consistent with the parties' prior agreement to produce transcripts 90 day before trial. (ECF No. 45.)

The government did not comply with Judge Pepper's order. Instead, it apparently produced what might be characterized as a rough draft of the transcripts. But even then the transcriptions were often incomplete in that the translator / transcriber apparently periodically resorted to summaries rather than verbatim transcription. Thus, Hamzeh moved to adjourn the trial, stating "over the past week it has become evident that issues with the Arabic translations will prevent this case from going to trial as previously scheduled." (ECF No. 87.)

Even now, roughly four weeks before trial, and more than eight months after the deadline set by Judge Pepper, the government has not provided Hamzeh with complete and accurate translated transcriptions of the recordings it intends to use at trial. And at the hearing before this court on July 24, 2018, the government could not assure that compliance would be forthcoming prior to trial. The best the government could offer was a hope that its translators might be able to complete final transcriptions of those portions of the recordings that the government will use at trial (not the whole recording as previously ordered) within roughly two weeks—that is, roughly 14 days before trial. (Tr. 19-20.)

7
Case 2:16-cr-00021-PP    Filed 07/25/18    Page 7 of 8    Document 150

The court will hold an in-court hearing on **August 2, 2018 at 11:00 AM** to discuss the government's progress in completing full transcriptions of the recordings it intends to introduce at trial. Present at that hearing must be at least one of the translators who is currently assigned to perform the translation and transcription, or a supervisor of the personnel performing the translation and transcription. Either person must be prepared to fully inform the court as to the personnel and resources available to perform the translation and transcription and provide a firm timetable for completing the translation and transcription of the entirety of each recording the government may seek to introduce at trial.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 25th day of July, 2018.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge