UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.                                  Case No. 16-CR-21 (PP)

SAMY M. HAMZEH,

    *Defendant*.

**FOURTH MOTION TO COMPEL *Brady* AND RULE 16 MATERIAL**

Samy Hamzeh, by counsel, moves to compel disclosure of Rule 16 and *Brady* material relating to: (1) information concerning the informants' motivations for cooperating and what benefits were discussed, promised, or received; (2) identification of all instructions given by the agents; (3) the recording devices that the confidential human sources used to capture Hamzeh's oral statements (both telephonic and in person); and (4) identification of all surveillance that was used to investigate Hamzeh. The defense has discussed each of these categories of information with the government, but the government has either indicated that it produced the information or that it intends to proceed under CIPA.

    **1.**    **Motivation and benefits**

Hamzeh's first *Brady* motion requested production of the CHS informant files, including the initial suitability report, which the FBI must maintain in accord with the

*Federal Defender Services*
*of Wisconsin, Inc.*

Attorney General's Procedures.[1] R. 32 at 19. That suitability report includes the informant's motivation for becoming an informant and other personal information; with that request, Hamzeh also sought information regarding all benefits received by the informants. *Id.* at 20.

In response to the request, the government indicated last January that it would produce two documents responsive to this inquiry. *See* R.93:4. However, after follow-up inquiries from the defense about when this material would be produced, in August the government informed the defense that it would file this information under CIPA. Accordingly, Hamzeh now seeks an order requiring production of the initial suitability report, including the informants' motivations for cooperating, all written instructions, annual reviews of the CHSs, and identification of any violations or deviations from guidelines, instructions, or policies by any informant or agent. *See* R. 82 at 19 (sec. f). Hamzeh also continues to request specific identification of all benefits received, discussed, or promised to the informants.

The benefits received and the motivations of the informants are critical in assessing their credibility. This information is exculpatory and discoverable under Rule 16 because it bears on the reliability and credibility of the informants and the agents. Accordingly,

---

[1] As described in GAO Report, 15-807, Confidential Informants: Updates to Policy and Additional Guidance Would Improve Oversight by DOJ and DHS Agencies (Sept. 2015), the Attorney General's Guidelines require that before using a person as an informant, agents must complete an initial suitability report and recommendation that addresses biographical information, personal information, motivation for becoming an informant, and criminal history. *Id*. at 6. Continuing suitability review must take place yearly. *Id*. Written instructions also are to be reviewed with the informant. *Id*. *See*, https://www.gao.gov/products/GAO-15-807.

2

the defense asks that the Court order the government to produce this information. Hamzeh recognizes the government intends to proceed under CIPA, but a court order will make the government's obligation clear.

**2. Instructions to informants**

Hamzeh's initial *Brady* motion also sought production of all instructions given to the informants by the agents. R. 82 at 19. In response, the government indicated that the agents gave the CHSs four instructions: (1) the CHS's assistance was voluntary; (2) the CHS must provide truthful information to the FBI; (3) the CHS must abide by the FBI's instructions and must not seek to take any independent action on behalf of the United States government; and (4) the government will strive to protect the CHS's identity, but cannot guarantee that it will not be divulged. R. 93 at 3. The government also indicated that CHS 2 was admonished for recording one conversation with Hamzeh with non-FBI approved recording equipment. *Id*. at 4. The government indicated that it was not in possession of anything further responsive to this request for instructions. *Id*. The defense expressed skepticism regarding this response, but the Court had no option other than to take the government at its word—it had complied with the request for instructions.

Since that time, the defense has learned that in fact the agents gave other instructions to the CHSs. In a text to one of the CHSs on October 18, 2015, Agent Zuraw stated:

> We need to talk before you talk to Samy anymore in the future. We need to get stuff like last night recorded every time. If you need to push him off for a day or two before you can meet, we have to do it. The bosses get a bit upset that last

3

> night wasn't recorded and so they want everything recorded
> from now on. Thank you for understanding.

So this was an additional instruction given to CHS 1 that the government did not identify in its initial discovery response.

Then in July 2018, the government produced a July 30, 2018, report from Special Agent Adkins that identified other instructions he supposedly gave the CHSs. Adkins's report indicated that "every time" he met with the CHS he instructed him to be inquisitive and not to lead Hamzeh into any plan or ideology. Adkins also indicated that "every time" they met he told the CHS to ask open-ended questions such as who, what, when, where, and why. Adkins's report further indicates that he instructed the CHS at one point to stop texting Adkins memes and that all text messages had to be professional and remain strictly work related. These instructions also had not been previously identified by the government, contrary to its earlier assertions that all instructions had been turned over.

