UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

  *vs.*                                             Case No.  16-CR-21 (PP)

SAMY M. HAMZEH,

    *Defendant*.

## OMNIBUS MEMORANDUM IN ANTICIPATION OF SPOILATION HEARING

Samy Hamzeh, by counsel, files this memorandum in anticipation of Wednesday's hearing. This memorandum focuses on three issues that are likely to arise. First, the government's failure to abide by this Court's prior orders and turn over discovery concerning the agents' phones and texts messages; second, the government's recent response to the defense's spoliation motion; and third, a discussion of some of the evidence that the defense intends to elicit and present regarding the missing texts messages and other steps taken to comply with this Court's orders. With those three points, the defense is also submitting the summaries of the text messaging between agents and informants that the defense intends to introduce at the hearing.

Before delving in to those three issues, it is essential to lay a foundation concerning what has occurred to this point. What follows is a summary of the defense motions regarding texts, the government's responses, and this Court's orders relating to text

messages, emails, and spoliation and the government's compliance with the Court's orders to this point.

**I.     Background**

On January 3, 2018, the defense moved for the production of text messages, including the texts and emails between the informants and the FBI. R.82:11. The defense argued that these texts presumably would contain "information about [the informant's] contacts with Hamzeh, their instructions from the FBI, their understanding of those instructions, their motivations, and their other activities." *Id.* at 13. It also asked for texts and emails between agents. The motion indicated that the prosecution had agreed to produce at least the texts from the informants to the agents, but given the amount of time that had passed, Hamzeh requested a court order.

On January 19, 2018, the government responded that it had no emails and that all text messages in its possession would be disclosed. R.93:1–2. The Court held a status hearing on January 31, 2018, to discuss discovery disputes and additional briefing was ordered. On February 16, 2018, Hamzeh filed a reply in support of his *Brady* motion that requested an order also requiring the government to identify all text messages that were not preserved. R.105:10. Then on March 8, 2018, this Court granted Hamzeh's *Brady* motion in part, including Hamzeh's request that the government identify which text messages were not preserved, if any. R.107:14. The Court also ordered the government to "inform Hamzeh as to whether an inquiry has been conducted into non-preserved text messages and provide him with as much information as the government has, such as the dates text messages were sent and topics that were discussed through text message." *Id.*

2

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP    Filed 12/11/18    Page 2 of 18    Document 201

at 14. The government turned over some texts, but did not provide the defense of the dates that missing texts were sent or the topics discussed.

On July 11, 2018, the defense filed a Second Motion for Production of *Brady* Material and to Compel Discovery that included requests relating to text messages. R. 135. Specifically, the defense sought: (1) unredacted texts, (2) the phone numbers from which texts were sent by agents and informants (necessary in order to determine if there were additional texts that weren't produced); (3) identification of unpreserved texts; (4) toll records for the phones used by agents and informants; (5) identification of the precise problem affecting Adkins' phone and the preservation of text messages; (6) information about funds expended and documents related to the purchase of software/apps to configure text communications; and (7) all texts and emails on the FBI external and internal systems. The motion pointed out that at least 132 texts between Special Agent Adkins and informants had not been preserved. *Id.* at 5–6. The motion also explained the ways in which the texts that had been produced thus far were helpful to Hamzeh. *Id.* at 2–4.

That same day, the defense filed a motion requesting a spoliation hearing, noting that the government had not complied with the Court's prior orders relating to the text messages. R. 136. Among the concerns were the government's failure to identify the unpreserved texts, the dates of those messages, and the topics discussed in those text messages. *Id.* at 2–4. The defense also was dissatisfied by the meager explanation for failing to preserve Adkins' texts—that a software issue had caused a gap in the capture and storage of messages and that the FBI could not recover some of his texts, but without

3

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 12/11/18   Page 3 of 18   Document 201

further explanation as to when and why this occurred. *Id.* at 2. The motion noted that similar issues had arisen in a New Jersey federal case, *United States v. Suarez*, 2010 WL 4226524 (D. N.J. 2010), and the court held a hearing to determine why text messages hadn't been preserved and what remedy was appropriate. There the court gave an adverse inference instruction but noted that other relief could have been ordered.

