against them, the district judge also had to consider the extraordinarily serious nature of the underlying crime. Banas was a key player in more than $90,000,000 of theft and fraud. That fact alone could reasonably justify a significant sentence. *See United States v. Vallone,* 698 F.3d 416, 497–98 (7th Cir.2012) (in sentencing defendant for tax crimes, mail fraud, wire fraud, and conspiracy, the district judge could reasonably consider the $50,000,000 loss amount as a "significant factor" in favor of a longer sentence).

Even worse was Banas's choice of victims. Banas stole medical savings from his clients and used them to finance his own high-rolling lifestyle. Surely stealing health care money from sick people also justifies a lengthy sentence. *Cf. United States v. Schlueter,* 634 F.3d 965, 967 (7th Cir.2011) ("an above-range sentence was appropriate because Schlueter ... took advantage of personal relationships to cheat them out of significant sums they needed at critical stages of their lives"); *United States v. Tockes,* 530 F.3d 628, 634 (7th Cir.2008) (approving above-range sentence for defrauding an elderly couple); *United States v. King,* 506 F.3d 532, 536–37 (7th Cir.2007) (approving above-range sentence for defendant who "pocket[ed] funds set aside for victims of Hurricane Katrina"). And the district judge here reasonably recognized this fact; he stated that he had "never seen another financial crime this aggravated" in eighteen years as a federal judge. (Sentencing Tr. at 27.) Given the severity of the crime, and the fact that Banas still received a below-Guidelines sentence, we do not think that the district judge's sentence was unreasonably harsh.

L.Ed.2d 508 (1993). We do not think it would have been a ''clear'' or ''obvious'' error to conclude that the value of the extra restitu-tion Banas might earn was outweighed by the need to punish Banas for his crimes.

Finally, Banas argues that he was entitled to "a far lesser sentence than Blackburn" because he was less culpable than Blackburn. (Appellant's Br. at 17.) This argument borders on frivolous. Banas *received* a lower sentence than Blackburn; Banas got 160 months, and Blackburn 180 months. And, because that sentence was below-Guidelines, we presume it to be reasonable. *See Klug,* 670 F.3d at 800. Banas has not overcome that presumption. It was not unreasonable—or an abuse of discretion—for the district court to decline to give an even lower sentence for such a serious crime.

### III. CONCLUSION

We AFFIRM Banas's sentence.



**Larry BRACEY, Plaintiff–Appellant,**

v.

**James GRONDIN, et al., Defendants–Appellees.**

No. 12–1644.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 2013.

Decided March 15, 2013.

Rehearing Denied May 1, 2013.

**Background:** Prisoner sued several state corrections officers for the use of excessive force under the Eighth Amendment. The United States District Court for the Western District of Wisconsin, Barbara B. Crabb, J., denied prisoner's motion re-

Exhibit F

Case 2:16-cr-00021-PP   Filed 12/11/18   Page 1 of 9   Document 201-1

questing recruitment of counsel under in forma pauperis (IFP) statute, 2010 WL 4220493, and his motion for spoliation sanctions. Prisoner appealed.

**Holdings:** The Court of Appeals, Flaum, Circuit Judge, held that:

(1) district court did not abuse its discretion in denying prisoner's motion for recruitment of counsel, and

(2) prisoner did not show that prison videotapes were destroyed in bad faith and, therefore, was not entitled to adverse inference instruction.

Affirmed.

1. **Federal Civil Procedure** ⟨⇒⟩1951.29

To qualify for appointment of counsel under in forma pauperis (IFP) statute, indigent litigant must make reasonable efforts at finding counsel himself; if the litigant comes up short, then the district court must decide whether given the difficulty of the case, the plaintiff is competent to try it himself, and, in making such determination, court must consider the difficulty of the case and the competence of the litigant. 28 U.S.C.A. § 1915(e).

2. **Federal Courts** ⟨⇒⟩813

When reviewing the district court's determination on complexity of the case and competency of the litigant, for purposes of deciding whether indigent litigant is entitled to appointment of counsel under in forma pauperis statute, the Court of Appeals considers the reasonableness of the district court's conclusion in light of the evidence as it stood at the time of the district court's decision. 28 U.S.C.A. § 1915(e).

