UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   Case No. 16-CR-21

SAMY HAMZEH,

        Defendant.

**Government Response to Defendant's Superseding Discovery Motion**

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby responds to the defendant's February 15, 2019 Superseding Motion to Compel ("Superseding Motion").

    I.    Texts and Emails (Defense Categories 1 and 2)

The government agrees with Hamzeh that "there is nothing left to do" with respect to the production of text messages. Superseding Motion at 1. All text messages in the government's possession for Agents Adkins, Zuraw, and Fraser have been produced. So too emails.

As to the text redaction issue, Hamzeh's request is for the government to remove every redaction it made to every text it produced. In an effort to avoid continued discovery disputes, the government redacted the produced texts very minimally. *See* R.209 Ex. A., B. and C. (Exhibits to Hamzeh Fifth Motion to Compel). Hamzeh

1

nonetheless asserts that "redacted texts may potentially [improperly] conceal" certain information. But he has not identified with any particularity which redactions he believes were improper or his basis for that belief. Thus, he has provided the Court with little upon which to base an order to unredact this discovery. There were no improper redactions, and this request should be denied.

II. Confidential Human Sources (Defense Categories 3 and 5)

Hamzeh's request for discovery related to the two confidential human sources can be divided into four categories: benefits, instructions/admonishments, CHS file materials, and CHS recording devices.

As to benefits, the CHSs received no immigration benefits, and all discovery related to their financial compensation is covered in the government's CIPA filings.

As to CHS file materials including reports and reviews, the government responded to this request in its response to Hamzeh's Fourth Motion to Compel. Some administrative documents related to CHSs were the subject of the government's CIPA filings. Beyond those, the government has repeatedly informed the defense the government has produced all *Giglio* material in its possession. The defense has identified no reason to believe there is any such material it has not received.

As to instructions and admonishments, the government and defense have corresponded repeatedly on this topic. Hamzeh states that "what troubles [him] is that the government seems to believe that it need not provide instructions that are not memorialized." Fourth Motion to Compel at 4. Beyond being facially confusing (how can the government produce something that does not exist?) the government attempted to

2

work through this issue with Hamzeh, and, in the spirit of putting these discovery issues to bed, even produced a report regarding Special Agent Adkins's reminder to a CHS to record his conversations with Hamzeh. *See* Defense Fourth Motion to Compel at 4 (discussing July 30, 2018 Adkins Report).

The government has produced every document it can regarding instructions given to a CHS. It has no obligation to *create* anything for production to Hamzeh, and Hamzeh has stated no basis and cited no authority for the proposition that he is entitled to anything beyond what he has received. At trial, the defense may endeavor to question the government's witnesses regarding CHS handling. But its discovery requests are not civil interrogatories. There is no evidence that the government has not complied with *Brady* or *Giglio* requirements. The defense cites no basis for its request that this Court compel the government to produce items that do not currently exist.

Finally, as to CHS recording devices, much of the information sought is addressed in the government's CIPA filings. Beyond that, as set out in the government's response to Hamzeh's Fourth Motion to Compel, Hamzeh claims that Category 3 "information is discoverable because it is *Brady* material" on a theory that "part of the defense's concern in this case is that for 35 days one CHS did not record any conversations with Hamzeh, despite meeting with him nearly daily." Defense Fourth Motion to Compel at 6. That is not correct. The defense does not explain why this absence of recordings is exculpatory. Giving Hamzeh the benefit of the doubt, he did set out a theory in a different filing that the absence of inculpatory recordings is itself exculpatory – *i.e.*, if Hamzeh had conversations during which he was not discussing slaughtering people with machine

3

guns, that would be exculpatory. Defense Third Motion to Compel (September 4, 2018) (Dkt. No. 174) at 6.

That argument has been universally rejected, including by the Seventh Circuit. *See, e.g.*, *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) (rejecting defendant's "theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory." (citing *Brady v. Maryland*, 373 U.S. 83 (1963)); *see also United States v. Kennedy*, 819 F. Supp. 1510, 1519 (D. Colo.), *aff'd sub nom. United States v. Byron*, 994 F.2d 747 (10th Cir. 1993) ("Citing *Brady*, many defendants have made broad metaphysical requests for the production of the absence of evidence inculpating them in the crimes charged. *Brady* requires the production of material information which is 'favorable to the accused,' that is, exculpatory information, not information which is merely, 'not inculpatory' and might therefore form the groundwork for some argument for the defendant.") (citations omitted).

