# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          **Plaintiff,**

    **v.**                      **Case No. 16-CR-21**

SAMY HAMZEH,

          **Defendant.**

## ORDER ON THE DEFENDANT'S DISCOVERY MOTIONS

### 1. Background

Samy Hamzeh is accused of unlawfully possessing two machine guns and one silencer. (ECF No. 6.) But this case is not a simple firearms case. Hamzeh acquired these firearms as part of an alleged plan to kill dozens of people to "defend Islam." (ECF No. 1.) Hamzeh alleges he was entrapped by confidential informants who were motivated to present him as a terrorist so that they might receive benefits from the FBI.

Over the course of this protracted case Hamzeh has filed a variety of discovery motions. In response to several of the motions the government indicated a willingness to provide Hamzeh with at least some of the information sought. The court had more than one status conference with the parties at which the discovery motions were

discussed, and at various times it was determined that the motions were either moot or generally on track toward resolution between the parties. But the filing of additional motions would cause the process to repeat.

It light of the number of pending motions and uncertainty as to which issues actually remained unresolved, at a February 1, 2019 status conference the court ordered Hamzeh to file a single, comprehensive motion addressing all unresolved discovery issues. (ECF No. 213.) The expectation was that all prior motions would be rendered moot.

Hamzeh filed a motion that partially supersedes his other pending discovery motions. (ECF No. 214.) He states, "It does not, however, supersede the defense's [Classified Information Procedures Act] CIPA brief and request for oral argument about why the various categories of information for which the government has claimed CIPA protection are discoverable and should be turned over to the defense." (ECF No. 214 at 1.) He identifies seven categories of information that remain in dispute.

Therefore, the following motions are **dismissed as moot**: Motion to Supplement Record Regarding Second *Brady* Motion (ECF No. 158); Third Motion to Compel *Brady* and Rule 16 Material: Intercepted Communications (ECF No. 174); Fourth Motion to Compel Brady and Rule 16 Material (ECF No. 177); Motion for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial (ECF No. 178); Unopposed

Motion to Adjourn Status Conference (ECF No. 188); Fifth Motion to Compel *Brady* and Rule 16 Material (ECF No. 209).

Hamzeh's motions to seal (ECF Nos. 200, 210, 215) are **granted**.

## 2. Text Messages

Although Hamzeh has not received all text messages, based on the evidence adduced at the spoliation hearing (ECF Nos. 203, 205) the court finds that those messages which Hamzeh has not yet received are unrecoverable due to a technical failure beyond the government's control. However, Hamzeh states he is still seeking unredacted copies of the text messages he has received. The government responds that it "redacted the produced texts very minimally" (ECF No. 217 at 1) and argues that its redactions were all proper (ECF No. 217 at 2). It notes Hamzeh "has not identified with any particularity which redactions he believes were improper or his basis for that belief." (ECF No. 217 at 2.) Hamzeh replies that he "believes the Court will understand his position simply by reviewing the redactions, which don't appear to be confined to confidential personal information." (ECF No. 218 at 1.)

The court has reviewed the text messages in their redacted form, which Hamzeh submitted to the court under seal. (ECF No. 211.) The court finds accurate the government's representation that the redactions were minimal. In fact, Hamzeh concedes as much. (ECF No. 209 at 3 ("To the government's credit, few are redacted, and some of the redacted texts appear likely to legitimately obscure sensitive

information.").) Of the hundreds of text messages, there are only roughly 40 redactions, spanning from a few characters to one redaction that spans nine lines of text. Most redactions appear to be of just a word or two. Only a few messages are redacted in their entirety. The nature of the redacted material is often readily discernable from the context of the message.

The United States must provide to Hamzeh any document within its "possession, custody, or control" if "the item is material to preparing the defense," "the government intends to use the item in its case-in-chief at trial" or "the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E); Crim. L.R. 16(a) (E.D. Wis.). The court understands Hamzeh to be arguing that the redacted information is "material to preparing the defense." "Documents are 'material to preparing the defense' if they could 'significantly help[] in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal.'" *United States v. Caputo*, 373 F. Supp. 2d 789, 793 (N.D. Ill. 2005) (quoting *United States v. Gaddis*, 877 F.2d 605, 611 (7th Cir. 1989)) (internal quotation marks omitted).

