UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Case No. 16-CR-21

SAMY HAMZEH,

        Defendant.

**GOVERNMENT RESPONSE TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S DISCOVERY AND CIPA ORDERS**

Samy Hamzeh received as discovery audio and video recordings of himself buying two fully-automatic machine guns and a silencer, in a parking lot, from men he thought were arms dealers. The arms dealers confirm the guns are fully automatic, Hamzeh says he likes the one with the silencer attached best, then he negotiates the price of the weapons. Hamzeh also received recordings of himself touring the Humphrey Scottish Rite Masonic Center and discussing the order in which he would shoot people there and how important it will be to have a silencer when he does so. And Hamzeh received in discovery hundreds of hours of recordings of his own statements in the months before he bought the weapons evincing his wish to acquire weapons so that he could hurt people.

Hamzeh is, in the government's view, a very dangerous person. He has been charged with a serious offense with highly disturbing relevant conduct. The undersigned

1

have been single-mindedly dedicated to producing everything the government possibly can to Hamzeh in order to put discovery disputes to bed and allow this case to proceed to trial.

The Magistrate Judge presided over years of discovery litigation and multiple rounds of discovery motions by the defendant. *See*, *e.g.*, May 9, 2017 Discovery Order (Dkt. 41) (Denying Hamzeh discovery motion); March 8, 2018 Discovery Order (Dkt. 107) (Granting Hamzeh discovery motion in part and denying in part) (affirmed over Hamzeh Objections at Dkt. 117) (April 23, 2018)); July 25, 2018 Discovery Order (Dkt. 150) (Granting Hamzeh Discovery motions at Dkt. 135 and Dkt. 144 "to the extent . . . they are not moot"); March 25, 2019 Discovery Order (Dkt. 219) (Dismissing as moot Hamzeh's Motion to Supplement Record Regarding Second Brady Motion, Hamzeh's Third Motion to Compel Brady and Rule 16 Material, Hamzeh's Fourth Motion to Compel Brady and Rule 16 Material, Hamzeh's Motion for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial, Hamzeh's Fifth Motion to Compel Brady and Rule 16 Material, and granting in part and denying in part Hamzeh's Superseding Discovery Motion). In the March 25, 2019 Order On Defendant's Discovery Motions ("Judge Duffin 2019 Order"), which is thorough, well-reasoned, and does not reflect clear error, Judge Duffin resolved every outstanding discovery issue. Hamzeh appeals.

When rejecting Hamzeh's very similar objection to Magistrate Judge Duffin's April 2018 discovery order, this Court stated that

> Nowhere in his nine-page appeal does the defendant acknowledge that this court applies . . . a clearly erroneous standard of review to Judge Duffin's decision on a non-dispositive order. The appeal reads as if the defendant is

2

asking this court to undertake a de novo review of Judge Duffin's decision, despite the fact that the de novo standard applies to a district court's review of a dispositive ruling. *Hall*, 469 F.3d at 594-595. The defendant has not identified any clear error on Judge Duffin's part.

Order Overruling Defendant's Objections to Judge Duffin's Order For Release Of Brady Materials (June 8, 2018) ("Judge Pepper 2018 Order") at 9.

So too here. Nowhere in Hamzeh's 30-page appeal does he acknowledge that this Court applies a clearly erroneous standard of review to Judge Duffin's Order. *See* Hamzeh's Consolidated Objections to Magistrate Judge's Discovery and CIPA Orders ("Hamzeh 2019 Objections"). And once again, Hamzeh's appeal reads as if he is asking this Court to undertake a de novo review of every discovery issue raised below. This Court should decline to do so.

Hamzeh's discovery motions are based on three general misapprehensions of law that have led to the substantial discovery litigation outlined above. First, he believes the government must respond to interrogatories about the investigation and allow him to search the government's files, *cf.* Judge Pepper 2018 Order at 13-14 ("Judge Duffin denied [Hamzeh's discovery] request, correctly noting that the defendant did not have a constitutional right 'to his own search of the government's files.') (citation omitted). Second, he believes that the government must create discovery materials that do not presently exist, and it must do so based on Hamzeh's speculation regarding the possibility those creations could help him. And third, Hamzeh mistakenly asserts that the absence of inculpatory evidence is itself exculpatory *Brady* material.

