UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs.*                                                                Case No. 16-CR-21-PP

SAMY M. HAMZEH,

    *Defendant*.

## REPLY IN SUPPORT OF HAMZEH'S CONSOLIDATED OBJECTIONS TO MAGISTRATE JUDGE'S DISCOVERY AND CIPA ORDERS

Samy Hamzeh, by counsel, files this reply brief in support of the defense's appeal of the Magistrate Judge's order on discovery.

The government's response begins by reciting its allegations against Hamzeh and its opinion that he's dangerous. The reason for that recitation isn't clear: a defendant's right to discovery doesn't depend on the government's opinion of him. Next, the government laments the defense filing so many discovery motions. We too wish this wasn't necessary and that prior orders had been promptly complied with, and all discovery had promptly been turned over. But it's only been through Hamzeh's pressing of these important issues that, for example, the government was able to produce dozens of text messages that it claimed had been lost forever. Or, for an earlier example of the fruits of the defense's efforts, it was nearly two years into this case before the defense learned that Hamzeh had been subject to surveillance on 64 occasions. And it was only

*Federal Defender Services*
*Of Wisconsin, Inc.*

this summer that the defense figured out that Hamzeh was the subject of wiretapping—a point that still hasn't been explained.

The defense continues to press for discovery because access to all the favorable and material information in the case is essential to Hamzeh obtaining a fair trial. Secret warrants, *ex parte* revelations to the Court, and undisclosed benefits to informants are anathema to the adversary system and the right to a fair trial—regardless whether some of these activities are sanctioned in the name of fighting terrorism. The defense continues to be at a disadvantage because it is not even privy to the arguments the government makes about why it shouldn't have to disclose evidence under CIPA in this far-from-top-secret prosecution. The defense knows that the benefits the informants receive in this case and other cases are essential to exploring the credibility of the two informants who, at the government's behest, devoted four months of their lives seeking to set up Hamzeh. Yet we are marching into trial with scant information about those benefits. *But see Napue v. Illinois*, 360 U.S. 264, 269 (1959) (noting "it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

So with that preamble, this brief will turn to the specific issues at hand. Since the government has not shared its CIPA arguments, the defense will stand on its previous submissions regarding the production of that material, although it again requests an opportunity to appear before the Court *ex parte* to answer questions and explain the defense's need for the material the government won't produce. Before addressing each subcategory of information and the government's response, the principal point in the

2

*Federal Defender Services*
*Of Wisconsin, Inc.*

defense's objections lies with the fact that the Magistrate Judge's decision is contrary to law. While the government trumpets the clearly erroneous standard in § 636(b)(1)(A), it forgets that the next phrase: "or contrary to law." The defense's brief is framed around the fact that the Magistrate Judge didn't misperceive the facts or make an unreasonable finding on a discretionary remedy, it's that he made legal errors in evaluating and denying the defense's requests. A district court does not give deference to a Magistrate Judge's legal decisions.

### A. Text messages and emails.

As has been noted, Hamzeh conceded that the most recent text redactions are minimal. That's as it should be, but it's irrelevant to whether the redactions are appropriate, which must be judged independently. Hamzeh's requests an order requiring the production of four texts in unredacted form or that the Court review them *in camera*.

In retrospect, the defense probably should have identified specific redactions that concerned him, but he provided the redacted texts to the Magistrate and suggested in camera review of the unredacted texts. Hamzeh thought that was appropriate in light of the limited number of texts potentially at issue. The error in the Magistrate's approach that requires this Court's intervention was in putting the burden on Hamzeh to explain why it's improper to redact, rather than on the government to specifically justify the redactions. *See* Fed. R. Crim. P. 16(d). And the government shouldn't be allowed to rely

3

*Federal Defender Services Of Wisconsin, Inc.*

on generalities such as a bare-bones assertion that the redaction concealed sensitive material.

Hamzeh's objections explained why he believed the four unredacted texts are potentially helpful to him. CI Mike's activities during the crucial period in early January when conversations were unrecorded are likely important and may involve other investigations he was doing for the FBI. This would be helpful for several reasons: to determine if he's being paid for that work, which provides continuing incentives to work on Hamzeh; to identify witnesses who also may be victims of CI Mike's aggressive tactics; and to determine the truthfulness of CI Mike's and the agents' accounts of what is happening during this time period.

