UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs*.

                                      Case No. 16cr21

SAMY M. HAMZEH,

    *Defendant*.

## SIXITH MOTION TO COMPEL
## RE: STEVE

Samy Hamzeh, by counsel, files this motion to compel, seeking both further discovery and an evidentiary hearing concerning Steve's absence at trial.

As the Court knows, this case involves two informants (Mike and Steve) who over the course of months met daily with Hamzeh and eventually entrapped him into buying a machine gun. Mike is a paid informant, and Steve was Hamzeh's best friend. During the four-month investigation, Steve had many recorded conversations with Hamzeh, and many, many more that were unrecorded. Because of their friendship, Steve had a particular insight into Hamzeh and he could speak better than anyone to the pressure that was exerted upon Hamzeh to buy a machine gun. The defense also has good reason to believe that Steve regretted what he had done to Hamzeh—entrapping him. Not only did he refuse any payment from the FBI, after Hamzeh's arrest Steve had a nervous breakdown and had to be hospitalized. The defense anticipated that he would be a very favorable witness.

As the Court knows, the parties have tried to work together and streamline this trial. When this case looked to be headed to trial last summer, the government and the defense had an understanding the informants would be available to testify at trial. That understanding was made much earlier but confirmed in writing on June 11, 2018. Recently, as the parties worked through the logistics of trial and some outstanding matters, the government let the defense know that Steve may not be available at trial. It was not sure it was going to call Steve; and if the defense wanted him at trial, we would have to subpoena him. The government also stated Steve is now in Jordan, and it had no means to control his presence. Steve had, the defense was told, left in June of 2018, which was before the last trial date was continued. After subsequent discussions, the government provided the defense with the contact information for Steve's uncle, who lives in Milwaukee. The government anticipated that the uncle could communicate a defense subpoena to Steve. The government has also given the defense Steve's what it believes is his address in Jordan.

Steve's absence at trial puts the defense in a difficult position. We are on the cusp of trial and the defense has now learned that one of the two most important witnesses for trial is not available. The case law is clear: "Prosecutors routinely enter into agreements with defendants—and make representations to the court—that exceed their minimum obligations under the law. Whether they do so strategically or for reasons of convenience is of no moment. Once prosecutors undertake such commitments, they are bound to honor them." *United States v. Liburd*, 607 F.3d 339, 343 (3d Cir. 2010); *United States v. Jackson*, 621 F.2d 216, 220 (5th Cir. 1980) (noting "when the government and a defendant

Federal Defender Services
of Wisconsin, Inc.

enter into a pretrial agreement both parties are entitled to rely upon that agreement in preparing their respective cases"). For fourteen months, we have relied upon the government's representation that the informants would be available for trial—we've built our trial defense on it. And there are steps that could have been taken had we known of Steve's absence earlier than a couple months before trial, such as flying to Jordan and taking a deposition, moving for a subpoena under 28 U.S.C. § 1783, or making other arrangements. To be fair and very clear, the defense does not yet know whether it could pursue a subpoena under § 1783 because without Steve's A-file, the defense does not know if he falls under that provision. The A-file is a person's immigration file.

Beyond the simple matter of whether the defense can get a subpoena under § 1783, it's unclear what remedy the defense can and should seek—whether that's a missing-witness instruction, excluding recordings attributable to Steve, or outright dismissal of the case. At this point, moving for a remedy is premature, because we don't know the factual underpinnings of when Steve left, we only have what we've been told; we don't know why he left—whether he was encouraged or told to leave or deported; we don't know how he got back into the United States in the first place (he had left once before but we were assured he was coming back); we don't know who paid for the plane ticket; we don't know if the government released him from his subpoena; and we don't know when the government learned that he left and (presumably) was not coming back.

Now, depending on what the evidence shows about the government's involvement with Steve's departure, the defense has a variety of remedies to pursue. *See United States v. Leal-Del Carmen*, 697 F.3d 964, 970–71 (9th Cir. 2012). The defense can (if

3

Federal Defender Services
of Wisconsin, Inc.

Steve was ordered to leave) move to dismiss the case; the defense can also move to dismiss the case under speedy-trial grounds; the defense can ask for Steve's statements to be excluded; the defense can seek a missing-witness instruction; or the Court can fashion its own remedy. *See id.* 969–972 (providing an overview of these remedies and the showing necessary). Beyond those important issues, the question of Steve's absence at trial will also be central to several evidentiary matters that will likely arise at trial. *Id.* at 974 ("Because the government was responsible for rendering Garcia–Garcia unavailable as a witness, admission of the videotape would prevent it from benefitting from its own wrongdoing."). But again, that step and the appropriate remedy is not before us now. All the defense has is Steve's uncle's address; Steve's address is Jordan; and the government's assurance that he's not in the United States. A record has to be developed before the defense can make any claim for a remedy or start to fashion its position on Steve's statements. *See United States v. Chaparro-Alcantara,* 226 F.3d 616, 623–25 (7th Cir. 2000); *United States v. Iribe–Perez*, 129 F.3d 1167, 1173 (10th Cir. 1997) (defendant must show bad faith when Government allowed witness to voluntarily depart).

Thus, the defense respectfully requests that the government be ordered to produce to the defense, the following:

1. Steve's immigration file, which is commonly referred to as the A File.

2. All communications between Steve and the agents. This includes all emails, text messages, or other digital communication.

3. All rough notes (including interview notes) with Steve by the agents or the prosecutors in this case. We are told that Steve left weeks before the previously scheduled trial, the defense is entitled to know whether in witness prep his testimony changed.

4. Reports of when Steve entered and left the United States. This should also include whether any of these tickets were purchased by the government. From text messages that we have, it's clear that on at least one occasion agents purchased an airline ticket for him.

5. All emails and phone numbers that the government (prosecutors or agents) have communicated with Steve through.

6. The specific date and means that the government learned Steve would not return for trial.

Finally, the defense asks that this information be turned over quickly and that the Court schedule an evidentiary hearing.

Dated at Milwaukee, Wisconsin this 22nd day of August, 2019.

> Respectfully submitted,
>
> /s/     Joseph A Bugni
> Craig W. Albee,
> Joseph A. Bugni
> FEDERAL DEFENDER SERVICES
>   OF WISCONSIN, INC.
> 517 E. Wisconsin Ave - Rm 182
> Milwaukee, WI  53202
> Tel. (414) 221-9900
>
> *Counsel for Defendant*, Samy M. Hamzeh