UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                            Case No. 16-CR-21

SAMY HAMZEH,

        Defendant.

## United States' Response to Defendant's Sixth Motion to Compel

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby responds to the Hamzeh's Sixth Motion to Compel.

In 2015, Samy Hamzeh's best friend Steve came forward to the FBI because he was afraid Hamzeh was going to commit a mass killing. The FBI needed to know what Hamzeh was planning in order to stop him. So, it had Steve and later another man, Mike, record Hamzeh talking about Hamzeh's plans. Sure enough, Hamzeh wanted to buy machineguns and silencers. *See, e.g.*, Transcript of January 19, 2016 Recorded Conversation ("HAMZEH: We want two machineguns, you now have one, so we want two more, and we need three silencers, that's it. Find out how much all together these will cost, then we will march."); Transcript of January 21, 2016 Recorded Conversation ("STEVE: What are the two weapons that we need? HAMZEH: Two Machineguns!

STEVE: Single bullet at a time or what it is called, uh? HAMZEH: No, two machineguns."); Transcript of January 23, 2016 Recorded Conversation ("HAMZEH: [Lowering voice] Listen, what we need is [IA], two automatic rifles, and three silencers and three magazines."). On January 25, 2016, the FBI sent undercover agents to pose as arms dealers, Hamzeh bought machineguns and a silencer from the agents, and he was arrested. Within a few months of learning of the threat, the FBI had thwarted Hamzeh. Hamzeh was charged with the illegal possession of two machineguns and a silencer.

Trial in this case was scheduled for February 2018. The government expected to call Steve and Mike, and the defense expected to cross-examine Steve and Mike. The government subpoenaed Steve and Mike. They were in Wisconsin. And so, the parties both expected Steve and Mike to appear at the trial. In January 2018, the defense moved to adjourn the trial, the motion was granted, and trial was set for August 20, 2018. In June 2018, Steve, who is Jordanian, bought his own plane ticket on his own initiative and flew home to Jordan. At the time, he said he intended to fly back to the United States for the August 2018 trial. On July 27, 2018, the defense again moved to adjourn the August 2018 trial, the motion was granted, and trial was ultimately set for October 21, 2019.

On July 31, 2019, while attempting to work through issues that might arise at trial, the undersigned mentioned that Steve was in Jordan and that it was not clear whether he was actually going to fly back to the United States for the October 21, 2019 trial, no matter how nicely he was asked. In light of that, the government was operating under the presumption that it might not be able to offer any testimony from Steve at trial. The government said that it was willing to give the defense the contact information it had for

2

Steve in Jordan. And it did so. The government also said it would give the defense contact information for Steve's uncle in Milwaukee so that the defense could more conveniently get a trial subpoena to Steve.[1] The government did so. To attempt to gain more information about Steve's intent to return to the United States, the government attempted to reach out to Steve on August 6, 2019 but was unable to reach him.

On August 22, 2019, the defense filed its Sixth Motion to Compel. It seeks to re-open discovery, and requests an evidentiary hearing. The motion is puzzling. It misrepresents the parties' shared belief that a witness would attend a then-scheduled trial as a rights-conferring government promise to make a foreign-national civilian witness available at any trial, no matter (1) when it occurred or (2) where the witness then was, or (3) what possible legal means the government might have to do so. It analogizes this situation to the entirely different one in which the government deports a witness in bad faith or deports a witness and then offers that witness's testimony in an affidavit or deposition video (triggering the defendant's Confrontation Clause rights). It asks this Court to order and preside over an evidentiary hearing without offering the prerequisite evidence that there are any material disputed facts. It identifies no actual legal harm suffered and instead offers mere speculation. And, in the final analysis, it continues to flood this Court with inappropriate discovery requests. The Sixth Motion to Compel should be denied.

---

[1] To the best of the parties' knowledge, Mike is still in the United States. So, as before, the government and (presumably) the defense expect him to appear at the October 2019 trial.

3

*I.     There Was No Promise.*

The defense has taken the extreme step of citing prosecutorial misconduct cases and asking this court to misconstrue the facts above. Sixth Motion to Compel at 2-3 (citing *United States v. Liburd*, 607 F.3d 339, 343 (3d Cir. 2010) (finding prosecutorial misconduct and vacating a conviction where "the government breached an unambiguous [on-the-record] promise" to the court and the defendant that it would not introduce certain evidence at trial and then did so anyway); *United States v. Jackson*, 621 F.2d 216, 220 (5th Cir. 1980) (reversing a conviction where the district judge adopted an on-the-record pretrial agreement as "binding on all parties" and the government violated that agreement in "the middle of the trial").

First, and most importantly, there was no promise or agreement that the government would guarantee Steve, a civilian witness, would be at the August 2018 trial. Any claim otherwise is simply false. In 2018, both parties thought Steve would honor his subpoena and be at the 2018 trial. The defense now cites a letter it wrote to the government on June 11, 2018. In that letter, the defense stated, among other things:

> 2. We understand that [Mike] and [Steve] both will be present at trial and available as witnesses. Greg most recently confirmed that they would be available during a conversation we had on Tuesday. Please advise if we are mistaken in this understanding.

> 3. We understand that the government will make any agents who participated in this investigation available for testimony at trial with notice to your office. Please advise if we are mistaken in this understanding.

Craig Albee Letter to Greg Hanstaad and Paul Kanter, June 11, 2018.

