UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

    Case No. 16cr21

*vs*.

SAMY M. HAMZEH,

    *Defendant*.

## REPLY BRIEF

Samy Hamzeh, by counsel, files this reply in support of the Sixth Motion to Compel relating to Steve's absence at trial.

The government's brief argues that the motion is based on a faulty premise: there never was an agreement that Steve and Mike would be at trial. The government doesn't explain what we did have, if not an agreement. Indeed, both quoted paragraphs memorialize agreements between the parties. Sitting together in a conference room the government orally agreed that Mike and Steve would be at trial and available as witnesses; and they orally agreed that they would make whatever agents we wanted to testify available without the defense having to subpoena them. In the letter (between attorneys who have worked together for years) the defense used softer language than "we have a formal agreement." Specifically, we wrote: "we understand" instead of "we agree." The government hasn't explained what changed in the expectation that our conversation conveyed. The parties agreed that the informants and the agents would be

Federal Defender Services
of Wisconsin, Inc.

available at trial, so the defense did not have to subpoena them. Using the verb "understand" instead of "agree" has no difference on the expectation conveyed or the duty it imposed.

Before moving on to the government's other arguments, there are two points that have to be absolutely clear. First, the defense and the government had an agreement far earlier than June 11, 2018. At the meeting, the defense simply confirmed the agreement and then followed up and memorialized the agreement in that letter. Second, as we worked through issues leading up to trial, the defense sought to make sure there wouldn't be any glitches at trial. So the defense confirmed with the government the two issues that were already squared away: the defense did not have to subpoena either the informants or the agents. In response, the government informed the defense that Steve was absent and would not appear to testify at trial. Here is the text of the defense's follow up email after learning of Steve's absence.

> When it comes to Steve's presence at trial, you've indicated that we will have to subpoena him as well. *Like the agents, we had an agreement with Greg that Steve would be at trial.* You indicated that (like the defense) you wanted to call him, but the government can't find him or know where he is. I can't recall the exact words used, I apologize; but that was gist of what I understood. *As you know, he's an essential witness for the defense and his absence will lead to extended litigation. Since that came as such a surprise to me, I am hoping that when we talk next week you can fill me in more on the details of where things stand with him and your ability to find him and get him here.*[1]

It's worth noting the use of the word "agreement" to describe what was formed between the parties and that this came as a surprise to the defense.

---

[1] July 20, 2019 2:21 p.m. email between Attorneys Bugni and Tableson (emphasis added).

2

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 09/03/19   Page 2 of 10   Document 254

The real problem with the government's argument is that it disparages the defense team's expectation that the government could insist on a foreign national to come back after he voluntarily left but that's precisely what the government did: it made an assurance when (we are told) they had no control over Steve. If Steve left in June (we're not told when) while a September trial date was still pending and the government was making assurances he'd be at trial, then there was an expectation that he'd be coming back and the government would make sure he was. After all, the trial wasn't continued until late July. At no point in the intervening year did the US Attorney's Office notify us that Steve had left or that he was not coming back. If it had, we would have made other arrangements—such as traveling to Jordan and taking his deposition. That is how important a witness Steve is to the defense.

Now, maybe the government has done all it can and Steve just fled the country and refuses to come back. That would, of course, be relevant to the Court deciding upon a remedy and whether Rule 804(b)(6) applies—the rule governing statements offered against a party that wrongfully caused the declarant's unavailability. But that's all to be decided *after* the Court sorts out what happened with Steve: when he left, why, what financial support he previously received in connection with coming back to the United States, what financial support has been offered in the past, what current financial support is available, whether the government has altered its position relating to financial support or immigration benefits, what immigration assistance has been offered, and what efforts were made to get him back. That is, after the defense receives a full picture of what transpired with Steve and his presence at trial.

3

Federal Defender Services
of Wisconsin, Inc.

That brings up five important points that contradict the government's arguments for denying the defense's motion. First, the two original trial dates weren't continued because the defense was not ready or sought a strategy of delay. The trial was continued (both times) because government didn't have the transcripts done. That much was clear and there is no reason to re-characterize the case's history as something other than that.

