UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

  v.              Case No. 16-CR-21

SAMY HAMZEH,

    Defendant.

**UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S SECOND MOTION IN LIMINE: ATTORNEY CONDUCTED VOIR DIRE AND THE DEFENDANT'S PROPOSED CONFIDENTIAL JUROR QUESTIONNAIRE**

  The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Adam Ptashkin and Benjamin Taibleson, Assistant United States Attorneys, hereby files this Response in Opposition to the Defendant's Second Motion in Limine: Attorney Conducted Voir Dire (R. Doc. 257). The Court should reject the defendant's request for attorney-conducted voir dire. Hamzeh's Motion provides no evidence that the Court is incapable of conducting an effective voir dire that will ensure the defendant receives a fair trial nor any that attorney-conducted voir dire would be preferable on any dimension. The United States also moves for the Court to delete or amend certain questions from the defendant's proposed jury questionnaire (R. Doc 252).

**I.  Voir Dire Should be Conducted Solely by the Court.**

  There is no reason that this district's customary practice of the Court conducing voir dire would be insufficient to detect prospective juror bias, as the defendant's Motion alleges. Moreover, the Court has not barred the parties from the voir dire process. To the contrary, the Court has asked

1

the parties to submit recommended areas of inquiry appropriate under the facts and circumstances of this case for the Court to question prospective jurors. Critically, an extensive jury questionnaire, drafted by the defendant's counsel, will be sent to the prospective jurors. As the Seventh Circuit stated in upholding the denial of a defendant's request for attorney conducted voir dire because of alleged racial prejudice in the jury pool and pretrial publicity, in doing so,

> we would be returning to a trial within a trial, with the attorneys asking, or having the judge ask, unlimited questions, and with the underlying purpose often that of indoctrinating the prospective jurors with the questioner's theory of the case, without the necessity of putting on sworn witnesses.

*United States v. Banks*, 687 F.2d 967, 975 (7th Cir. 1982). *See also United States v. Verkuilen*, 690 F.2d 648, 659-60 (7th Cir. 1982) (upholding the denial of defendant's request for voir dire conducted by counsel and stating the court's voir dire adequately addressed issues of juror bias); *United States v. Johnson*, 2011 WL 809194, at *2 (N.D. Ill. Mar. 2, 2011) (unpublished) (denying defendant's request for attorney conducted voir dire); *United States v. Resnick*, 2013 WL 3874155, at *1 (N.D. Ind. July 26, 2013) (unpublished) (denying defendant's request for attorney conducted voir dire, *aff'd*, 823 F.3d 888 (7th Cir. 2016); *United States v. Simpson*, 1991 WL 296860, at *4 (N.D. Ill. July 15, 1991) (unpublished) (in denial of post-trial motion for new trial, upholding denial of defendant's motion for attorney conducted voir dire).

General Local Rule 47 of this district in states, "Unless otherwise ordered, the voir dire examination of prospective jurors will be conducted by the Court. Counsel may submit written proposed questions for voir dire. Counsel may request additional questions in light of prospective jurors' responses to the Court's examination." There is no reason to depart from this standard district procedure in this case. If the defense believes there are certain questions that should be asked of the jury pool, it should simply submit them to the Court. It merely seeks to avoid the Court's determination that certain questions are inappropriate. This Court should not allow that.

One of the defendant's attorneys earlier this summer verbally asked the United States in a telephone call if the United States also expected that voir dire in this case would take days. As the United States stated to the defendant's attorney at the time, the United States vigorously opposed a voir dire of this length and manner. A jury that is already going to be asked do quite a lot should not be subjected to a trial within a trial, let alone an opening statement masquerading as an inquiry into their biases. The defendant has now filed a Motion in Limine requesting attorneys have the ability to ask questions to prospective jurors in voir dire. Regardless of whether attorney questions would add hours or days to voir dire, the United States vigorously opposes the defendant's Motion in Limine.

If particular jury questionnaire responses raise questions about the bias of any prospective jurors, the Court can conduct individual voir dire and ask that prospective juror questions in the courtroom or in chambers. Rather than have attorney conducted voir dire, the parties could also be given a chance to propose in writing at the end of voir dire additional questions for the Court to ask individual jurors as needed. The Court can then determine whether those questions are valuable and would be asked in good faith. Having the court ask potentially sensitive questions, including the proposed follow up questions, eliminates the need for either party to ask a question that may be perceived by a potential juror as unnecessarily intrusive. Further, there is no reason for attorneys to ask questions directly to the jurors. The lawyers should only speak directly to the jurors in opening and closing statements.

Thus, the United States proposes the Court follow the standard voir dire practice used in this District, in which the Court conducts voir dire, attorneys are not allowed to ask prospective jurors questions, and voir dire typically lasts hours not days. The Court should not allow the defendant's attorneys to turn voir dire into a multi-day circus during which they harangue potential

3

jurors and attempt to push a narrative that the defendant was investigated and charged with a crime for some other reason than that he purchased and possessed machine guns and silencers so he could commit a mass killing. The United States vigorously opposes a state court style voir dire in which the defendant's attorneys ask the jurors questions and use the opportunity to attempt to indoctrinate the jury – that is precisely what the Seventh Circuit sought to avoid in *Banks,* 687 F.2d at 975.

