UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    *Plaintiff,*

                                                  Case No. 16-cr-21-PP

*vs.*

SAMY M. HAMZEH,

                    *Defendant.*

**REPLY BRIEF IN SUPPORT OF PRESENTING ENTRAPMENT DEFENSE**

      Samy Hamzeh, by counsel, files this reply brief in support of the first motion in limine: the ability to present an entrapment defense.

      As important as it is for the Court to grasp the facts of this case, the biggest difference in the parties' pleadings is not the facts but the law. Without a doubt, the facts matter. But the government's response doesn't call into question most of the facts proffered by the defense, it simply offers additional facts and disagrees about what inferences to draw from them. That's problematic for the government because for purposes of this motion the Court "must accept the defendant's proffered evidence as true" and "not weigh the government's evidence against it." *United States v. Mayfield,* 771 F.3d 417, 420 (7th Cir. 2014) (en banc). There are, to be certain, points that the government colorfully attacks the defense on, but it hasn't established that any act or fact that the defense has pointed to in the initial brief didn't happen. It just disputes the significance.

Federal Defender Services
of Wisconsin, Inc.

Beyond this Court's obligation to accept the defense's proffered evidence as true and not weigh the government's evidence against it, the government faces other significant legal hurdles in its effort to bar the entrapment defense. The defense only needs to point to "some evidence in the record that would allow a rational jury to conclude that he was entrapped." *Id.* at 440. While the defense must proffer evidence on both elements of the entrapment defense (predisposition and inducement) to get a jury instruction and shift the burden of proof to the government, this initial burden of production is "not great." *Id.* And the government's burden in excluding an entrapment defense based on predisposition is particularly high given the Seventh Circuit's view that "it's hard to imagine how a particular person could be deemed 'likely' to do something as a matter of law." *Id.* at 441.

To that end, the government never articulates why the facts proffered by the defense don't meet that burden of "some evidence" or "more than a scintilla" and instead focuses on whether those facts are contradicted by some other evidence or whether the jury could put more emphasis on one piece of evidence over another.[1] When the Court takes the defense's proffer and tries to weigh it against the government's proffer it invades the jury's province: "[W]here there is at least some evidence [of entrapment] on the record, *it is for the jury*… to weigh conflicting testimony, to draw reasonable inferences

---

[1] *See, e.g.*, R. 255: 13 (government disputing whether Hamzeh was sincere when he said the plan was all Mike's idea); *id*. at 14 (arguing that Mike was careful to not push Hamzeh but defense position is that he's manipulating him); *id*. at 20-21 (claiming that Steve is trying to convince Hamzeh not to go forward but arguably is goading and manipulating him); *id*. at 7, 16 (claiming Mike is playing along with Hamzeh's preexisting plan while the defense says Mike's badgering Hamzeh); *id*. at 18-19 (dispute over whose idea it was to get the guns); *id*. at 28 (dispute about what Mike told Hamzeh about the Masons).

Federal Defender Services
of Wisconsin, Inc.

from the evidence and to make credibility determinations." Seventh Circuit Federal Crim. Jury Instruction 6.05 (Committee Comment) (2019 ed.).

Those are the most important points for deciding this motion: the burden is not great and the contrary evidence is not to be weighed. But there are also some subsidiary points that this Court must keep in mind that are absent from or muddled in the government's brief.

- o Predisposition is measured before contact with the government's agent. *Mayfield*, 771 F.3d at 436 (holding, "predisposition is measured prior to the government's attempts to persuade the defendant to commit the crime");

- o It is probabilistic. *Id.* at 441 (predisposition is a "…probabilistic question…");

- o A person cannot be unentrapped. *See United States v. Skarie*, 971 F.2d 317, 321 n.5 (9th Cir. 1992) (government's argument that defendant became "unentrapped" is not legally cognizable);

- o The government must show that his predisposition related to *this* crime. *See Mayfield*, 771 F.3d at 438 ("[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to commit the crime—not just any crime.");

- o Inducement does not have to be great, it just has to be something beyond the mere solicitation of the crime. *Id.* at 434 ("As we explained in *Pillado*, 'subtle, persistent, or persuasive' conduct by government agents or informants may qualify as an illegitimate inducement.") (citation omitted);

- o Predisposition to do something legal (*e.g.*, obtaining a handgun or a semi-automatic rifle) is not predisposition to do something illegal (possess an unregistered machine gun). *See e.g., Jacobson v. United States,* 503 U.S. 540, 550–51 (1992) ("evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition").

