UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                               Case No. 16-CR-21

SAMY HAMZEH,

        Defendant.
_____

UNITED STATES' CONSOLIDATED MOTIONS IN LIMINE
REGARDING HAMZEH'S RECORDED STATEMENTS
_____

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, respectfully files these consolidated motions in limine regarding Samy Hamzeh's recorded statements.

    I.    Background

As this Court is aware, Hamzeh is charged with the illegal possession of two machine guns and a silencer. This matter is set for trial on October 21, 2019. At trial, the United States intends to play multiple audio recordings of Hamzeh's statements and to display translated (from Arabic to English) transcriptions of those statements. *See, e.g.*, Exhibit A at 97 ("HAMZEH: We want two machineguns, you now have one, so we want two more, and we need three silencers, that's it. Find out how much all together these will cost, then we will march."); Exhibit A at 138 ("STEVE: What are the two weapons

that we need? HAMZEH: Two Machineguns! STEVE: Single bullet at a time or what it is called, uh? HAMZEH: No, two machineguns."); Exhibit A at 175 ("HAMZEH: [Lowering voice] Listen, what we need is from those people, two machineguns, and three silencers and three magazines."). The statements were recorded by two Confidential Human Sources, Steve and Mike.

This is, in some respects, a simple gun case. If Hamzeh raises an entrapment defense, however, the United States will be required to prove he was predisposed to commit his offense. To do so, and to show motive in any event, it will rely in part on statements Hamzeh made in the lead up to his offense. In order to promote efficiency, ensure an orderly trial, and out of respect for the jury's and the Court's time, the United States seeks pretrial to (1) authenticate relevant recordings of Hamzeh's statements; (2) admit into evidence certain identified portions of those recordings of Hamzeh's statements and their corresponding translations;[1] (3) exclude from evidence as hearsay other recorded out-of-court statements and translations thereof.

If the defense believes that any other out-of-court statements must also be admitted in light of the statements listed at Exhibit A, this Court should require the defense to identify those precise out-of-court statements as soon as possible. That will allow this Court sufficient time to rule on the defense's potential proposal that, for

---

[1] These portions are identified at Exhibit A to these consolidated motions. The defense may seek to exclude certain statements identified at Exhibit A; it may also seek admission of additional statements; so, for the convenience of the defense and this Court, the United States has included both citations to, and the full text of, the translations of the recorded statements it hereby seeks to admit.

example, an additional 30 seconds of audio must be played (along with the corresponding translated text) in order for the jury to understand a non-hearsay statement admitted by the Government. At trial, then, this will allow the parties, the Court, and the jury to focus on the substance of the prosecution and defense.

II. Motion to Authenticate Recordings

*A. Standard*

The United States does not expect that there will be a challenge to the authenticity of the recordings of Hamzeh's statements listed at Exhibit A. The defense's motion for permission to raise an entrapment defense, for example, relies heavily on translations of these recorded statements. Hamzeh does not argue he, Steve, and Mike are not the interlocutors captured on the recording or that their words were not authentically represented by the recordings. But if the defense does contest authenticity, a condition precedent of admissibility, then the government need only present "evidence sufficient to support a finding that the item is what its proponent claims it is." FED. R. EVID. 901(a). Further, the United States need only make a prima facie showing of authenticity. Once the Government has met its burden, the burden shifts to the defendants to show inauthenticity. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001). Federal Rule of Evidence 901 contains a non-exhaustive list of the ways a party may authenticate evidence, including testimony by a witness with knowledge, opinion about a voice, testimony identifying a recorded conversation, and testimony describing a recording process or system and showing that it produces an accurate result. FED. R. EVID. 901(b)(1), (b)(5), (b)(6), and (b)(9).

The Seventh Circuit has stated that in order to authenticate tape recordings, the proponent of the evidence may offer "(1) a chain of custody demonstrating the tapes are in the same condition as when they were recorded, or (2) testimony demonstrating the accuracy and trustworthiness of the tapes." *United States v. Collins*, 715 F.3d 1032, 1035 (7th Cir. 2013) (citing *United States v. Thomas,* 294 F.3d 899, 904 (7th Cir. 2002); *United States v. Eberhart,* 467 F.3d 659, 667 (7th Cir. 2006)).

