UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

            Plaintiff,

    v.                                     Case No. 16-CR-21

SAMY HAMZEH,

            Defendant.

## Consolidated Motions in Limine

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Adam Ptashkin and Benjamin Taibleson, Assistant United States Attorneys, hereby moves the Court as follows.

I.    <u>Motion in Limine to Exclude any Argument or Questioning Relating to the Government's Charging Decisions.</u>

This Court should preclude the defense from arguing that the government's decision not to charge the Defendant in connection with his attempt to commit a mass killing at the Humphrey Scottish Rite Masonic Center has any bearing on his criminal liability for the conduct that is the subject of the charged offenses.

Arguments and comments concerning the government's charging decisions are generally deemed irrelevant to a defendant's guilt or innocence. *See United States v. Mosky*, 1990 WL 70832, at *1 (N.D. Ill. 1990) ("The government seeks to bar only any reference to its decisions regarding who to indict and for what acts. The government is

correct that those decisions are not relevant to the charges faced by these defendants.")
(*citing Wayte v. United States*, 470 U.S. 598, 607 (1985)). The government's decision
regarding who to charge and for what crime has no bearing on whether evidence is
sufficient to convict a defendant of the charge for which he is on trial. *United States v.
Young*, 20 F.3d 758, 765 (7th Cir. 1994) (instructing the jury not to speculate about the
government's charging decision).

In *United States v. Young*, for example, the Seventh Circuit affirmed a trial court's
exclusion of evidence concerning the government's charging decisions. In that case, the
defendant who had been arrested with another individual who was not charged with the
defendant, sought to comment on the government's charging decisions. The district
court, however, granted an in limine motion to exclude evidence of the government's
charging decision, and the Seventh Circuit affirmed.

The Seventh Circuit's application of Rule 401's relevancy requirements in *Young*
are equally applicable here. In this case, the Defendant may try and suggest that the jury
should question his criminal culpability for receiving and possessing machine guns and
a silencer because he was not charged with using or attempting to use them.

The government's decision not to charge Hamzeh with an attempted mass-killing
hate crime cannot and should not be interpreted to suggest that Hamzeh lacks criminal
culpability for the crimes with which he was charged. More importantly, however, the
Government's decision not to charge the attempt has no bearing on whether Hamzeh
received and possessed machine guns and a silencer. Accordingly, the Court should
preclude the defendant from commenting on the government's charging decisions.

II.  <u>Motion in Limine to Exclude Any Argument or Questioning Regarding the
Government's or Agents' Motivation for Investigating or Prosecuting the Case.</u>

The government moves to preclude evidence or argument by the defense regarding the government's and the agents' motivations for investigating or prosecuting the case. Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus should be excluded from trial. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument").

Further, the government moves to preclude the defense from arguing or eliciting evidence regarding the mental states, subjective intentions, or motivations, of the investigating agents. It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *United States v. Andreas*, 23 F. Supp.2d. 835, 850 (N.D. Ill. 1998) (explaining that "the subjective beliefs of ... government agents are inadmissible as to any potential entrapment defense" because "the government's intent to entrap the defendants is irrelevant to prove entrapment").

Accordingly, the government moves to preclude evidence or argument by the defense regarding the government's and the agents' motivations for investigating or prosecuting the case.

3

III. <u>Motion in Limine to Exclude Any Argument or Questioning Implying That the Investigation or Prosecution of this Case Was Racially or Religiously Motivated.</u>

The defendant should be prevented from advancing forms of argument or questioning designed to interject issues of race or religion into this trial. Permitting unsupported and improper argument or questioning of this nature in the presence of the jury risks irreparable prejudice and confusion of the matters at issue. Courts have long noted that "[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990).

Not only is there no evidentiary basis for interjecting into this trial allegations of racial or religious animus in the investigation or prosecution of the case, but the law is well-settled that claims of selective prosecution are to be resolved by the court and not the jury. Arguments or evidence that the Government's motivation is not relevant to the jury's determination of a defendant's guilt or innocence. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979); *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994).

In addition, the United States notes that this investigation began when the defendant's best friend, who is of the same race and religion as the defendant, told the FBI that the defendant was planning a mass casualty attack. The FBI thus justly began in investigation to stop the domestic terror attack. There is no factual basis whatsoever for any inquiry along these lines.

