UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

    Defendant.

---

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE DR. LEVITT'S TESTIMONY**

---

The defendant has filed a Motion in Limine to Exclude Dr. Levitt's expert testimony. R. Doc 278. The United States requests that the Court deny the defendant's Motion in Limine based on the filings, Dr. Levitt's qualifications discussed in his expert report, and the extensive case law denying challenges to his testimony. Dr. Levitt's testimony is integral to the United States' case if the defendant is allowed to present an entrapment defense, as it will provide the jury with expert background knowledge it needs to understand the defendant's own statements about Hamas, Israel, ISIS, and the Masons.

**I.     Dr. Levitt's Testimony is Relevant and Critical to the Issues in Dispute at Trial**

In the recorded statements the defendant discusses his desire to join Hamas and then acquire weapons of war and murder Israeli citizens. For example, On November 2, 2015, the defendant states "To the extent that should Hamas tell me to go and detonate myself, I will go and detonate myself. I will tell them if you do not believe me, put a belt on me and I will go." Exhibit

1

A at 40 (Discovery Disc 22 (FBI 24) page 39 at lines 18-20). On October 13, 2015, the defendant states "*Yeah,* the idea is, if I am with Hamas, there is an army behind me, an army that fights with me, but if I go to Palestine, it's like I'm fighting against a whole army." Exhibit A at 16 (Discovery Disc 11 (FBI 11) page 19 at lines 9-11).

The defendant discusses his ability to access Israeli territory because of his U.S. passport and he discusses the different security situations and opportunities to commit a terror attack in the West Bank and Gaza Strip. Given that most American laypeople do not have expert knowledge on Hamas, terrorism, and the security situations in different areas of Israel, it is critical that the jurors are provided background information from an expert on these topics so that the jurors can understand the defendant's statements. Understanding these statements is a key to determining if the defendant was predisposed to possess machine guns and a silencer in order to commit a mass casualty attack, and only an expert can explain these statements to the jurors. If the defendant is allowed to present an entrapment defense Dr. Levitt's testimony is extremely relevant evidence for the jury to hear because it provides expert background knowledge that will help the trier of fact understand the defendant's recorded statements.

Dr. Levitt's testimony about ISIS is also extremely relevant. To a layperson, it would be extremely confusing to hear a person say they want to join Hamas but express negative feelings about ISIS, given both are terrorist organizations. The jury needs Dr. Levitt's expert testimony to understand the differences between the two groups and understand why a person could want to help Hamas commit attacks against Israeli civilians, while at the same time not having an interest in helping ISIS. Dr. Levitt's testimony is essential to the jury understanding Hamzeh's statements.

The defendant also challenges Dr. Levitt's ability to testify about Masonic conspiracy

theories. As Dr. Levitt's report makes clear, these conspiracy theories are prevalent throughout the Middle East. As a terrorism expert that has travelled to and studied the Middle East extensively, he is uniquely qualified to testify about this topic. The prevalence of the theories is also demonstrated by the fact that the defendant explicitly discusses them on multiple occasions in the conversations he had with the CHSs.

The defendant intends to present a defense that the defendant was not predisposed to possess machine guns. The defendant's choice of a defense thus makes Dr. Levitt's testimony highly relevant. If the defendant is not allowed to present an entrapment defense, Dr. Levitt will not testify. One of the main categories of evidence the United States will use to combat the entrapment defense is the defendant's repeated discussions of his hatred for the Jewish people and desire to join Hamas, acquire weapons of war, and commit a terror attack in Israel that killed numerous people. A reasonable jury could find that a terrorist that wants to commit a mass casualty attack with weapons of war is predisposed to want to purchase a machine gun and a silencer.

## II. Dr. Levitt's Testimony on Terrorism has Been Approved by Courts all over the Country Under Rule 702

The defendant's motion is in part an attack on Dr. Levitt's expertise and methodology. This attack is frivolous. The United States chose Dr. Levitt as its terrorism expert because his methodology is "the gold standard in the field of international terrorism." *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) (upholding and quoting from the district court's denial of a challenge to Dr. Levitt's testimony in a case involving Palestinian Islamic Jihad, another Palestinian terror group). Multiple courts have rejected challenges to Mr. Levitt's testimony on terrorism and terrorism groups. *See, e.g., United States v. Hammoud,* 381 F.3d 316, 337 (4th Cir.

