UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 16-CR-21

SAMY HAMZEH,

    Defendant.

___

**United States' Reply Regarding Its Consolidated Motions in Limine**
___

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby Reply to the Defendant's filing regarding the United States' motions in limine.

I. <u>Reply Regarding Motion in Limine to Exclude any Argument or Questioning Relating to the Government's Charging Decisions.</u>

Hamzeh states he "will not be presenting argument regarding the government's charging decisions." Hamzeh MIL Response at 1.

II. <u>Reply Regarding Motion in Limine to Exclude Any Argument or Questioning Regarding the Government's or Agents' Motivation for Investigating or Prosecuting the Case.</u>

Hamzeh argues that he should be permitted to question agents regarding whether they investigated Hamzeh because they were improperly biased against him or motivated to entrap him and that *United States v. Andreas*, 23 F. Supp. 2d 835, 850–51 (N.D.

Ill. 1998) supports this position. This Court should reject that argument. There is no evidence of any improper motive or bias for investigating or prosecuting this case. And questioning a cooperating witness about his motive to testify is a very different thing from questioning an agent in a way that suggests there was an improper selective investigation or prosecution.

In *Andreas*, the court held that "the subjective beliefs of . . . government agents are inadmissible as to any potential entrapment defense" because "the government's intent to entrap the defendants is irrelevant to prove entrapment." *Andreas*, 23 F. Supp. 2d at 850. The parties agree on that much. But then the defense states that it should nonetheless be allowed to raise agent bias, via questioning and argument, because that was permitted in *Andreas*. But in *Andreas*, an evidentiary hearing produced evidence "there might have been some ulterior motive by some government agents which bears on the accuracy of the evidence being used in the prosecution." *Id*. Thus, the defense could question agents regarding that ulterior motive "for the limited purpose of challenging the credibility, reliability and authenticity of the government's" recordings. *Id*. But here, there was no evidentiary hearing showing agent bias or ulterior motive of any kind. Further, the parties have stipulated to the authenticity of the recordings in this case, and the defense wishes to rely on the recordings as well.

The defendant also cites *Delaware v. Van Arsdall* for the proposition that "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Hamzeh MIL Response at 4 (citing 475 U.S. 673, 678-79 (1986)). The government does not deny this. But Hamzeh collapses

2

motive to testify with motive to investigate an offense. Questioning a co-conspirator who wants sentencing credit about his motive to testify is different from suggesting a government agent only investigated a crime because of bias, particularly where there was no evidence of bias. And in *Van Arsdall*, the Court's next sentence is: "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." 475 U.S. at 679.

Ultimately, the defense argues that it should be allowed to question government agents regarding their mental state because "the resources poured into this case meant that there was pressure to get Hamzeh to commit a crime, such as getting a machine gun." Hamzeh MIL Response at 4. But as the defense acknowledges, "the government's intent to entrap the defendants is irrelevant to prove entrapment." *Id.* at 3. It is not correct to say there was any pressure on government agents to get Hamzeh to commit a crime. But even if that were true, and then an agent had the intent to entrap Hamzeh, it would be legally irrelevant under the defense's own understanding of the law. Such questioning and argument would be improper and should not be permitted.

III. <u>Reply Regarding Motion in Limine to Exclude Any Argument or Questioning Implying That the Investigation or Prosecution of this Case Was Racially or Religiously Motivated.</u>

The Court in *Andreas* also stated plainly that "race and national origin are inherently suspect topics." 23 F. Supp. 2d at 850 (citing *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200 (1995) (addressing race); *Plyler v. Doe,* 457 U.S. 202 (1982) (discussing

3

national origin)). "Remarks regarding these topics serve no relevant purpose in this or any other criminal trial." *Id*. (citing *Smith v. Farley,* 59 F.3d 659 (7th Cir. 1995)).

