UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    *Plaintiff*,

                                        Case No. 16-cr-21-PP

*vs*.

SAMY M. HAMZEH,

                    *Defendant*.

## HAMZEH'S SUPPLEMENTAL RESPONSE IN SUPPORT
## OF DEFENSE'S PROPOSED TRANSCRIPTS

Samy Hamzeh, by counsel, files this memorandum in support of admitting the transcripts marked as Exhibits 3041-3153. There are two parts. The first sets out the law governing the different theories of admissibility. The second, starting on page twenty, has a chart laying out the grounds for each statement's admissibility and a preview of the relevance. This brief does not deal with Hamzeh's post-arrest statements and their admissibility. That is dealt with in a separate filing. The updated exhibit list is attached as Exhibit A and the corresponding transcripts follow as Exhibits B–F.

### I.     The fundamentals of admitting the statements.

While the government has taken the view that the defense cannot invoke the party-opponent exception, so none of Hamzeh's statements can come in, that is not the law. The defense's omnibus response (R.291) sets out the basic theories for admitting the statements. And the government's reply brief (R.298) does not take on that law. It simply notes (without citation) that it "cannot be true that passages dozens of pages long are

Federal Defender Services
of Wisconsin, Inc.

admissible to show a party's present sense impression." R.298:18. It continues: "And it is not correct that hundreds of hearsay statements are rendered admissible merely because Hamzeh wishes to argue that they collectively induced him to do something." *Id.* The problem with the government's argument and lies with its conception of what constitutes hearsay and the exceptions to the hearsay rule.

As explained below, virtually all of the transcripts the defense seeks to admit are not hearsay. They are not out of court statements offered for the truth of the matter asserted. Most of the statements are from the informants; the statements, to the extent they represent a fact, are not true and they're not offered to establish the truth of anything but to show their effect on Hamzeh. Hamzeh's statements then are relevant for context. There are, of course, other statements that the defense seeks to admit, and they fall under other categories—they are offered to show Hamzeh's then-existing state of mind or his present sense impression or as an excited utterance. While the first part of this memorandum largely mirrors the arguments in the defense's response brief (R.291), the subsections that follow contain a more precise argument for each exception that will be invoked in the chart.

At its most basic level, these transcripts tell the story of this case. Just as in a bank robbery case, where the critical evidence might be a contemporaneous video showing what each person did at the time of the robbery, in this case, where machine guns were purchased as the culmination of a five-month effort to get Hamzeh to commit a crime (and the defense is entrapment) the transcripts are like a partial videotape—they show what each person did and how they reacted. The conversations are what largely reveal

2

Federal Defender Services
of Wisconsin, Inc.

the government's inducement and they confirm Hamzeh's lack of predisposition—keeping in mind, of course, that that predisposition had to predate the first contact by the informants. *Jacobson v. United States*, 503 U.S. 540, 549 (1992) (noting "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act *prior to first being approached by Government agents*" (emphasis added)).

### A. Statements that are not offered for the truth are not hearsay.

The first question is whether the transcripts are hearsay. Hearsay is, of course, an out-of-court statement offered to prove the truth of the matter asserted. Fed.R.Evid. 801(c). But "an out-of-court statement offered for some other purpose, such as to show that a statement was made, to demonstrate the statement's effect on the listener, or to show the circumstances under which subsequent events occurred, is not hearsay." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014) (citation omitted). When statements are not offered for "their truth, but for their effect on defendants' state of mind," they aren't hearsay. *Id. See also United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986) ("The trial court erred in excluding Butler's testimony. Lowery was not basing his defense on the truth of Fellouris's statements, but rather on the fact that they were made and that Lowery believed them to be true").

Here, the majority of the statements offered are not hearsay for three principal reasons. First, the statements are verbal acts; second, the statement's truth is irrelevant or the statement is false or it's not offered for its truth; and three, the statements bear on Hamzeh's motive or intent. All of those types of categories boil down to the fact that the

Federal Defender Services
of Wisconsin, Inc.

statements are offered not for their truth but to show their effect on Hamzeh, and Hamzeh's reaction.

### i.    Verbal Acts are not considered hearsay and are thus admissible.

When statements are introduced as a verbal act, a statement whose truth is irrelevant, then the statement is not hearsay. *Carter v. Duoma*, 796 F.3d 726, 735 (7th Cir. 2015) (officer's instructions to informant "were not hearsay because they were not 'statements' making any factual assertions"). In situations where the statement's significance lies in the statement having been made—not in whether the statement is true or not—then the statement is not hearsay. The Rules' Commentary makes that clear: "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, *[then] the statement is not hearsay*." Advisory Committee Note to Fed.R.Evid. 801(c) (emphasis added); *see also Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth."). And statements are not hearsay when they are offered to show the effect they induce—a "statement that D made a statement to X is not subject to attack as hearsay *when its purpose is to establish the state of mind thereby induced in X*." 2 McCormick On Evid. § 249 (7th ed.) (emphasis added); *see also United States v. Norwood*, 798 F.2d 1094, 1097 (7th Cir. 1986) (statement "not offered to prove the truth of the matter asserted but to establish the statements' effect upon [defendant's] state of mind . . . was not hearsay").

In an entrapment case (like this) the informants' statements are important to show the effect on Hamzeh's state of mind. *See United States v. Mayfield,* 771 F.3d 417, 437 (7th

Federal Defender Services of Wisconsin, Inc.

Cir. 2014) (en banc). The statements reveal Mike's persistence and Hamzeh's resistance. In entrapment cases, the courts have been clear: "conversations concerning Branham's entrapment defense would not constitute hearsay." *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996). In the *Branham* case, the court explained that "if the significance of a statement 'lies solely in the fact that it was made,' rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not offered to prove the truth of the matter asserted." *Id.* (citations omitted). The court continued with a point that controls here: "defense counsel was attempting to offer the parties' conversations as evidence of Branham's state of mind in support of his entrapment defense. *Accordingly, the truth of the conversations would be irrelevant for purposes of the defense, because the conversations' significance would exist solely by the fact that they were made*." *Id.* (emphasis added) (citations omitted). Indeed, here, the conversations are not being offered for their truth—that's irrelevant. It's all about the fact that the statements were made and their individual and cumulative effect on Hamzeh.

That's, in fact, always the case with entrapment defenses: the statement's truth is irrelevant; what matters is that it was said and its effect on the listener. Case law is very clear on that point:

- "Santander's statements were offered as evidence of Cantu's state of mind, bearing directly on his entrapment defense. Thus, the significance of the statements lies solely in the fact that they were made; the truth of the statements is irrelevant for that purpose. The trial court erred in concluding that the proffered statements were hearsay." *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989).

- On the issue of entrapment, defendant's wife should have been permitted to testify about defendant's conversation with informant in which he allegedly refused to

Federal Defender Services
of Wisconsin, Inc.

engage in narcotics transaction, since "[t]he statements made by the husband were not self-serving declarations about a past attitude or state of mind, but were manifestations of his present state of mind, his immediate reaction to the proposal" *United States v. Partyka*, 561 F.2d 118, 125 (8th Cir. 1977).

- And, of course, when "testimony was not offered for the truth of the matter asserted but to show defendant's state of mind as bearing on the entrapment defense, and therefore was not hearsay." *United States v. Lopez* 147 F.3d 1, 6 (1st Cir. 1998).

