UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                             Case No. 16-cr-21-pp

SAMY HAMZEH,

        Defendant.

**ORDER OVERRULING OBJECTIONS (DKT. NO. 224) AND AFFIRMING JUDGE DUFFIN'S DISCOVERY ORDER (DKT. NO. 219) AND CIPA ORDERS (DKT. NOS. 220, 221)**

Over the last three years, the defendant and the government have engaged in numerous discovery disputes before Magistrate Judge William E. Duffin. To streamline the outstanding requests and expedite the case, Judge Duffin held a status conference on February 1, 2019 where he ordered the defendant to file a single motion to resolve any and all remaining pretrial/discovery issues. Dkt. No. 213. The defendant filed that motion two weeks later. Dkt. No. 214. The motion stated that it superseded any previously outstanding discovery requests but did *not* supersede the defendant's arguments against the government's invocation of the Classified Information Procedures Act ("CIPA") regarding certain discovery subjects. Id. In late March, Judge Duffin issued an order on the defendant's composite discovery motion, dkt. no. 219, and two orders under CIPA, dkt. nos. 220, 221. Two weeks later, the defendant filed a consolidated objection to both Judge Duffin's general

1

discovery order and the two CIPA orders. Dkt. No. 224. This order overrules the defendant's non-CIPA related discovery objections; the court will issue a separate order concerning the discovery related to CIPA.

## I. BACKGROUND

Neither the defendant's objections nor the government's response contested Judge Duffin's recitation of the background leading to this dispute. The court reproduces it here for context:

> Samy Hamzeh is accused of unlawfully possessing two machine guns and one silencer. (ECF No. 6.) But this case is not a simple firearms case. Hamzeh acquired these firearms as part of an alleged plan to kill dozens of people to "defend Islam." (ECF No. 1.) Hamzeh alleges he was entrapped by confidential informants who were motivated to present him as a terrorist so that they might receive benefits from the FBI.

> Over the course of this protracted case Hamzeh has filed a variety of discovery motions. In response to several of the motions the government indicated a willingness to provide Hamzeh with at least some of the information sought. The court had more than one status conference with the parties at which the discovery motions were discussed, and at various times it was determined that the motions were either moot or generally on track toward resolution between the parties. But the filing of additional motions would cause the process to repeat.

> In light of the number of pending motions and uncertainty as to which issues actually remained unresolved, at a February 1, 2019 status conference the court ordered Hamzeh to file a single, comprehensive motion addressing all unresolved discovery issues. (ECF No. 213.) The expectation was that all prior motions would be rendered moot.

> Hamzeh filed a motion that partially supersedes his other pending discovery motions. (ECF No. 214.) He states, "It does not, however, supersede the defense's [Classified Information Procedures Act] CIPA brief and request for oral argument about why the previous categories of information for which the government has claimed CIPA protection are discoverable and should be turned over

2

to the defense." (ECF No. 214 at 1.) He identifies seven categories of information that remain in dispute.

## II. Defendant's Motion for Discovery (Dkt. No. 214)

Before Judge Duffin, the defendant's composite motion for discovery listed the following seven categories of information he requested: (1) missing texts; (2) missing emails; (3) "Information related to the informants' credibility, including instructions and admonitions"; (4) outstanding or missing recorded phone conversations; (5) documents related to the informants and the recording devices; (6) surveillance used to investigate and track the defendant; and (7) pretrial notice of the government's intent to present certain evidence at trial. Dkt. No. 214.

The government's response addressed each category. Dkt. No. 217. As for text-messages, the government argued that it had redacted text messages "very minimally" and that the defendant had not identified with particularity any improperly redacted messages. Id. at 2.

As for emails, the government asserted that it had produced all emails in the government's possession for Agents Adkins, Zuraw and Fraser. Id.

As for material related to the confidential human sources ("CHS"), the government responded that (a) all discovery related to the CHS's financial compensation was covered in the government's CIPA filings; (b) any report or reviews on the CHSs used in this case were either the subject of CIPA filings or already produced as Giglio material; (c) the government had produced every document it could regarding instructions given to a CHS but would not (and was not obligated to) *create* records of non-memorialized conversations; and (d)

3

the absence of recordings for thirty-five days was not, of itself, exculpatory. Id. at 3-4.

As for recorded phone calls, the government asserted that all call recordings had been produced. Id.

As for surveillance of the defendant, the government stated that the materials either fell under CIPA, did not exist or did not implicate Brady. Id. at 5.

As to notice of evidence prior to trial, the government opposed the defendant's request that the court require the government to give the defendant forty-five days of notice for exhibits it will use from the plaintiff's cell phone and PlayStation, a laptop from his home, and pole camera surveillance of the defendant. Id. at 6. It contended, however, that if the court did impose a forty-five-day notice rule, the rule should apply both to the government and the defense. Id. at 9.

In reply, the defendant explained his requests. Dkt. No. 218. Regarding text messages, he asserted that he had attached the text message redactions to his motion and "believe[d] the Court will understand his position simply by reviewing the redactions, which don't appear to be confined to confidential personal information." Id. at 1 (texts submitted at dkt. no. 211).

As for emails, the defendant expressed disbelief that only eleven pages of emails were sent between agents, and proffered Special Agent Adkins' spoliation hearing testimony where he said that he had never searched his emails to see which pertained to the defendant's case. Id. at 6.

4

As for instructions to the CHSs, the defendant maintained that (a) he previously had heard "we've turned over everything" from the government, only to later be given (or discover) more information; and (b) the government had an obligation to produce Brady information even if such information had not been memorialized. Id. at 2-3 (citing United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007); Cary, Singer, Latcovich, FEDERAL CRIMINAL DISCOVERY, at 30 (ABA 2011) ("The government cannot avoid its Brady obligations by choosing not to memorialize favorable information in writing.")).

