UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

                                         Case No. 16-cr-21-PP

*vs*.

SAMY M. HAMZEH,

    *Defendant*.

**EIGHTH MOTION IN LIMINE:
CONFORMING EXHIBITS AND TESTIMONY TO CONFORM WITH THIS
COURT'S ORDERS. R.333 & 342**

Samy Hamzeh, by counsel, files this eighth motion in limine to address additional exhibits impacted by this Court's recent pretrial orders. *See* R. 333 & 342. As trial approaches, there are always loose ends. This motion captures the loose ends that the defense sees two days before trial. It will be (refreshingly) short.

**1. Evidence that should be excluded under the rationale in this Court's orders.**

In light of the Court's ruling on Hamzeh's statements, the defense moves to exclude three pieces of evidence. The Court knows the standard but it's worth repeating the guiding principle that "the more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Torres*, 977 F.2d 321, 328 (7th Cir. 1992); *See also United States v. Tanner,* 628 F.3d 890, 902 (7th Cir. 2010) ("We must also determine the evidence's prejudicial impact—the likelihood that it will influence the jury to decide

Federal Defender Services
of Wisconsin, Inc.

a case on improper grounds—to see whether that prejudicial impact is substantial in relation to the evidence's probative value." (citation omitted)).

**First**, the government's Ex. 28 is a map of Israel. Given that neither Dr. Levitt, nor Dr. Sageman are testifying, the map of Israel is no longer relevant for trial and should be excluded.

**Second**, the government produced a video of a tour of the Masonic Center. Ex. 17. It was (it appears) made well after Hamzeh toured it with Mike and Steve. Given this Court's ruling limiting many of the statements about the Masons and the tour and the "plan," the video no longer holds any relevance. It will simply serve to confuse the jury and draw undue attention to them touring the center—a fact of exceedingly slight relevance.

**Third**, the government made several videos of the machine guns charged in the indictment being fired at full automatic. Ex's 5–7. The videos are somewhat dramatic and scary. The jury will hear that the weapons meet the statutory definition. The videos don't add anything to that fact. They will only serve to show how dangerous and scary these weapons are—a fact not at issue. Thus, given that the evidence doesn't make any contested fact more or less likely, and the danger of unfair prejudice that attaches to it, the defense moves to exclude those videos.

In sum, given the Court's ruling, certain pieces of evidence have to be re-evaluated. The lack of any probative value for each piece of evidence outlined above, coupled with the risk of unfair prejudice and confusion for the jury that attach, the defense moves to exclude government exhibits 5–7, 17, and 28.

2

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 10/20/19   Page 2 of 7   Document 358

**2. Testimony that should be limited given the rationale in this Court's orders.**

In addition, the defense moves to limit the testimony of the government's two experts, John Lindeman and David Smith. These two witnesses are supposed to testify about whether the devices Hamzeh possessed are machine guns and the ability to find a machine gun (like his) on the streets of Milwaukee. In both notices, however, the government notes that both witnesses will *also* testify about other, tangential topics. These topics are, as explained below, irrelevant and should be excluded from trial.

When it comes to Agent Smith, he is supposed to testify that machine guns are offensive weapons and not for protection. That issue is irrelevant. As the Court noted: "liability attaches regardless of the motives of either party to the transaction. *Thus, it is irrelevant what the transferor did or why he did it or why the transferee wanted the gun.*" R.342:11 (quoting *United States v. Brown*, 548 F.2d 204, 209 (7th Cir. 1977) (emphasis added in this Court's order). Just as it's irrelevant *why* Hamzeh possessed the gun, it's just as irrelevant to tell the jury about the damage this weapon can do. Building on that point, here are the additional topics that Smith would testify to:

- Machine guns are capable of inflicting much greater damage in much less time than are handguns and other weapons.
- Largely for that reason, machine guns are principally offensive firearms.
- Machine guns' lack of precision and the difficulty in wielding them quickly are inconsistent with their use as weapons of self-defense.
- Silencers are inconsistent with defensive use of a firearm, and are primarily used offensively.

It's worth noting that if Hamzeh was simply getting the machine gun to protect his house or go hunting, his motive would not be defense. *Id.* It would be irrelevant. And by the

3

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 10/20/19   Page 3 of 7   Document 358

same token, what these weapons could do and whether they are "offensive weapons" has no bearing on any issue at trial. Thus, the defense moves to exclude any testimony from Agent Smith concerning those points. The rest of his testimony about the characteristics of a machine gun and whether these qualify as such is, however, relevant.

