UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

            Plaintiff,

      v.                           Case No. 16-CR-21

SAMY HAMZEH,

            Defendant.

**United States' Response to the Defense's
Brief in Response to the Court of Appeals Decision**

In light of this Court's and the Court of Appeals' rulings, the United States asks to admit the following disputed additional evidence that the defendant was not entrapped: parts of conversations on two days in October, four in November, two in December 2015, and four in January 2016.[1]

This case is in an unorthodox procedural posture. The defendant purchased illegal weapons from undercover FBI Agents and will present an entrapment defense at trial. The government sought to admit various recordings of Hamzeh discussing, among other things, his stated plan to commit a mass killing to demonstrate Hamzeh's predisposition to possess machineguns and a silencer and thereby rebut his entrapment defense. This

---

[1] The United States also wishes to show the jury a modest number of other exhibits: Hamzeh's recorded purchase of the weapons; brief portions of his post-arrest statements; a handful of photos and other videos; and the weapons themselves.

Court found that most of these recordings were not relevant and were improperly prejudicial, given the elements of the offenses charged. The government appealed.

The Seventh Circuit reversed and remanded. The gravamen of its opinion is this: "If believed by the jury, the fact that Hamzeh wanted to commit a mass attack is evidence he was predisposed to obtain the weapons necessary to do so." *United States v. Hamzeh*, 986 F.3d 1048, 1054 (7th Cir. 2021).

The defendant's recorded statements regarding what he hoped to do with automatic weapons and silencers are the best evidence available to aid the jury as it determines whether the defendant was predisposed, or induced, to obtain those same weapons. And while those statements are often disturbing, any resulting prejudice would not be "unfair." Crucially, if the Seventh Circuit had thought that Rule 403 might possibly require the exclusion of mass killing statements, or of any similar statements, because of unfair prejudice, it would have said so (as it did for other types of statements, which the government no longer seeks to introduce).

In the spirit of compromise, and to avoid any cumulativeness, the government has agreed to cut its proffered disputed statements by almost half. But the Court of Appeals' examples of admissible statements that were improperly excluded were merely examples – many more are admissible. The remaining selections are potent, temporally diffuse (to ensure the jury gets an accurate picture of Hamzeh's mental state, over the months he was being recorded), and focused on Hamzeh's predisposition. They are not inflammatory (insofar as they do not contain the sexist or racist language Hamzeh frequently employed), cumulative, or "unfairly" prejudicial. They should be admitted.

# I.    Governing Law

The Seventh Circuit set out the law governing the issues disputed here.

## A.  What is Probative of Entrapment?

It was per se legal error to distinguish predisposition to commit a mass attack and predisposition to commit the charged offense. [2] The defense asks this Court to do so again.

In its opening legal discussion, the Seventh Circuit sets out the category error behind the exclusion of most of Hamzeh's statements: "the district court improperly found evidence bearing on Hamzeh's predisposition to obtain a machinegun was 'not probative' or 'irrelevant.'" 986 F.3d at 1052. This mistake led the Court to exclude Hamzeh's statements about wishing to commit a killing and what that could fairly mean to a jury about his predisposition to acquire the weapons necessary to do so. Here again: "If believed by the jury, the fact Hamzeh wanted to commit a mass attack is evidence he was predisposed to obtain the weapons necessary to do so," and "the fact Hamzeh stated he intended to commit an attack a long time ago, if believed by the jury, makes it more likely he was predisposed to obtain two machineguns and a silencer." 986 F.3d at 1053–54.

---

[2] For this reason, the defense's offered categories of statements affected by Court of Appeals opinion are of limited use. There are no bright lines between its proffered categories; the heart of the Seventh Circuit opinion is that it is impossible to disentangle his wish to commit an attack from his wish for weapons. Thus, for example, we cannot disentangle the defense's "reluctance" category from its "that Hamzeh wanted to do a mass attack" category from "the type of weapon he wanted" category.

Case 2:16-cr-00021-PP   Filed 11/09/21   Page 3 of 41   Document 402

Crucially the Seventh Circuit opinion requires the following conclusions about what is probative of entrapment and how probative it is: the stronger the evidence that Hamzeh wanted to commit a mass attack, the stronger the evidence he was predisposed to acquire the weapons. The more frequently he was recorded describing his wish to commit an attack, the stronger the evidence he was predisposed to acquire the weapons and not entrapped. More detailed statements show more predisposition. More enthusiastic statements show more predisposition. And if Hamzeh is the primary speaker regarding these plans, relative to the CHSs? That is probative of predisposition. If he makes these statements consistently across the period of the investigation? In October, November, December, and January – both before and after he met CHS2 and soon after CHS1 became a CHS? That is probative of predisposition; indeed, it is essential for the jury to know and understand as much in order to assess whether he was entrapped.[3] Excluding admissible statements like these would risk giving the jury a misimpression of the source and sincerity of Hamzeh's views.

Relatedly, because predisposition and inducement are so tightly linked, as the Seventh Circuit explained, "Governmental inducement occurs when the government solicits the crime 'plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts.' For example, 'repeated attempts at persuasion, fraudulent

---

[3] As the Seventh Circuit also noted, the timing of Hamzeh's statements that occurred after the investigation began "goes to the weight and credibility of the evidence, not its admissibility." 986 F.3d at 1052 n.5.

representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship' may each constitute such 'other conduct.'" 986 F.3d at 1053 (citing *United States v. Mayfield*, 771 F.3d 417, 434–35 (7th Cir. 2014). Thus, the number and intensity of Hamzeh's statements regarding committing a mass killing are probative of whether he was a leader or a follower in the course of action that led to his arrest and charges – *i.e.*, whether he was induced by the government to do what he did by, say, "repeated attempts at persuasion" by the CHSs. In this case – and remarkably in light of the entrapment defense – the recordings show *Hamzeh* attempting to persuade the CHSs, not the other way around. Thus, Hamzeh's statements that show he was not reluctant to commit an attack are, per the Seventh Circuit, probative of the fact that he was not reluctant to acquire the weapons necessary to do so.

In the end, "since the court erroneously found the Government's evidence irrelevant, it necessarily was not properly able to weigh probative value against the danger of unfair prejudice to determine whether the latter substantially out-weighed the former." 986 F.3d at 1055.

### B. Balancing Under FRE 403

The "other rules of evidence" still apply, and the probative value of Hamzeh's words must be weighed against the possibility they would be unfairly prejudicial.

The Seventh Circuit has set out how precisely to determine whether Hamzeh's words should be put in front of the jury. As the defense cited in a motion in limine, "the more probative the evidence, the more the court will tolerate some risk of prejudice, while

less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Torres*, 977 F.2d 321, 328 (7th Cir. 1992). The Seventh Circuit has now been crystal clear that Hamzeh's mass killing statements, and CHSs responses thereto and prompts thereof, are highly probative of entrapment. Thus, in light of the appellate court's direction, the bar for unfair prejudice is high.

The defense argues that very little that was not explicitly discussed by the Seventh Circuit is rendered admissible by the Seventh Circuit opinion because every disputed Hamzeh statement fails under Rule 403. It also argues that Hamzeh's references to when, how, and how much he would like to kill people are too inflammatory and prejudicial to be put in front of the jury.

But if this were so, the Seventh Circuit would not have used openers like "For example . . . ." in its analysis of improperly excluded statements and concluded its "Relevance" section with: "The specific statements in this section are merely some of the many instances in which the court excluded evidence that is indeed relevant to the entrapment issue . . . ." 986 F.3d at 1055. The Seventh Circuit remanded for reweighing under Rule 403, but a ruling excluded nearly every statement that was excluded last time would not comport with the Court of Appeals opinion.