What troubles Hamzeh is that the government seems to believe that it need not provide instructions that are not memorialized. In an August 9, 2018, letter to the government, Hamzeh again requested all instructions, noting the discrepancies outlined above. In response to this renewed request for all instructions, the government stated that "every memorialized instruction given to the informants" in the government's control has been produced. It further explained that the instructions identified in Adkins's July 30, 2018, had not previously been produced because they hadn't been memorialized until that time.

4

*Federal Defender Services*
*of Wisconsin, Inc.*

The government's misunderstanding of its obligations under Rule 16 and *Brady* is a concern. When the government says it has identified all instructions given to the CHSs, Hamzeh is entitled to assume that representation encompasses all instructions given by the FBI agents and the investigative team, not just those they later write down. Hamzeh was told there were only four instructions, but that wasn't the case. Accordingly, Hamzeh now moves for an order requiring the government to identify all instructions given to the CHSs by the agents, whether memorialized or not.

### 3. The chain of custody documents for the recording devices

This Court previously ordered the government to turn over all the documents (including the ELSUR envelopes) concerning the telephonic and in-person recordings obtained by the informants. *See* R. 150 (items 18 and 19). The government has now responded that it will seek CIPA review of those items. But the defense's request should not be read in a limited fashion as pertaining to only the envelopes. The defense is seeking an order requesting the government to identify when the CHS's had recording devices checked out to them; what type of recording devices were used; and what instructions were given as to when to record Hamzeh. This is important for two reasons: first, it will establish a chain of custody for the recordings. As alluded to in court, the inconsistent and erroneous labeling of the recordings prevents the parties from identifying with certainty which recording is being referred to at times. The FBI has an internal system that is different from what was given to the defense in the discovery disclosure. For instance, some recordings are described as consensual telephonic recordings with both CHS's. Yet upon listening to the recording, it's actually an hour long in-person recording.

5

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 09/18/18   Page 5 of 8   Document 177

The defense is always entitled to the chain of custody documents to establish that the evidence wasn't tampered with; but here, the documents about each recording take on greater significance—they are the only accurate way to know who recorded what and when.

Second, the information is discoverable because it is *Brady* material. Part of the defense's concern in this case is that for 35 days one CHS did not record any conversations with Hamzeh, despite meeting with him nearly daily. During that time, there were many unrecorded conversations with the other CHS as well. If the informants had recording devices available on those 35-days, then it raises significant questions about why conversations weren't recorded. If the FBI didn't supply recording devices despite knowing of the nearly daily contact, that raises significant questions about why not. After all, earlier in the investigation, agents had stressed to one CHS the importance of *always* recording conversations and instructed the CHS to put off meetings with Hamzeh when he could not record.

4. **The surveillance that was used to investigate Hamzeh**

The defense recently filed a motion outlining its reasons for believing the government was intercepting Hamzeh's phone conversations. Given the apparent use of wiretaps, Hamzeh made a more specific request to the government regarding the use of other surveillance as well, asking for whether the government intercepted communications or used GPS, stingray, pole cameras, or other interception techniques that had not been disclosed. In response, the prosecution told the defense that there was, in fact, pole camera footage, which has been provided. But the government also indicated

6

*Federal Defender Services*
*of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 09/18/18   Page 6 of 8   Document 177

that there is additional information that is responsive to this request and the government would file that information under CIPA. While the defense can hazard a guess at what that surveillance is, it doesn't know the scope of the surveillance conducted of Hamzeh in this case. Whatever it is, the defense is entitled to it. Such evidence would further corroborate Hamzeh's defense because the surveillance presumably uncovered no evidence that he ever met or communicated with extremist organizations, pursued guns on his own, or had connections to machine gun suppliers. In addition, such surveillance would provide contemporaneous evidence concerning Hamzeh's daily activities and contacts with the CHS's—going a long way towards showing Hamzeh's lack of predisposition to commit this offense and that the informants pressured him to commit it. If the government had his phone calls and conducted surveillance but came up with nothing incriminating, that undermines any government claim of predisposition and must be produced. Finally, Hamzeh also is entitled to know what techniques were used so he can challenge their legality if appropriate. Accordingly, Hamzeh requests an order requiring the government to identify all intercepted communications, GPS, pole cameras, stingray, or other interception techniques used in this case.

Dated at Milwaukee, Wisconsin this 18th day of September, 2018.

> Respectfully submitted,
>
> /s/     *Craig W. Albee*
> Craig W. Albee, WI Bar #1015752
> Joseph A. Bugni, WI Bar #1062514
> Gabriela A. Leija, WI Bar #1088023
> FEDERAL DEFENDER SERVICES
>   OF WISCONSIN, INC.
> 517 E. Wisconsin Ave - Rm 182
> Milwaukee, WI  53202
> Tel. (414) 221-9900
>
> *Counsel for Defendant*, Samy M. Hamzeh