Hamzeh's spoliation motion concluded with the following paragraph regarding potential relief:

> In this case, the government has stonewalled the defense's efforts to obtain the text messages in this case, not provided phone numbers to allow adequate investigation, not provided information ordered by the Court, and has failed to adequately explain why texts have not been produced or preserved. A spoliation hearing like that in *Suarez* is appropriate to determine why the government has violated its duty to preserve statements, to explore the contents of the unpreserved text messages, and to determine what sanctions are appropriate. Accordingly, Hamzeh requests a hearing at which evidence will be produced on these issues and a determination made as to an appropriate sanction, if any.

*Id.* at 5–6.

On July 24, 2018, the Court held a hearing on Hamzeh's *Brady* and spoliation motions. The next day it issued another order, noting that the government had not opposed Hamzeh's motion to compel, but had indicated that it either had provided as much information as it had or would do so. R. 150. Among the information the Court ordered produced in that July 25 order relating to texts were: the phone numbers the informants used to text with agents; the identity of the agents who texted with the informants; the phone numbers those agents used; all texts/SMS, IM plus e-mail on both the FBI internal (FBI net) and FBI official external (Internet Café-IC) to/from all agents,

4

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 12/11/18   Page 4 of 18   Document 201

TFO's, CHSs or professional support staff relating in any way to the investigation; and toll records for the UCE and CHS phones for all contact made with Hamzeh's phones. *Id.* at 2. The Court also ordered that the following additional information requested should be addressed at the spoliation hearing:

> 25. "Identification of any unpreserved text messages to or from the agents regarding this investigation, including with the informants in this case" (ECF No. 135 at 5, ¶ a.);
>
> 26. "Detail funds expended, and any documents related to purchase software/apps to configure text communication to save incoming communications and delete outgoing communications" (ECF No. 135 at 5, ¶ e.);
>
> 27. "The precise problem that affected agent Adkin's phone and the preservation of text messages" (ECF No. 135 at 6, ¶ g.);

R.150:5–6.

The Court's order made it clear that the government was being ordered to produce the identified information, was not free to *sua sponte* make its own determination as to whether the information was significant enough to produce, and could be subject to sanctions for not abiding by the order:

> This order requiring disclosure applies regardless of whether the government believes the document, object, or information is not "material to preparing the defense." See Fed. R. Crim. P. 16(a)(1)(E)(i); see also cf., *United States v. Pearson*, 340 F.3d 459, 469 (7th Cir. 2003) ("In *United States v. Armstrong*, 517 U.S. 456, 462 (1996), the Court held that 'material to the preparation of the defendant's defense' means 'the defendant's response to the Government's case in chief,' and does not include materials deemed by defendants to be necessary to prove their own defense theory or to challenge the prosecutor's conduct of the case."). The government's disclosures must be "complete and correct." *United States v. Mackin*, 793 F.3d 703, 708 (7th Cir. 2015). The court emphasizes that any non-compliance may result in sanctions. See Fed. R. Crim. P. 16(d)(2)(D); see also *United States v. Tomkins*, 782 F.3d 338, 348 (7th Cir. 2015). To the extent that compliance with this order or any prior order instructing the government

5

*of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 12/11/18   Page 5 of 18   Document 201

to disclose information to the defense may require the government to proceed under the Classified Information Procedures Act, the government shall provide all such responsive documents to this court for its in camera review no later than **3:00 PM on August 8, 2018**.

R.150:3–4.

Since the Court's July 25 order, the government has produced the phone numbers for the agents and the informants, has provided a summary of the anticipated testimony of an FBI IT specialist regarding problems with preserving text messages due to a software issue, and provided a one-page report from Special Agent Adkins asserting that he didn't text about anything significant with the CHSs. The report states that Adkins did not delete any text messages with the CHS or any other CHS or investigator during this or any other investigation. On its face, this statement suggests (1) that the texts should still be on Adkins' phone and (2) that there were texts between investigators. It's worth noting that despite this Court's order no texts between the agents have been turned over.