3. **Federal Courts** ⟨⇒⟩813

Denials of motions for appointment of counsel under in forma pauperis (IFP) statute are reviewed for an abuse of discretion; thus, the Court of Appeals affirms unless the district court has applied the wrong legal standard or made other errors of law, made clearly erroneous factual findings, or rendered a clearly arbitrary decision without any support in the record. 28 U.S.C.A. § 1915(e).

4. **Federal Courts** ⟨⇒⟩893

Even if a district court has abused its discretion in denying a motion for appointment of counsel under the in forma pauperis (IFP) statute, an appellate court can only reverse when the absence of counsel prejudiced the litigant, which requires a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation. 28 U.S.C.A. § 1915(e).

5. **Federal Civil Procedure** ⟨⇒⟩1951.29

Complexities anticipated or arising during discovery can justify a court's decision to recruit counsel under in forma pauperis (IFP) statute. 28 U.S.C.A. § 1915(e).

6. **Federal Civil Procedure** ⟨⇒⟩1951.29

District court, which offered prisoner instruction on discovery in federal court and knew of prisoner's spoliation allegations, did not abuse its discretion in evaluating the complexity of the case and prisoner's competence as a pro se litigator, and consequently did not abuse its discretion in denying prisoner's motion for recruitment of counsel under in forma pauperis (IFP) statute, in prisoner's action against corrections officers for use of excessive force. 28 U.S.C.A. § 1915(e).

7. **Federal Civil Procedure** ⟨⇒⟩1951.29

Spoliation was not a complex legal issue supporting recruitment of counsel under in forma pauperis (IFP) statute. 28 U.S.C.A. § 1915(e).

# Exhibit F

**8. Federal Civil Procedure ⟐1951.29**

When evaluating an indigent plaintiff's competence, for purposes of ruling on motion for appointment of counsel under in forma pauperis (IFP) statute, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience. 28 U.S.C.A. § 1915(e)(1).

**9. Federal Civil Procedure ⟐1951.29**

Prisoner's inability to access certain prison policies due to his status as a prison inmate did not relate to his competency as a litigant and, thus, did not require recruitment of counsel under in forma pauperis (IFP) statute, in prisoner's action against corrections officers for use of excessive force; all inmates confronted the discovery restrictions that faced prisoner, and need to access otherwise inaccessible documents did not require recruitment of counsel. 28 U.S.C.A. § 1915(e).

**10. Federal Civil Procedure ⟐1951.29**

A district court need not spontaneously revisit an earlier ruling on a motion for appointment of counsel under in forma pauperis (IFP) statute, but nothing prevents a pro se litigant from again requesting counsel later in a proceeding. 28 U.S.C.A. § 1915(e).

**11. Federal Civil Procedure ⟐2173**

When a party intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence contained incriminatory content; when considering the propriety of such an adverse inference instruction, the crucial element is not that the evidence was destroyed but rather the reason for the destruction.

**12. Federal Civil Procedure ⟐1636.1**

A party destroys a document in bad faith, so as to warrant adverse inference instruction, when it does so for the purpose of hiding adverse information.

**13. Federal Courts ⟐822**

Court of Appeals reviews for abuse of discretion a district court's denial of an adverse inference instruction based on a party's intentional destruction of evidence, but whether the evidence was destroyed in bad faith is a question of fact like any other.

**14. Federal Civil Procedure ⟐1636.1**

Mere fact that some evidence necessary to show spoliation remained unavailable to movant did not lessen his burden of proving bad faith destruction of evidence, for purposes of obtaining adverse inference instruction.

**15. Federal Civil Procedure ⟐2173**

Even if prison defendants had a duty to preserve videotapes showing prisoner's altercation with state corrections officers, prisoner who claimed spoliation did not show that videotapes were destroyed in bad faith and, therefore, was not entitled to adverse inference instruction; without having seen the video, no prison official could have known the tapes potentially contained adverse information and, without that knowledge, could not have destroyed the tapes for the purpose of hiding adverse information.

**16. Federal Courts ⟐625, 915**

On appeal from district court's denial of prisoner's motion for spoliation sanctions in his action against corrections officers for use of excessive force, prisoner waived argument that court should reopen discovery so that he could pursue evidence surrounding the destruction of prison videotapes, where prisoner made no such motion after trial counsel entered his appearance before the district court, and he did not raise this request until his reply brief on appeal.