III.  Recorded Phone Calls (Defense Category 4)

Hamzeh "believes there are recordings of telephone conversations that have not been produced" because the defense "compar[ed] the informants' phone calls to the number discussed at the spoliation hearing and then comparing those calls to the recordings that were produced." Superseding Motion at 4. The government and defense met and conferred on this topic, and as the government explained by phone, every recording has in fact been produced. Some phone calls are answered, and some are not; thus, some calls to the phone numbers discussed at the spoliation hearing led to recordings, and some did not. All call recordings have been produced.

4

IV.     Surveillance (Defense Category 6)

As Hamzeh indicates, the materials he requests here either do not exist or were addressed in its CIPA filings. Further, as discussed above, *Brady* is not implicated by any materials sought here.

V.      Early Identification of Potential Government Exhibits (Defense Category 7)

On September 18, 2018, Samy Hamzeh moved for a court order that the government produce its trial exhibit list 45 days before trial for exhibits drawn from: "(1) any data obtained from devices seized from Hamzeh or his home following his arrest; and (2) any evidence obtained by use of pole cameras." Defense Exhibit List Motion at 1. For the convenience of the Court, the government's previously filed response is copied here.

Hamzeh cites no authority in support of his motion and offers no reciprocal production of any kind, for exhibits the defense might introduce from those or any other sources. In fact, despite repeated requests, the defendant has produced no reciprocal discovery other than its expert disclosures. The motion should be denied.

As set out in the District Court's "Tips for Parties Practicing Before Judge Pepper," "unless [Judge Pepper] order[s] otherwise in a particular case, please file . . . proposed exhibit lists . . . no later than seven days prior to the final pretrial conference date." Pepper Rules at 9. Although we do not yet have trial or final pretrial conference dates in this case, the government expects that the parties will produce their exhibit lists in advance of the final pretrial conference. That, in the government's experience, has been standard practice before Judge Pepper. Further, the government will produce its exhibit list as soon as it is

5

ready, even in advance of Judge Pepper's requirement if at all possible. But the government should not be required to finalize its exhibit list 45 days before trial, to the exclusion of the introduction of any exhibit identified during trial preparation.

Hamzeh's assertion is that, without 45 days with the government's exhibit list, he cannot be reasonably expected to review his cell phone, his PlayStation, and a laptop taken from and returned to his home. So too for pole camera footage that the government produced to him at his request. *See* Exhibit A (August 7, 2018 Government Discovery Letter), Exhibit B (August 9, 2018 Defense Discovery Letter), and Exhibit C (August 10, 2018 Government Discovery Response Letter). But the nature and volume of the materials identified do not come remotely close to justifying the requested court order.

*United States v. Russo*, 483 F. Supp. 2d 301, 309–10 (S.D.N.Y. 2007), is instructive. In that case, "the government . . . produced approximately 16,000 pages of documents, as well as several audio tapes and transcripts," and "given the volume of discovery provided by the government, Defendants request[ed] that the government identify its trial exhibits thirty days prior to trial." The *Russo* court rejected that request. It explained that although district courts may order the production of exhibit lists pretrial in order to facilitate orderly trials, the cases cited by the defendant did not support the defendant's claim to needing the government's exhibit list 30 days before trial. "In *United States v. Falkowitz*, for example, the district court ordered the designation of exhibits one week before trial, where the government had produced about 100,000 pages in a prosecution for conspiracy and wire fraud." *Id*. (citing 214 F. Supp. 2d 365 (S.D.N.Y. 2002)).

6

The *Russo* court also cited *United States v. Earls* to support its holding that 30 days pre-trial was simply too early, as in *Earls*, where discovery was "voluminous," the district court ordered designation of exhibits "10 days before trial." *See also United States v. Prince*, 618 F.3d 551, 561–62 (6th Cir. 2010) (rejecting the defendant's claim under Rule 16(a)(1)(E)(ii) that the district court abused its discretion by not requiring the government to specifically identify the exhibits it intended to introduce at trial from among the estimated 70,000 pages of discovery materials that were provided to the defendant); *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003) ("The defendants complain that the Government's discovery was so voluminous that it hindered their pretrial preparation. The discovery was indeed voluminous—because the Government gave the defense access to far more information and materials than the law required. The defendants could hardly complain about that.").