The defendant has the burden to make "at least a prima facie showing of materiality." *United States v. Caputo*, 373 F. Supp. 2d 789, 793 (N.D. Ill. 2005) (citing *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir. 1991)). "To make a prima facie showing, a defendant cannot rely on general descriptions or conclusory arguments, but must convincingly explain how specific documents will significantly help him uncover

admissible evidence, prepare witnesses, or corroborate, impeach, or rebut testimony."
*United States v. Caputo*, 373 F. Supp. 2d 789, 793 (N.D. Ill. 2005).

Hamzeh has failed in his burden to make the requisite prima facie showing of materiality. As the government points out, he has not identified which redactions he believes were improper and his basis for that belief. He offers only speculation that "redacted texts may potentially conceal the identities of witnesses, other useful or exculpatory information, or information necessary to understand the text." (ECF No. 209 at 3.) Such bald conjecture is insufficient. Therefore, the court will deny Hamzeh's motion with respect to text messages.

### 3. Emails

On July 25, 2018, in light of the government's lack of opposition, the court ordered the government to disclose to Hamzeh "e-mail[s] on both the FBI internal (FBI net) and FBI official external (Internet Café-IC) to/from all agents, TFOs, CHSs or professional support staff relating in any way to the investigation." (ECF No. 150 at 2); *United States v. Hamzeh*, No. 16-CR-21, 2018 U.S. Dist. LEXIS 124342, at *2 (E.D. Wis. July 25, 2018). Hamzeh states he has received only eleven pages of emails and argues that testimony from the spoliation hearing suggests additional emails are available. (ECF No. 214 at 2-3.)

The government does not materially respond to this issue. Although its response brief contains the heading, "Texts and Emails (Defense Categories 1 and 2)," in the

paragraphs that follow the government discusses only the redaction of the text messages other than to say that it has produced all emails in the its possession "for Agents Adkins, Zuraw, and Fraser." (ECF No. 217 at 1-2.)

In reply Hamzeh contends that it simply doesn't make sense that, in an investigation involving as many people as this one, only eleven pages of emails were generated. (ECF No. 218 at 6.) He points to the testimony of FBI Special Agent Zuraw, who estimated that he sent ten to fifteen emails as part of this case and received a similar number. Hamzeh also notes that Special Agent Adkins testified he never looked for or attempted to retrieve emails. (ECF No. 215 at 6 (citing ECF No. 205 at 53).)

The fact that Adkins did not look for emails is irrelevant absent any evidence that it was his responsibility to retrieve emails for discovery purposes. (*Cf*. ECF No. 205 at 32 (testimony of an FBI analyst stating he believed discovery requests regarding emails were handled by the Office of General Counsel).) As to Zuraw's estimate that he sent maybe as many as fifteen emails and perhaps received the same number, Hamzeh does not state how many emails were contained on the "eleven pages of emails" that he says were produced. Moreover, another agent testified that communication about the case was not typically through email. (ECF No. 205 at 116; *see also* ECF No. 205 at 124.) He testified that emails were generally limited to matters such as "our calendars, our schedules, trying to coordinate if we're available for either surveillance or some sort of operational activity outside of the office." (ECF No. 205 at 117.)

Regardless of whether Hamzeh could persuade the court of the validity of his suspicions that the United States' disclosure has been incomplete, there is simply no relief the court can grant Hamzeh. The court has already ordered that all emails related to this investigation be turned over to Hamzeh. The United States has repeatedly represented that it has done so. Hamzeh's disbelief notwithstanding, there is simply nothing more the court can do. *See United States v. Rahman*, No. 11-CR-103, 2011 U.S. Dist. LEXIS 155131, at *8 (E.D. Wis. Nov. 10, 2011) ("Although a federal court's authority is great, it has its limits; the court obviously cannot compel the government to disclose what it does not know."). Therefore, the court will deny Hamzeh's motion with respect to emails.

## 4. Informants

Hamzeh seeks information in nine broad categories regarding the confidential informants used by the FBI (and, with respect to certain categories, alleges the court has already ordered disclosure).

### 4.1. Benefits Received by Informants

Hamzeh seeks "all benefits given to or requested by the informants, including any payments, immigration benefits, or favors of any form. (This was ordered as item 6 of the Court's prior order R.150)," "the underlying documentation relating to any payments (ordered produced by the Court on March 8, 2018, but never turned over based on a CIPA claim)," and "the informants' reported motivations for cooperating,

identification of all benefits, including travel to and from the United States, the documentation underlying those benefits." (ECF No. 214 at 3-4.)

With respect to these requests, the government responds, "the CHSs received no immigration benefits, and all discovery related to their financial compensation is covered in the government's CIPA filings." (ECF No. 217 at 2.)