3

Ultimately, Magistrate Judge Duffin was thorough and reasonable; his rulings were not clearly erroneous or contrary to law; and this Court should deny Hamzeh's request to, functionally, re-open discovery. *See generally Hassebrock v. Bernhoft*, 815 F.3d 334, 340 (7th Cir. 2016) ("When, as in this case, the district judge rules on a discovery matter based on an appeal from a magistrate judge's decision, the judge's discretion is constrained: A district judge may reverse a magistrate judge's discovery ruling only when it is 'clearly erroneous or contrary to law.'") (citing 28 U.S.C. § 636(b)(1)(A)).

In this filing, the government responds to each Hamzeh discovery objection that does not implicate the Classified Information Procedures Act ("CIPA"). The government's classified Response addressing Hamzeh's Objections to the Magistrate Judge's CIPA orders has been filed contemporaneously to this filing pursuant to CIPA's procedural requirements.

I. Discovery Order

*A. Text Messages and Emails (Hamzeh's A.2 and A.3)*

The government redacted text messages as sparingly as possible. As the Magistrate Judge found, "the court finds accurate the government's representation that the redactions [to text messages] were minimal. In fact, Hamzeh concedes as much." Judge Duffin 2019 Order at 3 (citing ECF No. 209 at 3). And, before the Magistrate Judge, Hamzeh did not (1) identify a single text message that should have been unredacted or (2) provide a basis for believing any redaction was inappropriate. As the Court below put it, "Hamzeh has failed in his burden to make the requisite prima facie showing of

4

materiality. As the government points out, he has not identified which redactions he believes were improper and his basis for that belief. He offers only speculation . . . . Such bald conjecture is insufficient." *Id.* at 5. It was not clear error for the Magistrate Judge to find that Hamzeh had not made the requisite showing that any text message should be unredacted, because Hamzeh stated no specific basis for his redaction-removal requests.

Before this Court, and for the first time, Hamzeh now identifies the reasons he believes four particular redactions could be improper. At the threshold, discovery matters were to be heard in the first instance by the magistrate judge in this case, and Hamzeh has waived these arguments. *Cf. Geitz v. Lane*, 946 F.2d 897 (7th Cir. 1991) (finding that an appellant "did not raise this argument before the magistrate judge, and therefore waives review of it here") (citation omitted); *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 1995) (finding waiver because an appellant "failed to properly raise these claims before the magistrate judge"). His blanket objection to every redaction without specifying any grounds for any unredaction does not preserve his current objections.

As for the texts themselves: The text message described by Hamzeh as "the text in Exhibit A on January 13, 2016, at 18:37 between Mike and the agent" includes third party information and is irrelevant to Hamzeh. The text described by Hamzeh as "a January 13, 2016, text at 18:34 between CHS2 (Mike) and an agent" does not, contrary to Hamzeh's conjecture, contain the "name [of] a potential witness who may have important information that the defense needs to follow up on," Hamzeh 2019 Objections at 2. Instead it is entirely unrelated to this case. The final two text messages, "from Exhibit B on November 11, 2015, at 17:11 between agents 1 and 5" and "from Exhibit B on January

5

25 at 13:58 between Agent 1 and Agent 22," both include sensitive law enforcement tradecraft that is not material to the defense.

As to emails, it continues to be true that the government has produced the responsive emails in its possession. The government is, of course, aware of its obligations under *Brady*, *Giglio*, Federal Rule of Criminal Procedure 16, the Jencks Act, and this Court's and the Magistrate Judge's orders. It has sought in earnest to comply with, and wherever possible exceed, those obligations.

The Magistrate Judge's ruling regarding texts and emails was not clearly erroneous.

B. *Informants (Hamzeh's A.4)*

Hamzeh's remaining discovery objections, which are primarily related to informants, should also be overruled. The government has produced everything it can, and Hamzeh's remaining informant requests are based exclusively on speculation. There was no clear error here.

An illustrative example is Hamzeh's argument that "negative information about the FBI's perception of an informant's character or false statements by an informant during the vetting process must be produced under *Brady*." Hamzeh 2019 Objections at 12 (citing *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1463-64 (9th Cir. 1992) (finding reversible error not to disclose government memo written to government agent "highly critical" of key government informant)). Fair enough. But it is pure speculation, with no cited factual basis, that such negative information actually exists. Magistrate Judge Duffin did not commit clear error in refusing to rule based on that speculation. *Cf.* Judge Pepper

6

June 2018 Order at 17 ("Speculation that the informant 'must have' solicited agent input, or that the Bureau 'should have' information about how the defendant formulated a plan to attack the Masonic Temple, is just that—speculation. The statement that information showing the FBI came up with the Masonic Temple plan would be exculpatory is true as far as it goes, but it assumes that such evidence exists and that the government deliberately is withholding that information.").