With respect to the emails, the government says it has provided the "responsive emails in its possession." Hamzeh doesn't know what that means. The Magistrate ordered production of all emails, R. 150 at 2, so every one of them is responsive. And why the qualifier "in its possession?" If that's an indication that the government is only producing the emails in its lawyers' hands, that's a problem. The government continues to refuse to directly state whether it has inquired of all its agents whether all emails were searched for and produced. Indeed, it might be speculation that an operation of this size would command more than 11 pages emails, with a total of 15 total emails. But its speculation that's rooted in the realities of life and communication—and speculation that's confirmed by the fact that Agent Adkins testified that he never looked to retrieve those emails and Agent Zuraw testified that he sent 15 or so and received about the same,

yet we have only one email he was copied on. *See* R.205:53; 106. Hamzeh asks for an order requiring the government to do more than simply represent that everything in its possession has been turned over.

   B. **Informants**

The bulk of the government's response is spent on the informants and that we have all that we're entitled. Here's what's missing from the government's response: a meaningful engagement with the cases the defense cites to show that information that is exculpatory, that it has to be produced, and it can't be avoided by simply saying it wasn't memorialized. That's the heart of both the government and the Magistrate Judge's legal error. And the law on this point is clear: "the government cannot avoid its Brady obligations by choosing not to memorialize favorable information in writing." Cary, Singer, Latcovich, FEDERAL CRIMINAL DISCOVERY, at 30 (ABA 2011); *see also United States v. Rodriguez*, 496 F.3d 221, 225–29 (2d Cir. 2007) (holding that the government's failure to make a written record of a witness's inconsistent statement does not exempt the government from turning over the information). Indeed, the DOJ's own policy provides that "with few exceptions" "the format of the information does not determine whether it is discoverable," and that "material exculpatory information that the prosecutor receives during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *DOJ Guidance Memo*, Step I.B.5. The government's own policies mirror the Supreme Court's teaching on this point: a prosecutor "has a duty to learn of any favorable evidence known to the others acting on

5

*Federal Defender Services Of Wisconsin, Inc.*

Case 2:16-cr-00021-PP   Filed 05/08/19   Page 5 of 11   Document 230

the government's behalf in a case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). That means that prosecutors have a duty to learn from agents what exculpatory information is known to them, which would include information that has not been memorialized. *DOJ Guidance Memo*, Step 1.B.6. The Magistrate Judge's holding that it can't force the government to create documents that don't exist runs contrary to those principles and the law. To the extent that material and exculpatory information exists it must be memorialized and turned over.

Now, the government implicitly argues that all there is has been turned over. Maybe so. But the defense has been told that for years, and yet as the years go by and this issue is pressed, more information is produced—we receive additional texts; we learn of surveillance (lots of it); we learn of wiretaps (likely lots of it); and we learn of additional instructions that were given to the informants. And those instructions are not, as the government argues, a broad category that would flirt with being meaningless. In the government's words:

> It collapses everyday "instructions" like "give me a call after you meet with Hamzeh" or "be safe" or "keep up the good work" (every one of which could not possibly have been memorialized verbatim) in with the formal, written instructions that the FBI gives informants with rules they should follow (and which actually exist in corporeal form and were produced to Hamzeh in discovery).

R.228:8. But that's not so. We don't care about affirmations; we care about directions. The directions that the informants were given that led to the topic of machine guns being repeatedly presented to Hamzeh and the idea of the Masons being aligned with ISIS and the enemy of Islam. And the directions that the informants selectively ignored—*e.g.*, that

6

*Federal Defender Services Of Wisconsin, Inc.*

they record every conversation versus what they did: at the end of the investigation (during the most critical period) record rarely.

That is the heart of the Magistrate Judge's legal error: the failure to appreciate the government's duty to capture and memorialize exculpatory information. Indeed, under its logic if a police officer learned that someone else confessed to the same crime as a defendant, the government would have no duty to produce that information unless it was memorialized into a report. *But see Kyles,* 514 U.S. at 437.

Another legal error relied upon by the government and the magistrate is the belief that the failure to uncover incriminating information during an investigation is never exculpatory. The government even claims that the defense argument on this point "has been universally rejected, including by the Seventh Circuit."R.228:10. To that end, there are two points worth mentioning. First, all of the information that the government failed to uncover about Hamzeh goes directly to the issue of predisposition. When the government uses intensive and intrusive investigative methods, as here, the failure to uncover damning evidence is exculpatory in an entrapment case. Indeed, the absence of information about Hamzeh's interest in machine guns speaks directly to the fact that he was not predisposed to buy one. So while there may be cases where the absence of information is not exculpatory, when it comes to an entrapment case that isn't the case.

The second point lies at the heart of the legal error, and it is the case law the government cites to support its proposition that the defense's "argument has been universally rejected, including by the Seventh Circuit." R.228:10. It cites *United States v.*

*Federal Defender Services*
*Of Wisconsin, Inc.*

*Baker*, 1 F.3d 596, 598 (7th Cir. 1993) and *United States v. Kennedy*, 819 F. Supp. 1510, 1519 (D. Colo. 1993). Before accepting that "universal" proposition, it's worth examining the government's cases.