Even the above – *i.e.*, the defense's characterization of its understanding – makes clear that the government simply did not promise to make Mike or Steve available at trial. This distinguishes them, in the above, from government agents. The defense understood that Mike and Steve would be present at the August 2018 trial. So did the government. But that is all. No agreement of the kind implied in the Sixth Motion to Compel existed, and the Albee letter certainly does not "confirm in writing," *contra* Sixth Motion to Compel at 2, any such agreement. The government most certainly did not and could never have promised to make Steve, a non-citizen civilian witness who lives in a foreign country, available for direct- and cross-examination. Any claim otherwise is confusing on its face and totally unsupported. Further, there most certainly was no agreement that Steve would be at any future trial, including an October 2019 trial, no matter how many adjournments the defendant sought and was granted.

Second, the government flagged this issue nearly three months before trial in an effort to be collegial and to facilitate an orderly trial. [2] That is a longer period than the Speedy Trial Act contemplates for sorting out every single pre-trial issue. The defense effort to cast what happened as an eleventh hour revelation to their detriment is farce.

For these factual reasons alone, the Court should reject the Sixth Motion to Compel as an effort to re-open discovery and delay trial based on an entirely false premise.

---

[2] In light of the close relationship between Steve, Steve's family, and the defendant and his family and their shared acquaintances and community, it seems unlikely that the Defense did not know, well before July 31, 2019, that Steve was in Jordan.

II.    *The Defendant Has Suffered No Injury.*

Steve is a Jordanian would-be government witness who bought his own plane ticket and flew home over a year ago. He was not deported. He did not possess exculpatory information. He was not deported in bad faith because he possessed exculpatory information. The defense's hopeful speculation, without citation, that Steve would be susceptible to cross-examination at trial does not establish otherwise. So, Hamzeh's reference to *United States v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012), in which the government deported in bad faith a witness in possession of exculpatory information, should be disregarded.

Further, baked into Hamzeh's motion is the premise that there would be some constitutionally infirm unfairness if Steve's testimony against Hamzeh were allowed in at trial and then the defense could not cross-examine him. *See* Sixth Motion to Compel at 3-4 (indicating that a possible remedy for the purported harm is the exclusion from evidence of Steve's (out-of-court) statements). That would be true. But Hamzeh's Sixth Amendment confrontation clause rights are only implicated if Steve's *testimony* is admitted into evidence.[3] If the government deported Steve and then attempted to introduce an affidavit or videotaped deposition from him as testimonial evidence against

---

[3] The government (and Hamzeh) may seek to admit some of Steve's recorded out-of-court statements eliciting or responding to Hamzeh's recorded, admissible non-hearsay statements under the rule of completeness. But those statements by Steve would necessarily be non-testimonial, and would be offered not for their truth but only to make Hamzeh's statements intelligible to the jury.

6

Hamzeh at trial, Hamzeh might be aggrieved if he could not cross-examine Steve. But, of course, nothing like that has actually happened.

Instead, what has happened here is simple: The defendant sought, and obtained, delays in his trial date. Rather than waiting around in a country foreign to his own, one of the witnesses to Hamzeh's crime ultimately left the country. Unfortunately for the government, this witness is the person who first reported Hamzeh's plans to commit a mass killing to the FBI. And he was Hamzeh's best friend, no less. (As is typical, the government's case only gets more difficult to prove as trial delays mount.) Nonetheless, the government has elected to proceed with Hamzeh's trial given the strength of its remaining evidence. The government's burden of proof at that trial remains unchanged; even without Steve as a government witness, it will have to prove beyond a reasonable doubt that Hamzeh illegally possessed two machine guns and a silencer. Both parties will remain subject to the rules of evidence and the restrictions of the Confrontation Clause. Hamzeh has not been injured.

III.    *The Defendant's Requests For Relief Are Misplaced.*

The Sixth Motion to Compel concludes with a variety of requests, ranging from agent rough notes to an evidentiary hearing. No shred of evidence, and no case law in this or any other circuit, supports those requests. The defense refers to the possible applicability of 28 U.S.C. § 1783, but as Hamzeh knows, because Steve was his best friend, Steve is not a national or resident of the United States. He is Jordanian. The first sentence of Section 1783 thus makes clear it does not apply here: "A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before

7

a person or body designated by it, *of a national or resident of the United States* who is in a foreign country . . . ." An evidentiary hearing cannot be supported by a defendant's feigned ignorance or attempt to manufacture a disputed issue of material fact. *See United States v. Jackson*, 2015 WL 1609180, *3 (E.D. Wis. April 10, 2015)(citing *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998)). *See also United States v. Rojas,* 1995 WL 476587, *7 (N.D. Ill. Aug. 4, 1995) ("[A] mere desire to cross-examine government witnesses is an insufficient reason to hold a hearing.").

The court must only conduct an evidentiary hearing "if evidence on an issue of fact is necessary to the decision of the motion." *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981). Speculation that an evidentiary hearing might help the defense cannot suffice. Compare *United States v. Hamzeh*, ORDER ON THE DEFENDANT'S DISCOVERY MOTIONS at 5 (Dkt. No. 219) ("Hamzeh has failed in his burden to make the requisite prima facie showing of materiality. . . . He offers only speculation . . . . Such bald conjecture is insufficient.").

In addition to an evidentiary hearing, Hamzeh has requested various documents or pieces of information, such as "Steve's immigration file," and "[a]ll emails and phone numbers that the government (prosecutors or agents) have communicated with Steve through." Sixth Motion to Compel at 5. These requests have no basis in the Federal Rules of Criminal Procedure, the Local Rules, or the Constitution; indeed, Hamzeh does not attempt to identify any source of law justifying his requests. Hamzeh's additional discovery requests should be denied. This Court should not permit ongoing pretrial nuisance litigation.

8

CONCLUSION

For the reasons set forth above, Hamzeh's Sixth Motion to Compel should be denied.

Dated at Milwaukee, Wisconsin this 29th day of August, 2019.

<div style="margin-left:40%">

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By:    */s/ Benjamin Taibleson*

Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
     Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov

</div>