Second, the government attributes to the defense attorneys "feigned ignorance" over Steve's status and knowing that § 1783 would not apply. That's an unfortunate statement. The defense team has no idea what Steve's status is. We have never received his A-file, we don't know what effect his marriage had on his immigration status, nor do we know what immigration benefits Steve received in this case. Indeed, he traveled pretty freely in and out of the United States and stayed here for a long time—under what official immigration status that was done, we have no idea. In any event, the government has broad powers to assist non-citizens and to exert pressure on them, so there never is any reason to think that status alone sets the boundaries for the government's actions and expectations. Further, the idea that Hamzeh would know his "best friend's" immigration status is laughable. Immigration laws are complicated, and the types of temporary or permanent authorization to be in the country is easily changed by the U.S. government. In other words, neither Hamzeh nor his lawyers have an idea about what Steve's actual immigration status was.

Third, the government's brief disparages the defense, noting that "[i]n light of the close relationship between Steve, Steve's family, and the defendant and his family and their shared acquaintances and community, it seems unlikely that the Defense did not

4

know, well before July 31, 2019, that Steve was in Jordan." R.248:5. To be clear, we didn't know with any certainty; but more importantly, we expected that the government would honor its agreement and have Steve here (as it had done previously), so we didn't look into it. The defense had been told in the summer of 2018 that he was back for trial (we didn't know he'd left in June), so even if he returned to Jordan there was a reasonable assumption that he'd be back. What's more, when it comes to Steve's relationship with Hamzeh, experience teaches and common sense confirms that friendships are usually severed once a person entraps an unwitting friend, who then spends thirty months incarcerated, while waiting for his day in court.

Fourth, the government argues that Steve's testimony wouldn't be helpful and for that matter his statement's aren't testimonial. R.248:6. In the absence of any explanation from the government on why that would be, the defense will supply responses to both points. For confrontation purposes, a testimonial statement is not simply one contained in a deposition or affidavit; the issue is whether the statement is testimonial in nature. The test in *Crawford* and *Davis* is to determine the statement's primary purpose—that is, the issue is not whether the statement was made in a deposition or affidavit; rather, the issue is whether the statement is meant to further a criminal prosecution. *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004); *Davis v. Washington*, 547 U.S. 813, 822 (2006) (noting statements are testimonial when "the primary purpose of the interrogation "is to establish or prove past events potentially relevant to later criminal prosecution").

Here, Steve's statements to the FBI (those recorded in reports) are all testimonial. There is an investigation and they are all meant to further that investigation and

5

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 09/03/19   Page 5 of 10   Document 254

Hamzeh's future prosecution. *See Michigan v. Bryant,* 562 U.S. 344, 377 (2011) (noting "the circumstances lacked any formality that would have alerted Covington to or focused him on the possible future prosecutorial use of his statements"). Steve knew that every statement he made to the agents and in recordings might be used in a criminal prosecution. Furthermore, "the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). So there is no basis to argue that Hamzeh's Sixth Amendment rights are implicated only if "Steve's *testimony* is admitted into evidence" as in attempting to introduce "an affidavit or videotaped deposition from him." R.248:6.

That leaves the second point in the government's confrontation argument: what would Steve offer that's helpful (or exculpatory) to the defense? Here, Steve would testify that Hamzeh is a "bull-shitter"—those are his words in a report. Steve would testify that his initial reports about Hamzeh's statements that sparked the investigation all turned out to not be true. Steve would testify that Hamzeh never had a gun before his involvement with Mike. And Steve would testify about what Mike's gun looked like. Remember: there is a bait and switch by Mike, promising one gun (like his) and delivering another—a fully automatic. Steve would also testify that Mike showed Hamzeh videos about the Masons—they were Mike's idea, not Hamzeh's. He would testify about *all* the times between December 14 and January 18, 2016 that he spent with Hamzeh (hanging out daily) and Hamzeh's anodyne plans to take a vacation. And he would testify about how Mike drove the conversation towards guns. That's not speculation. That's what we

6

Federal Defender Services
of Wisconsin, Inc.

know from the reports and recordings. It also appears that he would acknowledge his regret over the manipulation of his former friend. And whatever doubts might remain about Steve's disposition towards Hamzeh, the Court can never forget: after Hamzeh's arrest Steve had a mental-health breakdown and refused the FBI's money. After the last trial was adjourned, the defense and the government received his mental health records that detailed his emotional deterioration.