This Court ensures fair and orderly trials in every trial. There is no reason to believe possible juror bias or what meager media coverage this case received circa 2016 is beyond this Court's ability to address. There are constitutional requirements to ask the prospective jurors questions about racial bias and pretrial publicity in certain situations. The defendant's proposed jury questionnaire goes into these topics ad nauseum. The jury questionnaire in concert with court-conducted voir dire is more than competent to comply with the law and ensure a fair trial.

This United States also notes that this is not a case where there is any legitimate allegation of racial bias against the defendant by law enforcement that is relevant to the elements of the offense. A Confidential Human Source, who is the same race and religion as the defendant, reported the defendant to the FBI because Hamzeh was planning a mass murder. This initial Confidential Human Source and an additional Confidential Human Source, again of the same race and religion as the defendant, then recorded the defendant's truly disturbing statements. FBI employees involved in the investigation were also racial minorities. The FBI just wanted to stop one human from murdering other innocent humans, and it successfully did stop this attack. The defendant's race and religion played no role in the motivation to investigate and prosecute the defendant. To argue otherwise would be frivolous.

Further, in cases where pretrial publicity poses a significant issue, while leaving the exact form of the questioning to the trial court, Due Process may require the Court to conduct some

4

inquiry regarding jurors' exposure to pretrial publicity and the possibility of bias from any such exposure. But there is no reason to believe this Court is not competent to do so. *See generally Mu'Min v. Virginia*, 500 U.S. 415, 431-32 (1991) ("Petitioner in this case insists, as a matter of constitutional right, not only that the subject of possible bias from pretrial publicity be covered - which it was - but that questions specifically dealing with the content of what each juror has read be asked. For the reasons previously stated, we hold that the Due Process Clause of the Fourteenth Amendment does not reach this far, and that the voir dire examination conducted by the trial court in this case was consistent with that provision.").

In certain cases, it may be best for the court to examine jurors individually on pretrial publicity. *Skilling v. United States*, 561 U.S. 358, 389, 395 (2010). And it may be worth asking in this case. But this trial is not, for example, a trial about Enron in what had until Enron's collapse been an Enron company town. This case simply has not received substantial media coverage compared to other mass casualty cases that have occurred throughout the country. It has received almost no coverage of any kind of years. In any event, Hamzeh's proposed jury questionnaire already asks extensive questions about pretrial publicity, and the Court can ask what it wishes. Attorney-conducted voir dire on this topic would be of little value.

The Court is the ultimate trier of fact during voir dire and is more than capable of asking potential jurors follow up questions during in person voir dire if the responses to the jury questionnaires indicate that is necessary.

According to the defense, there is "less (but still significant) unconscious bias against Muslims than African-Americans." Hamzeh's *Voir Dire* Motion at 8-9. Ultimately, if we accept that this defense claim is true, it would be improper to treat this defendant differently from the African-American defendants who are subject to this Court's standard procedures. This Court's

5

standard procedures are fair and just, and applying them uniformly promotes both the fact and the appearance of justice. The defendant's brief is essentially one long implied allegation that Court conducted voir dire produces impermissibly biased juries in every case. That cannot be correct.

## II.     Objections to the Defendant's Proposed Jury Questionnaire.

The United States' concern regarding the possibility of defense counsel directly questioning prospective jurors is heightened substantially by the volume and substance of the questions the defense includes in its proposed jury questionnaire. First, as to volume, the defense originally submitted 19 pages of proposed jury questionnaire questions (containing 62 numbered questions, some of which included sub-questions). This Court ordered the defense to shorten its submission to six pages. In response, the defense appears to have reformatted its submission, and removed its question numbering. The defense now proposes this court order members of the public to respond to 72 different questions and then potentially 20 more prompts for written, narrative responses (*e.g.*, "if yes, please explain"). This Court should decline to do so.

As to the substance of the questionnaire, among other questions, the defense asks that this Court to order prospective jurors to answer questions that are thinly veiled inquiries into their religion:

- "Do you belong to a church, mosque, synagogue, or any other religious community? If yes, which one and how often do you attend services?"
- "Have you ever visited Israel and/or Palestine? If yes, please state where you visited and the reason for your visit"
- "Do you now or have you ever had a position of leadership in your religious community? If yes, please explain:"

Jury questionnaire and voir dire questions are appropriate if answers to them could possibly provide a permissible reason to strike a prospective juror. Forcing a prospective juror to answer "do you belong to . . . a synagogue" is, candidly, offensive. *United States v. Stafford*, 136 F.3d

6

1109, 1114 (7th Cir.), modified, 136 F.3d 1115 (7th Cir. 1998) ("It would be improper and perhaps unconstitutional to strike a juror on the basis of his being a Catholic, a Jew, a Muslim, *etc.*"). *Compare* United States Constitution, Article VI ("no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States"). *See also* 28 U.S.C. § 1862 (2003) ("No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status.").