Those points are fleshed out below, but they are the basic principles that cannot be lost in reading the government's response.

3

To that end, this brief is broken into three parts. First, it briefly recaps the chronology of certain key events so that the Court can see which events took place after the government inducement began. The chronology also puts into context some important facts that could be lost or confused by the government's recitation. Second, it addresses some legal errors in the government's brief; in particular, the main case relied on by the government, *United States v. Cromitie*, 727 F.3d 194 (2d Cir. 2013), was actually decided the opposite from what the government represents. And third, the brief returns to the first principles of entrapment law and addresses some of the salient points raised in the government's brief.

All of what follows confirms that the defense is entitled to present its entrapment case to the jury. None of the quotes proffered by the government (as distasteful as they are and as often as they are recited) undermine the fact that it has *no* evidence that before Steve started working for the FBI, Hamzeh wanted to purchase a machine gun. That's the relevant time frame. On top of that, even after the informants had begun working on Hamzeh and meeting with him daily for almost three months, Hamzeh resisted Mike's overtures to get a machine gun on December 7 and 14, saying all he wanted was a handgun—for protection. It was only after another month and a half of pressure and manipulation that the informants persuaded Hamzeh to buy a machine gun for a fraction of its value. And other than some footnotes, the government does not address the defense's seven stated "something more" factors for inducement. R.234:29–39. That is all to say, the defense should be allowed to present its case to the jury.

4

Federal Defender Services
of Wisconsin, Inc.

## I. The question this Court must decide and the time line the government is stuck with.

The government's brief includes lots of quotes, but not much context. The timing of the conversations in relation to the events is critical because if they reflect Hamzeh's state of mind after the government agents began working on Hamzeh, the statements and actions can't support a claim of predisposition. *E.g., United States v. Kaminski,* 703 F.3d 1004, 1008 (7th Cir. 1983). It's also important not to be sidetracked by the boastful conversations Hamzeh and the informants had about the Middle East. *See United States v. Joost,* 92 F.3d 7, 13 (1st Cir. 1996) (defendant was "inventing escapades, finding holes in them, suggesting exploratory trips, and inventing excuses"). This case is about whether the informants entrapped Hamzeh into obtaining unregistered machine guns in the United States; no one claims or could reasonably claim that Hamzeh sought a machine gun to travel to Israel.

Before discussing why the government's version of events doesn't support its arguments, it's worth reading this simple timeline. In this massive fact pattern, it should help orientate the Court. The timeline is admittedly not comprehensive, but it identifies activities the defense feels are necessary to an understanding of the case. And it saves the Court from having to (again) digest a narrative version of the facts. Hamzeh's initial motion provides the details and relevant citations.

5

Federal Defender Services
of Wisconsin, Inc.

| Date | Event |
|------|-------|
| 8/17/2015 | Steve begins contacting FBI to work as an informant/he has immigration issues |
| 9/16/2015 | First FBI memorandum: Steve tells FBI that Hamzeh is talking about traveling to Egypt for terrorist training and saying other far out things, none of which are ever corroborated |
| 9/23/2015 | FBI conducts first of 74 separate days of surveillances on Hamzeh (typically 8 hours each time). Agents never observe Hamzeh showing interest in guns unless he's with the informants |
| 9/24/2015 | Steve reports that Hamzeh changed his mind and said it was a bunch of bullshit |
| 9/24/2015 | At the FBI's request, Mike gets a job at the restaurant where Hamzeh works so he can befriend him |
| 9/24/2015 | Steve has his first recorded phone call with Hamzeh. |
| 10/2/2015 | Mike begins talking about guns and shows Hamzeh and Steve his gun while in his car outside the restaurant |
| 10/13/2015 | Steve has his first in-person recorded conversation with Hamzeh. |
| 10/15/2015 | Hamzeh reports to Steve that he plans on traveling to Israel but it's empty boasting; Hamzeh falsely claims he can't do it because his mother's sick |
| 10/15/2015 | Steve conducts his last in-person recording of conversation with Hamzeh until January 19, but he still sees or talks to Hamzeh daily |
| 11/2/2015 | Mike records a conversation with Hamzeh for the first time when he takes him to the shooting range; Hamzeh tells him he's never been shooting before |
| 11/2/2015 | Mike tells Hamzeh he owns a machine gun but he can't bring it to range; Hamzeh says he wants to get a cheap gun and a license; he says he likes the small ones; Mike tells Hamzeh that some of the guns for sale at the range are machine guns |
| 11/11/2015 | Hamzeh tells Mike he wants a pistol for protection because he delivers on the north side |
| 11/12/2015 | Mike asks Hamzeh why he wants pistol; Hamzeh says for work |
| 11/19/2015 | Hamzeh again says he wants handgun for protection |