A determination of authenticity is a preliminary question that is not governed by the Federal Rules of Evidence. *See* FED. R. EVID. 104(a). The government must prove the authenticity of the recording by clear and convincing evidence. *Eberhart*, 467 F.3d at 667. "District courts are given wide latitude . . ." in making authentication determinations. *Collins,* 715 F.3d at 1035. In *Collins*, for example, the Seventh Circuit upheld the district court's admission into evidence of recordings that were made in Mexico by a cooperator without law enforcement agents present, even though the defendant argued he was not on the recordings. *Id.* at 1035-36.

Courts have "eschewed any formalistic approach to the admission of tape recordings or copies thereof."' *See Smith*, 242 F.3d at 741 (quoting *Stringel v. The Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 420 (7th Cir. 1996)). The foundation for the admission of a taped conversation may be circumstantial or direct. *See United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir. 1987). Indeed, Rule 901(b) gives ten examples of authentication sufficient under the Rule, "[b]y way of illustration only, and not by way of limitation." Only one of the ten examples involves "[t]estimony of witness with knowledge . . . [t]hat a matter is what it is claimed to be." Fed. R. Evid. 901(a)(1). Another

4

possible means of authentication includes "testimony describing the process or system" that created the tape. *See id.*

Therefore, the government need only demonstrate that the recorded conversations are accurate renditions of the conversations between the confidential informants and the defendant. Although this foundation may come from a participant to the conversation, such a witness is not required. *See, e.g., United States v. Carrasco*, 887 F.2d 794, 802 (7th Cir. 1989) ("the government may establish a foundation for accuracy and truth of the tape through evidence of a chain of custody and by the correspondence between the tape's version of the events . . . and the recollections of eyewitnesses to those events; in this circuit, either variety of evidence can establish a tape's foundation") (internal quotations omitted); *United States v. Fuentes*, 563 F.2d 527, 531-32 (2d. Cir. 1977) ("There is simply no requirement that the tapes be put in evidence through the person wearing the recorder or, for that matter, through a contemporaneous witness to the recorded conversations.") (citations omitted). Indeed, the Seventh Circuit has repeatedly held that the foundation for recordings may be provided circumstantially through evidence that the events discussed on the tapes in fact occurred and that the purported speakers on the recordings in fact participated in those events. *See, e.g., United States v. Tolliver*, 454 F.3d 660, 666 n.4 (7th Cir. 2006); *Westmoreland*, 312 F.3d at 310; *Smith*, 242 F.3d at 741 (a recording's authenticity can be established by showing the recording's chain of custody).

*B. The Government Will Make a Prima Facie Showing, if Authenticity is Contested, at a Pre-Trial Hearing.*

If the defense contests authenticity, the government requests a pre-trial hearing

5
Case 2:16-cr-00021-PP   Filed 09/13/19   Page 5 of 18   Document 272

(perhaps best conducted at the currently scheduled September 25, 2019 pretrial conference), at which it will authenticate the recordings through evidence establishing the process by which the recordings were made, the chain of custody through which they were kept, and via testimony regarding the integrity of the recordings.

First, the conversations were recorded by known processes, using appropriate, functional technology. Second, the government has maintained custody of the recordings listed at Exhibit A throughout the investigation. As indicated above, evidence of chain of custody is one way to establish a foundation for a tape. *See, e.g., Westmoreland*, 312 F.3d at 311. The FBI had control and custody of the recordings since the time they were made. And although Steve and Mike wore the recording devices outside the presence of agents for the in-person meetings, an FBI agent will testify that Steve and Mike could not have - and did not - alter the recordings. The agent will further testify that an agent collected the recording devices from Steve and Mike after the recordings were made and then downloaded the recorded meetings.

The above-described chain of custody provides two assurances of authenticity. First, because the government obtained the tapes close in time to the events they purport to depict, no private individual with an incentive to alter the tapes had an opportunity to do so. Second, the chain of custody considerably narrows the time frame in which the recorded conversations occurred and corroborates the dates of the conduct recorded and events discussed.