As a more general matter, as discussed above, it is also settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., Goulding*, 26 F.3d at

667 (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant . . .").

Accordingly, the government moves to preclude any argument or questioning that suggests that the investigation or prosecution of this case was racially motivated.

IV. <u>Motion in Limine to Exclude any Discovery Requests or Commentary Regarding Discovery in the Jury's Presence.</u>

The government respectfully moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. See *United States. v. Dochee*, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion in limine to exclude comments on discovery because "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information."); *see also Large v. Mobile Tool Intern., Inc.*, 2008 WL 4238963, at *4 (N.D. Ind. Sept. 10, 2008) ("[I]t is improper for Large to reference specific discovery motions or orders in this case when discussing spoliation before the jury.").

The government requests that the Court require that all comments relating to discovery be made outside the presence of the jury. *See United States v. Gray*, 2010 WL 1258169, at *2-3 (N.D. Ind. Mar. 26, 2010) ("[G]rant[ing] the government's motion to

preclude requests of discovery from witnesses or opposing counsel, moving the court for such discovery or otherwise commenting on discovery matters in the presence of the jury. Any necessary requests for or comments about discovery can be made outside of the jury's presence."). Accordingly, the government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury.

V.    Motion in Limine to Exclude Cross-Examination Regarding "Bad Acts" by Any Witnesses That Are Not Probative of Truthfulness

The government has disclosed to defense counsel materials in its possession which set forth potential impeachment material for the witnesses in this case. The defense has also acquired additional materials that it likely believes constitute impeachment material. The government requests that the Court limit the questioning of witnesses regarding bad acts to only those acts that are probative of truthfulness.

Under Rules 611 and 608(b), defendants are permitted to inquire into specific bad acts of the witness only if these acts are probative of truthfulness. *See United States v. Henderson*, 2012 WL 698796, at *2 (N.D. Ill. Mar. 1, 2012); *United States v. Wilson*, 244 F.3d 1208, 1218 (10th Cir. 2001) (holding that drug-related crimes "have no relation to truth or untruth"); *United States v. Clemons*, 32 F.3d 1504, 1511 (11th Cir. 1994) ("We do not agree that the question whether Smith ever used or sold drugs was probative of his credibility as a witness."); *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("[W]hether or not [witness] ever sold drugs is not probative of his truthfulness[.]"); *United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (evidence of witness's involvement in

drug operation not proper impeachment under Rule 608(b)); *See also United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2000) ("Murder generally is not a crime of dishonesty [.]"); *United States v. Tate*,633 F.3d 624 (8th Cir. 2011) (disallowing allegation of assault as "not probative of [the witness]'s character for truthfulness); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").

The defendant's counsel in its Supplemental Memorandum in Support of Objections (R. Doc. 265), identifies a variety of information about a CHS, including but not limited to a prior arrest that did not result in a conviction, and information from an anonymous source that apparently told the defendant's lawyers that the CHS distributed illegal drugs. None of this information is proper impeachment material, admissible in the defendant's case in chief, or properly introduced through the cross examination of any government witnesses. The defendant's brief treats this information as highly material to the trial, and thus seems to imply it will use then information when it questions the CHS and law enforcement agents. However, none of this information deals with truthfulness, or any other topic that is properly introduced in front of the jury. The Defendant's attorneys should be barred from mentioning this information in opening or closing, or asking any witness a question about this information. For example, the fact that an unnamed person told the defendant's attorneys that the CHS is a drug dealer has no relationship to the CHS's truthfulness.

A.    *Past Arrests*

Evidence of a prior arrest should be precluded under Rules 609 and 608. Fed. R. Evid. 609 allows for the admission of a witness' felony conviction for purposes of impeachment under certain circumstances. Under the rule, for the purpose of attacking the credibility of a witness, "admission of evidence of a conviction only when the conviction required the proof of (or in the case of a guilty plea, the admission of) an act of dishonesty or false statement." Committee Notes regarding 2006 Amendment to Fed. R. Evid. 609. In any event, arrests are not admissible under Rule 609, only convictions; accordingly, under Rule 609, the defendant should be precluded from inquiring into arrests of witnesses.