3

2004) (upholding denial of challenge to Dr. Levitt's testimony about Hezbollah), *rev'd on other grounds,* 543 U.S. 1097 (2005); *United States v. Ibrahim*, 529 F. App'x 59, 62-63 (2d Cir. 2013) (unpublished) (upholding denial of a challenge to Dr. Levitt's testimony about Hezbollah, al Qaida and Jamaat Al–Muslimeen); *United States v. Kadir*, 718 F.3d 115, 212-22 (2d Cir. 2013).

FED. R. EVID. 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires the district court to perform a gatekeeping function with regard to expert testimony to ensure that the ". . . testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). Expert testimony is not limited to evidence that is purely technical in nature, but rather extends to all areas of "specialized knowledge." FED. R. EVID. 702. "Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702).

As indicated by the extensive case law allowing his expert testimony cited above Dr. Levitt has testified as an expert in numerous criminal terrorism trials across the country. His extensive training, experience, education, research and writing in the area of Middle Eastern terrorist organizations generally, and Hamas specifically, leave little room for doubt regarding his qualifications to testify as an expert in this case.

4

In rejecting a *Daubert* challenge to Dr. Levitt's qualifications in a case where he was called to testify about Hamas, a court noted that "Levitt's professional experience and education alone may be sufficient to evidence his field of expertise." *United States v. Holy Land Foundation for Relief and Development*, 2007 WL 2059722 at *8 (N.D. Tx. July 16, 2007) (unpublished). The Fourth Circuit rejected a *Daubert* challenge to Dr. Levitt's qualifications in a case where he was called to provide expert testimony about Hezbollah. *See Hammoud*, 381 F.3d at 337 (noting the defendant did not even challenge that "Levitt['s] . . . methodology [is] one generally employed in the social sciences."). Dr. Levitt's methodology has not changed since he testified in *Holy Land Foundation*, *Damrah* and *Hammoud*; in the years since that testimony, he has only gained more experience and gathered additional information and sources, which could only enhance the reliability of his testimony.

### III. Dr. Levitt's Testimony Is Highly Probative, Not Unfairly Prejudicial, and thus Should Not be Excluded under Rule 403

As for the defendant's claim that Dr. Levitt's testimony is inadmissible because of its prejudicial nature under Rule 403, the Second Circuit has previously rejected this type of attack on his testimony. *Ibrahim*, 529 F. App'x at 63 (stating "To the extent that [defendant] argues that the testimony was unfairly prejudicial, we described Levitt's testimony at the co-defendants' trial as 'dry and academic, [and] devoid of vivid imagery that might excite the jury.' 718 F.3d at 121. The same was true here.") (internal citations omitted).

FED. R. EVID. 403 states

The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

5

Unfair prejudice under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." FED. R. EVID. 403, Advisory Committee Notes to 1972 Proposed Rules. The probative value of Dr. Levitt's testimony is extremely high in this case, given the entrapment defense. Dr. Levitt is going to describe Hamas, ISIS, and Masonic conspiracy theories in the Middle East in a dry and academic matter as he has at numerous trials in federal courts throughout the country. The defendant made all of this testimony relevant because of his plans to acquire weapons of war and commit mass casualty attacks, his desire to join Hamas, his purchase of machine guns and a silencer to commit the attack, and now his plan to use an entrapment defense. Dr. Levitt will simply provide the laypeople on the jury with facts about organizations and places the defendant discusses extensively in his own statements. Background information on Hamas, ISIS, and Masonic conspiracy theories is probative of the question of the defendant's predisposition to purchase machine guns and a silencer. The fact that he wanted to commit a mass casualty attack and join Hamas, is direct evidence of his predisposition to buy a machinegun.

The probative value of Dr. Levitt's testimony outweighs any chance of prejudicial impact. The background information on Hamas is arguably less prejudicial then the defendant's own statements that he intended to kill a large number of people, and the simple fact of his purchase of these extremely dangerous weapons. The fact that the evidence at issue tends to prove the defendant was predisposed to buy a machinegun does not render it unfairly prejudicial under Rule 403. This evidence would not provide an improper basis for the jury's eventual decision.

## IV. CONCLUSION

The Court should reject the defendant's challenge to Dr. Levitt's testimony based on the parties' written submissions. There is extensive case law certifying his qualifications and methodology, and his testimony will contain highly probative and relevant information that helps prove the defendant was predisposed to possess machine guns and a silencer on January 25, 2019. In the alternative, the United States requests the Court schedule a pretrial *Daubert* hearing.

Dated at Milwaukee, Wisconsin this 20th day of September, 2019.

Respectfully submitted,

s/ Adam Ptashkin
ADAM PTASHKIN
BENJAMIN P. TAIBLESON
Assistant United States Attorneys
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-4581
e-mail: adam.ptashkin@usdoj.gov