In light of his entrapment defense, the United States must introduce Hamzeh's statements showing his motive and predisposition to possess illegal weapons. A reasonable juror might conclude that Hamzeh's motive and predisposition were, from his statements, sometimes informed by his racial and religious views. The United States must put Hamzeh's own statements regarding wanting illegal weapons and wanting illegal weapons to commit an attack to the jury, and must in some limited cases explain those statements so the jury can understand them. The United States will do this for the limited purpose, tied to the elements of the offense and entrapment defense, of proving Hamzeh committed the offense and was not entrapped. The United States will not otherwise go anywhere near racial or religious issues.

Hamzeh argues his "religious identity and how it impacted his conversations and how he is treated or perceives he is treated (as a result of that identity) are integral to this case and the broad prohibition the government seeks goes too far." Hamzeh MIL Response at 2. It is challenging to see the connection between that statement and the elements of the offense or claim he was entrapped by the confidential human sources, who share his racial and religious background. There can be no serious allegation they were biased against him based on race or religion. Hamzeh should not be permitted to argue or question witnesses in a way that suggests he was prosecuted because he is an American Muslim of Arab descent when no evidence of that exists. Such questioning and argument could only confuse the jury.

4

IV. Reply Regarding Motion in Limine to Exclude any Discovery Requests or Commentary Regarding Discovery in the Jury's Presence.

Hamzeh states "the defense does not intend to comment on prior discovery motions or orders before the jury." The United States seeks to be sure that includes the substance of those motions and orders, not merely the fact of them. Any discovery requests, including those referenced by the defendant in his response, should be made outside the presence of the jury to avoid misleading the jury. There is no suggestion of fraud here, so the defense's citation to a footnote in *Kyles v. Whitley*, 514 U.S. 419 (1995), Hamzeh MIL Response at 5-6, is not relevant.

V. Reply Regarding Motion in Limine to Exclude Cross-Examination Regarding "Bad Acts" by Any Witnesses That Are Not Probative of Truthfulness

The United States moved to exclude reference by the defense to any "bad act" by a government witness that was not probative of that witness's truthfulness. The defense responds that, "this appears to be an effort by the government to have the defense reveal all of its impeachment material before trial." Hamzeh MIL Response at 6. That is not correct. Federal Rules of Evidence 611 and 608(b) and the case law only permit inquiries into a witness's prior bad acts if the acts are probative of truthfulness. An assault arrest in 2012 would not be; a perjury conviction in 2019 would.

The defense argues that it should be allowed to question witnesses regarding "Pending charges, dismissals, failures to charge, failure to report a crime, and reduced charges [because they] are all proper inquiries relating to bias and motive of a witness." Hamzeh MIL Response at 7. There is no evidence in this case of any such criminal benefits being bestowed on any government witness. So, should the defense wish to ask in general

5

whether a witness received any such benefit, and hear an on-the-record "no," that might be permissible. But the defense should not be allowed to thwart the federal rules and case law by listing a witness's prior, non-honesty-based bad acts with no evidence any of them are related to potential bias in this case. And it should neither be allowed to do so directly nor under the guise of asking something else. Defense counsel has submitted filings to the court speculating that if the United States had shielded a CHS from prosecution because he had assisted in this investigation, that would be relevant to his bias. But that did not occur, there is and can be no evidence of that, and allowing questioning on that score could mislead the jury into believing there is some support for that claim.

VI. Reply Regarding Motion in Limine to Exclude the Presentation of Argument or Evidence in Support of Jury Nullification

Hamzeh does not object to the motion regarding nullification if "properly interpreted," but claims that the United States' "conception of jury nullification is much too broad. Jury nullification does not prohibit the defense from providing background about Mr. Hamzeh and his family." Hamzeh MIL Response at 1. The United States' position is that Hamzeh's family status is not relevant to the jury's finding of the facts supporting the elements of the charged offenses. So too questioning any witness about racial or religious discrimination, or mentioning such discrimination in opening or closing, or any other issue unrelated to the elements of the charged offenses. There is no good faith basis to suggest the FBI or the CHSs (who are the same race and religion as the defendant) discriminated against the defendant. The only purpose topics like these could serve is attempting to distract jurors from their task, or elicit juror sympathy and

6

disregard for their charge: which is to find the facts and apply them to the elements of the offense without regard for anyone's race, religion, family status, or anything else.