And that is precisely what the defense is seeking to do with these transcripts. We want to do two things: one, like in *Cantu* and *Branham* to show that the statements were made to demonstrate the effect that they had on Hamzeh's statement of mind. And two, like in *Partyka* to show Hamzeh's "immediate react to the proposal" which was to respond to the government's pressure to get a machine gun by rejecting it and insisting that he only wanted a handgun.

The fact that the statements were made covers all of the statements the defense seeks to introduce. It stretches from Steve inserting the word machinegun into the early October conversations, to Mike's statements to Hamzeh in November, paying for the shooting range and grooming Hamzeh to get "something more." *See* Exhs. 3041–44 (statements with Steve); Exhs. 3050–54 (Mike's statements at the range). It especially encapsulates Mike's repeated pressure on Hamzeh to get a machine gun on December 7 and 14. Exhs. 3064–81 (pressuring Hamzeh and Hamzeh's insistence he just wants a pistol). It covers Mike telling Hamzeh that they could go up north to shoot the Kalashnikov. Exhs. 3106, 3123. And critically, they go to Mike's "bait-and-switch" – his statement that his gun (alternatively referred to as a Kalashnikov, AR-15, and machine gun) was not an automatic, and the effect that had on Hamzeh, who believed that they

6

Federal Defender Services
of Wisconsin, Inc.

were getting a gun like Mike's. Exhs. 3053, 3073, 3119, 3124. These are all verbal acts meant to show Mike's subtle grooming of Hamzeh—their effect on Hamzeh—the truth of every statement is irrelevant. They show Hamzeh's response both as context and his then-existing state of mind; and thus, consistent with *Branham* and *Cantu,* the statements are admissible.

### ii.     Statements that are not truthful are similarly not hearsay.

The first basic theory for admitting the proposed statements is that they are offered to show the effect they produced on Hamzeh and Hamzeh's response. The second basic theory for placing the proposed statements outside the hearsay bar is that the statements themselves are not truthful or their truth is irrelevant. That is, the statements which the defense seeks to introduce are not being offered for their truth—not only is the truth of the statements immaterial, many (almost all) of the statements are false. See *United States v. Whiteagle*, 759 F.3d 734, 757 (7th Cir. 2014) (noting "statements were not admitted for their truth . . . the *statements were quite obviously false. Consequently, they did not constitute hearsay*" (emphasis added)); *Anderson v. United States*, 417 U.S 211, 219–20 (1974) (statements introduced that were not offered into evidence to prove the truth of the matter asserted, but "to establish a foundation for later showing, through other admissible evidence, that they were false" were admissible non-hearsay). This is, in fact, a slight variant of the first theory—if the truth is irrelevant, the statement is a verbal act.

Given the importance of these statements (they show Hamzeh's innocence), these subtle differences for admissibility are worth citing and briefing. Indeed, it's always true that the same piece of evidence can be admitted under multiple theories. Some may be

7

Federal Defender Services
of Wisconsin, Inc.

more persuasive than others. Thus, while the difference between admitting a statement as a verbal act where the truth is irrelevant and a statement that is false is slight, the second basis equally supports the admission of other statements. *Whiteagle*, 759 F.3d at 757.

Here, the statements are filled with a cacophony of lies. These range from really obvious (the Masons are actually ISIS), and that Mike has a friend on whose farm they can shoot the weapons. *See* Ex. 3072, 3100, and 3118. And they include a host of other statements like Hamzeh's fanciful lies about his mom being hospitalized for a heart attack or that he was interrogated by the FBI and had $7,000 and his various means of escaping "the plan." *See* Ex. 3046, 3060, 3015, 3107, 3111. These statements are false and since they are not offered for their truth but to show Hamzeh's response to the pressure, they are not hearsay.

### iii. Statements are offered for motive or intent are not hearsay.

The central point that can't be lost in ruling on these statements is that they're being introduced to show how the statements influenced Hamzeh, and to show his state of mind. They are coming in to show that the statements were made, and the effect upon Hamzeh. *Branham*, 97 F.3d at 851 (conversations were "evidence of Branham's state of mind in support of his entrapment defense. Accordingly, *the truth of the conversations would be irrelevant for purposes of the defense, because the conversations' significance would exist solely by the fact that they were made*." (emphasis added)). That is the blanket theory for the admission of virtually all of the statements. *United States v. Appolon*, 715 F.3d 362, 372 (1st Cir. 2013) (introduced not "for the purpose of establishing the truth of the assertions

Federal Defender Services
of Wisconsin, Inc.

contained" but to "prove that the statements were made" were not hearsay (citations omitted)). The statement's truth is either immaterial or the statement is patently false. Instead, "the significance of the statements lies solely in the fact that they were made; the truth of the statements is irrelevant for that purpose." *Cantu*, 876 F.2d at 1137.

In addition, there is also the fact that the statements provide continuity and explain the parties' behavior and show the speakers' motivations. *See United States v. Conn*, 769 F.2d 420, 422 (7th Cir. 1985) (noting "the conversations between Hake and Judge Devine were not hearsay because they were not offered for the truth of the matters asserted" but as "verbal acts" establishing "background and continuity and explanation of the subsequent taped conversations"). As such, they are not hearsay but constitute verbal acts. To quote *Weinstein's Federal Evidence*: "Testimony is not hearsay if it is offered only to show the context within which parties had been acting, or to show a party's motive or intent for behavior." 5 Weinstein's Federal Evidence § 801.11 (2019).

There is admittedly a slight (almost academic) distinction between the statements covered by the category of verbal acts—if the truth is immaterial then it's not hearsay. End of the analysis. Yet courts are quick to offer other justifications and (again) given the importance of these statements, the defense is citing these more nuanced views of "verbal acts." Thus, not only are the statements admitted to show the cumulative and individual effect on Hamzeh as verbal acts, the truth of which is not at issue, but also some of the statements show the background, continuity and explanation of the parties' behavior. Indeed, that is often the case with Hamzeh's statements; they either provide his then-existing state of mind or context for the informants' statements.

9

Federal Defender Services of Wisconsin, Inc.

Examples of this will, naturally, overlap grounds for other statements but they include conversations about Mike having a place up north where they can go shooting with the rifles, which originates in December and stretches into the day of the arrest. Exhs. 3072, 3106, 3123. That is both subtle behavior to convince Hamzeh to get a gun but it also explains the parties' behavior and what they were going to do with them. Exhs. 3072, 3106, 3123, 3129, 3134. Statements admitted to supply elements of background, continuity, and explaining behavior also extends to the conversations about licensing guns, and it encapsulates the way Mike's gun was presented as a Kalashnikov and a machinegun—just a "machinegun" that wasn't automatic. Exhs. 3051, 3053, 3091, 3120, 3124 And it would include conversations about Hamzeh's need for a pistol for protection, while continually rejecting offers for a machine gun.

### iv.    Conclusion.

The statements that the defense seeks to admit are verbal acts (the truth of the statements is immaterial) and like the courts in *Cantu, Branham* and *Partyka*, and the others cited above, this Court should admit them all. *Branham*, 97 F.3d at 851 (conversations were "evidence of Branham's state of mind in support of his entrapment defense"). These statements aren't covered as hearsay—the statements aren't offered for their truth, or the statements are false, or (again with some overlap) the statements go to show the context of the parties' behavior. In other words, the statements establish the calculated campaign of persuasion that the informants used on Hamzeh—the subtle (and not so subtle) grooming and manipulation that Mike and Steve subjected Hamzeh to, all of which brought Hamzeh to the point of purchasing the machine gun and all of which

Federal Defender Services
of Wisconsin, Inc.

is offered to show the effect on him. In other words, the statements are not hearsay and are admissible.