Further, he argued that the absence of recorded calls was itself exculpatory and that information about unrecorded calls or conversations needed to be turned over as exculpatory evidence. Id. at 3. These unrecorded calls were relevant, he said, because "the defense is attempting to show that not only was [the defendant] not predisposed to commit this crime, the CHSs were creating a crime and inducing [the defendant] to commit it while refusing to record because they didn't want their actions disclosed." Id. at 5.

As for the calls that were recorded, the defendant claimed that the government's explanation as to why certain recordings don't exist (because those calls weren't answered) "rings hollow." Id. at 6. He argued that discovery showed that certain calls appeared to last for over a minute but were not recorded. Id. at 6.

Finally, the defendant argued that his forty-five-day-notice request was a matter of the court's discretion and would help the defense adequately prepare and hire an expert if the need arose. Id. at 7.

### III. Judge Duffin's March 25, 2019 Order on Discovery (Dkt. No. 219)

Judge Duffin ruled on the defendant's discovery motion on March 25, 2019. Dkt. No. 219. His order separately analyzed each category of the defendant's request.

#### A. Text Messages

Judge Duffin first conceded that the defendant had not received every single text message, but concluded based on the evidence he'd heard at the spoliation hearing that any messages the defendant had not received were "unrecoverable due to a technical failure beyond the government's control." Id. at 3.

He observed that regarding the text messages the defendant *had* received, the defendant now sought fully unredacted versions of those messages. Id. at 3. He recounted the government's assertion that the defendant had not specified any particular redactions that he believed were improper or explained why he believed they were improper. Id. Given that, Judge Duffin reviewed every redacted text messaged, and found the government's representation that the redactions were minimal "accurate." Id. He stated that out of hundreds of text messages, only roughly forty had been redacted, "spanning from a few characters to one redaction that spans nine lines of text." Id. at 4. He said that only a few messages had been redacted entirely, and that "the nature of the redacted material [was] often readily discernable from the context of the message." Id.

6

Judge Duffin analyzed the defendant's request under Fed. R. Crim. P. 16, observing that the defendant had the burden of making a *prima facie* showing that the requested information was "material to the defense." Id. (citing United States v. Caputo, 373 F.Supp. 2d 789, 793 (N.D. Ill. 2005)). He concluded that the defendant had failed to meet his burden to make a *prima facie* showing of materiality; he had not identified which redactions were allegedly improper or why, and offered only speculation and "bald conjecture" that the redactions "may potentially" conceal useful or exculpatory information. Id. at 5.

B.    Emails

Judge Duffin recounted that he had previously ordered the government to disclose "e-mail[s] on both the FBI internal (FBI net) and FBI official external (Internet Café-IC) to/from all agents, TFOs, CHSs, or professional support staff relating in any way to the investigation," and that the government had not objected. Id. (citing Dkt. No. 150 at 2). He noted that the defendant had argued that while he had received eleven pages of emails, "testimony from the spoliation hearing suggests additional emails are available." Id. He observed that the government hadn't really responded to this argument, id. at 5-6, and that in reply, the defendant had asserted that "it simply doesn't make sense that, in an investigation involving as many people as this one, only eleven pages of emails were generated." Id. at 6. Judge Duffin explained that the defendant pointed to Special Agent Zuraw's testimony at the spoliation hearing, where he had estimated that he sent ten to fifteen emails in this case (and

7

received a similar number), and to the testimony of Special Agent Adkins, who testified that he never looked for or attempted to retrieve e-mails. Id. at 5.

Judge Duffin found the fact that Adkins had not looked for emails irrelevant absent any evidence that it was his responsibility to retrieve emails for discovery purposes." Id. (referencing in a parenthetical testimony from an FBI analyst at the spoliation hearing that the FBI's Office of General Counsel handled discovery requests for emails and citing dkt. no. 205 at 32). As to Zuraw's estimate about the number of emails he sent and received, Judge Duffin noted that the defendant had not said how many emails were contained on the eleven pages of emails the government had produced. Id. And, Judge Duffin pointed out, another agent had testified that the agents didn't typically communicate about the case via email. Id. Finally, Judge Duffin stated that even if the defendant "could persuade the court of the validity of his suspicions that the United States' disclosure has been incomplete, there is simply no relief the court can grant [the defendant]." Id. at 7. He stated, "The court has already ordered that all emails related to this investigation be turned over to [the defendant]. The United States has repeatedly represented that it has done so. [The defendant's] disbelief notwithstanding, there is simply nothing more the court can do." Id.

C. Informants

As for information about the informants, Judge Duffin broke the defendant's request into three sub-parts: (1) benefits received by the informants; (2) instructions or admonishments to the informants; and (3)

8

informant files. Id. at 7-12. As for any benefits the informants received, Judge Duffin observed that the government had represented that the CHSs received no immigration benefits and that information related to their financial compensation was covered in the government's CIPA filings. Id. at 8. He said that his CIPA order covered these materials. Id.

As for instructions or admonishments given to the informants, Judge Duffin observed that the defendant interpreted Rule 16 and Brady to require the government to "not merely provide the documents [the government has] but tell him about any verbal instructions or admonishments given to the informants—which would require the government to create new documents to answer his inquiry." Id. at 8. He recounted how, in an earlier motion, the defendant had argued that the government misunderstood its obligations under Fed. R. Crim. P. 16 and Brady, and that those authorities required the government to "supply information whether memorialized or not." Id. at 9, citing Dkt. Nos 177 at 5, 209 at 7. Judge Duffin agreed that there was a misunderstanding as to the government's disclosure obligations, but opined that the misunderstanding was the defendant's, not the government's. Id. He said, "The government aptly equates [the defendant's] demands to civil interrogatories," and pointed out that the rules of criminal procedure contain no analog to Fed. R. Civ. P. 33. Id. (citations omitted). He also pointed out that while Rule 16 requires the government to disclose existing evidence, it does not require the government to create evidence. Id. at 10 (citations omitted). Finally,

Case 2:16-cr-00021-PP   Filed 10/10/19   Page 9 of 37   Document 318

he observed that Brady requires disclosure by the government; it does not provide the defendant a right to demand discovery. Id.