The same reasoning applies to Lindeman's similar vein of irrelevant testimony about "why there is a requirement to register machineguns but not handguns." R.308. It is irrelevant for the charges at hand *why* Congress decided impose a tax and registration penalty on machineguns, all that matters is that Congress did. *See* R.342:11. A history lesson on why this was in 1934 and *why* Congress can't pass comprehensive handgun reform is not something Lindeman is qualified to testify about, and it's not something that's relevant to this trial. Thus, it should be excluded.

### 3. There are four lines of text that the Court cut that should be added under the Rule of Completeness.

The Court performed a herculean task going through the transcripts in this case and judging what is relevant and what is not unfairly prejudicial—what stays and what goes. The defense has spent the weekend working through every aspect of the decision and how it will use the statements at trial. After working through it all, there are only four lines of text that the defense believes should be added under the rule of completeness to what the Court has ruled can come in of the government's transcripts. They relate to its exhibits 124 A and 127A. Rather than trying to cross-reference or filing another thing under seal. The defense is simply quoting the portion that the Court has deemed

4

Federal Defender Services
of Wisconsin, Inc.

Case 2:16-cr-00021-PP   Filed 10/20/19   Page 4 of 7   Document 358

admissible and italicizing the portion the defense wants added, while swapping in the name Mike. Again, there are only two statement and they relate to four lines of text.

From 124A (Disk 25, p. 17). The defense proposes the two lines that precede the quoted portion. These additional lines make it clear that Hamzeh's reference in the admitted portion was to killing soldiers. It will give needed context to understand that he was simply boasting.

> *MIKE: But this is tough, man, four soldiers on each gate, swear by God?*
> *HAMZEH: Four, not [UI] man.*
> MIKE: It's not easy.
> HAMZEH: Each one has a Kalashnikov.
> MIKE: [Laugh] we will be fucked, boy.
> HAMZEH: If both of us go in with handguns and shoot the four, we will take the Kalashnikovs and go in, spray as much as you can. A lot of people are inside and they are all Jews.
> MIKE: All of them?
> HAMZEH: They are all Jews. Get inside…
> MIKE: I am afraid it's those who wear the black…
> HAMZEH: All of them, all of them, yeah. That's them.
> MIKE: The ones with the paper.
> HAMZEH: Exactly.
> MIKE: Do you think those are the ones who want to tear it down?
> HAMZEH: All the Jews want to tear it down, man. We will go in on them and spray them one by one, bang, bang, bang, bang, riddle fifty or sixty of them, and then die.

The second portion is from 127A, which is Disk 30 transcript page 26, line 9. We simply propose adding lines 7 and 8. Like above, these additional lines make it clear that the admitted portion was in reference to soldiers. It will give needed context to understand that he was simply boasting. Here is how it would look with the additional two lines:

5

Federal Defender Services
of Wisconsin, Inc.

*HAMZEH: Oh yeah. There are about four soldiers at the door*
*MIKE: Um-hum*
HAMZEH: We take out our handguns; you kill two and I kill two very quickly, before
they take out their weapons on us.
MIKE: You think it is that easy. With what shall we kill?
HAMZEH: You will have to be quick, buddy.
MIKE: With what are you going to kill?
HAMZEH: I mean, if we had handguns.
MIKE: Oh! [Laugh.]
HAMZEH: We kill two and two. You kill two and I kill two; you take their machineguns and go inside, for about from here to that fire extinguisher over there--
MIKE: Yes.
HAMZEH: --before you get to the temples and people. You go in, take out the Kalashnikov and go: bang, bang, bang and fuck them all up; all of them

### 4. Conclusion

As the case speeds to trial, there are inevitably issues that arise. The defense is hoping that bringing up these issues now will help alleviate the need for extended side bars or argument that keeps the jury waiting. And these issues are all impacted by (and the result dictated by) this Court's orders. Thus, the defense asks that the Court exclude the exhibits listed above, limit the testimony referenced above, and add the four lines of additional text cited above.

Dated at Milwaukee, Wisconsin this 20th day of October 2019.

> Respectfully submitted,
>
> /s/     *Craig W. Albee*
> Craig W. Albee,
> Joseph A. Bugni
> FEDERAL DEFENDER SERVICES
>   OF WISCONSIN, INC.
> 517 E. Wisconsin Ave - Rm 182
> Milwaukee, WI  53202
> Tel. (414) 221-9900