If the Seventh Circuit thought it remotely possible that a correct application of Rule 403 would require the exclusion of statements about committing a mass killing because mass killing statements could be unfairly prejudicial – let alone most such statements – surely it would have said as much even once during its lengthy discussion of mass killing statements.

It is also true that once the jury has seen Hamzeh's early statements regarding wishing to commit a mass killing, any subsequent statements to that effect will have a *diminished* likelihood of shocking and offending the jury and thereby causing unfair prejudice. Hamzeh statements from September regarding committing a mass killing are highly probative and admissible, even though they are shocking and risk prejudice. But the risk of unfair prejudice from hearing subsequent, similar statements is actually significantly lessened, because the jury will already have been inoculated against the shock of these statements by his earlier statements. It is highly marginally probative that Hamzeh made these statements in, for example, January as well in October – because the durability and sincerity of his preference over the course of CHS involvement in the investigation is extremely important. It is new, distinct evidence of a distinct, important fact. But the marginal prejudice of each statement will actually diminish.

In a good faith effort to limit the number of disputes, to reduce the possibility that offered statements were cumulative or unfairly prejudicial, and to honor this Court's and the Court of Appeal's decision – and the Court's and the jury's time – we have heavily cut down the number of statements we seek to admit. Of the statements on appeal, we have now agreed to cut nearly approximately two and a half times as many statements as the defense has now agreed to admit. *See* Part II.B below and Attachment 1.[4]  But the

---

[4] We are grateful to the defense for doing the threshold work of assembling the chart they attached as Attachment A to their brief. We have agreed to cut additional statements from our request and have attached an updated chart to this brief as Attachment 1.

fact is that the Seventh Circuit opinion reaches more than just the handful of statements it used as examples.

It is very clear on how Rule 403 balancing should be conducted:

> We remind the court only exclusions of that evidence which violates Rule 403 should be made, and prejudice should be *unfair* to justify exclusion. *See United States v. Buckner*, 91 F.3d 34, 36 (7th Cir. 1996) (clarifying exclusion of evidence must be based on unfair prejudice, not mere prejudice) (emphasis in Seventh Circuit's Hamzeh opinion); *see generally* Fed. R. Evid. 403 advisory committee's notes (defining unfair prejudice as having "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). The district court should reweigh the evidence with the correct evidentiary standards, and with recognition the evidence is relevant and probative of whether Hamzeh was entrapped. *See Gomez*, 763 F.3d at 857 (noting an important issue in Rule 403 analysis is "the extent to which the non-propensity factual proposition actually is contested in the case").

986 F.3d at 1056 (emphasis in original).

The Seventh Circuit does give examples of statements that might properly be excluded as unfairly prejudicial. In doing so, it makes no reference whatsoever to Hamzeh's stated wish to commit a mass killing. Or to any reference to violence. Instead, it refers to his racist statements and his statement about being considered a terrorist. We have agreed to exclude (or have offered to redact) any statements remotely like these examples. But it cannot be correct that the Seventh Circuit (1) first, went to the trouble of explaining that Hamzeh's statements regarding wishing to commit a mass killing are probative of entrapment; (2) second, explicitly admitted some such statements as examples; but somehow (3) believed many, most, or all similar statements were unfairly prejudicial and inadmissible.

The Seventh Circuit also offers a Rule 403 balancing cure: redacting words and phrases that would cause the jury to judge Hamzeh for his racism, sexism, homophobia, antisemitism, drug use, or anything else not relevant to the elements of the charged offense or his entrapment defense: "When evidence is relevant and otherwise admissible, exclusions should be narrowly tailored to only the *phrases or statements* violative of Rule 403." 986 F.3d at 1056 (emphasis added).

So, for example, if Hamzeh says he wants to kill people because they are Jewish, and the Seventh Circuit has ruled that his wish to kill people is probative, but this Court is concerned that the jury will improperly convict him because of his antisemitism, then the word "Jewish" should be redacted. Or if Hamzeh makes a statement that he believes it is contemptible for women to try to kill people with knives, because Hamzeh thinks only guns are useful for committing a mass killing, then the word "women" should be redacted to spare the jury his sexism. This would preserve the jury's ability to hear the words the Seventh Circuit has ruled probative, but remove any concern the jury would judge him for his racism, antisemitism, or sexism.

The defense cites *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) in support of its claim that the jury should not hear all of Hamzeh's recorded statements. In *Earls*, the Seventh Circuit affirmed the district court's *admission* of potentially prejudicial information against the appellant. But *Earls* did cite *United States v. Ciesiolka*, 614 F.3d 347 (7th Cir. 2010). And in *Ciesiolka*, the Seventh Circuit found it was error for the district court to have dumped "in a seemingly unconstrained way" mountains of derogatory 404(b) evidence, not least "appalling images of child pornography." 614 F.3d at 357.

9

That case is remote from this one. Here, we have set aside the vast, vast majority of Hamzeh's offensive statements. The United States has also now cut down by nearly half the number of statements that were contested. We would also redact any racist or sexist statements embedded in the probative statements that remain.

Further, and importantly, the Seventh Circuit explained that Hamzeh's character is in issue in this case because he has raised an entrapment defense,[5] which puts his character at issue. "One of the factors in determining whether a defendant is predisposed is character or reputation, putting character 'in issue.' 986 F.3d at 1055 n.10 (citing Fed. R. Evid. 404 advisory committee's notes (explaining 'character in issue' occurs when character is 'an element of a crime, claim, *or defense*'") (emphasis in Seventh Circuit opinion); Fed. R. Evid. 404 advisory committee's notes (explaining "character in issue" occurs when character is "an element of a crime, claim, or defense") (emphasis added)); *United States v. Gomez*, 763 F.3d 845, 858 (7th Cir. 2014) (en banc) (explaining other-act evidence is inadmissible to show intent in a case involving a general-intent crime "unless the defendant puts intent 'at issue' beyond a general denial of guilt").[6]

---

[5] The defense will not contest Hamzeh's actual possession of the weapons. "As Hamzeh points out, physical possession is not disputed since he will concede that fact at trial." 986 F.3d at 1054 (referring to Hamzeh's repeated affirmations to the Court of Appeals that: "the defendant concedes he possessed the firearm . . .", Hamzeh Appellant Brief at 28; "the defense didn't dispute [that Hamzeh] possessed" the firearms, *id*. at 28; and "here, Hamzeh's possession is not disputed," *id*. at 29.

[6] The United States did file a notice of intent to offer evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Dkt. No. 146 (July 23, 2018) *contra* Order Regarding Recorded Statements at 32 (Dkt. No. 342) (October 16, 2019) ("If the government seeks to admit the discussion of the plan to shoot people at the Masonic Center as evidence of the defendant's intent to obtain machineguns, his preparation to do so or his plan to do so,

The Seventh Circuit also provided a handful of cautionary tale exemplars – statements that were excluded but that the jury should have been allowed to hear, because their probative value outweighed their risk of unfair prejudice. These include Hamzeh's statement that he was "absolutely sure that the police won't hear about the incident; they won't hear about" the attack; Hamzeh's statement that "what we need from those people, two machineguns, and three silencers and three magazines"; and Shhab's statements "telling Hamzeh he should not simply postpone his plans but should '[g]et the whole idea out of [his] head'" and, "well why don't you give up the whole idea and stop this thing?" and Hamzeh's statements around them. 986 F.3d at 1054. These statements are probative of Hamzeh's predisposition and whether the government induced him to commit the offense. The Seventh Circuit presumably selected them as examples precisely because other statements like these are admissible too.