In addition to Adkins's report, the government also provided 11 pages of emails between agents despite having earlier indicated that no emails existed. R.93:1. The defense is suspicious that in an investigation of this size and scope, involving this many agents and resources, that a mere 11 pages of emails exist and many of those pages are duplicates. What's more, the government still has not provided any toll records for the agents or CHSs, identified the unpreserved texts, identified what topics were discussed in those unpreserved texts, indicated whether there were texts between the agents about the investigation or produced any such texts, or explained why text messages could not be recovered from the phones themselves. For its part, the defense, through subpoenas

of the informants' phone records, has assembled charts that it believes accurately identify the communications, including texts, between the agents and the informants. Charts reflecting those texts between agents and informants are attached as exhibits A–E of this motion. The defense did not have the agents' toll records to assist in identifying unpreserved texts.

It also remains unclear what alternative methods were available, considered, or employed in an effort to recover the unpreserved texts. The government has provided no reports concerning the FBI's efforts to identify, preserve, retrieve, or recreate them.[1]

On December 5, 2018, over four months after the Court's July 25 order granting discovery and ordering a spoliation hearing and nearly nine months after its March 8 order, the government filed a pre-hearing memorandum relating to spoliation. R.199. The memorandum does not address head on the problem that the government has not produced certain information ordered by the Court. Instead it suggests that there's no bad faith and without that, this Court is powerless. But the government's position is

---

[1] FBI text messaging became newsworthy in the past year when the Justice Department released numerous texts of agents involved in the Mueller investigation into Russian interference with the 2016 election. News reports indicated that the agents should have been aware that "messages from one FBI phone to another would be saved in government computers and retrievable," and that the FBI's legal office "has warned FBI agents for years to exercise good judgment when texting because those messages can be found later by internal investigators or defense lawyers." *See* Devlin Barrett, *FBI officials' text message about Hillary Clinton said to be a cover story for romantic affair*, Washington Post 12/15/17, available at https://www.washingtonpost.com/world/national-security/fbi-officials-text-message-about-hillary-clinton-said-to-be-a-cover-story-for-romantic-affair/2017/12/15/23205bee-e1b6-11e7-bbd0 9dfb2e37492a_story.html?utm_term=.6b0bb1cedd96. After it was reported that many texts in the Peter Strzok/Lisa Page investigation were lost and couldn't be recovered, additional forensic efforts resulted in the recovery of additional texts. *See Kyle Cheney, Justice Dept. recovers missing texts from FBI officials, Politico (Jan. 25, 2018),* https://www.politico.com/story/2018/01/25/missing-fbi-texts-recovered-369448

both premature and misdirected. The spoliation hearing is being held to determine why the texts weren't preserved, why the government has failed to produce information ordered by the Court, and what sanctions are appropriate. The existence of bad faith produces more serious sanctions; but, as explained below, the Court may impose sanctions regardless. A point emphasized in its July 25 order.

**II.    The government's recent submission concerning spoliation**

Beyond being four months late, there are three principal flaws in the government's submission. First, the government minimizes its discovery obligations and the force of this Court's orders, suggesting that the defense is not entitled to these texts or to an explanation of what topics were discussed in the texts. That issue has been decided and whether the government disagrees doesn't matter: this Court's orders mean we're entitled to the texts, the government must establish which texts are missing and try to reconstruct them. Second, it relies exclusively on civil cases to establish what (in a criminal prosecution with potential discovery violations) can stand for a bad faith inference. Those civil cases do not set the standard; indeed, the district court's inherent power in a criminal case is not hemmed in by case law concerning civil litigation and when an adverse instruction is required. Third, the government represents conclusions of facts and law that it has offered no evidence to support—or at least hasn't yet.

### a. The defense is entitled to these texts and to the other discovery that has been ordered but not turned over.

The defense has repeatedly spelled out its theory of defense and why and how certain documents play into it—including these text messages. It's why this Court ordered the texts messages to be turned over in March. *See* R.113. And it wasn't just the text messages between the agents and the CHSs that this Court has ordered turned over, it was also "all texts between the agents." R.150:2. This information is important to the defense. The texts are witness statements and potential *Brady* material. And we want these texts because they fill in the picture that the FBI's reports don't give—that is to say nothing of the fact that they've been ordered to be produced by the Court.