# Exhibit F

Christopher W. Carmichael, Holland & Knight LLP, Chicago, IL, Mark P. Maciolek, Mnm Law Office, Madison, WI, for Plaintiff–Appellant.

Robert B. Bresette, Francis X. Sullivan, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before FLAUM, SYKES, and TINDER, Circuit Judges.

FLAUM, Circuit Judge.

Larry Bracey sued several corrections officers for the use of excessive force under the Eighth Amendment. Prison security cameras captured the incident, but the footage was ultimately erased when the cameras recorded over it about three days later. Bracey now appeals from the district court's denial of his motion requesting recruitment of counsel and its denial of his motion for spoliation sanctions. We affirm.

## I. Background

### A. Factual Background

Bracey, an inmate at the Wisconsin Secure Program Facility, suffered an injury in an altercation with corrections officers on July 29, 2005. The confrontation began when Bracey refused to exit his cell as requested by corrections officers executing a random search. Bracey ultimately relented when more officers arrived. They placed him in hand restraints and transferred Bracey to a holding cell.

Bracey's antics resumed upon arrival at the holding cell, however, when he prohibited the officers from removing the restraint on his left hand. (Officers had already removed his right hand from the restraints.) After several minutes of trying to talk Bracey into compliance, the officers pulled Bracey's restrained hand through the holding cell door to immobilize him and safely removed the final restraint. As a result, Bracey injured his forearm. The wound bled, soiling one officer's uniform.

After completion of the search and en route back to his regular cell, Bracey again became intransigent, repeatedly turning his head backward toward the officers in violation of prison policy.[1] He then, according to defendants, "aggressively jerked" his head toward Officer Eric Hunt, who responded with reactionary force by pinning Bracey against a nearby doorway. Bracey struggled, and the officers ultimately brought him down to the floor. After reapplying restraints, officers moved Bracey to a more secure part of the prison. This struggle inflicted a bump and quarter-sized bruise on Bracey's head.

Prison security cameras were positioned to record both incidents. These cameras operate on a loop, continuously recording information until their memory becomes full, which usually takes about three days. At that point, the cameras record over the oldest material. Prison policy at the time required download and preservation of security video only in certain situations. These situations did not include an officer's use of reactionary force unless the prisoner assaulted staff.

Two days later on August 1, Bracey filed an inmate complaint claiming Hunt "viciously attacked" him. During the investigation of this complaint, Bracey notified the prison that tapes of the incident probably exist. Bracey suggests he mentioned

---

1. Inmates must face forward during escort to prevent incidents of spitting, lunging, and head-butting of corrections officers.

Exhibit F

the recordings in his August 1 complaint, explaining that the "Offender Complaint included allegations . . . that the incident was recorded on the Prison's video recording system." In truth, Bracey did not explain the existence of the tapes until August 3, when the Inmate Complaint Examiner ("ICE") interviewed him and took his written statement. The ICE dismissed the complaint and forwarded Bracey's statement to the warden for processing.

Also on August 1, the Security Director Designee received incident and conduct reports documenting the July 29 incident. After reviewing those reports, the designee found the staff's response adequate and did not download the video for preservation.

**B. Procedural History**

Bracey filed this lawsuit in 2010 alleging that corrections officers used excessive force in violation of his Eighth Amendment rights. He also alleged spoliation in defendants' failure to download and preserve the video from the prison security cameras. After filing his complaint, Bracey requested the court's assistance in recruiting counsel. 28 U.S.C. § 1915(e)(1). The district court concluded Bracey had made adequate efforts to find his own attorney but found the allegations sufficiently straightforward and Bracey sufficiently competent to handle the case himself. It denied the motion.

Proceeding pro se, Bracey requested information relating to the destruction of the videotapes. After prison officials referred to certain prison policies in responding to Bracey's interrogatories, Bracey requested the policies themselves. The prison refused, and the district court denied Bracey's motion to compel, citing the need to preserve prison security.

As trial approached, Bracey sought sanctions for spoliation of the video recording. Shortly thereafter, Bracey secured his own counsel, who renewed Bracey's request for spoliation sanctions. The district court ultimately denied this motion, refusing the adverse inference instruction because none of the individual defendants were involved in the decision not to preserve the video.