The analysis here is not unlike that with regard to a motion for a bill of particulars. Thus, to the extent Hamzeh's position is that the present situation leaves him unable to prepare a defense without further government guidance, his request must fail. Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars where the charges in the indictment are so general that they do not instruct a defendant of the specific act he is accused of committing. *United States v. Canino*, 949 F.3d 928, 949 (7th Cir. 1991). But a bill of particular is not designed to provide the defendant with details of the government's witnesses, legal theories, or evidentiary detail. *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927). And the government does not need to disclose

7

the details of how it will prove its case. *United States v. Blanchard*, 542 F.3d 113, 1140 (7th Cir. 2008).

Courts have generally held that the government's "open-file policy" is "an adequate satisfactory form" that makes a bill of particulars unnecessary. *Id.*; *United States v. Musgrave*, 845 F. Supp. 2d 932, 942-943 (E.D. Wis. 2011) (adopting recommendation of Joseph, M.J., that denied the defendant's request for bill of particulars where defendant had "ample access to the factual information necessary to prepare his defense" in part because "the government is complying with its open file policy and has provided the defendant with pretrial discovery") (citations omitted).

Relatedly, to the extent this information will be covered in expert disclosures, the parties are required to make expert disclosure no later than 15 days before the commencement of trial under the Local Criminal Rules of the Eastern District of Wisconsin. The government intends to comply with the Local Rules concerning the timing of expert disclosures. To the extent Hamzeh asks the Court to order expert disclosures be made contrary to the schedule set out in the Local Rules, that request should be denied.

Ultimately, the discovery in this case is nothing like that in a complex corporate fraud case, for example, in which there are hundreds of millions of pages of corporation documents that it would be extremely difficult for a single defendant to navigate. Instead, Hamzeh's request is about his phone, his video game console, his family laptop, and pole camera footage that he demanded. The government will continue to respond as quickly and liberally as it can to Hamzeh's discovery requests. The government will also produce

8

Case 2:16-cr-00021-PP Filed 03/01/19 Page 8 of 10 Document 217

to the defense its exhibit list the moment it is complete (and certainly in advance of any court order). But there is no reason for this Court to deviate from its standard practice and lock the government into an exhibit list 45 days before trial. And there is no reason Hamzeh cannot look through his own cell phone in the meantime to see if there is any incriminating evidence on it.

Finally, any Court order on this subject should apply equally to both parties. And "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness [i.e., on cross-examination] or a witness called by a Defendant." *United States v. Napout*, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (collecting cases). "Where a defendant cross-examines a government witness to buttress her theory of the case, rather than to impeach the testimony given by the witness on direct examination, the cross-examination is properly seen as part of the defendant's case-in-chief. Indeed, this interpretation of Rule 16 has been adopted by almost every district court to consider the issue." *Id*. (citations and quotation marks omitted).

VI. Relief Sought (Defense Category 8)

Hamzeh states that he believes it may be appropriate to conduct a second spoliation hearing regarding recorded calls and email. The government did not object to the first spoliation hearing. The government does object to a second spoliation hearing.

Spoliation is not typically at issue in a criminal case – and instead, for example, a defendant might pursue possible Jencks Act or *Brady* violations. Here, there is no evidence of a *Brady* or Jencks act violation. There is simply no basis upon which to permit

9

the pre-trial cross examination of potential government witnesses at a second spoliation hearing. The prior hearing was conducted because the defense identified particular text messages that it had not received. It has done no such thing with respect to emails. Instead, its claim is a purely speculative. As for recordings, as discussed above, the defense has received every recording produced via use of the phone numbers discussed at the first spoliation hearing. Some calls that would have been recorded had the recipient of the call answered his phone were just not answered by the intended recipient. There was thus no conversation to record.

## CONCLUSION

For the reasons set forth above and in the government's August 8, 2018 and September 25, 2018 CIPA motions, Hamzeh's Superseding Motion to Compel should be denied.

Dated at Milwaukee, Wisconsin this 1st day of March, 2019.

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By: */s/ Benjamin Taibleson*

Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
E-Mail: benjamin.taibleson@usdoj.gov