The court is addressing the CIPA matters by way of a separate order, and finds that order resolves these requests.

### 4.2. Instructions to or Admonishments of Informants

Hamzeh seeks "instructions given to the informants, whether or not reduced to writing," "any admonishments to the informants. (This was ordered as item 14 of the Court's prior order R.150)," and "violations of policies and instructions by the informants. (This was ordered as item 14 of the Court's prior order R.150)." (ECF No. 214 at 3-4.)

The government responds that it has turned over all documents it has in its possession that are responsive to these requests. Therefore, again, there is nothing more for the court to do. But Hamzeh demands that the government not merely provide the documents it has but tell him about any verbal instructions or admonishments given to the informants—which would require the government to create new documents to answer his inquiry.

In a prior motion, Hamzeh stated, "What troubles Hamzeh is that the government seems to believe that it need not provide instructions that are not memorialized." (ECF No. 177 at 4.) Hamzeh insists that, by refusing to create documents responsive to his inquiry, the "government[] [is] misunderstanding of its obligations under Rule 16 and *Brady*." (ECF Nos. 177 at 5; 209 at 7 ("The government has chafed at Hamzeh's request for all instructions, but in doing so it has revealed an apparent misunderstanding of its obligation to supply information whether memorialized or not.").) He contends, "When the government says it has identified all instructions given to the CHSs, Hamzeh is entitled to assume that representation encompasses all instructions given by the FBI agents and the investigative team, not just those they later write down." (ECF No. 177 at 5.) Moreover, to the extent the discovery contains the agents' instructions to the informants, Hamzeh demands that the government identify all such instances of instructions. (*See, e.g.*, ECF No. 177 at 3-4.)

The court agrees that underlying this dispute is a misunderstanding as to the government's obligations under Rule 16 and *Brady*. But it is Hamzeh, not the government, that misunderstands those obligations. The government aptly equates Hamzeh's demands to civil interrogatories. But there is no analog in the Criminal Rules to Fed. R. Civ. P. 33. *See United States v. Bailin*, 816 F. Supp. 1269, 1275 (N.D. Ill. 1993); *United States v. Saucedo*, No. 90 CR 309, 1991 U.S. Dist. LEXIS 15769, at *7 (N.D. Ill. Aug. 23, 1991); *United States v. Craig*, No. 87 CR 436-1&2, 1987 U.S. Dist. LEXIS 8453, at *5

(N.D. Ill. Sep. 3, 1987). Moreover, although Rule 16(a)(1)(E) requires the government to disclose evidence, it does not require the government to create evidence. *See Harris v. United States*, No. 1:09-cv-1416-TWP-DKL, 2013 U.S. Dist. LEXIS 45780, at *7-8 (S.D. Ind. Mar. 29, 2013). If a document does not exist, there is no obligation to disclose. *United States v. Amaya-Manzanares*, 377 F.3d 39, 42 (1st Cir. 2004); *United States v. Kahl*, 583 F.2d 1351, 1354 (5th Cir. 1978) ("It clearly was not error to refuse to grant discovery of documents that did not exist."); *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973) ("[T]he government cannot disclose what it does not have …."). Thus, if an agent provided oral instructions or admonitions to a confidential informant, the government has no obligation to now record those instructions or admonitions so that they may now be disclosed to Hamzeh.

To the extent Hamzeh is demanding that the government identify every document it disclosed that contains an agent's instruction or admonition to a confidential informant, the court finds Hamzeh's request without merit. Again, although this sort of request might be within the scope of an interrogatory under Fed. R. Civ. P. 33, there is no analog in the criminal rules.

Finally, since *Brady* is a disclosure rule, not a discovery rule, *Weatherford v. Bursey*, 429 U.S. 545, 559-60 (1977); *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996), the court finds even less of a basis to sustain Hamzeh's requests under that rule.

### 4.3. Informant File Materials

Hamzeh seeks "the initial suitability report," "annual or other reviews of the informants," and "the most recent criminal histories for each CHS." (ECF No. 214 at 3-4.) The government responds, "Some administrative documents related to CHSs were the subject of the government's CIPA filings. Beyond those, the government has repeatedly informed the defense the government has produced all *Giglio* material in its possession. The defense has identified no reason to believe there is any such material it has not received." (ECF No. 217 at 2.)