As to informant instructions and admonishments, the government and defense have corresponded repeatedly on this topic. Hamzeh argues that the government must answer his questions with new reports and thereby produce presently nonexistent discovery materials. The government attempted to work through this issue in good faith with Hamzeh, and, in the spirit of putting these discovery issues to bed, even produced a report regarding Special Agent Adkins's reminder to an informant to record his conversations with Hamzeh whenever possible. But the government need not create reports to answer every one of Hamzeh's questions. *See generally* Judge Duffin 2019 Order at 9 ("The government aptly equates Hamzeh's demands to civil interrogatories. But there is no analog in the Criminal Rules to Fed. R. Civ. P. 33.").

The government has produced every document it can regarding instructions given to an informant. It has no obligation to *create* anything for production to Hamzeh, and Hamzeh has stated no basis and cited no authority for the proposition that he is entitled to anything beyond what he has received. At trial, the defense may endeavor to question the government's witnesses regarding informant handling. There is no evidence that the government has not complied with *Brady* or *Giglio* requirements.

7

As the Magistrate Judge put it, "Hamzeh insists that, by refusing to create documents responsive to his inquiry, the "government[] [is] misunderstanding . . . its obligations under Rule 16 and Brady." Judge Duffin 2019 Order. And as the Magistrate Judge then made clear, "the court agrees that underlying this dispute is a misunderstanding as to the government's obligations under Rule 16 and *Brady*. But it is Hamzeh, not the government, that misunderstands those obligations." *Id*.

Hamzeh now cites cases in which the government was aware of *exculpatory* information and failed to disclose it. How exactly those cases are related to this one is unclear. The government simply has not withheld exculpatory information in this case.

Hamzeh's central request for the creation of documents is focused on FBI "instructions" to informants. But those instructions, such as they are, are not exculpatory. Hamzeh argues the government has withheld from Hamzeh numerous "instructions" it gave informants, but that is misleading. It collapses everyday "instructions" like "give me a call after you meet with Hamzeh" or "be safe" or "keep up the good work" (every one of which could not possibly have been memorialized verbatim) in with the formal, written instructions that the FBI gives informants with rules they should follow (and which actually exist in corporeal form and *were* produced to Hamzeh in discovery). This creates a fairly confusing discovery demand that is totally remote from *Brady*.

The Magistrate Judge, nonetheless, waded through these requests and did not commit clear error when doing so. If Hamzeh serves civil interrogatories on the government, and in the spirit of over-disclosure the government creates a report in good faith to answer one of them, that does not give Hamzeh a right to have every other one

8

of his interrogatories answered by having the FBI create more and more reports. Indeed, that is particularly true in this case, where Hamzeh's discovery requests have been extensive, continuous, and detached from the Federal Rules of Criminal Procedure or governing case law.

Similarly, in support of Hamzeh's claim that he is entitled to have reports created regarding everything an informant "hoped" for, Hamzeh argues that "the issue isn't limited to whether benefits in fact were received, but extends to whether benefits were requested, expected, or hoped for." Hamzeh 2019 Objections at 6. And, relatedly, Hamzeh asserts that any "help" the informants received implicates *Brady*, and that "help would also include requests." *Id*. at 7. But Hamzeh's speculative claim that unrealized hopes and requests would constitute *Brady* material, are totally unsupported, logically or in the case law. Hamzeh has certainly not shown that Magistrate Judge Duffin committed clear error.

Hamzeh also repeatedly asserts that "the Magistrate ordered the government to produce the [listed] information" and then asks this Court to find that the Magistrate Judge erred when he found that the government had not violated the Magistrate Judge's own order. Hamzeh 2019 Discovery Objection at 4-5. But the Magistrate Judge ordered the production of the listed items only *if* the government actually possessed them. That distinction matters. So, for example, the government previously informed Hamzeh in response to particular requests for information that neither CHS ever received "FBI approvals for the CHS to engage in other illegal activity;" and the government informed Hamzeh that there were no "third-party benefit agreements documenting the CHS is

9

working off" prosecution issues of another person; and that neither "CHS had recording equipment routinely assigned to him for extended periods of time, which [Hamzeh asserts without foundation] is routine with CHS's in the FBI," *id*. Nonetheless, Hamzeh asked the Magistrate Judge and now asks this Court to order the government to produce those categories of discovery. This Court should not. It was not clear error on the Magistrate Judge's part to deny these mooted discovery demands.