In *United States v. Baker* (the government's first case), the argument the defense made was that "the government served a subpoena on CyberTel in order to obtain information regarding the pager police had seized. Because of conflicting identification and access numbers, CyberTel apparently never responded to the subpoena. Baker believes that the government was obliged to disclose the 'failed' subpoena, apparently under the theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory." 1 F.3d 596, 598 (7th Cir. 1993). In rejecting the *Brady* claim, the Seventh Circuit noted: "Although the defendant would have us draw only negative inferences from this conduct, one perfectly plausible explanation is that the government elected not to pursue the CyberTel registration records after it had Baker's stipulation in hand that the pager belonged to him." *Id.* at 598. The facts and principles at play in *Baker* are a far cry from what we have here.

On top of that, the only other case that the government cites in support of the "universal rejection" of the defense's argument is a district court case where (in the very next sentence from the one quoted by the government) the court notes situations when there would be such a duty to disclose. *See United States v. Kennedy*, 819 F. Supp. 1510, 1519 (D. Co. 1993). There, the court cited a Sixth Circuit case and noted: "In *Jones* the prosecution failed to disclose the statement of an eyewitness to a crime which made no

8

*Federal Defender Services Of Wisconsin, Inc.*

reference to the defendant or his participation. *I find Jones to be distinguishable based on its facts in that the court found the negative exculpatory evidence in that case to be 'potentially powerful exculpation.'" Id.* (*citing Jones v. Jago*, 575 F.2d 1164 (6th Cir. 1978) (emphasis added)). And so the court in *Kennedy* distinguished *Jones* and held: "Defendants' requests here fall far short of such evidence. Hence, I will deny their request for negative exculpatory information." *Id.* Those cases hardly constitute a "universal" proclamation that the information that the defense seeks is not discoverable or that the government carries no duty to produce information that has not been memorialized. And it's that misconception of what needs to be preserved and turned over that lies both at the heart of the government's response and the Magistrate Judge's order, and it's that misconception that is contrary to law and that the defense asks this Court to overturn.

### C. The government's final remark

The salient points of the government's brief are addressed above, but at the end of its brief, the government offers a "clarifying note." R.228:11. It then plucks a quote from December 7, 2015, transcript to show that "Hamzeh was predisposed to buy a machine gun and, thus, not entrapped." *Id.* The problem is the Seventh Circuit is clear on this point: "Importantly, predisposition is measured prior to the government's attempts to persuade the defendant to commit the crime." *United States v. Mayfield,* 771 F.3d 417, 436 (7th Cir. 2014) (*en banc*) (*citing United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983) ("[P]redisposition is, by definition, the defendant's state of mind and inclinations *before his initial exposure to government agents.*" (internal quotation marks omitted) (emphasis

9

added)). Lest there be any doubt that the defense is overstating the point or plucking a stray quote from the *Mayfield* opinion, the Court continued:

> *Jacobson* specifically confirmed this point. ("Rational jurors could not say beyond a reasonable doubt that petitioner possessed the requisite predisposition prior to the [g]overnment's investigation and that it existed independent of the [g]overnment's many and varied approaches to petitioner." In other words, "a criminal predisposition induced by government action cannot be used to defeat an entrapment defense."

*Id.* at 436–37 (quoting *Jacobson v. United States,* 503 U.S. 540, 553 (1992) and *United States v. Hollingsworth*, 27 F.3d 1196, 1201 (7th Cir. 1994) (*en banc*). That's the law.

The government is simply mistaken that this conversation (recorded months after Hamzeh was first approached by the government's agents) evidences that he was predisposed to commit this crime. Unfortunately, that mistaken view of the law (and the relevant analysis) likely colors why it believes that the instructions to the informant are irrelevant. But the law is clear: these types of documents are exculpatory because they are admissible in whole or part, could lead to admissible evidence, or would "be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise." *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002). The government's view (adopted by the Magistrate Judge) is, in fact, contrary to law. And that view (as it permeates the Magistrate Judge's decision) must be reversed and the discovery sought ordered to be produced.

Dated at Milwaukee, Wisconsin this 8th day of May, 2019.

                Respectfully submitted,

                /s/    *Craig W. Albee*
                Craig W. Albee, WI Bar #1015752
                Federal Defender Services
                  Of Wisconsin, Inc.
                517 E. Wisconsin Ave – Rm 182
                Milwaukee, WI  53202
                Tel.: (414) 221-9900
                Email:  craig_albee@fd.org

                *Counsel for Defendant*, Samy M. Hamzeh