That brings the defense to the final point and what's lost in the government's response: why we need the discovery requested and why this is a proper exercise of the Court's authority. The government's brief consists entirely of representations without proof. We are told Steve left in June, but if that's so, send over a report. We are told he's a foreign national, if so, send over the A-file. We are told that when Steve left, he said he was returning, which appears to contradict (or could) the claim that he just got up and left on his own; if that's so, then turn over a report. Maybe Steve left the country voluntarily, maybe he was told to leave. We don't know. We also don't know if the government has had any contacts (phone calls, email, or texts) with him since he left and what was said during those contacts. And that absence of information is precisely why the defense didn't disparage the government or the government's attorneys in its motion. We are simply in a position where two months from trial, we learn that a key witness will not be at trial and subject to cross-examination. We don't know enough about what precipitated his departure and now his alleged refusal to come back. And the only way we can know what happened with Steve and his absence is by getting the documents and reports we've demanded.

Federal Defender Services
of Wisconsin, Inc.

On top of that, the government argues that there is no basis to order this information produced. First, the government (again) claims "feigned ignorance" by the defense and cites *United States v. Jackson,* from this district noting when there is no disputed facts, no hearing is necessary. Well, we dispute there was an agreement. It's also worth noting that the author of the government's brief wasn't at the meeting, when the agreement was formed. And arguing over the form of the hearing puts the cart before the horse. We want to know what led to Steve flying home and what precipitated his refusal to fly back. If it's all as the government represents, then turn over the documents and we'll sort it out.

What's more, the government takes the defense to task for its discovery requests—"Hamzeh does not attempt to identify any source of law justifying his requests." R.248:8. How about this: Under Rule 16, the government must disclose upon the defendant's request, all "documents ... within the government's possession, custody, or control ... [that are] material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *see also United States v. Gaddis*, 877 F.2d 605, 611 (7th Cir. 1989) (noting the standard for "material"). Here, among the defenses that Hamzeh will (or will likely make) is to move to dismiss the Indictment because Steve is gone and he was *very* favorable for the defense, or depending on what the facts bear out, the defense may simply seek a missing-witness instruction. Regardless, Steve's presence at trial and determining why he's not present at trial is material to our defense.

In closing, it's worth quoting an observation from the Court in *United States v. Leal-Del Carmen,* where it described the proceedings that dealt with a missing witness and the

8

Federal Defender Services
of Wisconsin, Inc.

Court's surprise that the defense had to actually file discovery motions (like this) and that the evidence wasn't simply turned over:

> We were surprised to learn that the Justice Department required defense counsel to make discovery requests rather than voluntarily and promptly turning over discovery materials. . . . . It's difficult to understand how the Justice Department justifies imposing this expense on taxpayers and the court, or reconciles it with the government's duty of fairness in criminal cases. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

697 F.3d 964, 968 n.4 (9th Cir. 2012). So too here. Maybe Steve left voluntarily, maybe he bought his ticket, maybe this is all extremely unfortunate and we just have to deal; but until the government in its duty of fairness and obligation to turn over the material necessary for the defense turns over the discovery, we can't know. Thus, the defense respectfully requests that this Court order the government to produce the requested discovery. Once that is done, the defense will file the appropriate motion, including (if necessary) one seeking an evidentiary hearing.

Dated at Milwaukee, Wisconsin this 3rd day of September, 2019.

>Respectfully submitted,
>
>/s/     Craig. W. Albee
>Craig W. Albee,
>Joseph A. Bugni
>FEDERAL DEFENDER SERVICES
>  OF WISCONSIN, INC.
>517 E. Wisconsin Ave - Rm 182
>Milwaukee, WI  53202
>Tel. (414) 221-9900
>
>*Counsel for Defendant*, Samy M. Hamzeh