This line of questioning is completely inappropriate and irrelevant; the defense should not be allowed to cause it to come directly from a federal court in the United States of America. One's religion simply should not disqualify a person from sitting on a jury. These proposed questions clearly demonstrate the tip of the iceberg of the questions the defendant's attorneys would ask in attorney conducted voir dire, and provide yet another reason to bar the defendant's attorneys from conducting voir dire. Are the defendant's attorneys going to be able to harangue all the citizens of this district in the jury pool about their religious beliefs? Are any of the American citizens in the jury pool that think terrorists attacking innocent civilians is morally wrong going to be questioned extensively on these beliefs and made to feel as if they are racists because they oppose terrorism?

Further, the defense asks this court to order members of the community to disclose in writing to the court their political views and affiliation. For example,

- Have you or your spouse/partner ever belonged to any civic, social, *political*, environmental, professional or trade clubs or organizations? Please identify the group and any leadership position held:

(emphasis added)

- What groups have you or your spouse/partner donated money or volunteered time?
- Have you or your spouse/partner ever belonged to any civic, social, political, environmental, professional or trade clubs or organizations? Please identify the group and any leadership position held:

7

This is a substantial intrusion of dubious value with regard to picking a fair jury. It signals to prospective jury members that the Court, which is again the trier of fact during voir dire, believes their political affiliation is relevant to the fair conduct of a federal criminal trial.

Any questions priming the jury pool regarding the defendant's proposed entrapment defense are also inappropriate at this stage. The United States believes any such questions should be deleted from the jury questionnaire until the Court rules on whether a reasonable jury could find that Hamzeh was entrapped, and thus whether it would be permissible for him to raise the defense at all. If the Court will allow the defendant to present the entrapment defense, this question can be asked to the jurors in person during voir dire on the first day of trial.

Similarly, the defendant proposes questions regarding confidential informants and covert recordings. The United States proposes these questions are rewritten as follows:

- Using undercover confidential sources or undercover law enforcement officers to covertly gather evidence is a lawful investigative technique. Do you have any views about the use of this type of undercover operation that would make it difficult for you to be fair and impartial in this case?

- Some of the evidence you may hear concerns conversations and meetings that were secretly tape recorded by law enforcement. This is a lawful investigative technique. Do you have any views about the use of secretly recorded conversations or meetings that would make it difficult for you to be fair and impartial in this case?

The defense also asks this court, via its proposed jury questionnaire, to engage in push polling. The defendant's questionnaire asks four questions about guns, nine questions about religious bias, and five questions on the presumption of innocence. It is, simply, not a document this Court can rely on. Instead of the nine questions on religious bias the defendant wants to ask, the United States proposes the following question be added to the jury questionnaire in lieu of those nine questions:

- "Mr. Hamzeh is an Arab Muslim. Do you understand that his race, ethnicity, and religious beliefs cannot play any role in your decision? Is there anyone who could not follow that rule?"

*See United States v. Mordi*, 277 F. App'x 613, 617 (7th Cir. 2008) (unpublished) (approving of a court asking a question the United States' question is derived from). In the Seventh Circuit the Court presumes that jurors follow the Court's instructions. *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007) (stating "'We presume that jurors follow instructions given them' unless 'there is an overwhelming probability that the jury was unable to follow the instruction as given.'") (internal citation omitted). If the jurors answer the United States' above suggested question, and on top of that follow the Court's instructions, there is no other question necessary on this topic. In fact, Pattern Criminal Jury Instruction of the Seventh Circuit 1.01 states, "You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you. [In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.]." [1] The defendant's nine questions on race serve no purpose other than jury nullification in light of this pattern instruction.

The Court should not allow the defendant's attorneys to conduct voir dire, which will result in an unnecessarily elongated voir dire that will allow the defense to present its opening statement and theory of the case through its voir dire questions. Nor should this court order members of the community to answer, often in narrative form, nearly 100 questions ranging from their religious affiliation to their political opinions. The defense has shown in the latter how it would conduct the former.

---

[1] Pattern Criminal Jury Instruction of the Seventh Circuit 2.01 states, "You must make your decision based only on the evidence that you saw and heard here in court."

9

### III. Conclusion

For the reasons set forth above, only the Court should conduct voir dire in this case. The Court should also amend the proposed jury questionnaire..

Dated at Milwaukee, Wisconsin this 9th day of September, 2019.

Respectfully submitted,

s/ Adam Ptashkin
ADAM PTASHKIN
BENJAMIN P. TAIBLESON
Assistant United States Attorney s
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-4581
e-mail: adam.ptashkin@usdoj.gov
benjamin.taibleson@usdoj.gov