6

Federal Defender Services
of Wisconsin, Inc.

| | |
|---|---|
| 12/4/2015 | Mike tells FBI that Hamzeh wants him to go with him to buy pistol |
| 12/7/2015 | Mike takes Hamzeh to Gander Mountain to look at guns. When Mike asks if he wants a machine gun, Samy says "A handgun man! What do I need a machine gun for?" |
| 12/14/2015 | Mike takes Hamzeh to the shooting range. They banter about what they'd do if they went to Israel, but there is no plan. Eventually Hamzeh gets frustrated with Mike's continual talk of an "operation," telling him to leave him alone and saying that he asks the same question every day. Mike says you can kill 15 to 20 people with a Kalashnikov and one person with a pistol. Hamzeh responds 50 and 5. |
| 12/14/2015 | Hamzeh again tells Mike he wants a handgun for the house, that's all, not for anything else. But he doesn't get one |
| 12/14/2015 | Mike stops recording all of his conversations with Hamzeh for 35 days but they still have daily contact |
| 1/4/2016 | Mike tells agents that Hamzeh is no longer talking about an attack but had mentioned getting a gun because a co-worker was carjacked. |
| 1/8/2016 | Steve reports to FBI that Hamzeh no longer speaks about jihad |
| 1/11/2019 | Mike reports again to the FBI that Hamzeh has had no recent conversations about traveling overseas for Jihad. |
| 1/19/2016 | Mike begins recording again and there is discussion about plan to attack Masons. There are no FBI reports prior to this date where Mike reports this development. |
| 1/19-20/2016 | In conversation that Hamzeh doesn't know is recorded, he reports to Steve and another man that Mike had started talking about the Masons in the last two weeks, he said that they were ISIS, and he said that they should attack them. He also says that Mike "brainwashes you" |
| 1/19-24/2016 | The men converse about attacking the Masons |
| 1/24/2016 | Hamzeh visits the Imam for spiritual guidance and then tells Steve and Mike their plan is wrong, against their religion, and none of them can go through with it. |
| 1/25/2016 | Hamzeh is arrested |

Federal Defender Services
of Wisconsin, Inc.

## II.    The problems with the government's cases.

In a motion like this, the law is more important than the facts. The defense has proffered a narrative that would allow a reasonable juror to find that Hamzeh was not predisposed to commit this offense and that the government induced him. While it was important to give some context to the government's quotes, it's more important to show that the cases it cites don't support its legal arguments. In a very real way, the three cases that this Court needs to focus on are *Mayfield, Hollingsworth,* and *Jacobson.* Those are *en banc* or Supreme Court opinions that remain the law and must guide the analysis.

While sparingly referring to those cases, the government cite cases to make four important claims. First, it urges the Court to follow *Cromitie* to resolve this case. R.255:31. Second, it mistakenly uses cases about 404(b) evidence in entrapment cases to argue that Hamzeh only had to be predisposed to commit a similar offense and not that with which he's charged. R.255:24–25, 34. Third, it argues a standard inconsistent with *Hollingsworth* — namely, that Hamzeh merely had to be "positionally predisposed" to acquire automatic weapons or the cheap, widely-available aftermarket parts that convert cheap, ubiquitous semi-automatic weapons into automatic weapons. *Id.* at 34. And fourth, it mistakenly argues that *Blitch* somehow supports there being a standard of "*per se* predisposition." *Id.* at 28. Each proposition is addressed below.