Further, the recordings themselves include evidence showing internal consistency, and thus authenticity, of the recordings. Evidence may be authenticated by the

"distinctive characteristics" of the evidence itself. Fed. R. Evid. 901(b)(4). According to Rule 901(b)(4), this includes "[a]ppearance, contents, substance, internal patterns . . . taken in conjunction with circumstances." *See Carrasco*, 887 F.2d at 803-04. Here, based on the content of the recordings alone, it is evident that the recordings are what they purport to be. The recordings manifest an abundance of unique characteristics. These are not generic objects or documents, or recordings of isolated sounds, or even sounds of voices, that could be interpreted in different ways, or which have no meaning without reference to other evidence. The portions of the recordings the United States seeks to authenticate contain statements from identifiable speakers—Hamzeh, Steve, and Mike—conveying detailed and specific information in a logical and coherent manner.

Resolving this issue in advance of trial will shorten the trial and allow the jury to focus on the substantive issues related to the purchase of the machine guns and silencer. The United States, therefore, respectfully requests that, if the defense contests authenticity, the Court set an authentication hearing.

III.     Motion to Admit Recordings and Transcripts

The government also seeks, pretrial, to admit into evidence portions of recordings of in-person meetings between Hamzeh, Steve, and Mike. Those universe of excerpts from which the United States will draw these exhibits is listed at Exhibit A to these consolidated motions. If the defense contests their admissibility as offered by the government, the government can present evidence supporting the admissibility of the audio and transcript excerpts reflected at Exhibit A at the September 25, 2019 pretrial conference.

*A. The Recorded Statements at Exhibit A Are Admissible Nonhearsay.*

The United States seeks to admit the defendant's statements and the fewest possible CHS statements necessary for the jury to understand the defendant's statements. It is black letter law that the defendants' own statements are admissible when offered into evidence by the United States as nonhearsay statements of a party opponent, Fed. R. Evid. 801(d)(2); *Tolliver*, 454 F.3d at 665 (holding that a defendant's "statements on the tapes constitute admissions by a party-opponent, and, as such, those statements are, by definition, not hearsay under Federal Rule of Evidence 801(d)(2)(A)"). That is true when the defendant's statement was recorded by a CHS without the defendant's knowledge. *See id.; see also United States v. Hicks*, 635 F.3d 1063, 1068 (7th Cir. 2011) (upholding admissions of a surreptitiously recorded conversation with a government informant because the defendant's statements were admissible statements of a party-opponent) (vacated on other grounds); *United States v. Woods*, 301 F.3d 556 (7th Cir. 2002) (same). Thus, Hamzeh's statements, listed at Exhibit A, are admissible as admissions of a party-opponent under Fed. R. Evid. 801(d)(2)(A).

Relatedly, Mike's and Steve's statements that provide necessary context for Hamzeh's statements are also admissible as non-testimonial nonhearsay. *See, e.g., United States v. Simmons*, 582 F.3d 730, 736 (7th Cir. 2009). In the excerpts indicated at Exhibit A, the United States has sought to include as few of Mike's and Steve's statements as possible to make Hamzeh's statement intelligible to the jury. The CHS statements in these recorded conversations will thus also be offered into evidence, but not for the truth of the matters asserted. These statements will be offered only to provide context for Hamzeh's.

8
Case 2:16-cr-00021-PP   Filed 09/13/19   Page 8 of 18   Document 272

For example, in the exchange copied above (and at Exhibit A at 138), Steve asks Hamzeh a question. Hamzeh answers: "Two Machineguns!" Then Steve asks Hamzeh another question, and Hamzeh answers: "No, two machineguns." Steve's questions ("What are the two weapons that we need?" and "Single bullet at a time or what it is called, uh?") are not testimonial, and Hamzeh's answers would make little sense to the jury without the questions. Thus, Steve's questions are admissible to accompany Hamzeh's answers.

When recordings are admitted on the basis outlined above, defendants have sometimes claimed a violation of the Confrontation Clause of the Sixth Amendment. But these claims have been uniformly rejected by the federal courts. Thus, CHS testimony would not be necessary at the pretrial hearing. The Seventh Circuit has held that, in cases in which recorded evidence is admitted in the absence of testimony by the informant who recorded the conversations, the Confrontation Clause of the Sixth Amendment is not violated if the government specifies (and the jury is ultimately instructed) that the statements of the informant that are included in the exhibits are offered not for their truth, but rather are offered to provide context so as to make the defendant's statements intelligible. *See United States v. York*, 572 F.3d 415, 427 (7th Cir. 2009); *United States v. Nettles*, 476 F.3d 508, 517-18 (7th Cir. 2006). The United States intends to call only an FBI agent at the hearing, and will not seek to admit any out-of-court testimonial statements by the CHSs, so the government will request such a jury instruction in this case.