Nor are arrests admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness' character for truthfulness. Courts have not construed Rule 608(b) to permit cross-examination on prior *arrests* absent special facts bearing on the witness's character for the specific trait of truthfulness. *See, e.g., Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013) ("In general, a witness's arrest record will not be admissible, either because it is inadmissible character evidence under Rule 404(b) or because it is substantially more unfairly prejudicial than probative under Rule 403. There are exceptions, of course. Under Rule 608(b) of the Federal Rules of Evidence, the court may permit cross-examination on specific instances of conduct if probative of the witness's character for truthfulness or untruthfulness.").

Unless defendant can demonstrate that the conduct underlying the arrest implicates a witness' character for truthfulness, defendant should be precluded from inquiring into the conduct.

B.     *Past Convictions*

Similarly, although the fact of a conviction may be admissible, provided the requirements of Rule 609 are met, the underlying details of the conviction are not. *United States v. Zarattini,* 552 F.2d 753 (7th Cir. 1977); *United States v. Chaverra-Cardona,* 669 F. Supp. 1445 (N.D. IL. 1987).

In *Zarattini,* the Seventh Circuit upheld the trial court's restrictions on any inquiry into the details of alleged 608(b) offenses. In that case, the government witness testified on direct examination he had been involved in other interstate thefts. *Id.* at 758. On cross-examination, the trial court prohibited defense counsel from going into the details of the other offenses. On appeal, the Seventh Circuit upheld the restriction: "The jury was aware of Brigg's involvement in other interstate thefts as a result of the government's direct examination. It was not error for the district court to exclude the details of these other incidents it felt irrelevant to the present case." 552 F.2d at 759.

Similarly, in *Chaverra-Cardona,* the court precluded any "inquiry into the details" of a government witness' suspected involvement in various narcotics-related offenses. *Id.* at 1446. In so doing, the court stressed that "even where a defendant has been *convicted,* impeachment under Fed. R. Evid. 609 would not permit inquiry into the details of the underlying offenses." *Id.* at 1446-47 (emphasis in original). Accordingly,

defendant should be precluded from inquiring into the details underlying a witness' conviction.

Given the defendant's focus on information related to the CHSs, so that the Court can make the appropriate rulings, defense counsel should identify the prior conduct about which they intend to cross-examine a given witness and demonstrate how that conduct is probative of truthfulness. This should occur outside the presence of the jury. If the defendant is allowed to question the CHSs with questions that include the inadmissible information, the jury will hear the information before the United States has time to object or the Court has time to rule.

VI.    Motion in Limine to Exclude the Presentation of Argument or Evidence in Support of Jury Nullification

The Seventh Circuit has explained that although jury nullification is a fact because the government cannot appeal an acquittal, "it is not a right, either of the jury or of the defendant." *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively sanctioned by instructions, but is to be viewed as an aberration under our system."). As a matter of law, the defendant is prohibited from raising a jury nullification argument to the jury. *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1983)).

On September 5, 2019, for example, the defendant's attorneys provided the United States with pictures of the defendant socializing with friends and coworkers. The United States is not clear on the relevance of these pictures. However, any mention of the defendant's family, the defendant's parent's financial situation, the fact that the

defendant financially supported his parents, or pictures of the defendant socializing with his friends or family in an attempt to make him appear like a normal, American man devoid of a plan to commit a mass murder, serves no purpose other than jury nullification. In addition, questioning any witness about discrimination about Muslims in America, or mentioning discrimination against Muslims in opening or closing, serves no purpose other than jury nullification in this case. There is no good faith basis to suggest the FBI or the CHSs (who are the same race and religion as the defendant), discriminated against the defendant. The defendant was investigated and prosecuted because he was planning to murder innocent civilians and purchased and possessed machine guns and a silencer for the attack.

Accordingly, the government requests the Court bar the presentation of argument or evidence in support of jury nullification.

VII.   Motion in Limine to Exclude the Presentation of Argument Attempting to Define Reasonable Doubt

The Seventh Circuit has consistently held that trial courts and defense counsel alike should refrain from defining "reasonable doubt" for the jury. For example, in *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir. 1997), the Seventh Circuit, in upholding a district court preventing the defendant's attorney from attempting to define reasonable doubt to the jury in closing argument, again emphasized the Seventh Circuit precedent that "it is well established in this Circuit . . . that neither trial courts nor counsel should attempt to define 'reasonable doubt' for the jury;" *United States v. Langer*, 962 F.2d 592, 600 (7th Cir.1992) (reasonable doubt is self-explanatory and further definition would confuse the

jury); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988) (reasonable doubt definitions are unhelpful to a jury and potential impair defendant's constitutional right to have the government prove each element beyond a reasonable doubt).