VII. <u>Reply Regarding Motion in Limine to Exclude the Presentation of Argument Attempting to Define Reasonable Doubt</u>

Hamzeh states he "will not be presenting argument . . . defining reasonable doubt." Hamzeh MIL Response at 1.

VIII. <u>Reply Regarding Argument or Evidence of "Outrageous Government Conduct"</u>

Hamzeh states he will not argue that he should be acquitted, regardless of the law, due to outrageous government conduct. Hamzeh MIL Response at 2. He notes that in his view this "doesn't mean that the defense cannot suggest (or argue) that certain of the government's choices, such as not recording conversations for 35 days, were inappropriate." *Id*. The United States asks that this Court simply limit that variety of argument to the extent it does not bear on the elements of the offenses with which Hamzeh has been charged.

IX. <u>Reply Regarding Motion in Limine to Exclude Expert Testimony under Fed. R. Evid. 702</u>

The United States has several main points about the scope of the testimony of the defendant's experts. Federal Rule of Evidence 704(b) states:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Per the defendant's briefing, if the defense experts will testify as to the fact of the defendant's IQ, and the fact that a low IQ can make him more susceptible to influence,

7

under the Ninth Circuit case law cited by the defendant that would be admissible. However, the defendant should be barred from asking the witness questions that go any further because that would be impermissible under Rule 704(b). The witness cannot give his opinion on whether Hamzeh actually had the mental capacity to want to buy and possess a machine gun. The witness cannot comment on whether Hamzeh intended or wanted to purchase a machine gun. The expert cannot state that Hamzeh was induced or was not predisposed to purchase machineguns and a silencer.

The Court should find the defendant's expert witness's testimony about the defendant's intelligence is limited to stating his IQ, and discussing that in general a low IQ could cause a person being more susceptible to inducement. As previously stated in its Consolidated Motions in Limine, the defense is barred from presenting a diminished capacity defense. *United States v. Campos*, 217 F.3d 707, 711 (9th Cir. 2000) ("Moreover, the rationale for precluding ultimate opinion testimony applies to both the insanity defense and 'to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven,' such as premeditation in a homicide case *or lack of predisposition in an entrapment case*." (quoting S. Rep. No. 98-225, at 230-31 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412-13) (emphasis added). In addition, the defense of diminished capacity only can be used as a defense to a specific intent crime." *United States v. Moore*, 425 F.3d 1061, 1069 (7th Cir. 2005) (finding that "a diminished capacity defense was not available to" the defendant because he was charged with a "general intent crime . . . and diminished capacity is a defense only to specific intent crimes") (citing *United States v. Manganellis*, 864 F.2d 528, 539 (7th Cir.1988).

8

Second, the defendant clearly intends to offer out-of-court CHS hearsay statements into evidence through Professor Kimmel and their other expert witnesses. R. Doc. 291 at 27. The defense is correct that Prof. Kimmel can rely on inadmissible hearsay to form his onions. But that is a completely different matter from using Prof. Kimmel as a conduit to run through the inadmissible hearsay statements of the defendant and the CHSs in front of the jury. Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc., v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D. Ill. 2005) (internal citations omitted). As the Seventh Circuit has stated, "an expert witness may not simply summarize the out-of-court statements of others as his testimony." *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989).