### B. Other statements fall under the hearsay exceptions and are thus admissible.

In the defense's view, all of the statements don't fall under the definition of hearsay. There are, however, a few statements that the government might argue are not verbal acts but hearsay—including among the most important statements of the case: Hamzeh's statements during and after the buy that this is not the gun they agreed to, it's a different gun. Given the importance of these statements and the need to avoid piece-meal briefing during trial, the defense is supplying these additional theories for the statement's admissibility. Thus, even if the statements are hearsay, then they can be admitted under different exceptions. The following sub-points address the law governing the hearsay exceptions of then existing state of mind, present-sense impression, excited utterance, rule of completeness, and the Constitutional right to present a defense. *See* Fed.R.Evid. 803(1)–(3).

### i. The statements are also offered for the state of mind exception

Rule 803(3) excludes from hearsay statements that are offered to show the declarants then existing state of mind: "[a] statement of the declarant's then existing state of mind ... but not including a statement of memory or belief to prove the fact remembered or believed." Fed.R.Evid. 803(3). The exception extends beyond the bare assertion of a declarant's then existing state of mind and extends to the declarant's intentions at the moment the words were spoken. *United States v. Peak*, 856 F.2d 825, 834 (7th Cir. 1988) (state-of-mind exception to hearsay rule is not limited only to bare

11

Federal Defender Services
of Wisconsin, Inc.

assertions of state of mind and does not necessarily prohibit details of conversation); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 695 (7th Cir. 2011). Put more precisely, the Rule is that the "statement must relate to the declarant's state of mind as it existed at the time it was uttered." *Peak,* 856 F.2d at 833. And, of course, there is always the "possibility that an expression of state of mind on one occasion may be relevant to state of mind at a later time where the statement reflects 'a continuous mental process.'" *United States v. Farhane*, 634 F.3d 127, 172 (2d Cir.2011) (Raggi, J., concurring) (quoting *United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir.1991)).

Under this exception, courts have (in a variety of situations) upheld the admissibility of statements that capture the declarant's state of mind at the moment it's uttered.

- The defendant's statements "on *the telephone reflected his present state of mind when told of the 'capture plan'*" (to kidnap the drug dealer, not to take his drugs and distribute them) he thought "the idea was 'crazy,' but he was willing to cooperate. Bennie offered these statements to show that he lacked the requisite state of mind for conviction." *Peak,* 856 F.2d at 833 (emphasis added).

- A loan officer's statements, offered through plaintiff's testimony, that plaintiffs' home-equity loan applications would not be approved until their foreclosure was removed, were expressions of bank's intentions, and thus were admissible as "a statement of the declarant's then existing state of mind" under Rule 803(3). *Catalan*, 629 F.3d at 694–95.

- The court held that it was error to exclude the defendant's statement "I only came here to get some cigarettes real cheap" because the "statement exhibited the defendant's then existing state of mind." *United States v. DiMaria*, 727 F.2d 265, 270–71 (2d Cir. 1984)

Those principles apply equally here. But before addressing the specifics of these statements, it's worth noting that the *Peak* case (from this Circuit) cited the *Partyka* case

Federal Defender Services
of Wisconsin, Inc.

out of the Eighth Circuit for the proper use of the state of mind exception. The same principles apply here to many of Hamzeh's statements. *Peak,* 856 F.2d at 833 (noting "[t]he Second and Eighth Circuits have applied the state-of-mind exception to hearsay statements similar to the ones here.") (*citing DiMaria*, 727 F.2d at 270–71, and *Partyka*, 561 F.2d at 125). In *Partyka*, the defense was entrapment and the court held the defendant's statement (as recounted by his wife) should have been admitted to show he was entrapped. 561 F.2d at 125 (the statements "were manifestations of his present state of mind, *his immediate reaction to the proposal*").

Thus, when this Court considers Hamzeh's statements there are many that even if the Court finds they are not verbal acts, that would fall under Rule 803(3). Statements about Hamzeh's exclamations of joy the first time Mike took him to the shooting range. Exhs. 3051–54. Statements rejecting Mike's offer for a machine gun and instead saying (repeatedly) I only want a pistol for protection, also fall under the Rule as in *Partyka*. Exhs. 3062–81. So too do Hamzeh's statement on the day he backed out: "we can't do it, it is forbidden." Exhs. 3112, 3118. And critically, his statements the day of the arrest: that this is not the same gun! *See* Exhs. 3138, 3153. All of those are admissible under Rule 803(3) to show Hamzeh's then existing state of mind. *Partyka,* 561 F.2d at 125 (the statements "were manifestations of his present state of mind").

### ii. Hamzeh's statements are admissible as a present sense impression

There is some natural overlap between the exception for then existing state of mind and that for a present sense impression under Rule 803(1). Both encapsulate statements that are made without a narrative or calculated force and instead reflect how the

13

Federal Defender Services
of Wisconsin, Inc.

declarant is then (at that moment) feeling, thinking, or perceiving an event. When it comes to this exception, the Seventh Circuit has succinctly described the rule this way: statement must "describe an event or condition without calculated narration," and "must have been made while the speaker was perceiving the event or condition, or immediately thereafter," and "speaker must have personally perceived the event or condition described." *United States v. Ruiz*, 249 F.3d 643, 646–647 (7th Cir. 2001). That is, the statement must be simultaneous or close to the event. 5 *Weinstein's Federal Evidence* § 803.01 (2019). And here, because *all* of the statements are simultaneous with the events that they are describing (the recordings are real time) there are also no memory problems when it comes to a recording. *See Makuc v. American Honda Motor Co.*, 835 F.2d 389, 391–392 (1st Cir. 1987) (noting "a statement that is otherwise excludable as hearsay may be admitted if it describes or explains a conditions, and if it was made while the declarant was perceiving the event or immediately thereafter"); *United States v. Danford*, 435 F.3d 682, 687 (7th Cir. 2005) (description of conversation less than a minute after it had concluded constituted present sense impression). So many of Hamzeh's statements (if they are considered hearsay) would fall under that exception. This would include Hamzeh's statements at the gun range, that this is awesome would be a present-sense impression. Exhs. 3050–51. That Mike's gun has a clip of 35 that Hamzeh doesn't know how to load. Exhs. 3051–53. His statements of excitement at shooting. *See id.*

### iii.    Hamzeh's statements as excited utterances.

The overlap with these statements is obvious. There are, however, two statements that (again) if they are deemed hearsay would stand as excited utterances. An excited

14

Federal Defender Services
of Wisconsin, Inc.

utterance is, of course, a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Rule 803(2). The excited utterance exception "allows for a broader scope of subject matter coverage than the present sense impression. This is because the excited utterance exception includes a statement relating to a startling event. while the present sense impression exception is limited to describing or explaining the event." 5 *Weinstein's Federal Evidence* § 803.04. The requirements for a hearsay statement to constitute an excited utterance are: a startling occasion; a declarant who appears to have had the opportunity to personally observe the events; a declarant who was under the stress of excitement when making the statement; a statement relating to the circumstances of the startling occasion. *Id.*.