As for the materials the defendant requested from the files of the informants—items like "suitability reports" and "reviews"—Judge Duffin accepted the government's representation that these documents did not contain exculpatory evidence and noted that exculpatory evidence was all that Brady requires the government to disclose. Id.at 12. Judge Duffin observed that the government already had turned over the informants' criminal histories, and that what the defendant now was seeking was an update. Id. 11. He denied the request, finding that because the government had agreed to disclose all Giglio material at least ninety days before trial, the defendant had adequate time to review and investigate the criminal histories, and noted that the government had no obligation "to monitor the informants' criminal records or to provide updates to the defendant on demand." Id.

D.    Recordings

Judge Duffin denied the defendant's request for recordings of all relevant telephone calls, stating that he already had ordered the recordings to be produced and that the government had repeatedly asserted that it had disclosed all the recordings it had. Id. at 12. He stated that he was "again at a loss as to what [the defendant] expects the court to do." Id.

E.    Documents Regarding Recordings

Judge Duffin recounted that he had granted the defendant's (unopposed) request for an order requiring the government to disclose (1) "if the CHS had

10

recording equipment routinely assigned to him for extended periods of time, which is routine with CHS's in the FBI"; (2) "if that recording equipment was in the possession while the CHS was having unrecorded conversations with Hamzeh;" and (3) "FD-302's regarding obtaining custody of the recording devices from the CHS or undercover agents, the downloading and chain of custody for the digital recording devices for every recorded conversation." Id. at 13 (citing Dkt. No. 150 at 3-4). Judge Duffin observed that the defendant's composite motion argued that the government had not produced information under the order and also requested an order for the "government to identify when the CHS's had recording devices checked out to them; what type of recording devices were used; and what instructions were given as to when to record [the defendant]." Id. at 13.

Judge Duffin observed that the parties' dispute resulted from their disagreement about whether or not the absence of inculpatory recordings was relevant, exculpatory evidence. Id. at 14. He noted that the defendant had claimed that he wanted to know when the informants had recording devices and could have recorded, but didn't, so that he can show that the informants were created a crime, inducing the defendant to commit it and refusing to record so that that fact wouldn't be revealed. Id. (citing Dkt. No. 218 at 5). Judge Duffin did not directly address this argument, concluding that "to the extent the court's prior order or the present motion applies to recorded telephone calls, the motion is resolved by the court's CIPA order," id., and that as for recordings of in-person conversations, he need not do anything to

Case 2:16-cr-00021-PP   Filed 10/10/19   Page 11 of 37   Document 318

reiterate his prior order that the government must turn those over, id. Judge Duffin then addressed the defendant's request that the court order (a) the government to identify when the CHSs had recording devices checked out to them; (b) what type of recording devices were used; and (c) what instructions were given as to when to record [the defendant]. Id. at 15 (citing Dkt. No. 219 at 15). Judge Duffin denied those requests, saying that his prior order covered the first request, that the defendant had failed to demonstrate the relevance of what kind of recording device was used and that the request for instructions had been addressed earlier in his decision. Id.

F.      Surveillance

Judge Duffin concluded that portions of the defendant's request were covered under his CIPA orders and that, "beyond that, the government represents that nothing further exists. With that representation, the court finds there is nothing more for the court to do with respect to this request." Id. at 15.

G.      Notice of Government's Intent to Use Certain Evidence

Finally, Judge Duffin granted the defendant's motion insofar as it asked for an order requiring the government to provide the defendant notice of its intent to introduce at trial any evidence obtained by use of pole cameras and any data obtained from a post-arrest search of the defendant's mobile phone, MacBook laptop, or PlayStation not less than forty-five days before trial. Id. at 19. Judge Duffin made this order reciprocal: "not less than 45 days before trial, [the defendant] shall likewise provide to the government notice of his intent to use any evidence obtained by use of pole cameras and any data obtained from

12

a post-arrest search of [the defendant's] mobile phone, laptop, or PlayStation."
Id.

## IV.  Judge Duffin's CIPA Orders (Dkt. No. 220, 221)

Judge Duffin's orders denying the defendant's motions to compel production of certain information and granting the government's motions to withhold production of that information are bare-bones and formulaic. Dkt. Nos. 220, 221.

## V.  Objections to Judge Duffin's Order (Dkt. No. 224)

A.  Defendant's Arguments (Dkt. No. 224)

Regarding text messages, the defendant's objections now "limit[] his objections to the redactions in just four specific texts." Dkt. No. 224 at 1. He explains what he believes these redacted text messages may contain. Id. Regarding emails, the defendant says that Judge Duffin could have ordered the government to make all necessary inquiries to ensure that there are no additional emails; he now asks this court for that order. Id. at 3. Regarding informants, the defendant lists a variety of information pertaining to the informants' credibility that he says Judge Duffin's July 25, 2018 order compelled the government to produce by August 8, 2018. Id. at 4-5. He says "none of that information has been turned over." Id. at 4-5.

The defendant then makes specific objections to certain information related to the informants. Id. at 5. He objects to Judge Duffin's agreement with the government that the benefits received by the informants are covered by CIPA. Id. He cites a Ninth Circuit case, United States v. Sedaghty, 728 F.3d

885, 901 (9th Cir. 2013), for the proposition that payments received by government witnesses have been deemed of critical important to the informant's credibility. Id. at 6. He also offers several text messages which seem to indicate that a case agent may have been helping an informant "with your immigration stuff." Id. at 7. He argues that Judge Duffin erred in failing to order information about these payments be produced. Id.