### C.  Statements Rendered Relevant and Admissible by Hamzeh's Contentions Otherwise

The Court also explicitly found that "[i]f Hamzeh's [machineguns are rare and expensive] evidence is introduced at trial, he puts at issue his ability to commit the offense, making evidence that bears on ability relevant . . . . The Government's evidence is conditionally relevant; once Hamzeh's evidence is admitted, the Government may admit its evidence in rebuttal." *Id*. at 1057. "Thus, we instruct the district court to find the Government's machinegun-availability evidence conditionally admissible, subject to

_____

the government would be required to give the defendant notice of that fact under Rule 404(b). As far as the court is aware, the government has not done so.").

Hamzeh's introduction of evidence he did not have the ability to commit the crime." *Id.* at 1058.

This ruling is significant with respect to the machinegun evidence, of course, but it is also important with respect to Hamzeh's statements. Hamzeh apparently intends to put before the jury certain out-of-court statements as evidence of the truth of the matter asserted in those statements (for example, certain statements he made to a man named "Mo" about Muntasser). By doing so, he renders other statements of his relevant, probative, and admissible – even if they would not otherwise have been. Sticking with this Mo/Muntasser example, and as discussed below, Hamzeh's statement that everything he said to Mo was fabricated to throw Mo off their trail becomes admissible because Hamzeh wishes to put his statements to Mo before the jury.

## II.    Application to Contested Statements

### A. *Basis for Admitting the Remaining Contested Statements in General*

The crux of the disagreement at this stage is that the defense asserts repeatedly that where this court previously reached prejudice, it need not reassess its balancing. *See, e.g.*, Attachment A at Row 1, D.11, I, 7:4-26, p.8-10, 2, 8-10 ("Court finds the statement is unfairly prejudicial."); *id.* at Row 30, D.45, Call 4, 9:2-14 ("The court already ruled on prejudice . . . "). But that is inconsistent with both the text and purpose of the Court of Appeals' opinion. *See, e.g.*, 986 F.3d at 1055 (stating that "since the court erroneously found the Government's evidence irrelevant, it necessarily was not properly able to

weigh probative value against the danger of unfair prejudice to determine whether the latter substantially out-weighed the former").

The only statements referred to by the Seventh Circuit, as examples of potentially unfairly prejudicial statements, focused on Hamzeh's racist statements and observation that he would be considered a terrorist if caught, while the Court of Appeals took pains to explain the probative value of statements regarding Hamzeh's interest in committing a mass attack.

The defense further argues that the Seventh Circuit opinion notwithstanding, the twelve excerpts drawn from seven conversations regarding committing an attack are enough to show his predisposition.[7] Defense Brief (Dkt. No. 401) at 6 ("Once the jury hears that Hamzeh talked about committing a mass attack four or five times, the point has been established: the government has a strong factual foundation to argue he was "predisposed to obtain the weapons necessary to do so.") But the defense does not concede Hamzeh's predisposition – it is going to spend quite a lot of energy attempting to disprove it. And so, it is absolutely essential that the jury appreciate that Hamzeh was saying these things in October, in November, in December, and in January. That he was saying it to both CHSs independently, and saying it to them when they were all together.

_____

[7] Regarding cumulativeness: splitting a single conversation into multiple "statements" can give the false impression of cumulativeness. It should not be the case that the government's attempt to be as efficient as possible by splitting out a handful of portions of a single conversation into multiple exhibits can be misrepresented as the presentation of many different and cumulative conversations.

The defense cites *Old Chief* for the proposition that, "[t]he probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point." Defense Brief (Dkt. No. 401) at 7 (citing *Old Chief v. United States*, 519 U.S. 172, 185 (1997)). True enough. The Seventh Circuit repeatedly cites *Old Chief*, and the government has cut down heavily on the number of statements it has sought to admit. But imagine Hamzeh said, "I want a machinegun today" on Days 1, 2, 3, and 4; said "I don't want a machinegun today" on Day 5; said "I want a machinegun today" on Days 6, 7, 8, 9, and 10; and then bought the machinegun on Day 10. It would then be improper and misleading to only allow the jury to hear Hamzeh's statements on days 1, 5, and 10 when it is tasked with assessing how durably he wanted a machinegun. Even if meant to balance the scales, a ruling along those lines would impair the jury's truth-seeking function.

It is also highly probative of entrapment that he made so many of these statements over the duration of the investigation. The durability of his feelings is probative of his predisposition to acquire machineguns and a silencer from long before the investigation started. Those feelings are precisely why the investigation began in the first place. His statements also must be viewed in context of one another. Given that he repeatedly says he wants machineguns, it is no surprise he also says he wants to spray bullets into people and that he wants to acquire weapons to commit a mass attack.

Hamzeh also rendered relevant and admissible a set of his statements by offering statements to the contrary. *See generally* the Seventh Circuit's discussion of machinegun availability and cost evidence. Based on the entrapment briefing and the statements

14

Hamzeh sought to admit for the truth of the matters asserted in the statements, it appears the defense intends to argue in support of its entrapment defense that Hamzeh merely wanted a handgun. It will also argue he merely wanted to defend himself. It will argue he was just a regular guy living at home with his mom. It will argue he was cognitively impaired such that he was unusually suggestible and a follower. It will argue that this was all Muntasser's idea – the machineguns, attacking the Masons, all of it.

It is particularly important that the jury hear Hamzeh's own statements otherwise, because he wishes to admit his out-of-court statements. As the Seventh Circuit put it with respect to one admissible statement, while "the jury is free to believe or disbelieve the Government's interpretation of the statement, it is relevant for these purposes." 986 F.3d at 1054.

B. *Basis for Admitting Specific Contested Statements*

**Attachment 1, Row 1, D.11, A, p.3**
- Defense: the Court correctly ruled that the statement has little probative value under Seventh Circuit opinion and there is the risk of unfair prejudice. In addition, it is mostly Steve's hearsay and should be excluded.[8]

In this October 13, 2015 exchange between Hamzeh and Shhab, the portion on page 3 through to line 7 on page 4 includes Hamzeh and Shhab discussing Hamzeh's profound "change" into someone who says he wishes to "get me a weapon" and martyr himself – as he says in the previously-admitted passage on page 4. This passage is highly probative because the defense's entrapment claim is that the CHSs persuaded Hamzeh to do something he did not otherwise wish to do. But this exchange predates Hamzeh

---

[8] Defense arguments are copied from Attachment A to the Defense brief.

*meeting* CHS2, and it comes very soon after CHS1 signed on to be a CHS. It also shows that far from CHS1 persuading Hamzeh that he should acquire weapons and commit and attack, he is openly surprised at Hamzeh. It also shows this "change" predated any government persuasion. Further, as the Seventh Circuit stated, it was improper to "exclude a conversation in which Hamzeh stated it was his 'intention a long time ago' to martyr himself [because] under *Mayfield* and its progeny, a defendant's statement about when his intent to use a weapon was formed is certainly relevant. Hamzeh's mental state and predisposition to obtain a machinegun will be central issues at trial. The fact that Hamzeh stated he intended to commit an attack a long time ago, if believed by the jury, makes it more likely he was predisposed to obtain two machineguns and a silencer." 986 F.3d at 1053-54. It would, finally, be impossible for the jury to understand Hamzeh's statements without Steve's prompts.

**Attachment 1, Row 1, D.11, D, 4:31-38**
- Defense: the Court correctly ruled that the statements are not probative. In addition, the statements are inflammatory and unfairly prejudicial and are not affected by the court of appeal's decision.

This October 13, 2015 exchange between Hamzeh and Shhab, is probative in that it provides important context for the statements that follow about Hamzeh wishing to acquire a machinegun to hunt people. Importantly, the CHSs reported to the FBI that one of the reasons they believed Hamzeh was serious about his plans to acquire weapons and kill people was that he was highly surveillance-conscious. So, he would often have CHSs, as here, lock up their phones away from them before he would discuss his plans.