The government may suggest, again, that even if the texts existed, they would not reveal any significant information. It previously suggested the same about surveillance reports, but those reports about agents conducting surveillance on 64 occasions and not gathering any intelligence of significance are quite helpful to the defense. Likewise, the phone records Hamzeh has obtained that the government did not produce, while deemed inconsequential by the government, expose that CHS1 (Steve) was in contact with the FBI for a month before the government claimed he began working as an informant against Hamzeh—a very helpful piece of information, especially as it pertains to an entrapment defense.

The first report documenting Steve's claims against Hamzeh gives the impression (and the defense embraced that impression for two years in its filings) that Steve was concerned about Hamzeh's statements and so he walked into the FBI, not seeking any

benefit; he was simply concerned about what Hamzeh might do. Indeed, that's what we were told by the government during informal discussions. Yet the phone records belie that point by showing earlier phone contact between Steve and the agents. This, of course, changes the narrative of Steve being concerned about Hamzeh's statements, to Steve working with the FBI and seeing who he can set up.

The phone records also show that the agents often had contacts with the informants that did not generate written reports. From what the defense knows through its subpoenas, Mike and Steve were in contact with the FBI agents 1246 times over the course of the investigation, which breaks down into 580 texts and 666 calls. Those twelve hundred contacts were memorialized into a mere 64 reports. And that's just what we know from the phone records the defense has found through its subpoenas. The defense imagines that if the government complies with this Court's orders that an even more robust picture of what was really happening in this investigation will emerge.

In an effort to undermine the defense's claims, the government portrays the text messages as non-substantive; Adkin's reports states that all the texts were "logistical in substance." Yet, the ones produced help establish several propositions key to Hamzeh's defense. First, the defense believes Mike's motivation for doing the government's bidding is financial. And sure enough, there is a text in which Mike complains about the meager financial benefits he's receiving. Second, the defense believes Steve was currying favor with the government in the hopes of getting immigration benefits. And sure enough, there's a text supporting that theory that says: "I am trying to help with your immigration stuff. No guarantees that it will change anything, but I think it's worth a try." Third, the

10

defense has continually questioned the government's claim that the informants only received four instructions from the agents. And in a text to Steve where the agent told him not to meet with Hamzeh unless he could record, that suspicion was confirmed. These texts are not merely logistical.

That's just from what we have, but we're also entitled to know what's missing. The government has posited that this FBI glitch is responsible for the 139 missing texts between Adkins and Mike, but what of the others? There are 180 missing texts from four agents. There are two important points to note about that number. First, it doesn't come from the government. Despite being ordered by this Court to identify *all* missing texts, the government has never provided the defense with a list or a summary of missing texts. This list comes from the defense. Second, there are no reports (nothing) to suggest why a glitch would have affected those phones, especially since Zuraw's phone was not with the FBI but his personal cell and his records didn't come from a database but an extraction. A quick comparison of his texts in Exhibit C from those of the others makes that clear.

In sum, while the government argues that we are not entitled to the texts, Rule 16 and *Brady* and its agreement to turn them over and (critically) a Court order that they do so entitles us to them. These texts are critical to Hamzeh's defense and even if they weren't, when a federal judge orders that they be turned over, they must be.

11

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP    Filed 12/11/18    Page 11 of 18    Document 201

### b. The government's citations and representations about the law must be scrutinized.

Before addressing the particulars of the government's submission, it's important to set two matters straight. First, the government complains that there's no Jencks Act or *Brady* violation here. Hamzeh disagrees but won't address the argument further as it's beside the point. The Court ordered this information to be produced so there's no reason to quarrel now.

Second, the government takes the defense to task for misleading this Court by citing *Suarez* and then goes so far as to suggest that the Seventh Circuit actually considered *Suarez* and rejected it, writing:

> But the defendant failed to inform the Court that the Seventh Circuit has explicitly rejected the conclusion of this unpublished case out of the District of New Jersey. In *Bracey v. Grondin*, the Seventh Circuit rejected the appellant's claim that an adverse inference instruction was appropriate, referred to Suarez, and stated . . . .