Bracey lost at trial. He now appeals both the denial of his motion to recruit counsel and the denial of his motion for spoliation sanctions.

**II. Discussion**

**A. The District Court Did Not Abuse Its Discretion in Denying Bracey's Request for Counsel**

[1, 2] District courts may ask an attorney to represent a litigant unable to pay for his own lawyer. § 1915(e)(1). To qualify, the indigent litigant must make reasonable efforts at finding counsel himself. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir.2007) (en banc). If the litigant comes up short, then the district court must decide whether "given the difficulty of the case," the plaintiff is "competent to try it himself." *Id.* (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993)). Importantly, the district court must consider both halves of this equation—the difficulty of the case and the competence of the litigant. *Id.* at 660. When reviewing the district court's determination on complexity and competency, we consider the reasonableness of the district court's conclusion in light of the evidence as it stood at the time of the district court's decision. *Id.* at 659.

[3, 4] We review denials of § 1915(e) motions for an abuse of discretion. *Id.* at 658. Thus, we affirm unless the district court has applied the wrong legal standard (or made other errors of law), made clearly erroneous factual findings, or rendered a

clearly arbitrary decision without any support in the record. *Id.* Even then, an appellate court can only reverse when the absence of counsel prejudiced the litigant, which requires "a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* at 659 (emphasis in original). The government does not challenge the district court's conclusion that Bracey made reasonable attempts to obtain counsel himself, and Bracey does not challenge the district court's findings regarding the quality of his pro se representation. Instead, Bracey emphasizes "the difficulties [he] faced as a prisoner attempting to gather evidence."

[5, 6] Complexities anticipated (or arising) during discovery can justify a court's decision to recruit counsel. *Id.* at 655; *see also Santiago v. Walls,* 599 F.3d 749, 764 (7th Cir.2010). Bracey argues largely that the district court failed to consider the complexities involved in the investigation of the alleged spoliation of the videotapes. According to him, the district court's order makes no explicit mention of the spoliation issue when considering the complexity of the case. Thus, he continues, the district court decided his request for counsel without giving "significant weight" to this "very important factor." *Santiago,* 599 F.3d at 763.

[7] True, the district court's order denying the request for counsel did not explicitly comment on the spoliation issue, and the district court knew that issue existed when it ruled on the request.[2] But neither did the district court's analysis completely ignore discovery: "At the preliminary pretrial conference, plaintiff will be given the opportunity to ask questions he has about litigating his case and he will be instructed about how to use discovery techniques available to all litigants under the Federal Rules of Civil Procedure so that he can gather the evidence he needs to prove his case." Given the deferential standard of review, this language suffices to show the district court considered the complexity of spoliation-related discovery in this case, particularly when the district court had previously reserved that spoliation issue for discovery. Moreover, while we have recognized cases involving medical expert testimony or state of mind requirements as legally complex, *see Santiago,* 599 F.3d at 761, we have found no case in this circuit identifying spoliation as a complex legal issue supporting recruitment of counsel. In fact, other circuits have not found an abuse of discretion in denying counsel in cases also involving spoliation. *See Jennings v. Bradley,* 419 Fed.Appx. 594 (6th Cir.2011) (non-precedential); *Rhodes v. Robinson,* 399 Fed.Appx. 160 (9th Cir.2010) (non-precedential); *see also Brown v. Hertz,* 437 Fed.Appx. 496, 500 (7th Cir.2011) (non-precedential) (rejecting necessity of counsel to make county employees "more responsive to discovery requests"). Thus, we conclude that the district court did not abuse its discretion in its consideration of the complexity of the case.

[8, 9] Bracey does not directly challenge his competence to litigate the case.[3] He does, however, suggest that a lawyer

---

2. Bracey initially raised his allegations of spoliation as a stand-alone count in the complaint. Wisconsin does not recognize spoliation as an independent tort, however, so the district court dismissed that count, describing spoliation as an issue for discovery.