As to "the most recent criminal histories for each CHS," the court understands the government to have already provided Hamzeh with this information. What Hamzeh is seeking is an update. The court denies this request. The government agreed to disclose all *Giglio* material at least 90 days before trial. *United States v. Hamzeh*, No. 16-CR-21-PP, 2017 U.S. Dist. LEXIS 90634, at *12 (E.D. Wis. May 9, 2017) (citing ECF No. 32 at 13)). The court finds disclosure of the informants' criminal histories at that time to be sufficient. The government does not have any obligation to monitor the informants' criminal records or to provide updates to the defendant on demand. Disclosure 90 days before trial both affords Hamzeh adequate time to review and investigate the information and also mitigates the risk that the information will materially change between the time of disclosure and trial.

As to the remaining requests, to the extent these requests are not resolved under CIPA, they are denied. The government represents that "the initial suitability report" and any "annual or other reviews of the informants" do not contain exculpatory material. *Brady* and its progeny do not entitle a defendant to more. Nor has Hamzeh made the requisite prima facie showing of materiality to be entitled to this information under Rule 16.

## 5. Recordings

Hamzeh insists the government has failed to provide him with all recordings of relevant telephone calls. (ECF No. 214 at 4-5.) The government responds that it has provided all recordings, and the discrepancies suggested by the spreadsheet created by defense counsel (ECF No. 216) are the result of inconsistencies in calls being logged when the call went unanswered. (ECF No. 217 at 4.) In reply, Hamzeh expresses his doubt as to the government's explanation. He notes that there are recordings in the discovery of calls going unanswered or going to voicemail; thus, he wonders why others were not similarly recorded. (ECF No. 218 at 6.)

The court is again at a loss as to what Hamzeh expects the court to do. It has ordered recordings to be produced; the government has repeatedly said it has disclosed all that it has. There is nothing more the court can do. Therefore, the court will deny Hamzeh's motion with respect to recorded telephone calls.

## 6. Documents Regarding Recordings

In a July 25, 2018 order, when presented with no objection from the government, the court ordered the government to disclose: "if the CHS had recording equipment routinely assigned to him for extended periods of time, which is routine with CHS's in the FBI"; "if that recording equipment was in the possession while the CHS was having unrecorded conversations with Hamzeh"; and "FD-302's regarding obtaining custody of the recording devices from the CHS or undercover agents, the downloading and chain of custody for the digital recording devices and the production of the original CDs from those recording devices for every recorded conversation." (ECF No. 150 at 3-4.)

In a subsequent motion, Hamzeh stated he "is seeking an order requesting the government to identify when the CHS's had recording devices checked out to them; what type of recording devices were used; and what instructions were given as to when to record Hamzeh." (ECF No. 177 at 5.) He argues this information is exculpatory under *Brady* because "for 35 days one CHS did not record any conversations with Hamzeh, despite meeting with him nearly daily." (ECF No. 177 at 6.)

The government responds, "as to CHS recording devices, much of the information sought is addressed in the government's CIPA filings." (ECF No. 217 at 3.) To the extent the request is not addressed under CIPA, the government notes that the Court of Appeals for the Seventh Circuit has rejected the premise that the absence of an

inculpatory recording is exculpatory. (ECF No. 217 at 3 (citing *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993)).)

In reply, Hamzeh argues that in certain cases the absence of inculpatory evidence is exculpatory and, given the nature of his defense, this is such a case. (ECF No. 218 at 4-5.) He explains:

> the reason we want to know when the CHSs had the recording devices and could record (but didn't) is because the defense is attempting to show that not only was Hamzeh not predisposed to commit this crime, the CHSs were creating a crime and inducing Hamzeh to commit it while refusing to record because they didn't want their actions disclosed. After all, the in-person recordings stop after Hamzeh responds with apathy to Mike's discussions about getting a machine gun on December 14th and the recordings only resume after the Masonic plot is developed. The information sought is relevant and exculpatory to establish that the CHSs had the ability to record during their daily meetings with Hamzeh but chose not to.

(ECF No. 218 at 5.)

The court previously ordered the government to provide Hamzeh with the information set forth above because the government did not object to Hamzeh's request. Notwithstanding the court's order, Hamzeh represents that the United States has not complied. To the extent the court's prior order or the present motion applies to recorded telephone calls, the motion is resolved by the court's CIPA order. However, the court does not find the government's CIPA proceedings as encompassing recordings of in-person conversations. In this regard, the government's argument raised in its most-recent response (ECF No. 217 at 3) is untimely as to the relief the court already ordered

(ECF No. 150 at 3-4). The court finds nothing more is required other than to reiterate its prior order.