With regard to the Jencks Act, it was not a clear error for the Magistrate Judge to refuse to order the government to produce material that, as Hamzeh himself describes it, "may not be producible at this stage, [but] is likely to be Jencks material that will have to be produced before trial." Hamzeh 2019 Objections at 4. The possibility that material might become Jencks Act material at trial does not make it *Brady* material – and it is necessarily not Jencks Act material now. It surely does not mean the Magistrate Judge committed clear error in failing to find that something must be produced now which, as Hamzeh himself puts it "may not be producible now."

As to informant recording devices, much of the information sought is addressed in the government's CIPA filing. Beyond that, Hamzeh claims that certain "information should be produced as the government's failure to uncover incriminating information through any wiretaps is exculpatory." Hamzeh 2019 Objection at 29. But that argument has been universally rejected, including by the Seventh Circuit. *See, e.g., United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) (rejecting defendant's "theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory") (citing *Brady v. Maryland*, 373 U.S. 83 (1963)); *see also United States v. Kennedy*, 819 F. Supp.

10

1510, 1519 (D. Colo.), *aff'd sub nom. United States v. Byron*, 994 F.2d 747 (10th Cir. 1993) ("Citing *Brady*, many defendants have made broad metaphysical requests for the production of the absence of evidence inculpating them in the crimes charged. *Brady* requires the production of material information which is 'favorable to the accused,' that is, exculpatory information, not information which is merely, 'not inculpatory' and might therefore form the groundwork for some argument for the defendant.") (citations omitted). The Magistrate Judge did not commit clear error on this front either.

Finally, with regard to informant-related issues, Hamzeh's Objection does require one specific clarifying note. Hamzeh argues that it is exculpatory that Special Agent "Adkins admonished Mike for supplying the plan of action to get machine guns from Texas, Tr. at 79-80." Hamzeh 2019 Objection at 10. That is not correct. On December 7, 2015, Hamzeh asked Mike where Hamzeh could get a Kalashnikov, for purposes of "hunt[ing]" human beings. Hamzeh says "okay, what can I. I mean what can I do? Where do I get a Kalashnikov now? Do I have the money to get a Kalashnikov?" and Mike responds "I know someone. I'm - - when -- don't worry from Texas." Then Hamzeh asks Mike if he swears that is true. Mike swears, and Hamzeh is happy.

That conversation was recorded, produced in discovery, and in the government's view shows that Hamzeh was predisposed to buy a machine gun and, thus, not entrapped. After that conversation happened, Agent Adkins told Mike not to supply possible future operational details like "in Texas," because then the FBI may have to deliver on that detail. The operational issue is irrelevant to Hamzeh's guilt, and the

11

conversation between Hamzeh and Mike is a profoundly inculpatory exchange, in that it defeats any suggestion that Hamzeh was not predisposed to want a machine gun.

C. *Pole Camera, Mobile Phone, MacBook, PlayStation*

The Magistrate Judge ordered the parties to provide one another with notice of their intent, if any, to introduce at trial evidence obtained by use of pole cameras and any data obtained from a post-arrest search of Hamzeh's mobile phone, MacBook laptop, or PlayStation at least 45 days before trial. The government does not object to this order.

CONCLUSION

For the reasons set forth above and in the government's contemporaneously filed classified Response to Hamzeh's CIPA Objection, this Court should overrule Hamzeh's objections to Judge Duffin's March 25, 2019 Orders.

Dated at Milwaukee, Wisconsin this 1st day of May, 2019.

                               Respectfully submitted,
                               MATTHEW D. KRUEGER
                               United States Attorney

By:    */s/ Benjamin Taibleson*

                               Benjamin Taibleson
                               Adam Ptashkin
                               Assistant United States Attorneys
                               United States Attorney's Office
                               Eastern District of Wisconsin
                               517 East Wisconsin Avenue
                                       Milwaukee, Wisconsin 53202
                               (414) 297-1700
                               benjamin.taibleson@usdoj.gov