In its brief, the government spends three pages discussing *United States v. Cromitie*, 727 F.3d 194 (2d Cir. 2013), a case the government calls the "nearest case to this one" in the federal case law and which it characterizes as an "extremely thorough, persuasive analysis of how to apply the Supreme Court's entrapment precedent in a confidential-

Federal Defender Services
of Wisconsin, Inc.

informant-based terrorism sting case." R.255:31. Building on the case's perceived importance, the government twice asserts that the defendant in *Cromitie* was not allowed to present an entrapment defense to the jury. *Id.* at 33 ("[B]ut Cromitie had to be taken at his word regarding his predisposition. As such, he could not raise an entrapment defense."); *id.* (noting "when affirming the district court's refusal to allow Cromitie to present an entrapment defense given his stated predisposition"). But that's not what happened in *Cromitie*. Rather, Cromitie (like his co-defendants) was allowed to present the entrapment defense to the jury—they deliberated for eight days. *Cromitie*, 727 F.3d at 203. The issue on appeal was whether Cromitie established entrapment as a matter of law. *Id.* at 204 (noting "[t]he defendants make three principal claims on appeal: (1) the evidence established entrapment as a matter of law"). And in a 2–1 decision, the Second Circuit affirmed the conviction and found that the defense had not proven entrapment as a matter of law. *Id.* So *Cromitie* does not deal with baring the defendants from presenting their case to a jury; the issue was much narrower and dealt with a higher could: whether "no reasonable jury could find predisposition beyond a reasonable doubt." *Id.* at 210. [2]

But even that decision likely turned on the court's rejection the Seventh Circuit's en banc decision in *Hollingsworth. Id.* at 216–17 ("The defendants challenge the jury charge on entrapment on the ground that the charge did not instruct the jury in accordance with the Seventh Circuit's decision in *United States v. Hollingsworth*, 27 F.3d 1196 (7th Cir.1994)

---

[2] On this point, the government does correctly note the holding earlier in its brief. R.255:32 ("the Second Circuit found there was no entrapment as a matter of law.").

Federal Defender Services
of Wisconsin, Inc.

(en banc)"). Since *Hollingsworth* and its probabilistic inquiry applies here, *Cromitie* doesn't just show that Hamzeh is entitled to present the entrapment defense to the jury, it ultimately supports granting a Rule 29 motion at the close of the evidence. That's the first problem with the government's cases: *Cromitie* doesn't support baring Hamzeh from presenting the entrapment case to the jury.

Likewise, the government second problem with its case law lies in its mistaken belief that it's sufficient if Hamzeh was predisposed to commit either this or a very similar offense. R.255:22–25, 32. But under *Mayfield,* the law is that the government must show that Hamzeh was predisposed to commit this crime. *See Mayfield,* 771 F.3d at 438 ("[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to *commit the crime – not just any crime*." (emphasis added)); *see also Jacobson*, 503 U.S. at 551 ("Evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal"). The government tries to expand the standard to "similar offenses." R.255:22–25, 32. But that's not what *Mayfield* demands and the cases the government cites don't undermine *Mayfield* or actually support the government's theory.

In its brief, the government argued that: "Predisposition analysis is not as narrow as is implied in Hamzeh's motion. The defendant's predisposition need not be to commit precisely the same crime as that charged." R.255:25. It's worth noting that the defense didn't imply that the analysis was narrow; we quoted *Mayfield* that it was. *See* R.234:27–28. Regardless, the government posits: "Instead, understandably, [predisposition] need

Federal Defender Services
of Wisconsin, Inc.

only be to commit the same or a similar crime." R.255:25. And then it cites a few cases, the relevant ones from this Circuit are *Lewis* and *Moschiano*.[3] Here's the problem: while its quotes are accurate, the cases were not talking about the defendant's actual predisposition but what evidence under Rule 404(b) was relevant for a jury to weigh in assessing whether the defendant was predisposed to commit *the* charged crime.

In *Lewis*, the Court allowed the defendant to present an entrapment defense and he appealed because in response to the entrapment defense the government introduced some of his prior convictions.