It is well-settled that third party statements are admissible if they are offered only to provide context. *Van Sach,* 458 F.3d at 701. In *Van Sach,* the Seventh Circuit upheld the

9
Case 2:16-cr-00021-PP   Filed 09/13/19   Page 9 of 18   Document 272

district court's ruling admitting recordings (both recorded phone calls and body wire) between the defendant and non-testifying informant. In so doing, the *Van Sach* decision specifically addressed the impact that *Crawford v. Washington* would have on such a statement (between a defendant and a non-testifying informant): *Crawford* "narrowed its holding to testimonial statements, explaining that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id.* at 701. *See also United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir. 1989), ("the admission of [the informant's] portion of the conversations do not implicate [the defendant's] Sixth Amendment rights because the tape recorded statements were admitted for the limited purpose of placing [the defendant's] statements in context."); *United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002) (same); *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991) (same).

Similarly, in *Tolliver,* the Seventh Circuit again rejected defense attempts to preclude audio recordings between a defendant and non-testifying confidential informant based upon *Crawford v. Washington.* 454 F.3d at 665. In *Tolliver,* the trial court admitted recorded conversations between the defendant and non-testifying informant, and in upholding the admission of those statements, the *Tolliver* court considered the admissibility of the statements of both the defendant and non-testifying informant. The statements of the defendant were properly admitted, according to *Tolliver,* because they were statements of a party opponent, and thus not hearsay under Fed. R. Evid. 801 (d)(2)(A). *Tolliver* at 665. The statements of the non-testifying informant were also non-hearsay, as they were offered only to put the statements of the defendant in context:

> *Crawford* only covers testimonial statements proffered to establish the truth of the matter asserted . . . . In this case, as pointed out by the government [the non-testifying informant's] statements were admissible to put [the defendant's] admissions on the tapes into context, making the admissions intelligible for the jury. Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.

*Tolliver*, 454 F.3d at 665-66.

In the instant case, the United States will be offering the informants' statements only to provide the context for Hamzeh's words and actions, so the jury can understand why Hamzeh did and said what he did.

Finally, the District Court in *United States v. Barta* also persuasively and thoroughly navigated these issues. No. 12 CR 00487, 2013 WL 4854355, (N.D. Ill. Sept. 11, 2013), *aff'd sub nom. United States v. Buenrostro*. In *Barta,* the defendant argued that it was error for the court to "allow[ ] the government to use an FBI agent to authenticate and admit the recordings as evidence." *Id*. at *19-20. As an initial matter, the court took that to be a challenge to foundation, and it rejected that challenge. The court explained that,

> Here, the government primarily used the FBI case agent . . . to testify as to the process or system through which the recordings were created and verify that the digital recordings were what they purported to be. *See* Fed.R.Evid. 901(b)(1), (b)(9). [The defendant] does not suggest, let alone explain why, the recordings were not accurate or trustworthy. Moreover, he does not explain what was deficient about the government's method of authenticating the recordings at trial. His challenge to foundation fails.

As is most relevant here, the court also rejected any possible Confrontation Clause objection, finding that such an objection "does not get out of the gate" given a jury instruction that any out-of-court confidential informant statements that were admitted were only admitted for context:

> Without the declarant's presence . . . the Confrontation Clause . . . bars the admission of testimonial statements that are admitted for the truth of the matters asserted, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him. *United States v. Wright*, 722 F.3d 1064, 1067 (7th Cir. 2013). Here, as the Court's instruction to the jury made clear, [the CHS] was not a witness against the defendants; rather, his statements provided context for their own statements and actions. This is a permissible use of the evidence. *See id.* (collecting cases on "context"). Much of the conversation captured on certain recordings would have been senseless without hearing [the CHS's] words.

*Id*. at 20.