## VIII.  Argument or Evidence of "Outrageous Government Conduct"

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. Courts routinely have, therefore, granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991); *United States v. Finley*, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation."); *United States v. Katz*, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Boyd*, 55 F.3d 239, 241-42 (7th

Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort. Second, even before the *Boyd* decision, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); *see also Katz*, 1992 WL 137174, at *5 ("[T]he government is right in attempting to preclude any argument by [defendant] before the jury that the government's conduct in investigating and prosecuting this case is outrageous."); *United States v. D'Arco*, 1991 WL 264504 (N.D.Ill. Oct. 18, 1991); *Shields*, 1991 WL 236492, at *3; *Finley*, 708 F. Supp. at 913-914.

IX.     Motion in Limine to Exclude Expert Testimony under Fed. R. Evid. 702

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, "the judge must determine whether the expert is qualified, whether his methodology is scientifically reliable, and whether the proposed testimony 'will help the trier of fact to understand the evidence or to determine a fact in issue.'"

*United States v. Truitt*, 2019 WL 4315001 at *3 (7th Cir. September 12, 2019) (internal

citations omitted). The 2000 commentary to Rule 702 (702 was amended after *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)) identifies additional factors the

Court can consider to determine if an expert's testimony is admissible. The factors are

whether the experts:

> 1) " . . .are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying";
> 2) " . . . unjustifiably extrapolated from an accepted premise to an unfounded conclusion";
> 3) ". . . adequately accounted for obvious alternative explanations";
> 4) " . . . is being as careful as they would be in their regular professional work outside their paid litigation consulting";
> 5) "Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

Fed. R. Evid. 702, 2000 Amendments. (internal citations omitted).

> Additionally, Federal Rule of Evidence 704(b) states:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

In regards to Professor Marcus Brauer, based on his expert report, (R. Doc 145,

Exhibit D) his expert report does not indicate he actually analyzed the facts of this case

or spoke with the defendant. The proposed witness thus does not appear to have "reliably

applied the principles and methods to the facts of the case" under Rule 702(d). He appears

to testifying in general about theories of "social influence" largely based on other people's

14

research instead of his own, with no application to this case. This testimony should be excluded under Rule 702 since it is not applied to the facts of the case.

Additionally, in *Truitt*, the Seventh Circuit upheld exclusion of an expert who would testify "that charismatic groups can cause a person to ignore his moral compass and do things he otherwise wouldn't." *Truitt*, 2019 WL 4315001 at *3. In *Truitt* the defense sought to have an expert testify that a group the defendant joined indoctrinated its members and this supported a defense that attacked the requisite mens rea of the charged tax fraud offenses. *Id*. at *1. The Seventh Circuit found it important that the expert did little to learn about the charismatic group other than interview the defendant. *Id*. at 4. Comparable to the expert in *Truitt* that did not study the mindset of the charismatic group in question, Professor Brauer's expert report similarly does not delve into studies of young terrorists planning attacks, or more specifically the "group" that consists of the defendant and the CHSs. To the United States' understanding, professor Brauer did not interview the CHSs. There is one sentence is his five page report about "Middle-Eastern and Asian" culture in general, with an example then given about Pakistani culture. There are then 2 sentences on the culture in the U.S. at an extremely broad level.

Professor Kimmel's testimony appears to be based off an analysis of the recordings made by the CHSs in which the defendant's statements are recorded. First, as discussed in depth in the United States Motion in Limine Regarding Hamzeh's Recorded Statements (R. Doc. 272), the defendant's attorneys cannot offer into evidence or solicit from a witness inadmissible hearsay statements of the defendant or the CHSs (or anyone else). The United States is unclear on the precise statements the defendant's attorneys will

solicit from Professor Kimmel, but presumably many of them are not the statements the United States will offer into admission in its case and chief. Professor Kimmel's proposed testimony does not account for the "obvious alternative explanations," for the defendant's behavior, in particular that the defendant wanted to join Hamas, and commit a mass terror attack before the FBI began its investigation. Implicit in Prof. Kimmel's report is the idea that the CHSs recruited and entrapped the defendant to commit an attack and buy machine guns for the attack. There is also no indication in the report that "the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." Professor Kimmel has studied how terror organizations recruit, but that is different from the analysis relevant to this trial – i.e., whether the defendant was predisposed to buy machine guns to commit an attack.