Relatedly, the experts cannot offer into evidence the defendant's own self-serving statements in the guise of rendering an expert opinion. *See United States v. White Horse*, 316 F.3d 769, 775 (8th Cir. 2003) ("The district court correctly concluded, moreover, that the statements that Mr. White Horse made during the clinical interview and mental status examination were not independently admissible, because they were hearsay."). This prohibition does not apply to a government expert, including Dr. Levitt, because, as the party opponent, the government may offer defendant's statements. Fed. R. Evid. 801(d)(2) (a statement of a party offered by a party opponent is not hearsay).

In regards to Dr. Sageman, the United States briefly notes there is a significant difference between the legal basis for the admissibility of his testimony and Dr. Levitt's

9

testimony. Dr. Levitt will merely provide background information about Hamas, ISIS, Israel, and Masonic conspiracy theories. He will then provide analysis of the defendant's own statements. Dr. Sageman's testimony apparently will involve arguing that Operation Protective Edge renders it socially acceptable for Palestinians to state that they want to murder Israeli civilians. His testimony will violate Rule 704(b) if this discussion of Palestinian responses to Operation Protective Edge results in Dr. Sageman stating that the defendant was merely joking and did not want to acquire weapons of war to commit a mass casualty attack.

X.    Reply Regarding Motion in Limine Regarding Reciprocal Discovery

Hamzeh states he believes "the defense has no obligation under Rule 16 to create reports of potential witnesses." Hamzeh MIL Response at 32. But any defense witness statements in the defense's possession must be turned over. Under Federal Rule of Criminal Procedure 26.2(a), courts "must order" both the government and *the defendant and the defendant's attorney* to produce "any statement of the witness that is in [a party's] possession and that relates to the subject matter of the witness's testimony." *United States v. Wallace*, 326 F.3d 881, 884 (7th Cir. 2003) (emphasis in original). *See also United States v. Nobles*, 422 U.S. 225 (1975) (requiring defendants to produce relevant prior statements of defense witnesses (other than the defendant)).

Rule 26.2 codified the Supreme Court's holding in *Nobles*. "It places in the Criminal Rules the substance of what had been the Jencks Act, but it also provides for production of the statements of defense witnesses at trial in essentially the same manner as the statute had provided with respect to the statements of government witnesses." 2A Fed. Prac. &

10

Proc. Crim. 3d § 417. Thus, if a defense investigator took notes of the witness's statements but no report of that interview is produced, then the investigator's notes must be produced. That obligation is co-extensive with the familiar government agent obligation.

The United States has produced all such statements long before trial. The defense has not reciprocated. For example, a defense expert conducted an IQ test on the defendant. The United States has not received any documentation related to this test, such as what questions were asked, and what were the defendant's responses. If the defense intends to wait until after its witnesses have testified to turn over their statements, and thereby require the jury and Court wait during a recess after every defense witness so that defense witness statements can be reviewed, it should inform the Court of its plan to do so. And if the defense's position is that, during its extensive preparation for this case, it created absolutely no written records (reports, notes, or otherwise) of defense witness statements, it must say so.

XI.     Reply Regarding Motions in Limine Regarding Recordings of the Defendant

    A. *The Statements on the United States' Exhibit List – Issues Related to Entrapment*

Hamzeh's defense is that he was entrapped. His statements regarding his wish to possess machine guns and silencers in order to commit an attack – *i.e.*, one of his motives to possess these weapons – is highly relevant to show his predisposition. The type of attack Hamzeh wanted to commit evolved over time, and Hamzeh has stated he intends to introduce a few statements he made that he wanted a handgun for food deliveries in order to try to show he was not predisposed to possess a machine gun. Thus, it will be necessary for a jury to hear the balance of his statements.

11

In the United States' view, the volume, intensity, and overall composition of his statements indicate his predisposition. As a simplified example: If Hamzeh said "I want a machine gun today" on days 1, 2, 3, and 4; said "I don't want a machine gun today" on day 5; and then said "I want a machine gun today" on days 6, 7, 8, 9, and 10 before buying the machine gun on day 10, it would mislead the jury to only show them the statements he made on days 1, 5, and 10. To do so would make it falsely appear that Hamzeh might not be generally predisposed to want a machine gun, or that he was ambivalent rather than, in truth, enthusiastic. Instead, if Hamzeh is to raise an entrapment defense and the jury is to determine his predisposition, they must hear all of his statements regarding his predisposition and motive to acquire illegal weapons.