Here, Hamzeh's statements during the gun buy and those afterwards in the car, where he shouts that this is a different gun would qualify as an excited utterance. First, there is a startling occasion, the gun he agreed to buy "like Mike's" was not what was supplied. He was there, observing the sale and expressed his reservation. He was under the stress of the moment. And it related to the circumstances of the startling occasion— this was a different gun. The only issue that could be had within the scenario presented is that his statement, yelling at Mike that this is a different gun and it's not right, is that it took place in the car a minute later. But that doesn't undermine the exception. *See United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) ("The fact that [defendant] was answering questions, rather than giving a spontaneous narrative, [did] not indicate that he was not excited when he provided the answers. . . the fact that declarations [are] responses to questions [does] not destroy their 'spontaneity'" (citations omitted)). Thus, Hamzeh's

15

Federal Defender Services
of Wisconsin, Inc.

statement that this is a different gun, both at the time of the purchase (with the undercover agents) and then again in the car with just Mike and Steve would qualify as excited utterance.

### iv. The informants' statements are not hearsay and Hamzeh's response statements.

This final sub-point applies to both statements that are not offered for their truth, and to the statements that come in under Rules 803(1) and (3). The defense is offering the proposed statements as verbal acts, establishing that the statements were made, the effect on Hamzeh, his present state of mind, and the continuity and explanation of Hamzeh's (and the informants') behavior. Each basis is well-established and accepted as grounds for entering the statements into evidence. In other words, the statements are not hearsay, and thus the government is mistaken that they cannot be admitted into evidence.

Of course, the defense cannot put the informants' statements in and leave out Hamzeh's in the same conversation, nor can the defense pluck out a sentence and leave it without any context. Recently, in *United States v. Fernandez*, the Seventh Circuit was clear that when it comes to introducing a statement, one side of a conversation cannot be divorced from another; rather, a jury is entitled to hear it all: "What Frusti asked of or said to Voecks during interrogation was not offered for its truth, but rather to establish what questions or statements Voecks was responding to and the effect the former had on Voecks as the listener." 914 F.3d 1105, 1111 (7th Cir. 2019). In that case, like Hamzeh's "[t]his was a legitimate non-hearsay purpose aimed at providing the jury with the full context of Voecks' prior statements." *Id.*; *see also United States v. Woods*, 301 F.3d 556, 561

Federal Defender Services of Wisconsin, Inc.

(7th Cir. 2002) (informant's side of recorded conversation with defendant admissible "to provide context"). The Court in *Fernandez* continued: "Consequently, the hearsay rule did not support the court's decision to preclude the defense from establishing both sides of the interrogations through Voecks himself." 914 F.3d, 1111–12. Thus, there is no basis for the government to argue that Hamzeh cannot introduce the transcripts or that they come in on a piecemeal basis, with simply Mike's or Steve's words and Hamzeh's omitted. In fact, this is the same argument the government relies on to admit the informant's statements – they provide context for Hamzeh's.

The *Fernandez* case goes to the heart of the back and forth of dialogue, but the rule of completeness also encapsulates statements that place matters into context and explain what's being said. The government has provided the oft-cited example of it "would be accusing the Biblical David of blasphemy for saying, 'There is no God,' his full statement being, 'The fool hath said in his heart, there is no God.'" R.272:16 (quoting *Untied States v. Lefevour,* 798 F.2d 977, 981 (7th Cir. 1986)). And that's an accurate quote, but not an accurate reading of the case. The holding is much broader than plucking out the predicate of a sentence and presenting it as a full statement. In deciding whether Hamzeh was induced to purchase the machine guns, the jury has to look at the informants' course of conduct and it's not enough to hang on to a line here or there. That is, it's impossible to isolate a stray statement here or there. The statements have to be given their full context within not just the conversation they appear in but also, in some instances, within several conversations. After all, since predisposition is measured from Hamzeh's first contact with the informants (here, either August or September, depending on how the Court

17

Federal Defender Services
of Wisconsin, Inc.

rules with the jury instructions), all subsequent conversations must be considered for their impact on him—*i.e.*, how they induced him into purchasing the machine gun.

The demand that context be fairly given is rooted in the common law. In *Beech Aircraft Corp* the Supreme Court noted that the common-law rule of completeness underlies Rule 106: "The opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 171 (1988) (citing Wigmore, *Evidence in Trials at Common Law* (1978)). That is, the defense has the right to insist that additional portions to the government's transcripts be admitted to the jury. So long as the additional portions are relevant to the statement and they explain or qualify the portion offered by the government. *See United States v. Walker*, 652 F.2d 708 (7th Cir. 1981).

If the evidence is relevant, the court considers whether (1) the proposed evidence explains the admitted evidence; (2) the proposed evidence places the admitted evidence in context; (3) admission of the proposed evidence will avoid misleading the trier of fact; and (4) admitting the proposed evidence will insure a fair and impartial understanding of all of the evidence." *United States v. Reese*, 666 F.3d 1007, 1019 (7th Cir. 2012), *See also United States v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987). The governing principle is that under Rule 106, additional evidence is admissible if it is necessary to correct a misleading impression. "If otherwise inadmissible evidence is necessary to correct a misleading impression, then either it is admissible for this limited purpose by force of Rule 106… or, if it is inadmissible [because of privilege], the misleading evidence must

18

Federal Defender Services
of Wisconsin, Inc.

be excluded too." *United States v. Le Fevour*, 798 F.2d 977, 981 (7th Cir. 1986). That is, the defense's right to present an accurate picture of the quote supersedes other rules of evidence.

At this point, it's a difficult proposition to argue what precise statements come in under the Rule of Completeness. If the Court limits many of the government's statements about Israel, the defense will not need to bring in some of the marked statements. Thus, while all of the statements marked below can come in under an evidentiary basis as a verbal act or an exception to the bar on hearsay, many would come in also to correct a misimpression left by the government's excerpts. After all, the agents and informants chose which conversations to record and have selectively chosen from those conversations the portion that don't present an accurate picture of the manipulation that the informants subjected Hamzeh to—introducing him to guns, taking him to the gun range, pressuring him to get a gun, and his resistance to their pressure. The following relevant transcripts should be presented to the jury, so it can fairly decide whether the government induced Hamzeh to get a machine gun.

## II.     The constitutional right to present a defense.

The defense has set forth the various bases for admitting Hamzeh's statements below, particularly how they relate to the rules of evidence. What can't be lost in all this is that the Rules of evidence are meant to enshrine fairness and reliability into the truth-seeking process of a trial. That's their purpose. And when it comes to a criminal defendant's right to present a defense, the Sixth Amendment trumps those Rules. *Holmes v. South Carolina,* 547 U.S. 319, 324–25 (2006). Here, the evidence the defense seeks to

19

admit is admissible under the Rules of evidence but even if it weren't, the Court would still have to admit Hamzeh's statements particularly those on December 7 and 14, January 24 and 25, and those that show the ambiguity that surrounded the guns Hamzeh thought he was getting and Mike's bait-and-switch move.

Those statements reveal so much about this case. They reveal not just Hamzeh's lack of predisposition to have a machine gun, the December statements are Hamzeh being presented with the opportunity and saying no! he just wants a handgun. And it reveals the pressure that's being placed on him. Indeed, the recording (when Mike knows he's recording) is indicative of what Hamzeh likely experienced every day he met with Mike. The conversations that follow and that are attached to this brief as Exhibits B–F spell that out with great clarity. Mike's insistence and Hamzeh's resistance are laid bare. And in a case where his freedom is on the line, he has the right to present this evidence to the jury.

### III.    The specific basis for each exhibit

The authority for each statement is laid out above. In the chart each exhibit is addressed, including the disk and page number. Rather than cite cases, a quick reference to the underlying rule or principle for each statement is referenced. Some of these statements (many) will be unnecessary depending on how the Court rules on the motion in limine limiting the government's statements. But it is better to take care of this in one fell swoop.