With regard to "instructions or admonishments" given to informants, the defendant contends that Judge Duffin committed legal error "by concluding that the government has no obligation to produce information that has not been reduced to writing." Id. at 8. He again offers the American Bar Association's 2011 Federal Criminal Discovery treatise as well as a Second Circuit case, United States v. Rodriguez, 496 F.3d 221, 225-29 (2d Cir. 2007), in support. Id. He also cites a DOJ Guidance memo which reiterates that "the format of information does not determine whether it is discoverable." Id. He argues that prosecutors have a duty to learn about exculpatory information known to the case agents and that this duty extends to non-memorialized information. Id. at 8-9 (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)). The defendant spends the remaining portion of this section informing the court that while the government disclosed four instructions and admonishments given to its informants, the defendant has discovered an additional eight instructions or admonishments in discovery. Id. at 9.

Next, the defendant objects to Judge Duffin denying his request for informants' files. Judge Duffin denied this request partially because the

14

defendant had not made a *prima facie* showing of the materiality of this information; the defendant's objection offers his reasons for believing these files are material, exculpatory evidence. Id. at 11-12. The defendant states he has no objections to Judge Duffin's order about (a) the recorded phone calls; (b) the documents regarding recordings; or (c) the notice of intent to use evidence.

Regarding Judge Duffin's CIPA orders, the defendant asked this court to conduct a *de novo* review of the decisions. Id. at 224 at 18. He asked for the opportunity to appear before the court *ex parte* "to explain to the Court why the information would be favorable to the defense and to answer any questions from the Court." Id. at 18-19. The defendant conceded that he didn't know what material the government submitted to the court under CIPA, but he hazarded some "educated guesses." Id. at 19. He pointed to six categories of information that Judge Duffin had ordered the government to produce— informant requests for immigration assistance, or immigration benefits provided the informants; all money paid to informants for any purpose; the amount of money paid informants solely for this case; copies of the front of "ELSUR" envelopes (the envelopes that contain digital recordings; the index of all digital recordings from the ELSUR "section of the file;" and any FBI 302s "regarding obtaining custody of the recording devices from the CHS or undercover agents, the downloading and chain-of-custody for the digital recording devices and the production of the original CDs [from] those recording devices for every recorded conversation." Id. at 20-21. The defendant also had asked for documentation relating to calls on "disc 118," the files for each

15

informant, all instructions given to the informants, "[a]ll chain-of-custody documents, ELSUR envelopes, information concerning when informants had recording devices checked out to them, what types of recording devices were used, and what instructions were given as to when to record Hamzeh," and "[a]ll information and documentation relating to intercepted communications, GPS, stingray, pole cameras, or other undisclosed surveillance or interception techniques." Id. at 21.

The remainder of the defendant's objection explained why he believed all this information was relevant and important, and why he believed that it existed but had not been turned over to the defense.

B.     Government's Responses (Dkt. Nos. 228, 229)

In its response to the defendant's objections to the non-CIPA discovery order, the government observes that Judge Duffin has presided over years of discovery litigation and multiple rounds of discovery motions by the defendant. Dkt. No. 228 at 2. It notes that Judge Duffin resolved every outstanding discovery issue and argues that, as in a previous instance where the defendant objected to Judge Duffin's discovery order, the defendant has failed to appreciate the standard of review. Id. at 2-3 (citing dkt. no. 123 at 9). It asks this court not to engage in a *de novo* review of every discovery issue raised below. Id. at 3.

In particular, the government asserts that the defendant did not identify specific redacted text messages before Judge Duffin, nor did he elucidate his reasons for asking that any specific text to be unredacted. Id. at 4. It argues

16

that Judge Duffin's conclusion can't be clearly erroneous because the defendant did not present to Judge Duffin the arguments it now presents to this court. Id. It argues these arguments are waived. Id. (citing Geitz v. Lane, 946 F.2d 897 (Table), 1991 WL 209655 (7th Cir. 1991)). As for emails, the government says that "it continues to be true that the government has produced responsive emails in its possession." Id. at 6.

As for informants, the government reiterates that it "has produced every document it can regarding instructions given to an informant," and repeats its position that "it has no obligation to *create* anything for production to [the defendant][.]" Id. at 7. The government also takes issue with the defendant's characterization of "instructions," saying

> [the defendant's characterization] collapses everyday "instructions" like "give me a call after you meet with [the defendant]" or "be safe" or "keep up the good work" (every one of which could not possibly have been memorialized verbatim) in with the formal, written instructions that the FBI gives informants with rules they should follow (and which actually exist in corporeal form and *were* produced to [the defendant] in discovery).

Id. at 8 (emphasis in original). Finally, the government contests the defendant's argument—made in the CIPA section of his objection—that the government should produce information on its failure to uncover incriminating information through any wiretaps because that itself is exculpatory. Id. at 10. It makes similar arguments to those it made to Judge Duffin, again claiming that it does not follow that anything not inculpatory is exculpatory. Id. (citing United States v. Baker, 1 F.3d 596, 598 (7th Cir. 1993)).

17

As to Judge Duffin's CIPA orders, the government filed a "Classified *In Camera, Ex Parte* Response to the Defendant's Objections to the Magistrate Judge's Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(D)(1) of the Federal Rules of Criminal Procedure." Dkt. No. 229.

C.    Defendant's Reply (Dkt. No. 230)

The defendant replies that Judge Duffin made several findings that were "contrary to law." Dkt. No. 230 at 2-3. He says that Judge Duffin made legal errors in evaluating and denying the defendant's requests and that this court need not give those conclusions deference. Id. at 3.

Regarding the text messages, the defendant admits that he "probably should have identified specific redactions that concerned him," but says that Judge Duffin committed error in putting the burden on the defendant to show materiality. Id. Instead, he says, the government should have had the burden to specifically justify each of the redactions. Id. (citing Fed. R. Crim. P. 16(d)). As for emails, the defendant does not identify any error by Judge Duffin, but reiterates his disbelief that there could have been only eleven pages and fifteen total emails, and his position that the government should be required to have the special agents perform further searches. Id. at 4-5.

As for information about the informants, the defendant posits that Judge Duffin acted contrary to law in holding that he could not force the government to create documents that don't exist. Id. at 5-6. He cites one case for this proposition directly, United States v. Rodriguez, 496 F.3d 221, 225-29 (2d Cir.