**Attachment 1, Row 1, D.11, E, 4:39–41**

- Defense: the court acknowledged the excerpt's probative value but correctly held it was outweighed by the inflammatory nature. It should continue to be excluded as unfairly prejudicial.

Here Hamzeh says, on October 13, 2015, before he met CHS2 and soon after Shhab signed on to be CHS1, that he wishes to "get a weapon and hunt as many [people] as I can" – and when Shhab asks him (in the portion that stretches to page 5) whether the "weapon" he wishes to "get" is a "Machine gun" Hamzeh answers in the affirmative, "By Almighty God." This is extremely probative of the fact that (1) Hamzeh was predisposed and not entrapped; and (2) to the extent that CHSs later discussed machineguns with him, it was because Hamzeh had made it clear that he was interested in machineguns and they were merely playing along.

**Attachment 1, Row 1, D.11, G, p. 5-6**
- Defense: the correctly acknowledged the excerpt's probative value but excluded it as unfairly prejudicial.

In this important passage (particularly from 4:29 to 5:15), Hamzeh first answers Shhab's question of whether the weapon he wants is a machinegun – it is - and then goes on to describe wishing to commit a mass killing with the machinegun. For the jury to be able to determine the truth of Hamzeh's entrapment defense, it must hear this passage. Shhab asks Hamzeh, "But why, Samy, You were not like this, what made you do this, and want to" – *i.e.*, acquire a machinegun to commit a mass killing. And Hamzeh answers that question ("Your Lord, your Lord guides whoever He wants."). And Shhab responds "Wow." Hamzeh's answer is not that it was Shhab's idea for him to get a machinegun. Or CHS2's, whom he had not met yet. Or the FBI's. This passage is highly probative of whether Hamzeh was predisposed to acquire a machinegun or was induced. 4:42-46 was

previously admitted, but the jury needs to know the surrounding things Hamzeh said to make sense of that portion.[9]

Then Shhab says "We need to see your father, man" to Hamzeh because, contrary to inducing him, Shhab wants to talk Hamzeh out of acquiring a machinegun and killing people – but Hamzeh affirms that he already ran it by his father. This is highly probative of whether the government induced Hamzeh, and whether Hamzeh was predisposed.

Finally, Hamzeh says part of his plan is to pretend he is a tourist (6:40). He later tells the CHSs, repeatedly, that an essential part of his plan to acquire weapons and kill people is to pretend to just be a normal, nonthreatening guy. It is also consistent with his November 12, 2015 recorded statement to Muntasser that he at one point pretended to show an interest in joining the American army to mask his true intentions, which then dovetailed perfectly with his false exculpatory recorded post-arrest statement to the FBI that he was a patriot who had tried to join the army. Finally, to the extent the defense wishes to introduce expert testimony that Hamzeh's IQ was too low for him to engage in planning, this is important rebuttal evidence.

**Attachment 1, Row 1, D.11, I, 7:4-26, p.8-10, 2, 8-10**
- Defense: Court finds the statement is unfairly prejudicial. (The Court doesn't mention lines 27-46 but these are also not relevant, just about Christians in the middle east).

---

[9] That Hamzeh articulates a jihadist, and so reprehensible and offensive, interpretation of Islam is not a reason to exclude this statement or any statement like it. This is *his* statement of where he got the idea to acquire weapons and conduct an attack – its probative value in an entrapment case could not be higher.

The statements on page 7 are brief, necessary context for the statements on page 8. And the statements on page 8 through 10 are Hamzeh saying explicitly, as above, that his nonviolent appearance "is a cover up, it is all cover up. I'll be pretending that I am staying and visiting my relatives" when he is actually planning to kill people. And as the Seventh Circuit instructed, statements like this are highly probative of his predisposition. Then, even more importantly with respect to entrapment, Shhab says "But Samy, is that it? Have you made up your mind . . . ?" and Hamzeh responds "For sure. Shall I tell you why?" and then explains why. Also, as relevant to predisposition and inducement – *i.e.*, where Hamzeh got these ideas and whether the government talked him into them – Shhab says "Man, you have changed suddenly" (there appears to be a typo in the transcript and the speaker is listed as "HAMZEH" – but is indeed Shhab). 9:18-20. And this is before he met CHS2. Hamzeh also explains that Shhab is his friend. 10:41-43. There is nothing unfairly prejudicial in this passage, and it is as on the nose in an entrapment case as a passage could be.

**Attachment 1, Row 1, D.11, J, 11:1-11**
- Defense: the Court correctly excluded this statement based on the prejudice attached to statements regarding Hamas.

This very short section is necessary for the jury to understand the previously admitted lines (12 and 13) on this page. The government is not going to offer expert testimony on Israel or Hamas; we have no interest in a minitrial on these issues.

**Attachment 1, Row 1, D.11, L, 11:14-46, p.12, 1, 11:2 – 32**
- Defense:  The Court correctly excluded this statement based on prejudice; it's all about Hamas and explosive belts and has no bearing on the issues in this case.

In this section Hamzeh expresses enthusiasm and Shhab expresses open surprise at Hamzeh's plan to acquire the weapons he needs to commit a mass killing and to then commit a mass killing. This is relevant to rebutting the defense claim that Shhab induced Hamzeh to obtain the weapons necessary to commit an attack and that Hamzeh was not otherwise predisposed to do it. The passage also shows how enthusiastic and predisposed Hamzeh is to commit these killings with weapons of war.

**Attachment 1, Row 1, D.11, N, 2, 13:22–46**
- Defense: The Court correctly ruled that the risk of prejudice outweighs the statement's probative value.

For the jury to be able to determine the truth of Hamzeh's entrapment defense, it must hear this passage. Shhab asks Hamzeh "You do not talk like the old Samy I used to talk to . . . Do you understand what I'm saying? You are not the same, you have changed a lot. Wow, you do not talk like the old Samy" and asks Hamzeh "Who has guided you to this path? How did you change overnight?" Hamzeh's answer is not that it was Shhab's idea. Or CHS2's, whom he had not met yet. Or the FBI's. This passage is highly probative of whether Hamzeh was predisposed to acquire a machinegun. Hamzeh says God told him to do it. Hamzeh saying this twice in the same conversation, and Shhab's surprise both times, is important to the jury's ability to assess his entrapment defense.

The rapid change in Hamzeh, from Shhab's perspective, is also important context for Shhab's decision to come forward to the FBI to report that his friend had radicalized and was saying he wished to commit a mass killing and for Shhab's subsequent agreement to become a CHS. There is nothing unfairly prejudicial about this statement under the narrowly tailored 403 analysis set out by the Seventh Circuit.

**Attachment 1, Row 1, D.11, O, 14:1-44**

- Defense: The Court correctly ruled that the risk of unfair prejudice outweighs the statement's probative value. The statements will only exploit (and inflame) religious biases against Muslims.

This is a continuation of the conversation above, Hamzeh explains precisely where he got the idea to get weapons and martyr himself via a mass killing. Hamzeh states that he wants nothing more in the world than to martyr himself (42:43). These statements are profoundly probative of his predisposition and are unintelligible without the other statements earlier on the page.

**Attachment 1, Row 2, D.11, 18:5-26:41, C, 22:12 to 23:20**

- Defense: The Court correctly ruled that the risk of unfair prejudice outweighs the statement's probative value. It is all about martyrdom and explosive belts and continue to be unfairly prejudicial.

Here, in response to Hamzeh saying that an attack is "getting very close," an exasperated Shhab states "I cannot tell you anything, you made up your mind, you are determined and that you will not come back and that's it. I can't tell you a thing. You made up your mind…." Hamzeh then asks Shhab, "Let me tell you something, Shhab, which is better? To be a martyr and go straight to Paradise or lead a shitty life like this? Which one is better?" Shhab then asks Hamzeh, "Frankly, what do you wish for?" and Hamzeh replies, inter alia, "I would love to fight and kill them, kill them." This is highly probative of Hamzeh's predisposition and of the lack of inducement. It is vital that the jury sees that Shhab is not talking Hamzeh into any of this and that instead Hamzeh is selling Shhab on it – the precise opposite of entrapment.