R.199:4. The government's brief reads as though the Seventh Circuit cited, considered, and then rejected *Suarez.* The problem is that the Court in *Bracey* neither cited, considered, nor rejected *Suarez*. This Court has Westlaw and it can see for itself, but for good measure the defense is attaching a copy of *Bracey* as exhibit F.

Beyond the government's mistaken claim that the Seventh Circuit referred to and rejected *Suarez*, the bigger problem with the government's position is that it doesn't appreciate what the defense is asking with the spoliation hearing and what it will be asking for once all the facts come in. The defense is entitled to these texts. A federal court has ordered their production or recreation and an explanation as to why they haven't

12

been preserved or recovered. Until we know why, it's premature for the defense to argue a position on the remedy. That was made clear in the final paragraph of Hamzeh's spoliation motion and quoted on page 4 of this brief.

What's more, Hamzeh has never suggested that *Suarez* is the end all be all for what happens when the government fails to turn over information. Rather, this Court has the authority under Fed. R. Crim. P. 16(d)(2) to impose sanctions, including to enter any order "that is just under the circumstances," as well as the inherent authority to craft a remedy for discovery violations. *E.g., United States v. Soto-Beniquez,* 356 F.3d 1, 30 (1st Cir. 2003); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49 (1991). It may be suppression; it may be an adverse inference; it may be something else—even dismissal in an extraordinary case. But the government's authority that in five civil cases the Seventh Circuit has found that the failure to give an adverse inference instruction was not an abuse of discretion does not foreclose either this hearing or the defense seeking relief for the government's failure (possibly outright refusal) to preserve and turn over these text messages.

### c. The government brief overstates the current state of the record.

The government's argument that sanctions aren't appropriate is based on representations that aren't supported by the record—at least that the defense has seen. It's worth briefly addressing the statements in the government's brief about why the defense's motion has to fail. First, the government represents that "[w]hile the Special Agents did not preserve all of their text messages by taking screenshots of the text messages on their cellular telephones, the FBI has an IT procedure in place that retains all text messages on Special Agents' cellular telephones irrespective of whether the Special

13

*Federal Defender Services
of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 12/11/18   Page 13 of 18   Document 201

Agent individually preserves his texts." R.199:3. But we don't know whether the "glitch" affected all the agents who have missing texts. We have no report about Zuraw, Buono, Fraser, and Mosback and whether the issue affected their phones. More importantly, experience teaches and the testimony at the hearing will establish that you can retrieve and preserve the text messages by means other than "screen shots." The government also fails to acknowledge that an extraction could be performed (like it was on Zuraw's phone) and get the texts that way, nor is there a report about whether an extraction was attempted or could still be attempted.

Second, the government asserts that there was no bad faith when Steve and Mike were told to delete the texts: "For operational security purposes, FBI CHSs, including the CHS in this situation, are always instructed to delete text messages with Special Agents for their protection and to maintain the covert relationship with the FBI." R.199:4. Maybe that's true—it sounds reasonable. But for almost three years, the defense has been told that there were only four instructions given to the CHS's by the agents: (1) the informant's assistance was voluntary; (2) the informant must be truthful to the FBI; (3) the informant must abide by the FBI's instructions and not take any independent actions on behalf of the U.S. government; and (4) the government will strive to protect the informant's identity. R.82:16. We've noted our skepticism before in our first and fourth motions to compel. R.82:16–19(first motion to compel); R.177:2–4 (fourth motion to compel). And we've spelled out how that has been belied by the record and why it reinforces the defense's need for the CHS files. So it's worth noting how now (again in a government submission and not a report) we find out that other instructions to the CHS's were given.

14

If that instruction was given, then let the government put forth some evidence about that fact, but right now all this Court has is its representations—representations that contradict previous government representations.