3. When evaluating a plaintiff's competence, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience. *Pruitt,* 503 F.3d at 655. The plaintiff's intellectual capacity and psychological history are also relevant. *Id.*

# Exhibit F

would have allowed him access to certain prison policies by permitting "attorneys' eyes only" review. This deficiency, though, relates not to Bracey's competency but merely to his status as a prison inmate. For this reason, Bracey's situation differs from the litigant's posture in *Santiago v. Walls*. In that case, the litigant's inability to investigate his claim after his transfer to a different prison—and the district court's failure to consider this fact—resulted in the court's abuse of discretion in denying the § 1915 request. *Santiago,* 599 F.3d at 762–63. Unlike the circumstances in *Santiago,* unique to that prisoner alone,[4] all inmates confront the discovery restrictions facing Bracey: internal prison policies have relevance in nearly every prison lawsuit alleging the excessive use of force.[5] Thus, if the need to access otherwise inaccessible documents requires recruitment of counsel, recruitment would result in nearly all such cases. Section 1915 does not impose that burden.

[10] Other considerations support the district court's decision as well. The district court offered Bracey instruction on discovery in federal court. And Bracey could always have renewed his request for counsel when confronted with the difficulties of obtaining prison security documents. Of course, a district court need not spontaneously revisit an earlier ruling on a § 1915 motion, but nothing prevents a pro se litigant from again requesting counsel later in a proceeding. *See Santiago,* 599 F.3d at 764 (noting court can "question . . . whether the language of the district court in disposing of the [§ 1915 motion] impermissibly prevented [the pro se litigant] from making later requests [for counsel]"). More importantly, when Bracey did eventually obtain counsel, he could have requested a continuance and asked to reopen discovery. He did not. While the court may have denied that request, if pro se discovery so hampered his case and if attorney-assisted discovery would have yielded significant benefits, one would expect Bracey to at least advance such a position.

In short, the district court knew of Bracey's spoliation allegations when concluding Bracey could handle the case himself. Bracey received pro se support and training resources. After all that, Bracey still could have requested counsel later in the proceeding or asked the court to reopen discovery, yet he chose not to pursue that course of action. On these facts, we find no abuse of discretion in denying Bracey's first and only request for counsel under § 1915(e). Because the district court did not abuse its discretion in evaluating the complexity of the case and Bracey's competence as a pro se litigator, we need not address the issue of prejudice.

### B. The District Court Did Not Abuse Its Discretion in Declining to Issue an Adverse Inference Instruction

[11–13] In this circuit, when a party intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence contained incriminatory content. *Faas v. Sears, Roebuck & Co.,*

---

4. *Santiago* itself recognized the uniqueness of the litigant in that case: *"*[A]lthough the principles of law we articulate are well-established*,* our precise holding is limited to the facts and circumstances found in the record of this litigation. In that sense*,* our *holding,* like a special railroad fare, is limited 'to this day and this train only.' " 599 F.3d at 766 (emphasis in original).

5. Among the potentially relevant questions such policies might answer are: When are corrections officers authorized to use force? How much force is authorized in certain situations? What preliminary measures must officers take before resorting to force?

532 F.3d 633, 644 (7th Cir.2008). When considering the propriety of such an adverse inference instruction, "[t]he crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir.2002) (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982)); *see also Norman–Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir.2010). A party destroys a document in bad faith when it does so "for the purpose of hiding adverse information." *Faas*, 532 F.3d at 644 (quoting *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir.2001)). We review a district court's denial of an adverse inference instruction for abuse of discretion, *Park*, 297 F.3d at 615, but " 'bad faith' is a question of fact like any other," *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir.1998). Bracey requested an adverse inference instruction regarding the destroyed videotape, which the district court denied. He now raises two arguments on appeal. Both lack merit.

[14] First, Bracey suggests that the district court abused its discretion by denying the motion prematurely. According to Bracey, he lacked access to the evidence necessary to show spoliation, preventing the district court from making the fact-intensive inquiry a spoliation motion requires and resulting in an inherently arbitrary decision. This argument attempts to shift the burden of proof. As the moving party, Bracey must establish the defendants destroyed the videotapes in bad faith. *Rummery*, 250 F.3d at 558 (denying adverse inference instruction when moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide" incriminatory evidence). On the evidence available, he has not done so. The mere fact that some evidence remained unavailable to him does not lessen his burden of proof.[6]