As to the relief sought in Hamzeh's more-recent motion, whereby he "is seeking an order requesting the government to identify when the CHSs had recording devices checked out to them; what type of recording devices were used; and what instructions were given as to when to record Hamzeh," the requests are denied. The first request is covered by the court's prior order. As to the second, the court finds Hamzeh has failed to demonstrate the relevance of this information. Finally, Hamzeh's request for instructions that agents gave to the informants is addressed above.

### 7.  Surveillance

Hamzeh asks the court to order the government to disclose all the surveillance techniques it used in its investigation. (ECF No. 214 at 5.) The government responds, "the materials he requests here either do not exist or were addressed in its CIPA filings. Further, as discussed above, *Brady* is not implicated by any materials sought here." (ECF No. 217 at 5.)

The court agrees that portions of this request are resolved under CIPA. Beyond that, the government represents that nothing further exists. With that representation, the court finds there is nothing more for the court to do with respect to this request.

### 8. Notice of Government's Intent to Use Certain Evidence

Hamzeh asks that the government disclose to him, at least 45-days before trial, any evidence derived from "devices seized from Hamzeh or his home following his arrest" or "obtained by use of pole cameras." (ECF No. 214 at 6.) He argues that pretrial disclosure is necessary because, by virtue of the vast quantities of data that can be stored on these devices, "it is unreasonable for the defense to have to decipher which needles in these haystacks the government might decide to use." (ECF No. 214 at 6.) The court understands Hamzeh to be addressing specifically "a cell phone from Hamzeh, and a PlayStation and a MacBook computer from his family's home." (ECF No. 178 at 2, ¶ 2; *see also* ECF 204 at 14-15.) Hamzeh states that the pole camera video consists of 450 hours of recordings. (ECF No. 214 at 7.)

The government responds that it will, consistent with Judge Pepper's standard practices, identify its exhibits no later than seven days before the final pretrial conference. (ECF No. 217.) It asserts that "the nature and volume of the materials identified do not come remotely close to justifying the requested court order." (ECF No. 217 at 6.)

In reply, "Hamzeh notes that he hasn't received any reports indicating that the government found any evidence of significance from these sources, and frankly he has no reason to believe the government will present any evidence from these sources. But in case the defense is mistaken, Hamzeh seeks reasonable notice of any needles in the

haystacks that the government wants to use so that he has adequate time to investigate or retain an expert if needed." (ECF No. 218 at 7.)

Courts have broad discretion when ordering when parties must disclose their exhibits. *See, e.g.*, *United States v. Prince*, 618 F.3d 551, 562 (6th Cir. 2010) (citing *United States v. Kincaide*, 145 F.3d 771, 780 (6th Cir. 1998)); *United States v. Desage*, No. 2:13-cr-39-JAD-VCF, 2017 U.S. Dist. LEXIS 28739, at *5 (D. Nev. Mar. 1, 2017) (ordering government to disclosure exhibit list 30 days before trial); *United States v. Szuhsiung Ho*, No. 3:16-CR-46, 2016 U.S. Dist. LEXIS 176343, at *9 (E.D. Tenn. Dec. 21, 2016) (denying defense motion for government to disclose exhibits 75 days before trial; ordering disclosure 2 weeks before trial); *United States v. Barrett*, 153 F. Supp. 3d 552, 575 (E.D.N.Y. 2015) (denying defense request for disclosure 60 days before trial; ordering disclosure 45 days before trial); *United States v. Barnett*, No. 11-452(FLW), 2012 U.S. Dist. LEXIS 1609, at *7 (D.N.J. Jan. 6, 2012) (ordering disclosure 30 days before trial); *United States v. Capriotti*, No. 03 CR 779, 2003 U.S. Dist. LEXIS 23281, at *5 (N.D. Ill. Dec. 30, 2003) (ordering, in part, government to disclose exhibits six weeks before trial); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 392 (S.D.N.Y. 2002) (citing cases).

From the court's perspective, the parties' dispute is relatively insignificant in the overall scope of this case. Hamzeh seeks disclosure 45 days before trial. The government agrees to disclosure at least seven days before the final pretrial conference. The gap between the parties' positions depends on when Judge Pepper schedules the

final pretrial conference. Judge Pepper often schedules the final pretrial conference to take place two weeks before trial. (*See* ECF No. 111.) Given the nature of this prosecution, she very well may schedule it earlier; when this case was initially scheduled for trial, she scheduled the final pretrial conference for a date 19 days before trial. (ECF No. 45.)