> Lewis argues that the district judge abused her discretion by allowing the government to mention his 1995 and 2000 convictions during its case-in-chief. Under Fed.R.Evid. 404(b), evidence of a defendant's prior bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith." However, when a defendant employs an entrapment defense, evidence of prior bad acts is admissible to prove predisposition "because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue."

641 F.3d at 783 (quotation omitted). The government's argument from *Lewis* simply confuses what is admissible for the jury to consider when deciding on predisposition (evidence of a defendant's character) with what the jury must decide: whether the defendant was predisposed to commit this specific crime. *See Mayfield*, 771 F.3d at 438 ("[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to *commit the crime – not just any crime*." (emphasis added)). Likewise, the government's

---

[3] *See* R.255:25(*United States v. Lewis*, 641 F.3d 773, 783 (7th Cir. 2011) ("to prove predisposition [in an entrapment case] the past conduct need not be identical to the crime charged. Rather, the conduct need only be "similar enough and close enough in time to be relevant to the matter at issue."); *see also United States v. Moschiano*, 695 F.2d 236, 244 (7th Cir. 1982) ("Here, the nature of the activity was substantially similar to the indicted offenses").

Federal Defender Services
of Wisconsin, Inc.

quote from *Moschiano* is not about what the government must show under predisposition but whether evidence of other acts was properly admitted to show a defendant's propensity. *Moschiano*, 695 F.2d at 295. In sum, neither case lessens the government's burden under *Mayfield* and the demand that it establish (beyond a reasonable doubt) that Hamzeh was predisposed to commit *this* crime—the possession of an unregistered machine gun.

The third point of law concerns the government's argument that "Hamzeh claims his case is like one in which the government sold him such a nuclear weapon. It is not. First, machineguns are available for street purchase. They are seized in Milwaukee, in Chicago, in Texas, and nationwide all the time. Hamzeh wanted such weapons, and he could have gotten them." R.255:34. There are two important points to note. First, the government is attempting to try this case in the motion in limine. We have proffered evidence that these machine guns are not found on the streets of Milwaukee or without very special connections. The government simply posits that he could find one. The government's statement isn't evidence and it doesn't controvert our proffer or the evidence in support of our entrapment defense—namely, our expert, John Davis's report.

The government's second point is, however, more troubling: that Hamzeh could have gotten "aftermarket parts that convert semiautomatic guns that a person can buy at any sporting goods store into automatic weapons, like bump stocks and Glock switches, are gallingly inexpensive and accessible." *Id.* at 35. Here's the problem: *Hollingsworth* and *Mayfield* are clear that this is a probabilistic inquiry focused on the crime charged.

12

*Mayfield,* 771 F.3d at 429 ("In other words, predisposition is chiefly probabilistic, not psychological."); *United States v. Hollingsworth,* 27 F.3d 1196, 1200 (7th Cir. 1994) (en banc) (To be predisposed "[t]he defendant must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so."). The inquiry is not a matter of what other dangerous uses of weapons the government can conjecture about Hamzeh getting, it's about this specific crime: possessing an unregistered machine gun. Nothing else. The government cannot make the probabilistic inquiry more likely by proposing alternate realities and crimes.

That leads to the last problem (worth stressing) with the government's case law. The government argues that "Hamzeh had a plan, he required weapons, and when Mike offered to help him acquire the weapons necessary to execute his plan, he was happy. *That is per se predisposition.*" R.255:28 (emphasis added). In support it cites *United States v. Blitch*, 773 F.3d 837, 839 (7th Cir. 2014) ("Carwell's predisposition is aptly demonstrated by his overwhelming enthusiasm for the venture."), which is also the only post-*Mayfield* case it cites. Here's the problem: there is no such thing as *per se* predisposition. The only cases that come close to stating as much are cases that note a defendant who jumps at the first opportunity presented by the government to engage in a market deal is not pre-disposed. *Mayfield,* 771 F.3d at 430 ("*Jacobson* thus establishes that although the ready and willing acceptance of the government's offer to commit a crime on customary terms may indicate predisposition, it only does so if acceptance occurs when the offer is first made,

Federal Defender Services
of Wisconsin, Inc.

or soon thereafter, without the need for other persuasion by the government's agents."). To the contrary, Hamzeh's repeated rejection of Mike's overtures for a machine gun establish that he was not predisposed. *Mayfield,* 771 F.3d at 435 ("No one factor controls, and *the most significant is whether the defendant was reluctant to commit the offense.*" (quotation omitted) (emphasis added)).

Finally, the Court in *Blitch* rightly quoted *Mayfield* "the defendant's reluctance to commit the crime looms large in the analysis of predisposition." 773 F.3d at 846. But then, the Court noted that the entrapment defense was barred in that particular case because: "Here, both inquiries were appropriately resolved before trial, in large part because of the absence of a proffer from Harris and Carwell." *Id.* at 844. That is, unlike this case where a forty-page proffer (our first motion in limine) was submitted, the defense in *Blitch* offered nothing and then at trial merely elicited that the defendant refused "to get into Agent Gomez's van, and then his refusal to follow Gomez into the gated part of the storage facility, demonstrate[d] that he was reluctant to commit the robbery." *Id.* at 844. In sum, *Blitch* does not support the government's argument that Hamzeh was predisposed to possess a machine gun.

Instead, as established throughout the opening brief, Hamzeh was reluctant to commit this offense. Throughout the months of inducement, he insisted he only wanted a handgun, and it was only the government's pressure, its machinations, and its trickery that got him to the point of possessing a machine gun. And none of the cases that the government cites establish a burden other than the one that the defense has met under

14

Federal Defender Services
of Wisconsin, Inc.

*Mayfield*: to point to "*some evidence in the record that would allow a rational jury to conclude that he was entrapped.*" 771 F.3d at 440 (emphasis added).

### III. The smaller points in the government's brief that have to be addressed and demand context and clarification.

The problems with the government's case law, particularly *Cromitie* and the other cases just discussed, extends to other arguments in its brief. In the opening brief, the defense accurately recited the governing legal principles with *Jacobson, Hollingsworth,* and *Mayfield*. The government doesn't quarrel with those legal principles; it just ignores them—especially the command to look to evidence that predates contact by the informants. While the government claims (without citation) that there are "months of recorded statements evincing a durable and sincerely held wish to commit the charged offense," R. 255:6, it doesn't have evidence of any such conversations. The government's predisposition argument (indeed the whole brief) relies most heavily on conversations that take place between January 19 and 24—four to five months *after* the informants began their work for the FBI and were meeting with Hamzeh. Those transcripts are repeatedly quoted throughout its brief. *See* R255:1, 2, 3, 10, 13, 16-17, 17-18, 21-22, 29, 30 (quoting from recorded conversations between Jan. 19 and 24).

On that point, the government's mistaken predisposition analysis begins on the very first page of its brief (where it suggests that Hamzeh's statement about wanting two machine guns on January 19 shows his predisposition) and it continues throughout the brief. For example, at page 10 of its brief, the government cites a lengthy excerpt from a

Federal Defender Services
of Wisconsin, Inc.

January 19 recording, and then declares that "[i]n light of statements like this one," (where Hamzeh says they want two machine guns), "he can neither show inducement nor predisposition." *Id.* at 10. That claim, which relies on Hamzeh's expressed state of mind months *after* his initial contact with the informants, completely ignores the *Jacobson* holding that predisposition is measured *before* contact with government agents. *Mayfield*, 771 F.3d at 436 (holding, "predisposition is measured *prior to* the government's attempts to persuade the defendant to commit the crime") (emphasis in the original); *see also United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983) (noting "[p]redisposition is, by definition, the defendant's state of mind and inclinations before his initial exposure to government agents.").

To be clear, predisposition refers to the likelihood that a defendant "would have committed the crime without the government's intervention, or actively wanted to but hadn't yet found the means." *Mayfield*, 771 F.3d at 436. And in making this evaluation, "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act *prior to first being approached by [g]overnment agents.*" *Jacobson*, 503 U.S. at 549 (emphasis added). It's worth adding that while the government relies on Hamzeh's post-arrest statements to show his predisposition (and the defense strongly disagrees with the government's interpretation of those conversations) even under the government's interpretation, the statements don't show predisposition because they don't reflect Hamzeh's mindset *before* his contact with the agents. R.255:23

16

Federal Defender Services
of Wisconsin, Inc.

The government also suggests that predisposition is shown by the fact that Hamzeh said he "liked" the gun he bought and that "[n]o one who did not already want a machinegun would buy one, even at a discount." R. 255:22. As noted, the purchase of the machine gun took place months after Hamzeh's initial contact with the informants, so his decision to buy the gun doesn't show he was predisposed before the contact with the informants. If that were the case, entrapment would never exist because the defense is only raised *after* the defendant engaged in the alleged illegal conduct. Second, an interest in guns, even machine guns, does not constitute predisposition, as the Court recognized in *Jacobson*. *See Jacobson*, 503 U.S. at 550–51 (noting "evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition[ ]"; *see also id.* ("there is a common understanding that most people obey the law even when they disapprove of it.")

The government also, at times, seems to equate entrapment with a duress or coercion defense, although they are not remotely the same thing. For example, the government opines that threatening to beat Hamzeh or offering $1 billion would be inducement. R. 255:8. But the law doesn't require such extremes. *Mayfield,* 771 F.3d at 434 ("As we explained in *Pillado*, 'subtle, persistent, or persuasive' conduct by government agents or informants may qualify as an illegitimate inducement."(quotation omitted)). It also suggests that if Hamzeh's will was overcome by the ability to buy a $10,000 or more machine gun for a few hundred dollars that discount is not evidence of inducement. R.255:11,22. Yet, in *Pillado*, the court recognized that even where a person was

Federal Defender Services
of Wisconsin, Inc.

predisposed to buy illegal guns, an offer of a penny per gun would entitle the defendant to present an entrapment defense, because "the government's out-of-the-ordinary offer induced the buyer to purchase guns when he may have refrained from crime on that occasion." *United States v. Pillado*, 656 F.3d 754, 765 (7th Cir. 2011).

Beyond the contention that an out-of-the-ordinary offer is all that the defense has to point to, in *Pillado* the Court also recognized the distinction between duress and entrapment.

> Several errors are evident in this analysis. We begin with the court's observations that because Lara "could have walked away" and was not "forced to unload," he was not entrapped. This line of reasoning troubles us, for it appears to confuse the defense of duress with that of entrapment. Lara has not asserted a duress defense; he does not claim that government agents put the proverbial gun to his head to force him to unload. [A]n entrapment defense requires a showing of government inducement, not coercion.

*Id.* at 765. Thus, this Court should ignore the government's attempts to equate circumstances giving rise to a duress defense with those that provide an entrapment defense.

Beyond equating the duress and entrapment defenses, the government also ignores critical and unrefuted facts that support the entrapment defense. Although the defense's motion emphasized his rejection of Mike's overtures to get a machine gun on December 7 and 14, *see* R.234:10–13, 27, 32, the government never addresses those conversations where Mike prods Hamzeh about getting a machine gun and Hamzeh rebuffs him saying all he needs is a handgun for protection. It also doesn't address any

Federal Defender Services
of Wisconsin, Inc.

of the conversations in November when the only type of gun Hamzeh expresses an interest in is a handgun.

Beyond ignoring those facts, the government (at times) is mistaken about the case's facts. This confusion is plainly unintentional, given the scope of this case lots of things can be lost, but a few corrections are warranted. The government argues that "Mike and Steve were only intermittently in touch with, and recording, Hamzeh over a period of a few months before the sting." R.255:15. To the extent this statement suggests sporadic contact, it's incorrect: phone records, FBI reports, and other information show contact virtually every day. What's more, while the government argues that the contact was not enough to rise to the bombardment in *Jacobson* that's not the standard—and *Jacobson* is not an inducement case. *See* R.255:16. And it's worth stressing the Court's observation in *United States v. Barta*, 776 F.3d 931 (7th Cir. 2015) rejecting the government's argument that there were not enough contacts to constitute inducement: "But there is no per se rule regarding the number of contacts or length of relationship it takes to constitute inducement." *Id.* at 938–39. In that case, "[t]hough this FBI sting stretched out over many months, Barta spoke with Castro four times—in three meetings and one telephone call." *Id.* at 933–34. Thus, there is no basis to suggest that the informants weren't in constant contact with Hamzeh or that because it wasn't to the level in *Jacobson* that it didn't rise to the level of inducement.

Likewise, the government posits that Hamzeh wanted a handgun with a drum magazine. R. 255:26. But his reference to a handgun with a wheel plainly refers to a

Federal Defender Services
of Wisconsin, Inc.

revolver. *See* https://en.wikipedia.org/wiki/Revolver (noting that a revolver is also called a "wheel gun"). Additionally, two of the government's statements on the second page of its response are also uncited and unsupported. There the government writes, among other things, that "[b]efore he was the subject of an investigation, Hamzeh said he wanted to acquire weapons to 'spray' bullets and commit a mass killing. He repeatedly stated he had long held that desire."[4] R:255:2 Similarly, on page 11 the government states "Hamzeh was saying he wanted to acquire machine guns before he met Mike." Those proposition are uncited and unsupported by any evidence produced in this case. Notably, despite the intensity of the government's investigation it didn't find a single witness or internet search or anything else showing that Hamzeh ever tried to get any gun, let alone a machine gun, before the informants began exerting their influence on him.

As a final point, it's important to note that while many of the government's point headings address inducement, almost all of the brief is devoted to Hamzeh's predisposition. And that's despite the Seventh Circuit having recognized that predisposition will rarely be susceptible to resolution before trial because "it's hard to imagine how a particular person could be deemed 'likely' to do something as a matter of law." *Mayfield*, 771 F.3d at 441. In its fight over predisposition, the government has not addressed the seven factors of inducement spelled out in the opening brief. Instead, they stand uncontroverted. To that end, the defense has proffered evidence that fits neatly

---

[4] The defense disputes many of the government's assumptions or overstatements about what the transcripts provide or mean. For instance, the defense disputes that "spray" must relate to a machine gun, which ignores the speed with which bullets can be fired from a semi-automatic firearm.

Federal Defender Services
of Wisconsin, Inc.

within the categories of inducement laid out in *Mayfield* and it is more than enough to

present this to a jury. Indeed, the defense can point to:

- o The informants' persistent efforts to get Hamzeh to purchase a machine gun;

- o The informants' subtle and persuasive conduct aimed at getting Hamzeh to purchase a machine gun

- o The informants' preying on Hamzeh's limitations in order to get Hamzeh to purchase a machine gun.

- o The informants' making appeals to their friendship with Hamzeh in order for him to purchase a machine gun.

- o The informants' making fraudulent representations to get Hamzeh to purchase a machine gun.

- o The informants' offering a better-than-market deal for Hamzeh to purchase a machine gun.

- o The informants' bait-and-switch move to make sure he gets an illegal machine gun and not the legal one that was promised, coupled with the agents' and informants' efforts to make sure Hamzeh carries the bag (with Steve's gun) to the car.

And those points are not just borne out in the opening brief but also the timeline sketched

above and they far exceed the standard of "some evidence" or "more than a scintilla."

*Mayfield,* 771 F.3d at 440.

Federal Defender Services
of Wisconsin, Inc.

## IV.    Conclusion

In sum, this motion is resolved on first principles. The defense has proffered enough facts to present its case to the jury. Nothing in the government's response calls those facts into question; instead, it merely argues about the facts and what inference can be drawn from one statement or another. But under *Mayfield*, this Court can't weigh them, but must accept the defense's and ask whether it has proffered "some evidence" on both predisposition and inducement. And here, nothing suggests that before the informants approached Hamzeh that he was interested in buying an unregistered machine gun. Similarly, there are sufficient facts to establish that the informants didn't simply offer Hamzeh a market deal and he jumped at it. Rather, it took months of persistent pressure, preying on Hamzeh's limitations, making appeals to friendship, making fraudulent representations, offering a better-than-market deal, and finally employing a bait-and-switch move in order to get past Hamzeh's initial and repeated no's and to a point where he would possess an unregistered machine gun. That proffer is far more than what the law demands and it should ensure that this case be presented to a jury.

22

Federal Defender Services
of Wisconsin, Inc.

Dated at Milwaukee, Wisconsin this 11th day of September, 2019.

Respectfully submitted,
/s/     *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI  53202
Tel. (414) 221-9900
E-mail:  craig_albee@fd.org

*Counsel for Defendant*, Samy M. Hamzeh

Federal Defender Services
of Wisconsin, Inc.