> B. *At a Pre-Trial Hearing, A Witness Would Lay the Foundation for the Admissibility of the Recorded Statements at Exhibit A.*

At a pretrial hearing on the authenticity and admissibility of the records, the United States expects that an FBI agent would lay a foundation for the admissibility of the recordings indicated in Exhibit A. The agent would testify that before each recorded meeting, an agent provided a digital recording device to the confidential informant, and shortly after each meeting the confidential informant returned the recording device to agents. Based upon a review of the recording device, the agent will testify that an agent turned the device on before the meetings and then off after the meetings. Further, the agent will testify that the confidential informant had no ability to alter or manipulate the content of the recordings and that the recordings were not manipulated. The agent will testify that he was able to recognize the voices on the recordings as those of the CHSs and Hamzeh. Finally, the agent will testify that copies of the recordings were made, that he has listened to the copies of the recordings, and that the copies are true and accurate copies of portions of the recordings captured by the CHS-employed digital recorders.

At the hearing, rather than calling every agent who set up a confidential informant recording, a case agent would provide summary testimony with regard to how recordings were set up in this investigation. Calling every agent would be (1) unnecessary under the law and (2) a considerable waste of Court time, considering that there is unlikely to be any evidence that the recordings in question are inaccurate or inauthentic, or that the procedures for collecting them differed. The case agent can provide the Court with the necessary information for laying the proper foundation for admission of the recordings listed at Exhibit A. As this Court is aware, this approach is often used in wiretap cases in which it would be absurd to call every monitor to testify. *See, e.g.*, *United States v. Brown*, 41 Fed. Appx. 866, 2002 WL 1357221 (7th Cir. 2002). This is particularly true in this case, where the defendant has relied recordings' authenticity and accuracy in their pretrial briefing on multiple occasions, in particular their Motion in Limine for permission to raise an entrapment defense.

C. *The Transcripts of Arabic-to-English Translations of the Recordings Are Admissible.*

The United States also notes that the relevant audio recordings are of conversations primarily in Arabic. It is thus unlikely that the jury will be able to understand the recordings without translations. The United States will, therefore, display English translations of the recordings to the jurors while the recordings are played in Court. Additionally, given that the recordings will be meaningless to the jurors without the English translations, the United States seeks to admit the English translations of any admitted recording excerpts into evidence pretrial. The necessity of this admission is drawn into sharp relief by the fact that, without the translations included in Exhibit A, it

13

would be impossible for this Court to rule on whether the recordings themselves are admissible in the first instance. The jury needs them to do its job.

The Seventh Circuit has upheld this practice in regards to English translation transcripts, stating:

> Although district courts exercise wide discretion when determining whether juries may use written transcripts as aids while listening to audiotape recordings, this court has noted that "[t]ranscripts of recorded conversations are a virtual necessity when the conversations take place in Spanish and are admitted into evidence before an English-speaking jury." *United States v. Breland,* 356 F.3d 787, 794 (7th Cir. 2004); *United States v. Nunez,* 532 F.3d 645, 651 (7th Cir. 2008). If the recorded conversations were played for the jury (as was the case here), the district court has the discretion to permit the use of transcripts during jury deliberations. *Breland,* 356 F.3d at 794.

*United States v. Cruz-Rea*, 626 F.3d 929, 936 (7th Cir. 2010).

The English translations at Exhibit A should be admitted into evidence in order to allow the jurors to understand the Arabic recordings and the evidence they contain.

In this case, the United States' expert FBI translator is a native speaker of the dialect of Arabic that was captured by the recordings and has previously testified on Arabic-to-English translations. If the Court would like to hear this testimony, the United States' expert translator will be available to testify at a pretrial hearing in order to aid the Court in determining if the transcripts of his translations should be admitted into evidence.

IV. **In Order To Expedite Trial, This Court Should Also Issue a Pretrial Ruling Establishing That Hearsay Statements Are Inadmissible.**

A. *The Defendant's and CHSs' Out-of-Court Statements Are Inadmissible Hearsay If Offered Into Evidence by the Defense.*

The defendant is not a party opponent of himself under Federal Rule of Evidence 801(d)(2). Thus, the defendant cannot offer into evidence any of his own out-of-court-statements, including statements taken from recorded conversations between the defendant and CHSs. *United States v. Reese*, 666 F.3d 1007, 1018–19 (7th Cir. 2012) (holding that the defendant's "own statements in the recording were hearsay when offered by [the defendant] for the truth of the matter asserted") (citing *United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) (noting that the defendants' statements, to the extent they were exculpatory, would not have been admissible at their trial because the statements were hearsay)). *See also United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

Similarly, CHSs are not parties (and are certainly not party-opponents of the defendant). Their out of court statements are, accordingly, hearsay if admitted for the truth of the matters asserted. Thus, Hamzeh cannot offer into evidence or solicit testimony about the CHSs out-of-court statements, other than as approved by the Court to establish context for the party-opponent statements presented by the United States (as discussed above). *United States v. Prevatte*, 16 F.3d 767, 773, 779 n. 9 (7th Cir. 1994).

The Seventh Circuit has also "held that government agents are not party-opponents [of the defendant] for purposes of Rule 801(d)(2)." *United States v. Arroyo*, 406 F.3d 881, 888 (7th Cir. 2005) (finding that an IRS Agent was not a party opponent of the defendant and upholding exclusion of the IRS Agent's out of court memorandum) (citing *Prevatte,* 16 F.3d at 779 n. 9 (quoting *United States v. Kampiles,* 609 F.2d 1233, 1246 (7th Cir. 1979) (upholding the exclusion of an out of court statement by government employee the defendant sought to introduce at trial)).

Thus, the defendant may certainly testify in his defense if he wishes, but he may not attempt to put before the jury, directly or via cross-examination, his out-of-court hearsay statements, or those of CHSs or government agents.

   B. *Use of Other Out-of-Court Statements By the Defense.*

Necessarily, certain statements Steve and Mike made are also captured in the portions of the recordings the United States will offer into evidence. As discussed above, such statements are also admissible when offered as mere context for the defendant's admissible statements. But the rule of completeness is not intended to open the floodgates and permit the wholesale introduction of otherwise inadmissible evidence. *United States v. Lefevour,* 798 F.2d 977, 981 (7th Cir. 1986). As Judge Posner related in *Lefevour,* the paradigmatic case of the rule of completeness "would be accusing the Biblical David of blasphemy for saying, 'There is no God,' his full statement being, 'The fool hath said in his heart, there is no God.'" *Id.* at 981.

The law is settled that it is Hamzeh who bears the burden of explaining how the material sought to be admitted is relevant and why its introduction is necessary to explain

or place in context the admitted portion. *United States v. Sweiss,* 800 F.2d 684 (7th Cir. 1986). Thus, in order to respect juror and Court time and to allow the trial to run as smoothly as possible, this Court should require the defense to identify any additional audio/transcript excerpts it will seek to admit – either independent of or as context for the statements contained in Exhibit A. The defense should also identify the basis for their admission, so that the United States can respond and the Court can rule on admissibility well before the jury is seated. The Court currently has hearings scheduled on this case on September 25, 2019 and October 17, 2019, both in advance of the October 21, 2019 trial. If the defense identifies the portions of the audio/transcripts it believes would be admissible in advance of that September 25, 2019 hearing, that will allow the Court to rule on admissibility. That will also allow the parties to choose which if any exhibits to move for admission pre-trial – and in advance the October 17, 2019 hearing, at which the Court could rule on admissibilty. The jury will have enough on its plate already.

## Conclusion

The United States requests that, if authenticity is contested, the Court conduct an authenticity inquiry at the September 25, 2019 pretrial hearing. The government also requests to offer, on September 25, 2019, testimony regarding the foundation for admission and relevance of the recordings and transcripts excerpts indicated at Exhibit A. This Court should also require the defendant to identify any other out-of-court statements it believes are admissible, so that the United States can respond and the Court can then rule on admissibility and exclude from evidence as hearsay any other recorded out-of-court statement or translation thereof. Once that process is complete, the parties

will be in a position to choose which exhibits to admit and will be able to do so pre-trial, thereby making the eventual trial substantially more orderly.

Dated at Milwaukee, Wisconsin this 13th day of September, 2019.

                                      Respectfully submitted,
                                      MATTHEW D. KRUEGER
                                      United States Attorney

By:    */s/ Benjamin Taibleson*
           Benjamin Taibleson
           Adam Ptashkin
           Assistant United States Attorneys
           United States Attorney's Office
           Eastern District of Wisconsin
           517 East Wisconsin Avenue
                Milwaukee, Wisconsin 53202
           Telephone: (414) 297-1700
           E-Mail: benjamin.taibleson@usdoj.gov