X.  <u>Motion in Limine to Exclude Impermissible and Irrelevant Expert Testimony, To Exclude an Impermissible Diminished Capacity Defense, and To Exclude Testimony or Argument Regarding Hamzeh's Mental State, or For Any Other Purpose</u>

Beyond the issues described above, under Fed. R. Evid. 704(b) there are still significant portions of the defendant's experts' testimony that should be excluded pretrial even if the Court does not exclude several of the experts' testimony under Rule 702.

Hamzeh appears to intend to attempt to build his entrapment defense via expert testimony. But the core inquiries under entrapment are inducement and predisposition. And an expert is flatly precluded from opining on questions of intent, predisposition, or inducement. *See* Fed. R. Evid. 704(b) ("[A]n expert witness must not state an opinion about whether the defendant did or did not have a mental state . . . that constitutes an

element of the crime charged or of a defense."); *see also, United States v. Campos*, 217 F.3d 707, 711 (9th Cir. 2000) ("Moreover, the rationale for precluding ultimate opinion testimony applies to both the insanity defense and 'to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven,' such as premeditation in a homicide case *or lack of predisposition in an entrapment case*." (quoting S. Rep. No. 98-225, at 230-31 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412-13) (emphasis added).

The proffered testimony of several defense witnesses violates the tenant of Fed. R. Evid. 704(b) that prohibits expert testimony regarding a defendant's mental state.

Dr. Ken Robbins will testify regarding Hamzeh's intellectual capacity – that is, "about how people with an IQ at Hamzeh's level function, make decisions (generally), and how they are influenced by others. He will also testify about these limitations and how people generally mask or cloak their limitations." R. Doc. 256 at 1. Defendant appears to thus be offering a diminished capacity defense via this expert.

Professor Bauer also will testify about people with low IQ scores and their vulnerability to social influence. R. Doc. 145, Exhibit D. But Rule 704(b) excludes psychiatric-based opinions and inferences, like those of Dr. Robbins and Professor Bauer, that are directed at a defendant's intent.

Further, the Seventh Circuit has been crystal clear that Hamzeh may not raise a diminished capacity defense. "The defense of diminished capacity only can be used as a defense to a specific intent crime." *United States v. Moore*, 425 F.3d 1061, 1069 (7th Cir. 2005) (finding that "a diminished capacity defense was not available to" the defendant

because he was charged with a "general intent crime . . . and diminished capacity is a defense only to specific intent crimes") (citing *United States v. Manganellis*, 864 F.2d 528, 539 (7th Cir.1988); *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989) (citing *United States v. Twine*, 853 F.2d 676, 679 (9th Cir. 1988)). *See also United States v. Cameron,* 907 F.2d 1051, 1063 n. 20 (11th Cir. 1990) (holding that "[p]sychological evidence is relevant to mens rea only when the defendant is charged with a specific intent crime") (cited with approval in *United States v. Yockel,* 320 F.3d 818, 825 n. 4, 826 (8th Cir. 2003)). But Hamzeh is not charged with a specific intent crime, his knowledge of the facts that constitute the offense is sufficient. *See* Seventh Circuit Pattern Jury Instructions for 26 U.S.C. § 5861(d) (requiring only that charged offenses be committed "knowingly").

Professor Michael Kimmell will similarly testify about "the dynamics of the interaction among Steve, Mike, and Hamzeh . . ." and "elements of these conversations and how they are consistent with the way many young men posture and pose in front of other men to prove their manhood." He will testify that "in a constant desire to please, Hamzeh went along with their efforts at escalating speech." R. Doc. 145 at 6-8. This testimony again appears to be a way to attack the defendant's mental state in regards to whether or not he was entrapped and or predisposed to commit the charged offenses. Again, this is a violation of Rule 704(b).

In addition, the Defendant has stated that Dr. Marc Sageman will testify regarding:

Among the events he will testify about is the 2014 Israeli incursion into Gaza, what the Israelis call Operation Protective Edge, and the wide discrepancy in fatalities and injuries in the respective Israeli and Palestinian communities. He will testify about the attitude of the Palestinians toward violence against Israelis in December 2015 as a result of what was

happening on the ground in Palestine at the time. He will testify about the statistics of causalities that Palestinians suffered during this time . . .
R. Doc. 256 at 2.

This testimony is completely irrelevant to this trial, and appears to be a jury nullification argument – an irrelevant attempt to convince the jury that it is was morally acceptable for the defendant to discuss and plan the murder of innocent Israeli civilians because of Operation Protective Edge.

By contrast, the United States is going to call Dr. Matthew Levitt to provide expert testimony on Hamas and terrorism so that the jury understands the defendant's statements regarding Hamas and Israel. For example, the defendant discusses Hamas extensively. Given the defendant discusses his desire to join Hamas and commit terror attacks on Israeli civilians, Dr. Levitt's testimony will help the trier of fact to understand the evidence (by answering the question What is Hamas?, amongst other issues) and to determine a fact in issue – whether or not the defendant was predisposed to possess machine guns, in order to engage in a mass casualty attack, and what his motive was for purchasing and possessing the machineguns and silencers. The defendant's desire to join Hamas and commit a mass casualty attack against Israeli civilians, is direct evidence of his predisposition to acquire machine guns for a mass casualty attack. Dr. Levitt is simply not going to offer an opinion as to whether Hamzeh was predisposed to commit the crimes with which he was charged, because to do so would be to intrude on the function of the jury.

In contrast, Dr. Sageman's testimony will not help the trier of fact to understand the evidence or to determine a fact in issue. This is not specialized knowledge necessary

to understand the defendant's statements. This testimony is an attempt at jury nullification – an attempt to explain that the defendant's desire to murder innocent Jewish civilians is not morally wrong. It is also impermissible under Rule 704 to the extent Dr. Sageman will state the defendant's state of mind as a result of Operation Protective Edge, or testify that the defendant did not actually want to possess machine guns and murder people. Dr. Sageman's analysis of Hamzeh apparently is that he was merely joking or expressing anger at Jews because of Operation Protective Edge. This opinion is impermissible under Rule 704(b).

In addition, Dr. Sageman and the other defense experts should be prohibited from discussing inducement and predisposition at all since it will be impossible to do this without discussing the ultimate issue at trial. In addition, Dr. Sageman should be barred from discussing the defendant's future dangerousness, propensity for violence, and predisposition or inducement to commit violence or possess machine guns. The defendant's notice on Dr. Sageman is vague and did not include an expert report. However, Dr. Sageman has testified on the risk of future violence, whether a defendant really was a member of a terrorist organization or had simply "an emotional affiliation" with the terrorists, and other topics that deal with a defendant's state of mind in other cases. *See e.g. United States v. Ceasar*, 388 F. Supp. 3d 194, 214 (E.D.N.Y. 2019).

The number of Palestinian casualties in Operation Protective Edge is also irrelevant to any issue at this trial. It is irrelevant to an analysis of the defendant's predisposition. Dr Sagerman's and the defendant's attorneys apparent belief that Operation Protective Edge justifies the defendant's desire to murder innocent Israeli

civilians is not relevant to any material issue in this trial. Dr. Sageman will also testify about the "cultural pressures" within the Palestinian community. The United States is not sure what this means. Does it mean that within the Palestinian community people are peer pressured into telling friends that one wants to murder as many Israeli and American civilians as possible and then to buy machineguns? Regardless, the "cultural pressures" of the Palestinian community are not relevant to this trial. Dr. Sageman's testimony will create a trial within a trial about Operation Protective Edge. It is irrelevant, and Dr. Marc Sageman's testimony should be excluded on these points.

## CONCLUSION

The United States moves for the Court to grant its Motions in Limine pretrial in order to ensure an orderly, efficient trial devoid of jury nullification, and impermissible argument, questioning, and evidence.

Dated at Milwaukee, Wisconsin this 13th day of September, 2019.

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By:     */s/ Adam Ptashkin*
Adam Ptashkin
Benjamin Taibleson
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
E-Mail: benjamin.taibleson@usdoj.gov

21