Hamzeh argues that many (perhaps most) of the statements on the United States' exhibit list are inflammatory because they include Hamzeh's statements that he wishes to shoot people. But Hamzeh's plain statements that he wanted to use a firearm to commit the illegal act of killing a group of people is highly probative of his predisposition to illegally possess the weapons he could use to do it. Each such statement alone may not prove predisposition outright, but each is probative. That is all the more true when Hamzeh specifically describes wishing to commit a mass killing for which automatic weapons are uniquely suited; and that he often referred specifically to machine guns, and to spraying bullets. A stated wish to "spray" bullets is probative of his predisposition to possess a weapon that "sprays" bullets – an automatic weapon.

It is also highly probative that Hamzeh made so many of these statements over the duration of the investigation. The sheer durability of his feelings is probative of his

12

predisposition to acquire machine guns and a silencer from long before the investigation started. His statements also must be viewed in context of one another. Given that Hamzeh repeatedly says he wants machine guns, it is no surprise he also says he wants to "spray" bullets into people and that he wants to acquire weapons to commit a mass attack. Wishing to possess a legal weapon might not be probative of a person's predisposition to possess an illegal weapon – but wishing to possess a generic "weapon" to commit an illegal mass killing is. The jury must see all of his statements regarding his predisposition.

Hamzeh repeatedly states he wishes to commit a mass killing and to martyr himself. He sometimes specifies he wishes to use a machine gun, he sometimes specifies he wishes to spray bullets, he sometimes says he wants to commit a mass killing with a weapon, and he sometimes states he just wishes to commit a mass killing. Each category of those statements is highly probative of his motive to possess the illegal weapons necessary to do those things. Each category is thus highly probative of his motive to commit the charged offenses and his predisposition to commit the charged offenses.

As the defense cites, "the more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." Hamzeh MIL at 16 (citing *United States v. Torres*, 977 F.2d 321, 328 (7th Cir. 1992)). In light of the entrapment defense and centrality of Hamzeh's predisposition and motive, his statements regarding his wish to commit an attack in Israel, in Texas, and in Wisconsin are all highly probative. He repeatedly stated that he wanted weapons to commit such an attack, including automatic weapons. The

13

jury must be given complete information about Hamzeh's motive and predisposition to commit the charged offenses in order for them to do their job.

Hamzeh argues his "statements are not probative of Hamzeh's predisposition. After all, they are all made well over a month after meeting the informants." Hamzeh MIL Response at 15. But as the United States set out in its response to Hamzeh's Motion in Limine, statements made after he met the informants can most certainly be probative of predisposition before the investigation started. The Seventh Circuit's decision in in *Mayfield* makes clear this common-sense point: "evidence of the defendant's conduct after the initial contact by the government's agents—for example, his actions or statements during the planning stages of the criminal scheme—also may be relevant to the determination of predisposition.". *United States v. Mayfield*, 771 F.3d 417, 437 (7th Cir. 2014). That is because those *statements* in particular can show whether the defendant *was* predisposed to commit the offense before any illegal activity is suggested. *Id.*

The Seventh Circuit is not alone in this analysis – and nothing in the Seventh Circuit's case law on this area of entrapment law makes the analysis of *Jacobsen* less relevant here. The law across the circuits is the same. As the Second Circuit put it in *Cromitie*, "of course, what a defendant *says* after contact[] by agents is generally admissible to prove predisposition because, although some post-contact *conduct* might be the product of inducement, it will be a rare situation where a defendant can plausibly claim that the inducement caused him to *say* something that evidenced predisposition." *United States v. Cromitie*, 727 F.3d 194, 209 (2d Cir. 2013) (emphasis added). *See also United States v. Mohamud*, 843 F.3d 420, 433 (9th Cir. 2016) (holding that "the government can

14

rely upon Mohamud's statements to prove predisposition even though he made them after the initial contact by the government"); *United States v. Tucker*, 133 F.3d 1208, 1217 (9th Cir. 1998) (holding that "[t]o prove the defendant's predisposition, the government can rely upon evidence occurring after the initial contact with a government agent"); *United States v. Cummings*, 431 F. App'x 878, 880 (11th Cir. 2011) (stating that "a predisposition finding is supported by the defendant's post-arrest statements and evidence that the defendant failed to take advantage of opportunities to back out of a transaction"). *Mayfield* cautions that "all this evidence must be considered with care, of course; by definition, the defendant's later *actions* may have been shaped by the government's conduct." But again, his *statements* are different. *Id*. (emphasis added).

The balance of Hamzeh's statements is relevant to this point as well. Again, if Hamzeh said "I want a machine gun today" on days 1, 2, 3, and 4; said "I don't want a machine gun today" on day 5; and then said "I want a machine gun today" on days 6, 7, 8, 9, and 10 before buying the machine gun on day 10, a jury could rely on that evidence to support its conclusion that Hamzeh was predisposed to want a machine gun on day 0.

  B. *The Statements on the United States' Exhibit List – Defense's Specific Objections*

The undersigned worked hard to identify pre-trial the statements it believes are admissible and would be helpful to the jury, and we are grateful the parties can put these issues before the court pre-trial. The defense objections to the admissibility of these statements fall into a few categories; none justify excluding Hamzeh's statements.

The primary defense objection is that Hamzeh's statements are inflammatory and prejudicial. But as discussed above, his statements regarding committing *illegal* mass

15

killings with firearms is highly probative of his motive and predisposition to commit the charged offenses. Hamzeh also objects to admissibility of his statements regarding committing a mass killing with weapons in Israel. But it is irrelevant to his predisposition to possess illegal weapons that he was interested in doing so in Israel – it does not matter if he wished to do so in the Middle East, or Texas, or Wisconsin. Those are all still people he wanted to kill, and firearms he wanted to kill them with.

Hamzeh also seeks to exclude statements about the Masons and his planned attack on the Masonic Center – these include, as he puts it, "the thoughts about the masons and the conspiracy theory and the horrific details about what could happen inside including with children, will only inflame and confuse the jury." But these were Hamzeh's plans. These were his statements regarding his motive and predisposition to acquire machine guns and silencers. His motive and predisposition are before the jury. He may argue he backed off one of his plans to commit a mass killing on a particular day, and he will argue he was entrapped, but evidence that he wished to acquire machine guns and silencers is directly probative of his predisposition to acquire machine guns and silencers.

Hamzeh also seeks to exclude statements showing his enthusiasm for a plan to go to Texas to buy weapons, but his enthusiasm for the proposed plan goes to whether he was induced and predisposed. His statement that if he and the CHSs are caught with silencers "we will be considered terrorists" goes to his knowledge that what he was doing was illegal, to the fact that he was not just in the market for a legal handgun, and to his knowledge that what he ultimately bought was indeed an illegal silencer – *i.e.*, directly to

16

his knowledge and intent when he bought the weapons. Hamzeh knew what the silencer would be good for. He repeatedly spoke about its value in committing an attack.

A few standalone statements are also relevant, contrary to Hamzeh's claim: His statements about Mo being a government informant are Hamzeh's own account of what he meant when he was pretending to Mo that the plan to kill people was all Mike's. The defense is likely to seek to admit statements Hamzeh made to Mo, and Hamzeh's own characterization of those statements is highly probative. The objected-to statement at number 28 of the defense chart (about women) is an extended Hamzeh statement about why it is foolish to try to kill people with knives because guns are much better for killing. He makes that comment in the context of criticizing women, but it is absolutely critical that the jury understand that when Hamzeh is discussing his wish to commit a mass killing, he does not mean with a van, or a knife, or anything other than a firearm. That statement shows how his motive to acquire weapons to commit an illegal killing is inextricably intertwined with his predisposition to commit the charged offenses.

The United States narrowly tailored a list of Hamzeh's statements. Each is relevant and admissible. They each go to precisely what the United States has to prove. If this Court has any specific questions about any of these statements at the pretrial hearing (including or beyond the categories described here), the United States will explain why the statement was included and is admissible.

C. *The Statements on Hamzeh's Exhibit List*

In contrast to the United States exhibit list of 60 statements of the defendant to the CHSs, many of which are only a few sentences long, Hamzeh does not identify the statements he wishes to introduce with particularity. He instead identifies various long page ranges, many of which overlap with one another. It is, therefore, impossible to respond to each. Hamzeh argues these long passages are "not hearsay and can be entered into evidence for effect on the listener, present sense impression, state of mind, the rule of completeness and Hamzeh's constitutional right to present a defense." Hamzeh MIL Response at 9. He does not say which statements are which, but it cannot be true that passages dozens of pages long are admissible to show a party's present sense impression. Similarly, Hamzeh states "we want to show how that the statements were made and the effect that they had on Hamzeh—*i.e.*, inducing him to purchase an unregistered firearm—and Hamzeh's response to those statements." A listener's surprise may be an "effect on the listener," but the defense seems to argue that the legal concept of inducement is an "effect on the listener" under the Federal Rules of Evidence. That is not correct. And it is not correct that hundreds of hearsay statements are rendered admissible merely because Hamzeh wishes to argue that they collectively induced him to do something.

Similarly, under the rule of completeness, as argued in the United States' initial motion, statements are admissible when offered as mere context for the defendant's admissible statements. But the rule of completeness is not intended to open the floodgates and permit the wholesale introduction of otherwise inadmissible evidence. *United States v. Lefevour*, 798 F.2d 977, 981 (7th Cir. 1986). As the Seventh Circuit explained

18

in *Lefevour,* the paradigmatic case of the rule of completeness "would be accusing the Biblical David of blasphemy for saying, 'There is no God,' his full statement being, 'The fool hath said in his heart, there is no God.'" *Id.* at 981. Thus where, for example, Hamzeh says, about the possibility of purchasing illegal weapons, "as to the weapon. I liked it. I liked to obtain. I mean, whatever happens, I like the weapons and I liked to obtain a weapon," Exhibit A to Recorded Statement Motion in Limine at 183, the rule of completeness might fairly require the preceding pages in Hamzeh's response – as he indicates. But it cannot require inclusion of every page in his exhibit list - including statements hours, days, or months earlier or later.

Some of Hamzeh's statements may be admissible, and if Hamzeh identifies the actual statements he wishes to introduce it will be possible for the United States to take a position on their admissibility. But this Court should be wary of the admissibility of two particular categories of statements: (1) statements made by Hamzeh and recorded by the CHSs that are plainly being offered for the truth of the matter asserted in support of a defense theory; and (2) Hamzeh's false exculpatory statements during his post-arrest statement.

## **CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court grant its Motions in Limine.

19

Dated at Milwaukee, Wisconsin this 26th day of September, 2019.

                Respectfully submitted,
                MATTHEW D. KRUEGER
                United States Attorney

By:    */s/ Benjamin Taibleson*
                Benjamin Taibleson
                Adam Ptashkin
                Assistant United States Attorneys
                United States Attorney's Office
                Eastern District of Wisconsin
                517 East Wisconsin Avenue
                Milwaukee, Wisconsin 53202
                Telephone: (414) 297-1700
                E-Mail: benjamin.taibleson@usdoj.gov