Federal Defender Services
of Wisconsin, Inc.

| Exhibit Number | Disk and Page Number | Authority |
|---|---|---|
| 3041 | DD 11 page 4 - 5 | Verbal act, truth irrelevant, and to show Steve is first to mention machine guns. |
| 3042 | DD11 page 16 | Verbal act, truth irrelevant, and goes to show Steve again mentions machine guns. |
| 3043 | DD14 page 9-10 | Verbal act, truth irrelevant, it's a lie. Also to show Hamzeh's fanciful lies to save face with his boasts. |
| 3044 | DD14 page 40 | Verbal act, truth irrelevant, and goes to Hamzeh's statement of mind. It goes to show Hamzeh's deep friendship with Steve and provides context for other statements about his love for Steve. |
| 3045 | DD22 page 5 | Verbal act, truth irrelevant. It shows Mike's first mention of training. |
| 3046 | DD22 page 8-9 | Verbal act, truth irrelevant. It goes to Mike showing Hamzeh videos, questioning Hamzeh's masculinity, calling him a wuss, and Hamzeh's lies about his mom being sick so he backed out. |
| 3047 | DD22 page 23 - 24 | Verbal act, truth irrelevant. It shows Mike instigating talk about sensitive religious matters—burning the Quran. It also shows the effect of Mike introducing Hamzeh to firearms. |
| 3048 | DD22 page 30 | Verbal act, truth irrelevant. It establishes Mike's use of Steve to manipulate Hamzeh through his relationship with Steve. And it provides context for later statements. |
| 3049 | DD22 page 33 | Verbal act, truth irrelevant. Shows Mike's sympathy appeals to how bad things are for him, and Hamzeh hedging on his statements about what they'd do in Jordan. Also necessary for context if government's statements come in. |
| 3050 | DD22 page 42 - 45 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind. Shows Mike's efforts to use of money to influence Hamzeh, and Mike's ability to take the lead of things. This includes purchasing the bullets and Hamzeh's ignorance of bullets and shooting ranges, which tie in to later statements. |
| 3051 | DD22 page 57 - 76 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, Hamzeh's then existing state of mind, and establishes Mike's grooming pattern for Hamzeh. It's Hamzeh's first time at a shooting range, Mike's reference to his other gun as a machine gun (58), Mike |

Federal Defender Services
of Wisconsin, Inc.

| | | baiting Hamzeh by telling he can get him a gun, and Mike flattering Hamzeh about his shooting. Their interchangeable use of the term machine gun with semi-automatic rifles (74), and Hamzeh's ignorance of what is required for gun ownership and how he can buy one (74), and Hamzeh's desire for a pistol (75). And Hamzeh's excitement at going the first time, and various reflections of Hamzeh's ineptness and response to Mike about getting a pistol. |
|---|---|---|
| 3052 | DD22 page 80 - 81 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind. Shows Mike's efforts to create a friendship with Hamzeh, and that Mike is in control. |
| 3053 | DD22 page 82 - 83 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind. Uses the term Kalashnikov interchangeably with semi-automatic and what earlier was referred to as a machine gun. Also, establishes that Mike's gun is not an automatic (83). And the price he paid, $760. (82). |
| 3054 | DD22 page 101 | Verbal act, truth irrelevant effect on Hamzeh's state of mind. Shows Mike making sure Hamzeh enjoyed the shooting range. Making it special. Again, part of the grooming. |
| 3055 | DD25 page 3 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind. Shows Mike early and frequent tendency to send Hamzeh videos and early appeals to Hamzeh's religious sensibilities. |
| 3056 | DD25 Page 14 – 15 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind. Shows the relationship that Mike cultivated around guns and shooting with Hamzeh. |
| 3057 | DD30 page 7 – 8 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Mike's persistence and Hamzeh's resistance, and (importantly) insistence on a pistol and Mike's statements trying to push Hamzeh to talk about violence. Knowing he is recorded, he feeds lies to Hamzeh, who corrects him: "I told you that I want it for work." (Tr.8). To the extent it is thought hearsay, it is a present sense impression and then existing state of mind. |
| 3058 | DD30 page 11 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then-existing state of mind. Shows Hamzeh's interest in a handgun and Mike's role as a source of the handgun. |

Federal Defender Services of Wisconsin, Inc.

| 3059 | DD34 page 12 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Hamzeh's interest in a handgun and Mike's role as a source of the handgun and Mike's control over it. It also establishes that there are conversations about *legal* handguns that are not recorded. |
|---|---|---|
| 3060 | DD34 page 17 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Hamzeh's desire for attention and his lies: he was never interrogated by the FBI, during the time he was being monitored by the FBI. |
| 3061 | DD34 page 28 - 29 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Discussion concerning attacks on Muslims and the need for a Kalashnikov to protect the mosque and the lawful right to do so. An important theme in the later recordings. |
| 3062 | DD37 page 7 - 8 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Hamzeh's transience and ambivalence and Mike's frustration with Hamzeh and his changing words, including Mike's pressure for them to go shooting again—feeding Hamzeh's interest in guns and grooming him. |
| 3063 | DD37 page 17 - 18 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Mike's pressure and Hamzeh's advice: "I told you, live your normal life here, you're stupid." (17) Also shows Mike's pressure to go shooting again and stoking or feeding Hamzeh with fears and reminding Hamzeh how much he liked shooting. |
| 3064 | DD45 PT2 page 6 - 8 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh talks about training in sense of physical, giving context. Mike lies about having family in Texas and his connections there, capable of getting a pound of marijuana for $300. (Tr. 7). Showing his desire to foster a friendship with Samy, who smoked marijuana. Also, Mike bringing up handguns again and questioning why Hamzeh would want one. |
| 3065 | DD45 PT3 page 4 - 5 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing |

Federal Defender Services
of Wisconsin, Inc.

| | | state of mind. Shows Mike instigating conversation about additional persecution of Muslims with stepping on the Quran and how "real men would not let that happen." (Tr. 5). Also, shows Mike taking the lead to Gander Mountain. |
|---|---|---|
| 3066 | DD45 PT3 page 10 - 13 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Mike agitating Hamzeh with lies about persecution of Muslims and fears of having weapon bans. (Tr.10) Also, shows Mike's pressure degrading a handgun and pushing a machine gun as well as Hamzeh's expressed desire for a handgun. (11). |
| 3067 | DD45 PT 3 page 16 - 17 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Mike's pressure on Hamzeh to get a gun, turning Hamzeh's interest in handguns and (again) insisting on or pushing a machine gun. |
| 3068 | DD45 PT 3 page 18 - 19 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike exaggerating Hamzeh's statement about things flaring up with a new president, to him talking about "shooting Americans." (Tr.18). It also includes Hamzeh's statements about wanting a handgun to protect himself and Mike again pushing more. These again show Mike's persistence and Hamzeh's resistance, which doesn't depend on the truth of the statement. All of Hamzeh's handgun statements are "manifestations of his present state of mind, his immediate reaction to [Mike's] proposal" for a machine gun. *Partyka*, 561 F.2d at 125. |
| 3069 | DD45 PT 4 page 11 - 12 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It is again Hamzeh talking about getting a pistol and Mike goading him to get something else and Hamzeh rejecting it: "Where do I get a Kalashnikov now? Do I have the money to get a Kalashnikov?" Only for Mike to respond that he has contact in Texas and he has a Kalashnikov. |
| 3070 | DD45 PT 4 page 13 - 14 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again pushing a Kalashnikov on |

Federal Defender Services
of Wisconsin, Inc.

| | | Hamzeh and Hamzeh again says all he wants is a pistol. |
|---|---|---|
| 3071 | DD45 PT 4 page 14 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again prodding Hamzeh by appealing to his religious sensibilities and those who would step on the Quran. |
| 3072 | DD45 PT 4 page 15 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Rule of completeness. Mike tells Hamzeh that they can go shooting up north, in an open field, fostering friendship and comradery. This idea originates with him. |
| 3073 | DD45 PT 5 page 3 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike again grooming Hamzeh by showing him semi-automatic, legal rifles. An AR-15. This also gives context to other statements about the type of firearm that Mike has and that Hamzeh thinks he's buying. |
| 3074 | DD45 PT 5 page 7 - 8 | Verbal act, truth irrelevant. To the extent it's thought hearsay, it would be a then existing state of mind and present sense impression.<br>Mike sowing further confusion with Hamzeh and his understanding of what guns Mike has. The guns are not automatic, they have serial numbers, but they are illegal. It also shows Hamzeh's then existing state of mind about them: if they catch you, they will fuck you. |
| 3075 | DD51 page 19 – 20 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike again encourages Hamzeh's interest in guns and wants him to show off his shooting skills at the range. |
| 3076 | DD51 page 21 - 22 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike again encourages Hamzeh's interest in Mike's Kalashnikov and shooting at bottles in an open field. |
| 3077 | DD51 page 28 - 29 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike again brings up the treatment of Muslim women and them being raped. |

Federal Defender Services of Wisconsin, Inc.

| | | |
|---|---|---|
| 3078 | DD51 page 30 - 31 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again appealing to Hamzeh's manhood and national pride, and it is small statements preying on the fears he's instigated about Hamzeh (and other Muslims) not being able to buy weapons. |
| 3079 | DD51 page 51 - 52 | Verbal act, truth irrelevant, also not truthful ,effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike again pressures Hamzeh and shows him a weapon at the store and says it's a "Kalashnikov." Again, this would be a legal firearm. And when he says "you said, you want one?" Hamzeh responds "A handgun, what do you mean like what?" (52) |
| 3080 | DD51 page 55 - 56 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again pressuring Hamzeh to get a machine gun and Hamzeh (again) rebuffs him and says he just wants a handgun. Also, there is Mike taunting Hamzeh that if he wants a handgun why doesn't he buy one, for $550. The significance of the statement is him declining the overture for something more and wanting a handgun. |
| 3081 | DD51 page 60 - 63 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh is talking about going on vacation and Mike continues to return the conversation to getting a Kalashnikov. |
| 3082 | DD73 PT 1 – 5 page 12 - 13 | Verbal act, truth irrelevant. This is the first mention of the Masons and it comes from Steve addressed to Mike, showing this was a recent development. |
| 3083 | DD73 PT 1 – 5 page 15 - 17 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows that Mike has planned all this: "I swear, [Mike] had prepared the situation for us." The statement also establishes that Mike gets the bullets for the group and that the talk of Texas is a continuation of Mike's earlier statements. |
| 3084 | DD73 PT 1 – 5 page 18 – 19 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Again shows Mike is in control, that the |

Federal Defender Services
of Wisconsin, Inc.

| | | |
|---|---|---|
| | | plan is with the people from Texas. (18) And it shows the small hurdles that Hamzeh puts up—including needing four people and that they shouldn't rush anything. (19) |
| 3085 | DD73 PT 1 – 5 page 21 - 22 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This shows allusions to a previous plan, when Mike was not recording and that he pressured Hamzeh in. |
| 3086 | DD73 PT 1 – 5 page 51 - 54 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The discussion shows Mike as the leader and mocking the other two. It also shows the interchangeable use of machine gun and Kalashnikov and Mike's semi-automatic. (53). |
| 3087 | DD73 PT 1 – 5 page 63 - 66 | Verbal act, truth irrelevant, also not truthful, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh uses the term machine gun to refer to Mike's weapon. (65). And the three talk about using a machine gun in an open area, where they can practice shooting. (66). |
| 3088 | DD73 PT 7 page 12 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows that Hamzeh is all talk, that Steve considers him "naïve," and that he "invites people as if he is going to Miami on vacation." It shows Mike and Steve's frustration with Hamzeh, and their perception of his ambivalence and that he's all talk. |
| 3089 | DD73 PT 8 page 5 - 6 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows that despite Hamzeh's statement that the plan has been going on for two months, Steve only learned of it yesterday. (5) And that since the plan of going to Texas mirrors Mike's plans a month earlier, that Hamzeh was lying: the plan was Mike's. Also, the fact that it doesn't appear in any reports means that it was just concocted that week. |
| 3090 | DD73 PT 8 page 6-7 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It shows that Mike is controlling availability and cost. Also, Hamzeh's statement about "renting the weapons" and Mike's response shows both Hamzeh's |

27

Federal Defender Services of Wisconsin, Inc.

| | | utter ignorance of firearms, and it shows Mike's leadership role. |
|---|---|---|
| 3091 | DD73 PT 8 page 14 - 15 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows Mike's control of prices and Hamzeh's desire for "machineguns like the one you have." (15). Meaning: he wants guns like Mike's. |
| 3092 | DD73 PT 8 page 21 - 22 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It shows Mike setting the price, the price being tied to Mike's weapon (which he got from the same source). |
| 3093 | DD73 PT 8 page 26 - 27 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It shows the planning coming from Steve and Mike. The two of their commitment and Hamzeh also joining in. |
| 3094 | DD74 PT 2 page 34 - 45 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. To the extent it's thought hearsay, it would be a then existing state of mind and present sense impression. This shows the effect on Hamzeh and the confusion of the moment, including Steve's influence on Hamzeh and that Steve didn't know about the plan until the day before. (38). It also shows Hamzeh's impression that "this guy can brainwash you" (38). All of this is going to show the influence that Steve and Mike's lies had on Hamzeh. |
| 3095 | DD78 page 5 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike's statement again conflating his gun (a semi-automatic) with machine gun. The statement also has Mike aligning himself with Steve and Steve's family. |
| 3096 | DD79 page 3 - 9 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It also falls under the rule of completeness with the government's small exceprt. This is Steve vouching for Mike and Mike's family. (4) and (8). It shows how much Hamzeh valued Steve and his willingness after two pages of transcript to look past Mike's "brainwashing" the night before and move on. (5). And it shows Hamzeh's low-functioning that in a matter of minutes he flips from hating Mike to embracing him because of Steve's vouching. |

Federal Defender Services
of Wisconsin, Inc.

| 3097 | DD79 page 34 - 37 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows the pressure placed on Hamzeh to fit in with Steve and Mike and the use of placing Mo on the outside. That is, the social pressure that is exerted within this group on Hamzeh to conform. (34-36). Finally, there is Hamzeh swearing off the idea of Texas and his desire to stay with Mike and Steve without doing anything. (37). |
|---|---|---|
| 3098 | DD 79 page 72 - 73 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh is thinking of going on vacation to Jordan (72). It also shows Mike's influence on Hamzeh by showing him masonic symbols and feeding Hamzeh lies about the masons. (73). |
| 3099 | DD79 page 76 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows Hamzeh's belief (influenced by Mike) that the Masons are manipulating Muslims, and Mike's statement that women in Jordan are prostitutes because of the Masons. Mike also plays on Hamzeh's religion. |
| 3100 | DD84 PT 2 page 16 - 17 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Showing Mike's influence on Hamzeh and the lies that he fed Hamzeh about the Masons, including that they are ISIS. |
| 3101 | DD84 PT 2 page 38 - 41 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statements show Mike is in charge and crafting the plan. It shows Mike is in control and moving the plan.(38-40) Also, when the explanation of the guns becomes more precise it shows Hamzeh's ignorance. He says he wants a machine gun and then when the difference is explained he says "oh, you mean like that" (40) and when Steve explains it will be one bullet at a time, Hamzeh "says this is not a problem." And the conversation then quickly goes to using the guns to shoot outside. (40-41). It also shows Mike's dominance over Hamzeh . |
| 3102 | DD84 PT 2 page 43 - 45 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statements is about Hamzeh again inserting other |

Federal Defender Services
of Wisconsin, Inc.

| | | people into the plan to frustrate it and save face. It is all part of his M.O. of bs'ing. |
|------|----------------------|----------------------------------------------------------------------------|
| 3103 | DD84 PT 3 - 4 page 30 - 32 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh inserts the fourth person and then when Mike shows his displeasure, he quickly backs down. It also shows the utter preposterousness of Hamzeh having "a plan" it shifts with the minute and is all lies. |
| 3104 | DD84 PT 3 - 4 page 34 - 35 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows the ambiguity of the guns being bought. Mike says that there are two guns: a Kalashnikov and M16. And Mike says his weapon (a semi-automatic) is a Kalashnikov. |
| 3105 | DD84 PT 3 – 4 page 74 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It also goes to show Hamzeh's lies. <br> Mike has to encourage Hamzeh to work and save $500 for the gun, showing Hamzeh's prior statements about having $7000 to be false. Also, shows his lack of positional predisposition. He couldn't afford to get this type of gun. |
| 3106 | DD86 page 18 - 20 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike's statements show that when Hamzeh cannot raise $500, the price has dropped to $300. It shows the effect of Mike's statements and continually changing scenario on Hamzeh and what they are getting. All of which is part of the bait-and-switch that Mike did on Hamzeh. And it shows that Mike has assured them that they can go up north to go shooting. (19). All of it is part of his persistent grooming of Hamzeh. It is also indicative of Hamzeh's relief that the plan to Texas is off. (20). |
| 3107 | DD90 PT 1 page 3 - 5 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It is also a lie. The statement is indicative of Hamzeh creating additional ways of backing out. He invents a need to go to Washington D.C. two days later to do immigration paperwork for his sister. (4). And then he quickly changes it to driving there. |

Federal Defender Services
of Wisconsin, Inc.

| 3108 | DD90 PT 1 page 7 - 8 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This is further evidence of Hamzeh's transience and his desire to create obstacles to get out of things while saving face. (7). It also speaks to Hamzeh's understanding of Steve's situation with the divorce and immigration consequences. This goes to the influence it had on Hamzeh and why Hamzeh would take the blame in his statement—he thought Steve would be deported. It doesn't matter the truth of the statement, it matters how it influenced Hamzeh. |
|---|---|---|
| 3109 | DD90 PT 1 page 8 - 9 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. And if thought hearsay, it would be a present sense impression. The statement goes to Hamzeh's desire back out and blame things not happening on Mo, which he eventually does. When Steve says who will frustrate things or say something Hamzeh says "Mo, man. I am not." (8) It is also indicative of how Steve perceives Hamzeh, be normal: "Laugh and be silly and what not." (9). |
| 3110 | DD90 PT 1 page 19 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The state is the fruit of the lies Mike has told Hamzeh about Muslims being banned from getting weapons and Hamzeh's belief that this opportunity to get a gun will close. |
| 3111 | DD90 PT 2 page 19 - 21 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Hamzeh again frustrates things with a trip to Washington. There is no evidence any was planned. If we had the text messages and phone calls we could prove it. Also, it is indicative of Mike's pressure on Hamzeh to not just make sure it's not postponed with a trip to D.C. but that it happen Monday. |
| 3112 | DD90 PT 2 page 24 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again assuring Hamzeh that they are getting a Kalashnikov and when Hamzeh shows his unfamiliarity with the gun, he is mocked. It is also goes to Hamzeh's desire to go practice shooting. And it is indicative of Mike pushing things that Hamzeh doesn't want. |

Federal Defender Services
of Wisconsin, Inc.

| | | |
|---|---|---|
| 3113 | DD90 PT 2 page 36 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is again driving the plan and making sure that they have money and that if they don't they can borrow the money from him. He is also setting the price. |
| 3114 | DD92 page 7 - 13 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This long statement by Steve about how bad things are for him and how down he is in life plays on his best friend, including the fact that it in the midst of his despair he has no paperwork to even receive the money his family sent him. (12) This goes to the influence it had on Hamzeh and why Hamzeh would take the blame in his statement—he thought Steve would be deported. It doesn't matter the truth of the statement, it matters how it influenced Hamzeh |
| 3115 | DD92 page 19 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows the ever changing plan from Milwaukee to Texas to Indiana. |
| 3116 | DD92 page 20 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows the effect of Steve's prior vouching for Mike and how this has influenced Hamzeh to believe he can trust him. |
| 3117 | DD92 page 30 - 31 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This shows Hamzeh inserting a plan to go to Washington and that they will take the weapons to go outdoors shooting, which Mike has groomed Hamzeh to enjoy. |
| 3118 | DD95 PT1 page 3 - 17 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Rule of completeness. The statement is Hamzeh backing out. While earlier steps of inserting another person and the plan to Washington weren't enough to stop his friends, he now invokes the Sheikh and (at the same time) blames Mo for leaking it. A point he made in Ex. 3109. It also shows how the informants sought to isolate Hamzeh, reveal the fruit of Mike's influence and Mike's appeal to religious motivations, when Hamzeh says ISIS is the enemy of Islam Mike insists that they are Masonic. (5). There is also the fruit of |

Federal Defender Services
of Wisconsin, Inc.

| | | |
|---|---|---|
| | | Mike's lies about Muslims being banned from having guns and carrying identity cards. (10) And there is Hamzeh's willingness to save face after disappointing his friend and still get the weapons but for protection. (11, 15–16). |
| 3119 | DD95 PT1 page 17 - 18 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Mike is still in control of the plan and he also tells Hamzeh that there will be lots of weapons to choose from. (17). An important point for when Hamzeh asks for a smaller gun, when he is shown what is brought. It is all part of Mike's bait-and-switch move. It also goes to Hamzeh's belief that they will go target shooting with the weapons and his focus on seeing the Imam. |
| 3120 | DD95 PT1 page 23 - 24 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows that "it's over" and "we are going to do anything." (23). And Hamzeh's willingness to get a weapon, to go shooting with it, to Mike's "faraway place." It is also indicative of Hamzeh's desire to *not* get a silencer: "A silencer is not necessary. We don't need a silencer my dear." (24) and his loose use of the term machinegun. (24) |
| 3121 | DD95 PT1 page 26 - 27 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows Hamzeh's desire to return to normal with his friends and go play pool and Mike's departure in disgust. (26-27). All of which speaks to his subtle manipulation. |
| 3122 | DD95 PT2 page 2 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It shows Mike's insistence on this happening and that he is the one driving it all. |
| 3123 | DD95 PT2 page 17 - 18 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement is Hamzeh checking whether Mike really has a place where they can go up north and go shoot with the guns they are getting. (17-18). |
| 3124 | DD95 PT2 page 35 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows Hamzeh's complete naiveté and Mike's control over the situation, also the social |

Federal Defender Services
of Wisconsin, Inc.

| | | |
|---|---|---|
| | | pressure he exerts to shut Hamzeh up. It also shows the ambiguous use of "machineguns" to mean rifle: "Here America houses are full of weapons America In every house you enter there are five machineguns I mean it is not a *big big deal*." (35 (emphasis in original)). |
| 3125 | DD95 PT2 page 43 - 50 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statements show the pressure *both* informants are putting on Hamzeh and his resistance to it. This also provides needed context to the statements the government seeks to introduce from Hamzeh's post-arrest. |
| 3126 | DD97 page 5 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This is the *other* recording of 3118, it shows the way the informants tried to isolate Hamzeh from others and keep him from talking to people who would convince him to rethink what he's being fed by the informants. Steve: "Samy, you are talking to people without telling us." And Mike: "What are you saying that you spoke to a Sheikh? – What did you tell the Sheikh." |
| 3127 | DD97 page 10 – 11 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement shows Hamzeh's desire is have the weapons, in case later the lies that Mike has fed him about Muslims being persecuted and having their guns banned, when the new president comes. |
| 3128 | DD97 page 14 - 16 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. The statement is about the anxiety produced by Mike's prolonged talk about Muslims being persecuted and having the weapons for protection—Hamzeh's long-stated goal. |
| 3129 | DD97 page 32 - 33 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This is slightly different from 3120. It goes to Hamzeh's lack of desire for a silencer, the ambiguous use of machine gun, and the idea that the purchase is flexible. In response to Hamzeh's desire to *not* get a silencer, Mike says: "We will bargain then." It also goes to the stated desire to go shooting up north. |

34

Federal Defender Services of Wisconsin, Inc.

| 3130 | DD97 page 36 - 37 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This is a different recording of Ex. 3121. The statement shows Hamzeh's desire to return to normal with his friends and go play pool and Mike's departure in disgust. (26-27). And it speaks to Hamzeh's desire for his friends to talk with the Sheikh. |
| 3131 | DD97 page 42 - 43 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. It shows the effect of Steve's immigration status on Hamzeh. He now believes that despite no papers, Steve is going to stay in the country and not return to Jordan. It also shows Hamzeh's then existing belief that they would use the weapons to entertain themselves, just like playing pool. That is, Mike's grooming of Hamzeh is complete. He introduced and made Hamzeh like going to the range and now it is part of his life. |
| 3132 | DD97 page 67 - 68 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This goes to the pressure placed on Hamzeh and how the informants continue to goad him into unlawful conduct. And it is Hamzeh's resistance, telling them "Let me out of it" and "I'm telling you this thing is not permissible; it is not permissible; it is and not permissible." (68). |
| 3133 | DD104 page 12 - 17 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. This is an hour before the arrest and there is a lot going on here. First, Mike and Hamzeh's interaction shows that Hamzeh does not intend to keep Steve's gun (the second charge), Hamzeh asks "Can you keep [Steve's] with you." And Mike says: "That's fine, yeah." 13. Second, it goes to Hamzeh's unease at the situation and the questions he has about the weapon. (14–15). His questioning of licensing relates back to earlier conversations. Exhs. 3050–52.It also goes to his desire to get a gun without a silencer. (16). And it shows Hamzeh's inability to afford it, seeing if it can be $250. |
| 3134 | DD104 page 20 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind Shows that they are planning on taking the guns up north to shoot that day. |

Federal Defender Services
of Wisconsin, Inc.

| 3135 | DD104 page 22 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Shows the anxiety in the car and Mike's pressure on both to act normal. Relates to Ex. 3137. |
|---|---|---|
| 3136 | DD104 page 24 - 26 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Goes to Hamzeh's unease with the situation and desire to get a firearm that is (in his view) licit. It also goes to why they are meeting *this* dealer: Mike says he is the only one who will talk to us. (25). It also goes to Hamzeh's ignorance that they can try the weapons first. (26). And Mike's pressure. |
| 3137 | DD104 page 33 - 35 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. Goes to Hamzeh's continued reluctance and the pressure that's being exerted on him by his two friends. This includes: "Samy, what the fuck you want me to do? You wanna fucking go back, I mean?" And Hamzeh responding: "I am starting to get scared of him, I don't know." |
| 3138 | DD104 page 37 - 47 | Verbal act, truth irrelevant, effect on Hamzeh's state of mind, and Hamzeh's then existing state of mind. To the extent its considered hearsay, it is a then existing state of mind, it is present sense impression, and excited utterance.<br>This is everything. It is all the pressure exerted, it is Hamzeh's desire for a different gun—a pistol. (39) It is also his dismay that the gun is different, (46), it is Hamzeh having to borrow money (44). |
| 3149 | Defense Translation 3-5 | Verbal act, truth irrelevant. Goes to motive and intent. To the extent its considered hearsay, it is a then existing state of mind. Rule of completeness.<br>This goes to Steve's ability and plans to stay in the country which have been in flux, with his uncertain paperwork and why Hamzeh would cover for him during his post-arrest statements. |
| 3150 | 12-16 | This is fuller transcript of the discussion in Ex. 3133, and it's admissible for the same reasons expressed there. Verbal Act, Truth Irrelevant. Goes to motive and intent. To the extent its considered hearsay, it is a then existing state of mind. |

Federal Defender Services of Wisconsin, Inc.

| 3151 | 24–26 | This is a fuller transcript of 3136, and it's admissible for the same reasons of verbal Act, Truth Irrelevant. Goes to motive and intent. To the extent its considered hearsay, it is a then existing state of mind. |
| 3152 | 32-34 | This is fuller transcript of the discussion in Ex. 3137, and it's admissible for the same reasons expressed there. Verbal Act, Truth Irrelevant. Goes to motive and intent. To the extent its considered hearsay, it is a then existing state of mind. |
| 3153 | 37–47 | This is a fuller transcript of 3138 and it's admissible for the same reasons. It has these quotes, which are essential to the defense.<br><br>SAMY: [UI] same one you had, that's what you told us about [UI] (40)<br>SAMY: I thought it was similar like yours man. We are coming came on the basis, of it being the same man …<br>Mike: Okay, you should not get upset with me, man.<br>SAMY: But, we agreed as such o [Mike]. It is not right that we come and find a different weapon, but, okay, it is okay. It is not a problem. |

Federal Defender Services
of Wisconsin, Inc.

## IV.    Conclusion

This case is all about what brought Hamzeh from being a big talker, who hadn't yet decided whether he even wanted a pistol, to being indicted for possessing an unregistered machine gun. To understand the pressure exerted by the informants the jury has to have the informants' statements and Hamzeh's responses. Those statements are not hearsay but verbal acts—they are not being offered for the truth of the matter asserted but to show the power they exerted on Hamzeh (the effect) and his response. The rules of evidence and the Constitution provide Hamzeh with the right to present this information to the jury, and thus the defense asks that the Court rule Exhs. 3041–3153 are admissible.

Dated at Milwaukee, Wisconsin this 4th day of October 2019.

Respectfully submitted,

/s/     Craig W. Albee
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI  53202
Tel. (414) 221-9900
E-mail:  craig_albee@fd.org

*Counsel for Defendant*, Samy M. Hamzeh

Federal Defender Services
of Wisconsin, Inc.