18

2007), and one case for the position more generally, <u>Kyles</u>, 514 U.S. at 437. He argues that, under the government and Judge Duffin's theory, "if a police officer learned that someone else confessed to the same crime as a defendant, the government would have no duty to produce that information unless it was memorialized into a report." <u>Id.</u> at 7.

The defendant then bolsters his theory about the instructions' relevance by arguing that in his case—one that involves alleged entrapment—the failure to uncover damning evidence is exculpatory. <u>Id.</u> at 7-8. He distinguishes <u>Baker</u> on its facts and a second government authority, <u>United States v. Kennedy</u>, 819 F.Supp. 1510, 1519 (D. Co. 1993), on its reasoning. Finally, he says that the predisposition component of the entrapment analysis must be measured before the government's intervention begins. <u>Id.</u> at 9 (citing <u>United States v. Mayfield</u>, 771 F.3d 417, 436 (7th Cir. 2014)). And he asserts that because the time *before* the government's intervention matters, any and all instructions given to the CHSs are relevant to the defendant's case and must be produced. <u>Id.</u> at 10.

> D.    <u>Defendant's Second Supplemental Memorandum (Dkt. No. 265)</u>

After briefing was complete, the defendant filed a supplemental memorandum to his objections, identifying evidence and information which he said raised new concerns about the fact that Judge Duffin had not ordered the government to turn over informant "Mike's" informant file. Dkt. No. 265. Based on this new information/evidence, the defense expressed the belief that "Mike" had been paid more by the government than it had admitted or that he was engaged in illegal extracurricular activity while being "sheltered" by the FBI. <u>Id.</u>

at 7. The defense also speculated that the FBI may have been protecting "Mike" from prosecution for criminal activity. Id. at 7-13. The defendant reiterated his request that the court order the government "to turn over the information in the informants' files—from the specific payments received to the help the informants have received in other criminal investigations all the way through the other information demanded in the defense's filings." Id. at 16.

## VI. Analysis

### A. Standard

Federal Rule of Criminal Procedure 59(a) allows a district judge to refer non-dispositive matters—"any matter that does not dispose of a charge or defense"—to a magistrate judge for determination. Fed. R. Crim. P. 59(a). The defendant's composite discovery request cites Brady v. Maryland, 373 U.S. 83 (1963), Fed. R. Crim. P. 16 and Giglio v. United States, 405 U.S. 150 (1972) in asking for the court to order the government to produce certain material that the defendant believes will aid in his defense. Dkt. No. 82. Such discovery and disclosure motions are non-dispositive and Judge Duffin appropriately issued an order (rather than a report and recommendation) resolving them.

Rule 59(a) also allows parties to object to a magistrate judge's ruling on a non-dispositive motion within fourteen days of the order. But the rule restricts the district court's authority to modify or set aside such an order (or part of such an order) to those instances in which the order is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). See also Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006); United States v. Bailey, No. 14-CR-

20

78, 2015 WL 687490, at *1 (E.D. Wis. Feb. 18, 2015) (applying clear error standard of review to defendant's appeal of magistrate judge's order on motion for disclosure of <u>Brady</u> material). The defendant is aware of the heightened standard of review the district court employs when reviewing magistrate judge orders on non-dispositive motions; the court already has overruled a prior defense objection to a discovery order from Judge Duffin. <u>See</u> Dkt. No. 123.

    B.    <u>Discussion</u>

        1.    Text messages

The court finds nothing clearly erroneous or contrary to law in Judge Duffin's discovery order. Judge Duffin relied on the fact that the defendant had not specified the particular text message redactions that he wished to challenge. In his objection to Judge Duffin's ruling, the defendant suddenly limited his objection to "the redactions in just four specific texts." Dkt. No. 224 at 1. The defendant admitted in his reply in support of his objections that "he probably should have identified specific redactions that concerned him." Dkt. No. 230 at 3. Now—after months of litigation before Judge Duffin—the defendant identifies to *this* court four redacted texts that he says the court should order the government to produce in unredacted form. He asserts that one text, redacted to remove the name of a person "associated with a trip to Michigan" that the informant took during a period when the informant wasn't recording his conversations with the defendant, should be unredacted because the defendant was unaware of a trip to Michigan from discovery, and because a text between some agents also mentioned a Michigan trip, "suggesting the trip

21

may be significant." Dkt. No. 224 at 1-2. The defendant says that the redacted name "is a potential witness who may have important information that the defense needs to follow up on, and there is no apparent need to conceal his or her name." Id. at 2. He stated that he needed an unredacted version of a text between the defendant and an agent because that text "may be important for understanding and investigating" the informant's activities during the time the informant wasn't recording conversations with the defendant. Id. He seeks an unredacted copy of a third text that refers to the informant by nickname and "involves a potentially important event—[the defendant's] alleged desire for a gun." Id. The defendant says he can't "decipher what is happening because of the redaction." Finally, he asks for an unredacted copy of a text between two agents that concerns a call to the informant about a matter that is unredacted. The defendant speculates that because the call took place hours before the defendant's arrest, the redacted information "is likely important." Id.

The court finds this argument disingenuous. The defendant appears to believe that by dumping the redacted text messages into Judge Duffin's lap and requiring him to go through each one (rather than identifying what turn out to be *four* text messages that the defendant wants in unredacted form) was "appropriate given the limited number of texts potentially at issue." Id. at 3. The court doesn't agree. The defendant knows this case—the chronology, the players, the events—inside and out, far better than Judge Duffin ever could. His able counsel have steeped themselves in the discovery over years. If the defendant knew that there were four messages that he believed needed to be

22

provided in their unredacted form, he should have told Judge Duffin that, and told him why. He would have saved Judge Duffin's time and given Judge Duffin a chance to consider the arguments he only now presents to this court.

But the defendant did not give Judge Duffin a chance to consider those arguments. At least once, in an unpublished decision, the Seventh Circuit has held that a party who did not raise an argument before the magistrate judge who decided his case had waived the argument on appeal to the Seventh Circuit. <u>Geitz</u>, 1991 WL 209655, *1. Whether the defendant has waived this argument, he certainly cannot claim that Judge Duffin committed clear error in declining to order the government to produce unredacted copies of four text messages when the defendant did not identify those messages for Judge Duffin or tell Judge Duffin why it was critical that he receive unredacted copies of those four messages.

The defendant also contends that Judge Duffin's ruling was contrary to law—specifically, Fed. R. Crim. P. 16(d)—because it inappropriately burdened the defendant with showing why the redactions were unnecessary. Dkt. No. 230 at 3. He says that Judge Duffin should not have accepted the government's blanket explanation that the redacted texts contained sensitive information. <u>Id.</u> at 4.

Judge Duffin's order did not constitute improper burden shifting. Rule 16 places the burden on the government to disclose certain information. The government disclosed that information. It was the *defendant* who went to Judge Duffin, asserting that the information disclosed, and the way in which it

23

was disclosed, was insufficient. It is not unreasonable for a judge to expect that a defendant complaining about redactions would identify those redactions and explain the problem. Far from "burdening" the defendant with identifying allegedly problematic redactions, Judge Duffin took it upon himself to review *every* redaction. Without explanations from the defendant, Judge Duffin couldn't figure out how any of the minimal redactions were problematic.

Aware of its obligations under <u>Brady</u>, <u>Giglio</u> and Rule 16, as well as the prosecutors' ethical obligations generally and as officers of the court, the government asserted that the redactions the defendant has identified were necessary to protect sensitive information. The defendant has not identified, to Judge Duffin or this court, any reason for the doubting that assertion. And a rule requiring the government to divulge the sensitive information it sought to protect as to each redaction would gut Rule 16(d)(1)'s grant of authority to the court to restrict discovery "for good cause." The more sensible rule is, as Judge Duffin noted, to require the defendant to make a *prima facie* showing of materiality before the court orders redacted material to be disclosed. The defendant did not make such a showing to Judge Duffin, and his ruling was not clearly erroneous or contrary to law.

2.      Emails

The defendant's objection does not identify any error, clear or otherwise, in Judge Duffin's reasoning regarding the emails. Rather, he asks this court to provide him with relief he did not request from Judge Duffin. He says that this court "can order the government to make all necessary inquiries to ensure that

24

there are no additional emails." Dkt. No. 224 at 2. It is not this court's role to decide the email disclosure issue *de novo*. This court reviews Judge Duffin's ruling only for clear error, and the defendant has identified none.

### 3. Information Related to Informants

The defendant argues that in a July 25, 2018 discovery order, Judge Duffin had ordered the government to produce fourteen categories of information relating to the credibility of the informants. Dkt. No. 224 at 4. At the end of this list, the defendant says that "none of that information has been turned over." Id. That's it. He did not identify anything that Judge Duffin had said in his order that constituted error. Nothing.

In his reply in support of the objection, the defendant asserts that the government's response ("we've given you everything we're required to give you") ignores the cases the defendant has cited, and he contends that he can't believe the government when it claims it has turned over everything it has, because the government has claimed that before and then the defense has received more information." Dkt. No. 230 at 5-6.

The defendant's arguments generally ignore the fact that Judge Duffin ordered the government to disclose the information "to the extent responsive information is within the government's possession, custody, or control[.]" Dkt. No. 150 at 2. The government represented to Judge Duffin that it had turned over all responsive information. The defendant has not identified error in Judge Duffin's conclusion that the government had complied with its obligations.

25

Perhaps more relevant, the majority of the defendant's arguments assume that there *must* be exculpatory information of the type identified in the fourteen categories of Judge Duffin's July 2018 discovery order, and assumes that the fact that the defendant hasn't received any such information must mean that the government is refusing to turn it over. He assumes that the informants asked for immigration assistance, but that the government just isn't telling him or isn't trying to find out. He assumes that the defendants received post-conviction benefits in other cases for their cooperation, but the government just isn't telling him or isn't trying to find out. He assumes that the FBI approved the informants to engage in "other illegal activity," but the government just isn't telling him or isn't trying to find out. The defendant asks this court to conclude that Judge Duffin's statements that he couldn't make the government create evidence or turn over evidence it says it doesn't have or that isn't responsive to these requests, were clearly erroneous because somehow, some way, there *must* be something out there.

Judge Duffin did not commit clear error. The defendant argues a negative—because he believes the exculpatory evidence must exist, and the government hasn't produced it, the government must be concealing it. Even if that assumption didn't suffer from something of a logical fallacy, it is not clear what the defendant wanted Judge Duffin, or wants this court, to do. The government knows its obligations under the case law and the rules. The prosecutors know what is at stake if they hide or deliberately refuse to disclose evidence. The prosecutors know of their duty to demand responsive evidence

26

from law enforcement. If the prosecutors have made good-faith efforts to collect responsive discovery from the law enforcement agents and the agents are concealing it, they are doing so at their risk, and it is not clear why the defendant believes that the situation would change if Judge Duffin just ordered the same thing over and over again.

More specifically, the defendant objected that the government could invoke CIPA to conceal the payments made to or benefits expected by the informants. Dkt. No. 224 at 5. He says that Judge Duffin erred in finding that the government's representation that no benefits were received mooted the issue because the defendant requested information that related to what benefits the informants requested, expected or hoped for. He says that there is a text message where a Special Agent references helping an informant with immigration status and that the defendant is entitled to disclosure of that information. Judge Duffin indicated that he addressed those arguments in his CIPA rulings. The court will address the CIPA rulings below.

As for the remaining informant information, the defendant asserts (1) that the government should be forced to memorialize and disclose instructions or admonishments given to the CHSs; (2) that the lack of inculpatory information is exculpatory and requires the government to turn over certain information about why there is no inculpatory information; and (3) that the informant's files are relevant.

## i.    Instructions and Admonishments

In support of his argument that the government should be forced to memorialize and disclose instructions or admonishments given to the informants, the defendant cites a 2011 American Bar Association Treatise, "Federal Criminal Discovery," and a case out of the Second Circuit, United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007). This authority, he says, establishes that the government cannot avoid its obligations under Brady v. Maryland, 373 U.S. 83 (1963) by simply choosing not to memorialize exculpatory information.

Neither of these authorities bind this court; their value, if any, is in the persuasiveness of their reasoning. Judge Duffin did not find their reasoning persuasive, finding instead that Fed. R. Crim. P. 16(a)(1)(E) did not require the government to create evidence. Dkt. No. 219 at 10 (citing Harris v. United States, No. 1:09-cv-1416-TWP-DKL, 2013 WL 1319367 (S.D. Ind. Mar. 29, 2013) ("There is, likewise, no obligation on the part of the government to *create* evidence which it must then disclose pursuant to *Brady*.")). He also cited cases from other circuit courts that found no obligation to disclose documents that did not exist. Id. (citing United States v. Amaya-Manzanares, 377 F.3d 39, 42 (1st Cir. 2004); United States v. Kahl, 583 F.2d 1351, 1354 (5th Cir. 1978); United States v. Schembari, 484 F.2d 931, 935 (4th Cir. 1973)).

Judge Duffin's reasoning was not clearly erroneous. In Rodriguez, the Second Circuit found that a duty to disclose non-memorialized, oral information did not arise under the Jencks Act, but arose under Brady and

28

Giglio—in other words, that the government had an obligation to disclose non-memorialized, oral information only if it contained material exculpatory and impeaching information. The defendant asks this court to assume that whatever oral instructions and/or admonishments the agents may have given to the informants constituted material exculpatory and impeaching information. He says that Judge Duffin misunderstood the government's disclosure requirements under Brady and that, under Judge Duffin's theory, the government would not have to disclose an oral confession from another suspect if the government had had not memorialized the conversation. He also says that any oral instructions or admonishments given to the informants about when to record the defendant would be exculpatory, Brady material because in a case in which the defendant asserts the defense of entrapment, law enforcement instructions to the informants not to record certain conversations with the defendant that they could have recorded would be evidence of entrapment, and thus exculpatory.

It is true that a prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437. It also strikes the court as unremarkably true that the government's Brady obligations exist independently of the format of the exculpatory material. But the defendant is not asking the court to require the government to turn over oral statements that are exculpatory. He is asking the court to *assume* that there were oral statements, and to *assume* that they must have been exculpatory. In a sense, the argument over whether

29

the government must "create" evidence is a red herring. If, to use the defendant's analogy, the government was aware that someone other than the defendant had confessed to the crime, it would be obligated to disclose that information under Brady, whether by having a prosecutor or an agent orally advise defense counsel of the confession or by providing the defendant with a written summary of the confession. The real issue in this case is that the defendant is assuming that the existence of exculpatory information. He assumes that, during the period when the informants weren't recording their conversations with the defendant, the agents must have instructed them not to, and the agents must have done that because they didn't want a record of the informants' efforts to entrap the defendant. But the defendant has asserted that there are recordings in this case show that the informants entrapped the defendant. The defendant does not explain why he believes the agents would have allowed the informants to record some arguably inducing conversations but instructed them not to record others. The absence of recorded conversations concerns the defendant, but the conclusions he draws about why there are no recorded conversations are speculative at best.

The defendant presented these arguments to Judge Duffin; he cited Rodriguez and the American Bar Association treatise. Judge Duffin rejected the defendant's proposed rationale. Now, the defendant asks this court to find Judge Duffin's conclusions "contrary to law," without providing any binding authority that contradicts Judge Duffin's conclusions, and without anything other than speculation to indicate that the government is in possession of

exculpatory information that it seeks to avoid disclosing by refusing to memorialize it.

Similarly, in the defendant's reply in support of his objection, he says that Judge Duffin made a legal error in concluding "that the failure to uncover incriminating information during an investigation is never exculpatory." Dkt. No. 230 at 7. As applied to this case, he says that "the absence of information about [the defendant's] interest in machine guns speaks directly to the fact that he was not predisposed to buy one." Id. He says that this theory—and Judge Duffin's misconception of it—lies at the heart of the discovery dispute and that it is this misconception that this court must correct. Id. at 9.

The court must admit that it is somewhat befuddled by this argument— the court isn't sure what the defendant thinks Judge Duffin should have ordered in this regard. The defendant seems to imply that Judge Duffin should have ordered the government to turn over evidence that the defendant was not predisposed to purchase machine guns. What would that evidence have been? An affirmative declaration that agents uncovered no evidence that the defendant ever had purchased a machine gun? It seems to the court that the defendant *has* evidence of his lack of predisposition—he has presented that evidence to the court in his motion seeking leave to present an entrapment defense.

The defendant takes issue with the fact that the government cites a conversation recorded months after the defendant first was approached by the informants as evidence that the defendant was predisposed to buy machine

guns. Dkt. No. 230 at 9-10. The defendant argues that statements the defendant may have made *after* the informants started trying to induce him to commit the crime aren't relevant to whether he was *predisposed* to commit the crime, and asserts that the government doesn't understand that. He speculates that this misunderstanding "likely colors why [the government] believes that the instructions to the informant are irrelevant." Id. at 10. He insists that the government's misapprehension of the law governing entrapment colored Judge Duffin's conclusion that the defendant was not entitled to discovery of the oral instructions and admonishments to the informants. Again, this argument is perplexing. The defendant himself relies on his response to the informants' alleged attempts at inducement in support of his argument that he was not predisposed to buy machine guns. But more to the point, this argument doesn't seem relevant to the question of whether the instructions or admonishments existed and whether they were exculpatory.

The defendant also seems to argue that Judge Duffin completely missed his defense theory. And because he missed the defense theory, Judge Duffin's discovery orders have been rife with error. The court isn't convinced that Judge Duffin misconceived the defendant's arguments. As Judge Duffin noted, he had more than one hearing during which parties discussed their positions on discovery issues. A review of the docket indicates that he considered no fewer than five written motions to compel discovery. He even ordered the government to disclose—to the extent that it had it—a good deal of information about the informants and the investigative devices used in this case. See Dkt. No. 150 at

32

2-4. Judge Duffin discussed the defendant's argument about the lack of inculpatory evidence in the "documents regarding lack of recordings" section of his March 25, 2019 order.

The defendant is seeking a second bite at the same apple, but in the context of a review for clear error. Judge Duffin rejected the defendant's reasoning. The defendant now asks this court to reconsider that decision without citing any specific portion of Judge Duffin's order and instead claims that Judge Duffin fundamentally misconceived his theory of defense after having addressed discovery issues in this case for the better part of three years. Judge Duffin did not commit clear error or act contrary to law in denying the defendant's request that he order the government to turn over oral instructions or admonishments given the informants.

## ii. *Informant Files*

Judge Duffin's order explained that the defendant requested (1) the "initial suitability reports;" (2) "annual or other reviews of the informants;" and "(3) the most recent criminal history for each CHS." Dkt. No. 219 at 11. He denied the defendant's request for this information.

The defendant objects that Judge Duffin erred in finding that he had not made the requisite *prima facie* showing of materiality to be entitled to the suitability reports and the reviews. Dkt. No. 224 at 10. He then explains why those documents would be materially exculpatory evidence. He argues that the documents would "extend from whether the informants disliked [the defendant] to the protocols that were in place to control the informants." Dkt. No. 224 at

33

11. He asserts that "negative information about the FBI's perception of an informant's character or false statements by an informant during the vetting process must be produced under *Brady*." Id. (citing United States v. Brumel-Alvarez, 991 F.2d 1452, 1463-64 (9th Cir. 1992)). He contends that the documents will reveal any biases the informants had toward the defendant, their reasons for cooperating and "the FBI's assessment of the informants' character and truthfulness." Id. at 12.

It is not clear to this court that the defendant ever made these arguments to Judge Duffin. In his composite motion, the defendant mentions that he raised the initial suitability report issue at docket number 209. Dkt. No. 214 at 3. The court checked that docket entry—the defendant's fifth motion to compel—to see whether the defendant had explained his theory of the materiality of the initial suitability report. He did not. See Dkt. No. 209 at 9. Instead, the defendant tries to make his *prima facie* showing of materiality to this court. But at the risk of sounding like a broken record, this court reviews Judge Duffin's order for clear error or findings contrary to the law.

Judge Duffin also relied on the fact that the government had proffered that the informants' files do not contain exculpatory information. The defendant has not identified the clear error in that conclusion.

As for the defendant's request for updated criminal histories for the informant, Judge Duffin found that the government's agreement to disclose all Giglio material ninety days prior to trial sufficiently addressed the defendant's concerns. Id. He found that certain pieces of the defendant's remaining

34

requests were resolved under CIPA and that "to the extent these requests are not resolved under CIPA, they are denied." Id. at 12. He also concluded that the government had no obligation to monitor the defendants' criminal history on an on-going basis, and update the defendant. The defendant identified no error, clear or otherwise, in that conclusion.

As the court noted, however, after the objections to Judge Duffin's rulings were fully briefed, the defendant filed a supplemental memorandum, identifying evidence that he said required the court to order the government to turn over the informant files. Concerned about the allegations in this supplemental memorandum, the court enquired of the government at the final pretrial conference how difficult it would be for the government to provide the court with a copy of "Mike's" informant file for *in camera* review. At the hearing, the government responded that it did not know for sure, but suspected it would not be able to accomplish that in time for trial. After the hearing, the government notified the court that it would take less time than expected to produce Mike's file for *in camera* review. The court has reviewed the file, and while it still concludes that Judge Duffin's order is not clearly erroneous, the court has instructed the government to provide the defense with some additional information. The court understands that the government has provided defense counsel with two letters containing the additional information.

35

4. The CIPA Orders

The court has conducted a *de novo* review of Judge Duffin's CIPA rulings. It concludes that there is no need for an *ex parte* hearing with defense counsel; the court believes it well understands why the defense has requested what it has requested, and why it believes the information it has requested is relevant and important. On *de novo* review, the court overrules the defendant's objections; Judge Duffin's rulings were correct.

## VII. FINAL OBSERVATIONS

The defendant asserted in his reply that "it's only been through [the defendant's] pressing of these important issues that, for example, the government was able to produce dozens of text message that it claimed had been lost forever." Dkt. No. 230 at 1. He gives another example of the "fruits of the defense's efforts," stating that it was "nearly two years into this case before the defense learned that [the defendant] had been subject to surveillance on 64 occasions." Id. He says that "it was only this summer that the defense figured out that [the defendant] was the subject of wiretapping—a point that still hasn't been explained." Id. at 1-2. The defendant asserts that this is why he continues to press for discovery, and notes that the time for trial is fast approaching and that he needs information about the informants and their relationship with the agents and the defendant so that the defendant can have a fair trial. Id. at 2.

No one can question that defense counsel have made extraordinary, heroic efforts on the defendant's behalf. Perhaps there is more information out

36

there—this case involves a complicated set of facts that evolved over an extended period. But without some evidence that the government is ignoring specific court orders and long-established law, there is nothing the court can do to help the defendant unearth that information, and the court will not assume that the government deliberately is withholding it or refusing to look for it. Judge Duffin's conclusion to the contrary was not clear error.

## VIII. CONCLUSION

The court **OVERRULES** the defendant's objection to Magistrate Judge Duffin's March 25, 2019 order resolving the defendant's discovery motions. Dkt. No. 224.

The court **OVERRULES** the defendant's objections to Judge Duffin's CIPA orders. Dkt. No. 224.

Dated in Milwaukee, Wisconsin this 10th day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**