The government has agreed not to ask that the subsequent pages and pages of Hamzeh discussing martyring himself be shown to the jury.

**Attachment 1, Row 5, D.14, 4:17 – 8:25, A, 4:17-8:13**

- Defense: The Court correctly ruled that the statement has no probative value and it carries too much prejudicial risk because of the repeated mention of martyrdom in Palestine.

In this October 15, 2015 passage, which the Seventh Circuit explicitly discussed, Hamzeh explains that he has decided not to acquire weapons and commit a mass killing abroad because his mom has gotten sick and does not want him to go. He says "I want to go, I want to go but I don't want to cause harm to my mom." Shhab repeatedly says things like "get the whole idea out of your head," which the defense agrees is now admissible in light of the Seventh Circuit opinion. These statements are probative of his predisposition and unintelligible without the other statements earlier on the page. The defense objects, though, to the remainder of the passage, which includes the line quoted by the Seventh Circuit, "Well why don't you give up the whole idea and stop this thing?"

**Attachment 1, Row 7, D.22, 16:6-43**

- Defense: The Court correctly ruled on the risk of unfair prejudice and the lack of relevancy. The statements is all about travel to Palestine.

This November 2, 2015 conversation is, first of all, early in Hamzeh's relationship with Muntasser, CHS2. He nonetheless says that the idea (to travel abroad, acquire weapons, and commit a killing) "is *still* in my mind, and it won't go away, impossible." (emphasis added). This is highly probative of whether Muntasser induced Hamzeh to want to do these things, or whether instead Hamzeh's desire to do this predated him meeting Muntasser. It is also relevant that the investigation has moved into early November and Hamzeh's beliefs persist. This is probative of his predisposition to acquire weapons and commit an attack. His wish to commit an attack is not unfairly prejudicial.

**Attachment 1, Row 8, D.22, 19:26**

- Defense: The Court correctly ruled on the risk of unfair prejudice; it is a stand-alone statement about killing ten people and has no context or probative value towards predisposition.

Hamzeh says to Muntasser on November 2, 2015, that he would like to commit a mass killing. Muntasser's response is "[chuckles]." This is probative of Hamzeh's predisposition and Muntasser's understanding of his role as a CHS as to play along with Hamzeh, not to induce him to do anything. The government would not object to adding line 27 ("Muntasser: [chuckles]") to make that clearer to the jury.

**Attachment 1, Row 9, D.22, 20:5-24**

- Defense: The Court correctly ruled on the risk of unfair prejudice and the statement's lack of relevancy. It is all about travel to Palestine and whether the Israel government would know their names and whether they could escape custody. It has no bearing on predisposition or enticement.

This is Hamzeh explaining to Muntasser (and not the other way around) how to go about committing a mass killing ("you need to keep shooting and shooting as much as you can, do you understand?"). Hamzeh's entrapment claim is that Muntasser induced him to think these thoughts, have these preferences, and to want the weapons. The government's response is that, to the extent Muntasser showed an interest in these things, it was to maintain Hamzeh's confidences so that Hamzeh could be stopped from killing people. This is highly probative that it was Hamzeh, from early in his interactions with Muntasser, who was selling Muntasser on these ideas. It is probative of predisposition and the absence of inducement. There is no unfair prejudice here under the rubric set out by the Seventh Circuit.

23

**Attachment 1, Row 10, D.22, 34:30-35**

- Defense: The Court correctly ruled on the risk of unfair prejudice and the lack of relevancy. The statements is a stand-alone statement about his prayer for martyrdom. It has no context and no bearing on predisposition, while being highly inflammatory

The Seventh Circuit was clear that, "if believed by the jury, the fact Hamzeh wanted to commit a mass attack is evidence he was predisposed to obtain the weapons necessary to do so." Thus, if Hamzeh had this predisposition on November 2, 2015, then that is highly probative that neither Muntasser, Shhab, nor anyone else induced him to that mental state. They further explain why Muntasser earnestly believed he had to play along with Hamzeh's worldview to keep Hamzeh's trust. Thus, these statements (which are only a small number of the many, many times throughout the recordings that Hamzeh states he wishes to martyr himself) are highly probative.

**Attachment 1, Row 18, D.22, C, 1, 54:15 - 46**

- Defense: The Court correctly ruled that the statement should be excluded because of its prejudicial nature. It is all about the best kind of death and the size of bullets. It has no bearing on predisposition.

In the admitted portion on page 55 – which was previously excluded but that the parties agree is admissible in light of the Seventh Circuit opinion – Hamzeh says "it was my intention a long time ago, Muntasser, by God a long time ago." Unless this short description on page 54 is also included, the jury will not know what Hamzeh meant by "it" – *i.e.*, what he has intended to do since a long time ago. This is not prejudicial, and it is essential to the jury's understanding of an explicitly admitted passage.

**Attachment 1, Row 20, D.22, 79:1-24**

- Defense: The court correctly ruled that the statements have no bearing on the issues in the case; the statements are all about avoiding detection in Israel and

there are derogatory statement about Jews. The Court correctly held that the statements are unfairly prejudicial.

In this conversation between Hamzeh and Muntasser, Muntasser says he cannot participate in jihad, and Hamzeh says, "I will take care of you. That is it … We will go together, God willing. God Willing." Hamzeh's defense claim is that he is a follower and Muntasser is a leader in the events leading to Hamzeh's arrest. This is highly probative of the fact that, from the beginning, that is not an accurate representation of their relationship. The word "Jews" could be redacted if that would avoid the distraction of Hamzeh's antisemitism and avoid unfair prejudice.


**Attachment 1, Row 22, D.25, B, 15:13-46, p. 16**
- Defense: The court correctly ruled that the statements have no bearing on the issues in the case; the statements are all about entry into Jerusalem; and the Court correctly held that the statements are unfairly prejudicial, not to mention they threaten to create a mini-trial about the Middle-East.

This November 6, 2015 conversation is highly probative of the fact that Hamzeh is the group's leader, that Muntasser is just listening, openly reluctant, but playing along, and that Hamzeh wishes to commit a mass killing (Hamzeh presses Muntasser for being "hesitant"). It is also essential to the jury's understanding of the previously admitted statements on page 17 that the passage on pages 15 and 16 be included as context for the previously admitted statement, including "each one has a Kalashnikov."

**Attachment 1, Row 22, D.25, D, 17:10-27**
- Defense: The court correctly ruled on this in the original order as unduly prejudicial; it is all about Jerusalem and targeting Hassidic Jews in Israel. It is cumulative of many other statements.

In this very brief passage, Hamzeh states "We will go in on them and spray them one by one, bang, bang, bang, riddle fifty or sixty of them, and then die." That is what he intends to do with the Kalashnikovs he wished to acquire. It is also highly probative and confirmatory of Hamzeh's use elsewhere in the transcript of spray as the verb for how a machinegun fires bullets. This case's central issue is whether Hamzeh wanted an automatic weapon. This is highly probative and particularly important because the defense has previously claimed that "spray" may not refer to automatic weapons fire. To avoid unfair prejudice, the any reference to Jewish people could be redacted.

**Attachment 1, Row 23, D.30, A, 25:5 – 15**
- Defense: The court correctly ruled that this statement is "highly inflammatory"; it is all about killing a lot of Jewish people and it is unfairly prejudicial.

In this November 12, 2015 exchange between Muntasser and Hamzeh, Hamzeh states that he wishes to kill 20 to 30 people, Muntasser asks Hamzeh how exactly he intends to do that, and Hamzeh asks in reply "How would you kill 30 people?" Muntasser then responds: "You figure it out. *It is your planning, how would I know?*" (emphasis added) and Hamzeh laughs. The defense claim is that Muntasser entrapped Hamzeh. Exchanges like this one are highly probative of the lack of inducement by Muntasser. Redactions, as above, could ensure no unfair prejudice.

**Attachment 1, Row 23, D.30, B, 26:1-8**
- Defense: The Court has already correctly ruled on the risk of unfair prejudice and it being cumulative; it is all about Jerusalem and being a tourist there and killing Jewish people. This isn't part of the court of appeal's decision and should be excluded.

This very brief passage is essential to understand what Hamzeh is saying in the previously admitted section from 26:9 to 26:21. What Hamzeh means when he says "you kill two" will be unintelligible to the jury without the lines above in which Hamzeh says he is talking about soldiers standing at the door of a tourist site. Note that here, on November 12th, Hamzeh is stating clearly to Muntasser his wish to acquire and use machineguns. Hamzeh's steady, repeated statements to this effect are absolutely essential to the jury's ability to assess the defense's entrapment claim that Muntasser came up with all this and talked Hamzeh into it.

**Attachment 1, Row 23, D.30, D, 26:22-31, p. 27**
- Defense: The Court correctly ruled on the risk of unfair prejudice and the highly inflammatory nature of the statements; it is all about jihad the glory of Islam and killing lots of Jewish people. It is also cumulative of other statements.

In this passage, Hamzeh states that they will use machineguns to "spray them all and if you get shot, then you get shot." It is highly probative and confirmatory of Hamzeh's use elsewhere in the transcript of spray as the verb for how a machinegun fires bullets. In a case about which the central issue is whether Hamzeh wanted an automatic weapon, this is highly probative. This is particularly important because the defense has previously claimed that "spray" may not refer to automatic weapons fire. This is all to say that on November 15th, Hamzeh was still telling Muntasser he wanted machineguns to commit a mass killing. Muntasser is simply not driving this conversation. This is profoundly probative of his predisposition and lack of inducement. It is not unfairly prejudicial.

**Attachment 1, Row 26, D.34, 31:16-18**
- Defense: The Court correctly ruled on prejudice. The statement has no context and is simply about being American and having a weapon possibly escaping.

Now on November 19, 2015, Hamzeh starts pitching Muntasser on transitioning from committing an attack abroad to committing an attack in the United States. This is highly probative of Hamzeh's predisposition and lack of inducement – he is suggesting this, not the CHSs. It also explains why the investigation transitioned from recording his conversations about his plans to travel abroad to the interruption of a domestic attack via a sting in which he was offered weapons in the United States, which he then purchased.

**Attachment 1, Row 27, B, 2, 36:7-21**
- Defense: The court correctly excluded it as inflammatory and irrelevant. It's all about cursing the prophet and curses upon the Mexicans at work that do.

The government has no interest in proving to the jury that Hamzeh is a racist. The words "whites," "Jews," and "Mexican" could all be redacted. But the defense will claim, as they did in their entrapment briefing, that Hamzeh merely wished to acquire a weapon to "defend" himself and thus was not predisposed to acquire a machinegun. In this passage, Hamzeh's own words set out exactly what he means by "defend" – which is that if someone insults Islam, Hamzeh says he would say "are you cursing my prophet? Come here, fucker! Tach . . . tach. . . tach . . . [Sound similar to clap], and then pull yourself out and leave. That's it, nothing else. This is jihad, *man*! You would be defending Islam here." This is extremely probative with respect to addressing Hamzeh's defense.

**Attachment 1, Row 29, D.45, Call 4, 5:36 – 6:45**
- Defense: The court already ruled on prejudice. The statement has no context it's just Hamzeh's rant, insulting random nationalities—French, Italians, Americans.

This recording is from December 7, 2015. It is extremely important, because the defense is likely to argue that around this time, Hamzeh merely wanted a handgun. But here he is saying he wants to shoot people (he says he wants to shoot "Americans" not French or Italian people). This passage is also highly probative of whether Muntasser is inducing Hamzeh: Hamzeh says he wants to practice his shooting on the people they are looking at, and Muntasser says "Practice on humans! That's kind of fucked up . . . ." For the most part, Muntasser plays along with Hamzeh so that Hamzeh will be candid with him, but he occasionally responds to Hamzeh with candor, as here.

### Attachment 1, Row 30, D.45, Call 4, 9:2-14
- Defense: The court already ruled on prejudice; the statement is about jihad and getting weapons in Palestine.

In this December 7, 2015 conversation between Hamzeh and Muntasser, Hamzeh changes the proposed location of an attack to the United States. Muntasser says, in keeping with his role of finding out what Hamzeh is planning, "What I want to know now . . . listen!" Hamzeh: "What?" Muntasser: "I mean you seriously think jihad here is better than Palestine?" Hamzeh: "*Yeah.*" This is probative of Hamzeh's predisposition and lack of inducement, it also is essential to disproving Hamzeh's entrapment claim generally as it shows Hamzeh doing the planning. It also helps the jury follow what happened over the course of the investigation and why. There is, further, no unfair prejudice here.

**Attachment 1, Row 31, D.45, B, Call 5 9:12-35**

- Defense: The court previously ruled on prejudice. It also threatens to exploit religious bias with talk about the Quran and jihad and paradise.

This December 7, 2015 passage shows Muntasser being careful to merely ask questions of Hamzeh, which is probative of inducement. This passage is also essential to the jury's ability to fairly assess the likely defense claim that Hamzeh merely wished to acquire a gun to defend himself and other Muslims, as he says that shooting people who "cuss" the Messenger, God, or Qu'ran is "how you defend your religion." Hamzeh's statements are distasteful and distortions of Islam, but they are *his* statements about his state of mind and, in light of the assessment of his state of mind he invites via his entrapment defense, they are not unfairly prejudicial.

**Attachment 1, Row 32, D.51, A, 20:23-26, 21:1-2**

- Defense: The court has already ruled on the lack of clarity, not clear on shooting in the air or people. It isn't affect by the appellate court's decision.

This December 14, 2015 passage is crystal clear. Muntasser asks, "should we go shoot like this [in the] air?" and Hamzeh responds they that should instead shoot people out the car window: "and you shoot *them* all down" (emphasis added). Muntasser plays along and says "*They* will all sleep" (emphasis added). This is probative of predisposition and lack of inducement. It also shows that as of December 14, 2015 Muntasser was justified in believing that Hamzeh wanted a machinegun and wished to shoot people with it. The defense appears to wish to emphasize out of court statements by Hamzeh and the CHSs for the truth of the matter those statements assert – *i.e.*, that there were times Hamzeh said he only wanted a handgun. But the government must then be able to put in front of the jury probative evidence that Hamzeh was, at a minimum, erratic in his

suggestions one day that he wanted a handgun, and the next that he wanted the weapons necessary to commit a mass killing. This is disturbing talk to be sure, but it is not unfairly prejudicial as that doctrine was set out by the Seventh Circuit.

**Attachment 1, Row 34, D.73, A, p. 25-26, 27:1-5**
- Defense: The court previously saw the probative value in the statement but correctly kept it out based on unfair prejudice. Furthermore, it's not affected by the appellate court's decision.

Hamzeh's January 19, 2016, statement that if he and the CHSs succeed in committing a mass killing, "I swear I'll be the happiest ever in my life" is surely probative of whether he wished to commit and attack (and as the Seventh Circuit explained, therefore probative of whether he wished for the weapons necessary to do so). This passage also includes a discussion of how surveillance-conscious Hamzeh is. Shhab says, "Samy is like that; 'turn off your phone, turn off your phone'" and Hamzeh response "one has to be safe, Shhab" – *i.e.*, safe from detection by law enforcement that would stop them from committing an attack.

Further, and very importantly, it is *Hamzeh*, on page 26, who brings up the Masons as the target of the attack *he* is proposing. This conversation is important, probative evidence of how Hamzeh's plans shifted and escalated in January 2016. It was at this point that an attack appeared, from Hamzeh's words, to be imminent. This is why it became essential that if Hamzeh were to acquire the weapons that he wanted, it was the government that provided them in a controlled setting (via the controlled sale). Hamzeh is driving this conversation, and it is thus probative of his predisposition and lack of inducement. It is in no way cumulative of his statements from October and November.

**Attachment 1, Row 35, D.73, A, p. 31-33**

- The Defense: The court correctly excluded the statements as "highly inflammatory" and unfairly prejudicial. It's about Molotov cocktails and burning down Masonic Temples.

Now, on January 19, 2016, Hamzeh is dictating to the others what they should do to avoid capture after they acquire weapons and use them to commit a mass killing. Shhab is not the leader. Muntasser is not the leader. Hamzeh is the leader and planner. That is highly probative of whether he was entrapped. There is nothing prejudicial, let alone unfairly prejudicial, about burning down a building. Hamzeh's will is not being overcome by, for example, repeated entreaties to commit this offense.

**Attachment 1, Row 35, D.73, C, 34:36-40, p. 35**

- Defense: The court correctly admitted the parts that bear on predisposition and enticement (listed above) and excluded the irrelevant and highly prejudicial statements about masks and grabbing people and hurting them. The court of appeals decision does not affect this excerpt.

In this section, Hamzeh says that they need to tour the site he chose for the attack to make sure there are no cameras. Again, that is probative of whether he was entrapped. There is nothing prejudicial, let alone unfairly prejudicial, about Hamzeh wishing to change his plan if he thinks it is more likely he will be caught if there are cameras at the attack site. What matters here is that Hamzeh's will is not being overcome by, for example, repeated entreaties to commit this offense. Instead *he* is driving this scheme.

**Attachment 1, Row 36, D.73, 76:2 – 77:4**

- Defense: The court correctly excluded the statement as irrelevant; it is only Hamzeh talking about his dream. It is not part of the categories that the court of appeals ruled on.

On January 19, 2016, Hamzeh pushes the CHSs to press forward with their plan to acquire weapons and commit an attack because he had a dream in which an angel told him, "What you are doing is right and continue with it." Hamzeh's claim is that the CHSs persuaded him to do all this, and this is very strong evidence otherwise. There is nothing prejudicial about it. The Court of Appeals held clearly that if he was willing to commit an attack, he was willing to acquire the weapons necessary to do so. And here we have him not only willing to commit an attack but working to persuade the CHSs to be willing to do so as well. That is probative. It is not unfairly prejudicial.

**Attachment 1, Row 37, D.73, 81:18 – 88:7**
- Defense: The court correctly excluded the statement; it's simply the introduction with the tour guide at the Temple and walking around the temple. This is not anything close to the categories the court of appeals touched upon and should continue to be excluded.

On January 19, 2016, Hamzeh and the CHSs went so far as to tour the Masonic Center in Milwaukee, which was Hamzeh's proposed attack site. This is some of the most probative, important evidence in this case. It shows precisely how serious Hamzeh was about all this. And in light of the Seventh Circuit's holding regarding the probative weight of his willingness to commit an attack, this most serious evidence of his willingness must be admissible. It also provides essential context for his subsequent statements about attack plans. The CHSs merely follow his lead. For the jury to understand this, they must know what Hamzeh actually did, and why the CHSs and FBI then did what they did in response. Hamzeh will claim he was never serious about any of this, and this is extremely important evidence otherwise.

**Attachment 1, Row 38, D.73, Part 8, B, 7:42, p. 8-13, 14:1-42**

- Defense: the Court correctly excluded the statement based on the very real risk of unfair prejudice: "They raise the risk that the jury will convict the defendant for his cold, calculating and chilling words, and not because he possessed the charged items." R.342:38. Much of it is also irrelevant conversations touching upon Mo and Hamas, topics that the court of appeals did not touch upon.

As with the passage above – and they align not because they are cumulative but because they are parts of the same conversation, which has been cut down – Hamzeh is setting out *his* plan. This is highly probative that he was not entrapped but instead was the person driving everything that led up to his possession of machineguns and silencers. In this passage they even explicitly refer to "Samy's plan," (11:37). Further, Hamzeh discusses roping in a fourth man named Mo, and far from wishing to entrap Mo, Shhab says "Do not force him [to participate], Samy…."

**Attachment 1, Row 38, D.73, Part 8, F, 17:33-21**

- Defense: The court correctly ruled on the fact that the misinformation about the Masons that isn't relevant and many pieces are highly inflammatory and carry the risk of unfair prejudice. Further, the topic isn't touched upon by the appellate court's decision.

In this passage of the January 19th conversation, Muntasser asks who chose the attack site and Hamzeh replies "Devil's Temple" and "Masons." Misinformation about the Masons or not, it is highly probative of what *Hamzeh* thought, and in light of the Seventh Circuit's reasoning, is probative and admissible. Hamzeh also assures the CHSs that he is not going to force a man named "Mo," to participate – which is probative of Hamzeh's leadership role in the group and thus the lack of entrapment in this case.

**Attachment 1, Row 38, D.73, Part 8, H, 2, 24:14-25:28**

- Defense: The court correctly excluded it as inflammatory and unfairly prejudicial. It's all about Hamzeh not using marijuana and changing the dates of "the plan."

34

This doesn't pertain to the court of appeal's decision, and the part about how many they'd kill is inflammatory and cumulative.

This is not an abstract conversation about "the plan" - it is Hamzeh dictating the plan to the CHSs, down to making sure they go to the Masonic Center on a day when people are actually present so that there will not just be "a few people" to kill and will instead be as, as Hamzeh says, "a large number." The portion about weed could be redacted if the Court is concerned it is unfairly prejudicial.

Also, very importantly and contrary to Hamzeh's defense, Muntasser says to Hamzeh the man who gave them the tour was not evil, he "was talking about our Lord, bro. He talked about God in a normal way." Hamzeh response was that the man who gave them the tour "talks like that just to convince you."

Muntasser says, "You think so?" And Hamzeh replies, "*Oh yeah, man*. These freemasons are sons of bitches, *man*. They know how to play with your mind." Hamzeh will claim that Muntasser was the one who persuaded him that the Masons were evil; the jury must be able to hear this statement in order to assess Hamzeh's claim. This recorded conversation is essential, probative evidence of who was telling whom about Freemasons. It is, therefore, highly probative evidence that Hamzeh was not entrapped that far outweighs any risk of unfair prejudice.

**Attachment 1, Row 39, D.79, A, p. 6-7, 8:1-42**
**Attachment 1, Row 40, D.79, 27:22 – 28:14**
**Attachment 1, Row 42, D.79, 48:37 – 49:31**
- Defense: the Court correctly ruled that the statement is irrelevant; it's the men's views on Mo. And it isn't touched upon by the court of appeals decision. The statements carry the risk of confusion and unfair prejudice.

- Defense: The court correctly ruled: "This excerpt is a discussion of Mo and what is in Mo's heart. It is irrelevant and confusing, and the court will exclude it." Nothing in court of appeals decision touches on that.
- Defense: The court correctly excluded the conversation, it's a continuation of the Mo conversation. It is irrelevant and confusing, and nothing in court of appeals decision touches on that.

The defense intends to admit out of court statements by Hamzeh to a man named Mo that the plan to commit a mass killing was all Muntasser's idea and that Hamzeh would never actually do it. The defense argues this to support their entrapment defense. And Hamzeh did make statements to that effect to Mo. But immediately thereafter, Hamzeh says to Muntasser and Shhab that he was lying to Mo, and in fact that he "made up this story." This was, per Hamzeh, meant to put Mo off their scent so they would not get caught. These short January 20, 2015 passages are highly probative of these arguments and thus of the entrapment defense.

As the Seventh Circuit explained about the disputed machinegun evidence, Hamzeh's intent to offer contrary evidence has rendered this conditionally relevant. *See* 986 F.3d at 1086 ("When relevance depends on a fact, also known as 'conditional relevance,' 'proof must be introduced sufficient to support a finding that the fact does exist . . . .While the jury is free to believe or disbelieve the Government's interpretation of the statement, it is relevant," 986 F.3d at 1054. There is no risk of unfair prejudice here, and the statements are not cumulative; one conversation is split into portions instead of playing the full conversation.

**Attachment 1, Row 45, D.84, C, 2, 42:34 -43:12**
- Defense: This is all the chilling detailed plans about killing. The Court previously held that "the risk of unfair prejudice far outweighs any probative value this portion of the excerpt may have." R.342:42.

36

In this January 21, 2016 statement, Hamzeh's plans are detailed and chilling. There is no doubt about that. But the Seventh Circuit opinion explained that the extent of his willingness to commit a mass killing was relevant evidence of the extent of his predisposition acquire the weapons necessary to do so. And the more serious that willingness to commit an attack is, the more predisposed he is. Further, even now on January 21, a few days before he was arrested, this is all still Hamzeh's planning. That is probative of his mental state and whether he was entrapped. It is also probative of whether government agents induced him to any of this. Finally, it is highly probative of whether he was reluctant to commit the offense. He shows no reluctance here whatsoever. This is the heart of the case, and the probative value of these statements far exceeds any risk of unfair prejudice.

**Attachment 1, Row 45, D.84, C, 4, 44:25-49:33**
- Defense: This is all the chilling detailed plans about who will do what during the killing. The Court previously held that "the risk of unfair prejudice far outweighs any probative value this portion of the excerpt may have." R.342:42

In this conversation, at page 45, Hamzeh pushes right past Shhab telling him to postpone acquiring weapons and committing an attack. The Seventh Circuit found the exclusion of statements like this to be incorrect. Hamzeh then directs, on January 21, 2015, what *he* wants the CHSs to do. This is highly probative of entrapment.

Further, the parties now agree that the Seventh Circuit has required Hamzeh's statement that, "but I am absolutely sure that the police won't hear about the incident; they won't hear about it" is admissible because, the Court of Appeals reasoned, "the

Government can introduce this evidence to show Hamzeh's predisposition to obtain a silencer and as evidence bearing on the second element of the offense. Concerning the latter, the Government must show Hamzeh knew of the silencing effect of the silencer he possessed. While the jury is free to believe or disbelieve the Government's interpretation of the statement, it is relevant for these purposes." 986 F.3d at 1054. The context for this statement is also then admissible, and it is not unfairly prejudicial.

**Attachment 1, Row 45, D.84, F, p.50-52**
- Defense: The court correctly held that "[t]his portion carries a very high risk of undue prejudice." The conversation about murdering children. This doesn't come in under the court of appeals ruling and should be excluded. The risk of unfair prejudice is too great.

Hamzeh works to convince the CHSs that the attack will be successful because, in part, "our weapons are silent." He also makes clear in this passage exactly how seriously predisposed he is to commit this attack and, again per the Seventh Circuit, acquire the weapons necessary to do so. It is deeply disturbing because Hamzeh's predisposition is deeply disturbing. But that is the nature of this case. The Seventh Circuit made this clear.

This is particularly pointed here where he describes in detail the value of the silencers he wants. The Seventh Circuit, as described regarding the passage immediately above, ruled on this issue. This is probative of whether he was predisposed to want to possess a silencer or was entrapped.

**Attachment 1, Row 50, D.90, p. 10 (portion) - 13 (portion)**
- Defense: This is more of the chilling detailed plans about who will do what but this time its in Indiana. The Court previously held that "the risk of unfair prejudice far outweighs any probative value this portion of the excerpt may have." R.342:42.

Now on January 23, 2015, Hamzeh starts by complaining that the attack plan has been pushed back: "I say we have to expedite the process, not keep saying later, later and later." This is probative of his enthusiasm to commit the attack, rebuts any claim he was reluctant. And it relevant and admissible. Hamzeh is also describing to Shhab exactly the issues they may run into using the firearms he wants for the attack – and that they will use silencers. Hamzeh has claimed he was entrapped; statements like this are highly probative in rebutting that claim.

**Attachment 1, Row 51, D.90, A, p. 29, portion**
**Attachment 1, Row 51, D.90. C. 30-31**

- Defense: This is all about what to with the children. The court ruled: "The court agrees—this is another discussion of what to do with any children who may be in the building and a discussion of whether the location is near a highway. The court will exclude this portion." 342:44. It carries a high risk of unfair prejudice.
- Defense: the Court correctly ruled on the risk of unfair prejudice: It contains more detailed discussions of how the shooting will be carried out, and the risk of undue prejudice outweighs any possible probative value.

The United States agrees that Hamzeh's discussion of children in the context of murdering their parents is disturbing. So too the level of detail and planning he dictates to the CHSs. But he has raised an entrapment defense that requires a searching inquiry into his mental state and character, and they were his words reflecting his mental state and character. He now claims he never wanted any of this, was merely a follower, was reluctant, but was overcome by months of entreaties by the CHSs – one of whom was his best friend and the other he had just met. These statements, his own statements, are deeply probative of whether that is true. The Seventh Circuit made itself very clear on this. "One of the factors in determining whether a defendant is predisposed is character

or reputation, putting character 'in issue.' *See generally*, Fed. R. Evid. 404 advisory committee's notes (explaining 'character in issue' occurs when character is 'an element of a crime, claim, or defense.'" 986 F.3d at 1055 n.10. The Seventh Circuit did not point this out in the abstract. It did so to explain precisely why it is important the jury see whether Hamzeh was reluctant or enthusiastic. A leader or a follower. Sincere in his beliefs or not. This statement and the others like it – and they are only a fraction of Hamzeh's statements to this effect – are important, probative, and should be admitted. These are pieces of the same conversation – they are not cumulative.

III.     Post-Arrest Statement

        The Seventh Circuit was clear that the exclusions of Hamzeh's post-arrest statements suffered from the same errors as his other recorded statements. This is most important with respect to Hamzeh's statement that he would have committed the attack but for an Imam's counsel that to do so was not allowed. This Court was concerned that the fact that this question (may I kill people?) was asked of an Imam was offensive because it implied that someone thought an Imam might actually say yes. But if so, that someone was Hamzeh. It was not the FBI Agent in the questioning, nor is it the undersigned now. Hamzeh's implication is indeed offensive. But it was Hamzeh who asked, and it is Hamzeh's state of mind that is revealed. It is Hamzeh's entrapment defense that has put Hamzeh's state of mind at issue. And now that the Seventh Circuit has ruled that Hamzeh's mental state regarding his wish to commit a killing is probative evidence, surely his statement that he was so serious about doing it that he would have gone through with it but for the Imam's counsel is now admissible.

## Conclusion

The statements above are the minimum necessary for the jury to assess Hamzeh's entrapment defense and perform their truth-seeking function. The United States asks that they be admitted.

Dated at Milwaukee, Wisconsin, this 9th Day of November, 2021.

Respectfully submitted,

RICHARD FROHLING
Acting United States Attorney

By:    *s/ Benjamin Taibleson*

Benjamin Taibleson
Kevin Knight
Assistant United States Attorneys
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
benjamin.taibleson@usdoj.gov