Third, the government (while again brushing off the existent court order) represents that "[t]he government's July 2018 agreement to produce text messages in its possession (and the resulting July 25, 2018 court order to do so) does not create a retroactive constitutional or statutory duty to produce text messages that no longer exist on an FBI server or phone. Nor do they justify a spoliation sanction." R. 199:5. Again, it wasn't ordered in July; it was ordered in March. And again it wasn't "a concession" that led to this Court's order—it was that the defense was entitled texts; and regardless, there's a court order. What's more, if these texts are witness statements (and they are) and they contain *Brady* material (they do) then the government has a duty to preserve them as the Department of Justice has recognized by setting up a procedure by which all FBI texts are supposed to be preserved. The destruction of *Brady* material is a sanctionable act. So there is no basis to argue that these texts aren't important, that they didn't need to be preserved, and that the government's representations somehow absolve the FBI of preserving and turning them over and if they can't, somehow recreating their content—as directed by this Court.

**III. The evidence that the defense intends to present at the hearing.**

To be clear, the government has never provided the defense with the toll records for either Steve and Mike or the agents, nor has the government ever told the defense how many text messages are missing between the agents and the CHSs. Instead, what

15

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 12/11/18   Page 15 of 18   Document 201

follows is from the defense's subpoenas. And to be very clear, the defense has always been open with the government trying to reconcile the records with what has been produced. Indeed, it was the government's inability to (or refusal) to help the defense grasp the text messages and the missing ones that led to the defense filing the second and third motions to compel. From the toll records for Steve and Mike, this is what we know:

| Name | Contact | # of Texts from Phone Records | Text provided by the Government |
|---|---|---|---|
| Steve | Michael Buono | 27 Calls<br>24 Texts | 20 Texts<br>**Missing 4** |
| Steve | Eric Fraser | 6 Calls<br>19 Texts | Zero<br>**Missing 19** |
| Steve | Ronald Mosback | 2 Calls<br>2 Texts | Zero<br>**Missing 2** |
| Steve | Joseph Zuraw | 66 Calls<br>301 Texts | 296 Texts<br>**Missing 5** |
| Mike | Jonathan Adkins | 179 Calls<br>176 Texts | 44 Texts<br>7 Duplicates<br>**Missing 139** |
| Mike | Joseph Zuraw | 13 Calls<br>11 Texts | Zero<br>**Missing 11** |

These summaries are attached, and they were sent to the government last week for them to check over. In addition, all of the underlying phone records associated with both Mike and Steve have been turned over to the government. The defense intends to ask about these missing texts and what efforts were made to preserve them, to retrieve them, to make sure that they were all provided to the defense, when it was discovered that they were missing, and what efforts were made (consistent with this Court's order) to

16

*Federal Defender Services*
*of Wisconsin, Inc.*

reconstruct their content—including whether the agents sought to download their phones and the CHSs' phones.

Beyond those missing texts, found by the defense, we also know that both called two phone numbers 888-XXX-9575 and 414-XXX-9716, a combined 426 times. This number is not among those associated with any agent—that we've been told of. But the defense intends to ask the agents who those numbers belong to and whether any texts or IM or anything were sent to those numbers. In addition, the defense intends to ask the agents about emails and IM and text messages that were sent among the agents, the task force officers, the CHSs, and the professional support staff relating in any way to the investigation. In other words, to ask about the efforts to comply with this Court's order. *See* R.150:2.

### IV. Conclusion

This case has been pending for almost three years, and the issue of discovery has been thoroughly litigated and (the defense thought) resolved. This Court's orders should have been the end of the matter. Yet, almost five months later, the defense still doesn't have the texts and emails, it still doesn't have toll records or any reports about what was done to provide these. This hearing will (the defense hopes) provide the reasons for the government's failure and then allow the Court to address the appropriate remedy.

Dated at Milwaukee, Wisconsin this 11th day of December, 2018.

> Respectfully submitted,
>
> ***/s/      Craig Albee***
> Craig W. Albee, WI Bar #1015752
> Joseph A. Bugni, WI Bar #1062514
> FEDERAL DEFENDER SERVICES
>   OF WISCONSIN, INC.
> 517 E. Wisconsin Ave - Rm 182
> Milwaukee, Wisconsin 53202
> Tel.: (414) 221-9900
> E-mail: craig_albee@fd.org
>
> *Counsel for Defendant,* Samy M. Hamzeh