[15] Second, Bracey argues the merits of the spoliation motion, challenging the district court's finding that "defendants are just not in any way responsible for the destruction of the film." According to Bracey, defendants had a duty to preserve the video so its destruction compels issuing an adverse inference instruction. Simply establishing defendants' duty to preserve, however, is not enough: Bracey must also show destruction in bad faith. Assuming—without deciding—that defendants had a duty to preserve the tapes, bad faith requires destruction "for the purpose of hiding adverse information." *Faas*, 532 F.3d at 644. Bracey asserts only that a prison security officer reviewed his complaint. He makes no assertion that any prison official actually viewed the relevant video (or deliberately avoided watching the video for fear of what it contained). Without having seen the video, no prison official could have known the tapes potentially contained adverse information and, without that knowledge, could have destroyed the tapes for the purpose of hiding adverse information. In this regard, *Mathis v. John Morden Buick, Inc.* is instructive. In that case, the owner of the defendant car dealership intentionally destroyed documents that he had a legal obligation to preserve. *Mathis*, 136 F.3d at 1155. Nevertheless, his opponent did not show bad faith—that the owner had destroyed the documents "for the purpose of hiding adverse information"—so no adverse inference instruction could issue. *Id.* at 1155–56; *see also Trask–Morton v. Motel 6 Op-*

---

6. We note also that Bracey has not appealed the district court's denial of his motion to compel production of the prison security policies that Bracey believes will provide the evidence supporting his spoliation argument.

# Exhibit F

*erating L.P.,* 534 F.3d 672, 681–82 (7th Cir.2008) (affirming denial of spoliation sanction where no evidence of bad faith); *Park,* 297 F.3d at 615–16 (affirming denial of spoliation sanction when records destroyed under routine record expungement policy); *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir.1985) (affirming denial of spoliation sanction when records destroyed under routine procedures). Nothing in any of Bracey's filings shows defendants destroyed the video because of any damaging content it may have contained. Without that showing, *Mathis* forecloses Bracey's entitlement to an adverse inference instruction.

We recognize that a number of district courts have issued adverse inference instructions in situations similar to Bracey's. *See Kounelis v. Sherrer,* 529 F.Supp.2d 503, 519–21 (D.N.J.2008); *LaJocies v. City of N. Las Vegas,* No. 2:08–cv–606–GMN–GWF, 2011 WL 1630331, at *3–5 (D.Nev. Apr. 28, 2011); *Peschel v. City of Missoula,* 664 F.Supp.2d 1137, 1143–44 (D.Mont. 2009). That other trial courts have reached different conclusions on similar facts, however, does not amount to an abuse of discretion by the district court in this case. Indeed, discretion by its very nature permits different judges to reach different—but reasonable—conclusions on the same set of facts. Some circuits have adopted less stringent standards than we require for issuing an adverse inference instruction. *Compare Park,* 297 F.3d at 615 (requiring intentional destruction in bad faith), *with Adkins v. Wolever,* 692 F.3d 499, 504–05 (6th Cir.2012) (requiring only negligent destruction and a duty to preserve), *and Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993) (bad faith not required for adverse inference instruction). Simply establishing a duty to preserve evidence or even the negligent destruction of evidence does not automatically entitle a litigant to an adverse inference instruction in this circuit. Bracey has not made the requisite showing of bad faith, and we cannot conclude that the district court abused its discretion in declining to issue an adverse inference instruction.

**[16]** Finally, in his reply, Bracey asks the court to reopen discovery so he can pursue evidence surrounding the destruction of the videotapes. He made no such motion after trial counsel entered his appearance before the district court and has not raised this request until his reply brief so that argument is waived. *See Coleman v. Hardy,* 690 F.3d 811, 818 (7th Cir.2012) (argument not raised before district court waived); *Dye v. United States,* 360 F.3d 744, 751 n. 7 (7th Cir.2004) (argument first raised in reply brief waived). Given his prior opportunities to make these requests and the civil nature of Bracey's claims, neither do the interests of justice require reopening discovery in his case.

In short, Bracey bears the burden of showing defendants had a duty to preserve the videotape and destroyed that video in bad faith. That burden has not been met.

### III. Conclusion

For these reasons, we AFFIRM the district court's denial of Bracey's request for the recruitment of counsel and its denial of Bracey's request for an adverse inference instruction.



# Exhibit F