If Judge Pepper again schedules the final pretrial conference for a date 19 days before trial, and if the government were to disclose its exhibits seven days before the final pretrial conference, Hamzeh would receive the information he seeks 26 days before trial. Thus, the parties would be disputing an additional 19 days. In the ordinary case, where the entire process from arraignment to trial can be expected to span only 70 days, *see* 18 U.S.C. § 3161(c)(1), an additional 19 days is significant. But here, where it has already been nearly 1,200 days since Hamzeh was arraigned, with no trial yet scheduled, the impact of 19 additional days is so inconsequential as to be de minimis with respect to the government. The government should already know what, if any, evidence it will present at trial from the pole camera and from Hamzeh's mobile phone or PlayStation. Certainly it should know that by 45 days before trial. The government has not explained how complying with Hamzeh's request would burden it.

Granted, the court acknowledges that ordinarily disclosure 26 or even only 21 days before trial would probably still be sufficient time for a defendant to adequately prepare, even if the government intended to make significant use of evidence from

these sources. But this case is extraordinary, not just because of the nature of the investigation but because of the frustrating and protracted efforts to provide Hamzeh with the evidence to which he is entitled, especially considering the nature of his defense. In the absence of any explanation from the government as to why it is unreasonable to require it to produce the information by the date requested by Hamzeh, the court finds it appropriate to grant Hamzeh's motion.

Therefore, the court **grants** this aspect of Hamzeh's motion. Not less than **45 days before trial**, the government shall provide to Hamzeh notice of its intent to introduce at trial any evidence obtained by use of pole cameras and any data obtained from a post-arrest search of Hamzeh's mobile phone, MacBook laptop, or PlayStation. The court emphasizes that, contrary to the government's assertion, it is not requiring the government "to finalize its exhibit list 45 days before trial, to the exclusion of the introduction of any exhibit identified during trial preparation." (ECF No. 217 at 6.) Rather, the court is requiring early disclosure of only these three narrow categories of evidence.

However, this order shall be reciprocal. Not less than 45 days before trial, Hamzeh shall likewise provide to the government notice of his intent to use any evidence obtained by use of pole cameras and any data obtained from a post-arrest search of Hamzeh's mobile phone, laptop, or PlayStation.

### 9. Motion to Produce Information Submitted Under CIPA

Hamzeh asks the court to disclose the evidence the government submitted to the court under CIPA. (ECF No. 185.) Not knowing the evidence the government seeks to withhold, Hamzeh's arguments for disclosure are often shots in the dark.

The court appreciates Hamzeh's arguments and has considered them carefully when reviewing the government's CIPA submissions. Given its classified nature, the court cannot speak as to specifics of the CIPA process. Suffice it to say that the court is satisfied that Hamzeh will be receiving all potentially relevant information. Therefore, his motion (ECF No. 185) is **denied**.

However, the court finds it necessary to address certain apparent misunderstandings. The misunderstandings are not necessarily Hamzeh's; the court may have misunderstood the parties' submissions. But the court does not regard the government's non-disclosure of the informants' updated criminal records as being attributable to CIPA. The court addresses this matter in section 4.3 above. Nor does the court find Hamzeh's request for instructions given to the informants as coming within CIPA. This is addressed in section 4.2 above.

**IT IS THEREFORE ORDERED** that the following motions are **dismissed as moot**: Motion to Supplement Record Regarding Second *Brady* Motion (ECF No. 158); Third Motion to Compel *Brady* and Rule 16 Material: Intercepted Communications (ECF No. 174); Fourth Motion to Compel Brady and Rule 16 Material (ECF No. 177); Motion

for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial (ECF No. 178); Unopposed Motion to Adjourn Status Conference (ECF No. 188); Fifth Motion to Compel *Brady* and Rule 16 Material (ECF No. 209).

**IT IS FURTHER ORDERED** that Hamzeh's motions to seal (ECF Nos. 200, 210, 215) are **granted**.

**IT IS FURTHER ORDERED** that Hamzeh's "Superseding Discovery Motion" (ECF No. 214) is **granted in part and denied in part.** If either party seeks to introduce at trial any evidence obtained by use of pole cameras or any data obtained from a post-arrest search of Hamzeh's mobile phone, MacBook laptop, or PlayStation, the party shall identify the evidence not less than 45 days before trial. Aside from the matters resolved under CIPA, Hamzeh's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Hamzeh's "Motion to Produce Information Submitted Under CIPA" (ECF No. 185) is **denied**.

Dated at Milwaukee, Wisconsin this 25th day of March, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge